IN THE UNTIED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CLIFTON MCNEIL BROOKS,

     Petitioner.

v.                                                                CASE NO.  3:19-cv-787-MMH-MCR

MARK S. INCH, Secretary of the
Florida Department of Corrections
(FDC).

     Respondent.

# FDC'S EXHIBIT 18

## RECORD VOL 3

## DIRECT APPEAL - 1D13-1073

# IN THE
# 1st District Court of Appeal
### TALLAHASSEE, FLORIDA

CASE NO.            16-2012-CF-006884-AXXX-MA
                   DIVISION CR-E

APPEAL NO.         1D13-1073

# NOT FOR PUBLIC DISCLOSURE

CLIFTON MCNEIL BROOKS     Appellant____,        RONNIE FUSSELL,
         VS                                        CLERK
                                              OF THE CIRCUIT AND
STATE OF FLORIDA          Appellee____,        COUNTY COURTS

# RECORD ON APPEAL

### VOLUME 3 OF 5

Appeal from the Circuit Court

Duval County, Florida

BEFORE THE HONORABLE JUDGE TATIANA SALVADOR



PUBLIC DEFENDER              ATTORNEY GENERAL
FOR APPELLANT                FOR APPELLEE

# NOT FOR PUBLIC DISCLOSURE

IN THE CIRCUIT COURT OF THE FOURTH
JUDICIAL CIRCUIT, IN AND FOR DUVAL
COUNTY, FLORIDA

CLIFTON MCNEIL BROOKS          CASE NO:   16-2012-CF-006884-AXXX-MA
                                          DIVISION CR-E
APPELLANT

STATE OF FLORIDA          APPEAL NO:   1D13-1073

APPELLEE

## VOLUME 2(CONTINUED)

| | | |
|---|---|---|
| TESTIMONY & PROCEEDINGS OF AUGUST 28, 2012 BEFORE THE HONORABLE JUDGE TYRIE BOYER | 12/31/13 | 369-373 |
| TESTIMONY & PROCEEDINGS OF DECEMBER 6, 2012 BEFORE THE HONORABLE JUDGE TYRIE BOYER | 12/31/13 | 374-382 |
| AMENDED NOTICE OF APPEAL | 12/31/13 | 383 |
| AFFIDAVIT FROM OFFICIAL REPORTERS, INC. CONCERNING THE DATES 05/19/05 AND 12/22/04 | 01/07/14 | 384 |
| TESTIMONY & PROCEEDINGS OF AUGUST 7, 2012 BEFORE THE HONORABLE JUDGE TYRIE BOYER | 01/06/14 | 385-389 |
| TESTIMONY & PROCEEDINGS OF OCTOBER 2, 2012 BEFORE THE HONORABLE JUDGE TYRIE BOYER | 02/10/14 | 390-393 |
| TESTIMONY & PROCEEDINGS OF DECEMBER 4, 2012 BEFORE THE HONORABLE JUDGE TYRIE BOYER | 01/06/14 | 394-398 |

## VOLUME 3

| | | |
|---|---|---|
| TESTIMONY & PROCEEDINGS OF JANUARY 28, 2013 BEFORE THE HONORABLE JUDGE TATIANA SALVADOR | 01/02/14 | 399-428 |
| TESTIMONY & PROCEEDINGS OF FEBRUARY 4, 2013, BEFORE THE HONORABLE TATIANA SALVADOR | 01/10/14 | 429-448 |
| TESTIMONY & PROCEEDINGS OF FEBRUARY 8, 2013 BEFORE THE HONORABLE JUDGE TATIANA SALVADOR | 02/10/14 | 449-488 |
| TESTIMONY & PROCEEDINGS OF FEBRUARY 27, 2013 BEFORE THE HONORABLE JUDGE TYIRE BOYER | 01/06/14 | 489-500 |
| CERTIFICATE OF CLERK | | |

1

```
 1                              IN THE CIRCUIT COURT, FOURTH
                                JUDICIAL CIRCUIT, IN AND FOR
 2                              DUVAL COUNTY, FLORIDA.

 3                              CASE NO.:  162012CF6884AXXXMA
                                DIVISION:  CRE/SAD
 4
      STATE OF FLORIDA
 5
      vs.
 6
      CLIFTON BROOKS,
 7
                Defendant.
 8      _____/

 9

10           PROCEEDINGS before the Honorable TATIANA

11    SALVADOR, Circuit Judge, Courtroom No. 308, at the

12    Duval County Courthouse, Jacksonville, Duval County,

13    Florida, on Monday, January 28th, 2013, commencing at

14    11:00 a.m., reported by Sharron A. McLendon, Court

15    Reporter.

16

17                            - - -

18

19

20

21

22

23

24

25
```

FILED
JAN 0 2 2014
CLERK CIRCUIT COURT

OFFICIAL REPORTERS, INC.

```
 1                    A P P E A R A N C E S
 2
                      ANNA HIXON, Esquire
 3
                 Office of the State Attorney
 4
             Attorney for the State of Florida.
 5
 6
 7
                     TYLER GATES, Esquire
 8
         Office of the Regional Conflict Counsel
 9
                 Attorney for the Defendant.
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

OFFICIAL REPORTERS, INC.

```
 1                          - - -
 2                    P R O C E E D I N G S
 3   January 28th, 2013                        11:00 a.m.
 4                          - - -
 5          MS. HIXON:  Your Honor, if the State could
 6     call Clifton Brooks at the top of Page 2.
 7          THE COURT:  Okay.
 8          (Defendant present.)
 9          MR. GATES:  Your Honor, Tyler Gates of the
10     Office of Regional Conflict.  I was recently
11     appointed on this on, let's see, January 8th, with
12     a -- due to the Public Defender's Office
13     withdrawing due to a conflict.  I spoke with
14     Mr. Brooks and he informed me during my first
15     meeting with him that he would like to try and or
16     he wants to go pro se.  The case is still set for
17     trial on February 11th with a final pretrial on
18     February 4th, so I advised him I would put it on
19     the calendar as soon as possible to have that
20     Faretta hearing, because my -- it's his intention
21     that if he does do this pro se that he wants to
22     continue with that trial date, so I just wanted to
23     make sure that's addressed.
24          THE COURT:  He wants to continue the trial
25     or --
```

OFFICIAL REPORTERS, INC.

```
 1            MR. GATES:  Keep the --
 2            THE COURT:  -- keep the trial date?
 3            MR. GATES:  Keep the case progressing,
 4       exactly, Your Honor.
 5            THE COURT:  Okay.  Okay.
 6            MR. GATES:  So it's just on for a Faretta
 7       hearing this morning for Mr. Brooks to go pro se.
 8            THE COURT:  All right.  Swear the defendant
 9       in.
10            THE CLERK:  Please raise your right hand,
11       sir.
12            THE DEFENDANT:  Excuse me, ma'am, there is
13       another issue.
14            THE COURT:  I'm sorry?
15            THE DEFENDANT:  There is another issue.
16            THE COURT:  All right.  Can we have you sworn
17       in first, if you don't mind?
18            THE DEFENDANT:  Oh, yes.
19            THE COURT:  The clerk is going to swear you
20       in.
21            THE DEFENDANT:  Okay.
22                      CLIFTON BROOKS,
23  having been produced and first duly sworn as a witness,
24  testified as follows:
25            THE COURT:  All right.  Mr. Brooks, I'm happy
```

OFFICIAL REPORTERS, INC.

```
 1      to hear what you have to say.  You said there was
 2      one more issue in addition to you wanting to go pro
 3      se.
 4              THE DEFENDANT:  Yes, ma'am.
 5              THE COURT:  What is that?
 6              THE DEFENDANT:  At the time I made this
 7      request I made I also had Ms. Darcy Galnor to
 8      remain my number two chair, and I'm not releasing
 9      her from that duty, so I appreciate you showing up
10      and helping me, but I still want to keep Ms. Darcy
11      Galnor.
12              THE COURT:  Well, I understood that the Public
13      Defender's Office has a conflict in representing
14      you so they can't remain as your attorneys, not
15      even as your number two, despite your request to
16      have her stay on your case.  If there is a conflict
17      in the office, they can't represent you.  That's
18      why Mr. Gates was appointed to represent you.
19              THE DEFENDANT:  Well, I just wanted to make
20      sure I get it on the record, ma'am.
21              THE COURT:  Okay.
22              THE DEFENDANT:  I appreciate that.
23              THE COURT:  All right.  So is it your
24      contention that you do not want Mr. Gates to
25      represent you?
```

OFFICIAL REPORTERS, INC.

 1          THE DEFENDANT:  Yes, ma'am.

 2          THE COURT:  And is there anything that he's

 3     done or failed to do and that's the reason why you

 4     don't want him or you just want to do it on your

 5     own?

 6          THE DEFENDANT:  I will -- I just met the guy,

 7     so I can't really say anything bad about him, but

 8     at the time, like I said, at the time I made the

 9     request the request was made.

10          THE COURT:  The request?

11          THE DEFENDANT:  I no longer request.

12          THE COURT:  And you're saying what, the

13     request to keep Ms. Galnor?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  Well, if you wanted the assistance

16     of Ms. Galnor as an attorney, I guess I'm wondering

17     why you wouldn't want the assistance of Mr. Gates

18     as an attorney for the trial that you've got coming

19     up in two weeks for what is a serious offense that

20     the State has charged you with.

21          THE DEFENDANT:  Uh-huh.

22          THE COURT:  Why wouldn't you want the

23     assistance of Mr. Gates?

24          THE DEFENDANT:  Well, I'm really not at

25     liberty to discuss that right now because I don't

OFFICIAL REPORTERS, INC.

```
 1    want to harm my case in any way.

 2              THE COURT:  Okay.

 3              THE DEFENDANT:  So I would rather just have a

 4    Faretta hearing, and then if you don't grant it,

 5    then I want to keep Ms. Galnor.  That's all I

 6    needed to do.

 7              THE COURT:  Okay.

 8              THE DEFENDANT:  Okay.

 9              THE COURT:  Well, let me ask you some

10    questions to see if you are capable of representing

11    yourself.

12              THE DEFENDANT:  Okay.

13              THE COURT:  Okay.  Of course you understand,

14    Mr. Brooks, that the Florida and United States

15    Constitutions guarantee that you have a right to a

16    lawyer.  Do you understand that?

17              THE DEFENDANT:  Yes, ma'am.

18              THE COURT:  Okay.  Have you ever represented

19    yourself before and foregone the assistance of a

20    lawyer?

21              THE DEFENDANT:  Well, in, I can say in 2006 I

22    did start the process, but then there was so much

23    dismay between me and the judge I had to actually

24    accept another public defender.

25              THE COURT:  Okay.  You understand the lawyers,
```

OFFICIAL REPORTERS, INC.

```
 1      of course, are trained, they've gone to law school
 2      for a long time, they know the rules of evidence
 3      and the rules of procedure and you may be at a
 4      disadvantage representing yourself without that
 5      training and that knowledge?  Do you understand
 6      that?
 7           THE DEFENDANT:  Well, isn't a Faretta hearing
 8      also granting me counsel?
 9           THE COURT:  A Faretta hearing is not granting
10      you counsel.
11           THE DEFENDANT:  Okay.
12           THE COURT:  A Faretta hearing is you saying I
13      want to represent myself, I do not want to have an
14      attorney.
15           THE DEFENDANT:  That's not what I read on
16      there, it's granting me counsel.
17           MR. GATES:  May I have just one moment, Your
18      Honor?
19           THE COURT:  Yes.
20           (Mr. Gates confers with the defendant.)
21           MR. GATES:  Your Honor, I spoke to him,
22      obviously he's wanting stand-by counsel,
23      Mr. Brooks, but that's all.
24           THE COURT:  Oh, okay.  Yes, Mr. Brooks, it is
25      typically when we have individuals coming in
```

OFFICIAL REPORTERS, INC.

**PAGE # 0406 OF 0500**

```
 1        complaining about their lawyers saying this lawyer
 2        is ineffective, I don't want to have them anymore,
 3        I want a different lawyer, that's a different type
 4        of inquiry called a Nelson inquiry, but that's not
 5        why we're here it sounds like, because you have no
 6        complaints about Mr. Gates; is that correct?
 7             THE DEFENDANT:  Yes, ma'am.
 8             THE COURT:  You just happen to want to keep
 9        Ms. Galnor, who was your prior counsel, but
10        unfortunately has a conflict in representing you
11        and so can't represent you.  Do you understand
12        that?
13             THE DEFENDANT:  Yes, ma'am.
14             THE COURT:  Okay.
15             THE DEFENDANT:  I can't understand how she has
16        a conflict though.
17             THE COURT:  It might not be her personally,
18        but it might be someone in the office.  And I'll
19        tell you, I don't know the facts of your case, I
20        don't know who the witnesses are but, for instance,
21        a very typical type of conflict is if there is a
22        witness in your case who is represented by the
23        Office of the Public Defender then the Office of
24        the Public Defender, Ms. Galnor, would have a
25        conflict in representing you.
```

OFFICIAL REPORTERS, INC.

10

1       THE DEFENDANT:  That is not the case.

2       THE COURT:  Like I said, I don't know the

3   facts of your case, I don't know what the nature of

4   the conflict is, but apparently one has been deemed

5   to exist and so they have withdrawn and that's why

6   Mr. Gates has been appointed to represent you.

7       That's what he does, he comes in and effectively

8   represents defendants who cannot be represented by

9   the Public Defender because of a conflict.

10      Do you understand that?

11      THE DEFENDANT:  Yes, ma'am, I understand.

12      THE COURT:  All right.  So since you're not

13  saying he's ineffective, the only thing I inquire

14  about and he's advised that you want to represent

15  yourself and that's why we would do a Faretta

16  inquiry, to see if you are capable of representing

17  yourself.

18      THE DEFENDANT:  Okay.

19      THE COURT:  And so that's why I'm asking you

20  do you understand that you may be at a disadvantage

21  without the training in the law and the evidence

22  and the rules of procedure if you go forward with

23  your trial without representation of a lawyer.

24      Do you understand that?

25      THE DEFENDANT:  Yes, ma'am.

```
 1              THE COURT:  Okay.  Do you understand that a
 2       lawyer can advise you as to whether it is in your
         best interest, for instance, to testify or not
 4       testify at trial?  Do you understand that?
                THE DEFENDANT:  Yes, ma'am.
 6              THE COURT:  A lawyer could advise you or work
 7       with you in negotiating and communicating with the
 8       State Attorney's Office.  Do you understand that?
 9              THE DEFENDANT:  Yes, ma'am.
10              THE COURT:  Do you understand that since you
11       are incarcerated you're going to have a more
12       difficult time on your limitations in your
13       communications with -- your communications with the
14       State will be limited.
                THE DEFENDANT:  I don't need to communicate
16       with the State, Your Honor.
17              THE COURT:  Okay.
18              THE DEFENDANT:  Okay.
19              THE COURT:  Well, if you're representing
20       yourself, you and Ms. Hixon will be exchanging
21       witness lists and documents and evidence and you
22       will need to communicate with her.  Do you
         understand that?
24              THE DEFENDANT:  All the information has been
25       provided through Ms. Galnor prior to my three
```

OFFICIAL REPORTERS, INC.

```
 1    months of me being incarcerated, so the stuff is on
 2    file.
 3         THE COURT:  Okay.  Do you understand you're
 4    not going to get any special consideration from the
 5    Court just because you're representing yourself?
 6         THE DEFENDANT:  I don't need any, ma'am.
 7         THE COURT:  Okay.  Now, do you understand that
 8    at trial a lawyer could cross-examine witnesses on
 9    your behalf, or excuse me, presented by the State,
10    call witnesses on your behalf and move items into
11    evidence perhaps in a way that you -- better than
12    you could.  Do you understand that?
13         THE DEFENDANT:  It's possible, but I believe
14    I've already put myself in a position where I have
15    all the evidence and people that I need to call, so
16    that's not a problem either, ma'am.
17         THE COURT:  Well, another advantage of having
18    a lawyer is that they could effectively participate
19    in the selection of a jury.
20         Are you going to be able to select a jury
21    without the assistance of a lawyer?
22         THE DEFENDANT:  Well, since we're going
23    forward with trial with the date set at this time,
24    I am waiving my rights to a jury trial.
25         THE COURT:  So you want to have a trial just
```

OFFICIAL REPORTERS, INC.

1      in front of the Court?

2           THE DEFENDANT:  Yes, ma'am, I do.

3           MS. HIXON:  And, Your Honor, the State would

4      not be waiving a jury trial.

5           THE COURT:  Okay.  Well, I understand that.

6      You also understand that having a lawyer could

7      advise you whether or not it's in your best

8      interest to waive your right to a trial?

9           THE DEFENDANT:  I'm just trying to make sure

10     that I've got that on record, I do want to waive my

11     right to a jury trial.

12          THE COURT:  Okay.  But you also heard and

13     understand the State has not waived that right?

14          THE DEFENDANT:  Yes.  I just wanted to make

15     sure I put it on the record.

16          THE COURT:  It's on the record.  The court

17     reporter is taking down everything you say,

18     Mr. Brooks.

19          THE DEFENDANT:  All right.

20          THE COURT:  Okay.  Do you also understand that

21     having an attorney, one of the advantages, is that

22     they would be able to be sure that the jury

23     instructions given to a jury are accurate and

24     correct?

25          THE DEFENDANT:  Well, I'm not asking for a

OFFICIAL REPORTERS, INC.

```
1    jury, I mean what does that...

2         THE COURT:  Well, if you have a jury trial,

3    because the State is not waiving the right, there

4    would be a jury and they would get instructions at

5    the close of your case.  However, a lawyer would

6    assure that they get the proper instructions.  Do

7    you understand that?

8         THE DEFENDANT:  Yes, ma'am.

9         THE COURT:  Okay.  Do you also understand that

10   an attorney could make an effective closing

11   argument on your behalf?

12        THE DEFENDANT:  Uh-huh.

13        THE COURT:  Okay.  And if you are -- if you

14   are convicted, you understand that a lawyer's

15   assistance is useful in preparing for sentencing,

16   in ensuring that the favorable facts are brought

17   out to the attention of the Court or in ensuring

18   that the Court is advised of all legally available

19   dispositions and that the sentence is lawful.  Do

20   you understand that having an attorney could be

21   beneficial to you in that regard?

22        THE DEFENDANT:  Yes, ma'am.

23        THE COURT:  Okay.  By representing yourself,

24   and I've gone over some of them, do you understand

25   that there are some serious disadvantages,
```

OFFICIAL REPORTERS, INC.

1      Mr. Brooks?

2              THE DEFENDANT:  Yes, ma'am.

3              THE COURT:  Do you?

4          Okay.  Do you understand, and I've said it

5      once, you're not going to get any special treatment

6      from the Court by representing yourself.  Do you

7      understand that?

8              THE DEFENDANT:  Yes, ma'am.

9              THE COURT:  Do you understand that you're not

10     going to be entitled to a continuance simply

11     because you represent yourself?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  Do you understand that you also

14     may have some limited legal resources available to

15     you while you're in custody?  I don't know what is

16     available over at the jail, but do you understand

17     that if you're representing yourself your access to

18     some resources may be limited?

19             THE DEFENDANT:  They already have been, ma'am.

20             THE COURT:  Okay.  You're not going to be

21     entitled to any additional library hours or

22     privileges at the jail simply because you're

23     representing yourself.  Do you understand that?

24             THE DEFENDANT:  Well, that's why -- I wasn't

25     informed that, that's not what I was told.

```
1            THE COURT:  By whom?

2            THE DEFENDANT:  Actually the law library desk

3       officer.

4            THE COURT:  Well, whatever their policy is at

5       JSO, that's what you're going to be entitled to.

6            THE DEFENDANT:  Okay.

7            THE COURT:  Not any more, not anything less

8       simply because you're representing yourself.  Do

9       you understand that?

10           THE DEFENDANT:  Yes, ma'am.

11           THE COURT:  Okay.  Now, you are going to be

12      required to abide by the rules of criminal law and

13      the rules of courtroom procedure.  These laws took

14      lawyers years to learn these rules and you have to

15      abide by them.  Do you understand that?

16           THE DEFENDANT:  Yes, ma'am.

17           THE COURT:  Okay.  If you demonstrate an

18      unwillingness to abide by those rules I may

19      terminate your self-representation.  Do you

20      understand that?

21           THE DEFENDANT:  Yes, ma'am.

22           THE COURT:  Do you also understand that if you

23      are disruptive in the courtroom, and again, I

24      haven't met you before, I don't know if this is an

25      issue, but I need to forewarn you that, again, I
```

OFFICIAL REPORTERS, INC.

```
 1      could terminate your self-representation and I

 2      could remove you from the courtroom, in which case

 3      your trial would continue without your presence.

 4      Do you understand?

 5              THE DEFENDANT:  What does that mean

 6      disruptive?

 7              THE COURT:  I'm sorry?

 8              THE DEFENDANT:  What does that mean,

 9      disruptive?

10              THE COURT:  Not following the rules of

11      courtroom procedure, speaking out of turn, yelling,

12      screaming certainly, being rude and disruptive

13      towards the witnesses or towards the jurors or

14      towards the attorneys.

15              THE DEFENDANT:  Does that also -- do the state

16      attorneys have to follow that rule?

17              THE COURT:  Absolutely.

18              THE DEFENDANT:  Okay.  So if --

19              THE COURT:  It's not just you.  Everyone must

20      follow the proper courtroom decorum.

21              THE DEFENDANT:  As long as they have to follow

22      it also, that's fine.

23              THE COURT:  They do.

24              THE DEFENDANT:  Okay.

25              THE COURT:  In addition, do you understand
```

OFFICIAL REPORTERS, INC.

```
 1          that simply because you're representing yourself
 2          the State is not going to go easier on you or give
 3          you any special treatment because you're
 4          representing yourself?
 5                  THE DEFENDANT:  Yes, ma'am.
 6                  THE COURT:  Okay.  And finally, if you are
 7          convicted, sir, you cannot claim on appeal that
 8          because you lack legal knowledge or skill that
 9          constitutes the basis for a new trial.  Do you
10          understand that?
11                  THE DEFENDANT:  Yes, ma'am.
12                  THE COURT:  In other words, a very common
13          appeal is ineffective assistance of counsel.  You
14          are not going to have that because you are your own
15          counsel.  Do you understand that?
16                  THE DEFENDANT:  Well, seeing I already had it
17          before I went to trial, I guess going to trial
18          don't really change that fact, but, yes I do.
19                  THE COURT:  So you understand that?
20                  THE DEFENDANT:  Yes, ma'am.
21                  THE COURT:  Okay.  As an avenue of appeal that
22          is going to be done to you?
23                  THE DEFENDANT:  Uh-huh.
24                  THE COURT:  Okay.  Do you understand these
25          dangers and disadvantages of representing yourself?
```

OFFICIAL REPORTERS, INC.

```
 1            THE DEFENDANT:  Yes, ma'am.

 2            THE COURT:  Do you have any questions about

 3       these dangers or disadvantages?

 4            THE DEFENDANT:  No, I do not.

 5            THE COURT:  Have you received a copy of the

 6       charges against you?

 7            THE DEFENDANT:  Yes, I have.

 8            THE COURT:  Okay.  Do you understand all the

 9       charges against you?

1C            THE DEFENDANT:  Yes, ma'am.

11            THE COURT:  During the time that you were

12       represented by Ms. Galnor in this case, did you

13       discuss the case with her?

14            THE DEFENDANT:  Well, I mean has anything

15       changed since then, because I mean it's been so

16       long since I've had that form I don't know if

17       anything has changed, and I haven't had any input

18       from her, so I don't know what's going on.

19            THE COURT:  Okay.  Well, I mean, when she did

2C       represent you, did you discuss your charges with

21       her?

22            THE DEFENDANT:  No.  I just received the

23       information in the mail.  I'm saying has anything

24       changed since then, because I have not been able to

25       get in contact with her, so I don't know if there
```

OFFICIAL REPORTERS, INC.

```
 1    is anything updated or anything.

 2        THE COURT:  Okay.  And I can't tell you either

 3    because, again, I'm not familiar with your case.  I

 4    don't know the facts.  So do you understand that's

 5    something that if you had Mr. Gates as your lawyer

 6    he'd be able to call Ms. Hixon and find out if

 7    there is going to be an amended information or if

 8    anything has changed, but now, without an attorney,

 9    that's going to be your responsibility to try to

10    find out.

11        THE DEFENDANT:  Oh, that's fine.  Okay.

12        THE COURT:  All right.  So let me advise you

13    of the possible penalties if you are found guilty

14    as charged.

15        State, can you tell Mr. Brooks what is the

16    maximum and if there are any minimums that he's

17    looking at if he is convicted of these offenses for

18    which he's charged.

19        MS. HIXON:  Yes, Your Honor.

20        Count one is a capital felony punishable by

21    mandatory life, count two is a first degree felony

22    punishable by up to 30 years in prison and count

23    three is a second degree felony punishable by up to

24    15 years in prison.

25        THE COURT:  Do you understand that,
```

OFFICIAL REPORTERS, INC.

1      Mr. Brooks?

2             THE DEFENDANT:  Yes, ma'am.

3             THE COURT:  If you are convicted of count one,

4      that is a mandatory life sentence.

5             THE DEFENDANT:  Yes, ma'am.

6             THE COURT:  If you are convicted of count two,

7      that is up to 30 years in prison.

8             THE DEFENDANT:  Yes, ma'am.

9             THE COURT:  And if you're convicted of count

10     three, that is up to 15 years in prison.

11            THE DEFENDANT:  Yes, ma'am.

12            THE COURT:  You understand those are the

13     maximum penalties you're facing.

14            THE DEFENDANT:  Yes, ma'am.

15            THE COURT:  Knowing this you still want to

16     represent yourself?

17            THE DEFENDANT:  Yes, I do.

18            THE COURT:  Do you also understand that if you

19     are not a United States citizen and you are found

20     guilty of these offenses you may be deported from

21     this country under the federal immigration law?  Do

22     you understand that?

23            THE DEFENDANT:  Yes, ma'am.

24            THE COURT:  Do you have any questions about

25     the charges or the possible consequences and

OFFICIAL REPORTERS, INC.

```
 1      penalties if you are found guilty of counts one

 2      through three?

 3          THE DEFENDANT:  No, ma'am.

 4          THE COURT:  Let me just ask you a few more

 5      questions to determine if you are competent to make

 6      this knowing and intelligent waiver of counsel.

 7          How old are you, sir?

 8          THE DEFENDANT:  I'm 30.

 9          THE COURT:  And can you read and write the

10      English language?

11          THE DEFENDANT:  Yes, I can.

12          THE COURT:  How far did you go in school?

13          THE DEFENDANT:  College.

14          THE COURT:  All right.  Did you complete

15      college?  How many years did you complete?

16          THE DEFENDANT:  I'm still currently enrolled,

17      so I'd say at least two years.

18          THE COURT:  Okay.  Are you currently under the

19      influence of any drug, alcohol or medication that

20      prevents you from understanding what I'm saying or

21      from understanding the consequences of your

22      decision here today?

23          THE DEFENDANT:  No.

24          THE COURT:  Have you ever been diagnosed and

25      treated for any mental illnesses?
```

OFFICIAL REPORTERS, INC.

```
 1              THE DEFENDANT:  PTSD.
 2              THE COURT:  Okay.  And when did that occur?
 3              THE DEFENDANT:  I want to say 2008.
 4              THE COURT:  And have you taken any medication
 5         for the PTSD?
 6              THE DEFENDANT:  It doesn't require medication.
 7              THE COURT:  Do you suffer any symptoms as a
 8         result of your diagnosis for posttraumatic stress
 9         disorder?
10              THE DEFENDANT:  Just sleep, sleep problems.
11              THE COURT:  Do you have any other physical
12         problems that would hinder your self-representation
13         in this case, such as hearing or speech or poor
14         eyesight or anything like that?
15              THE DEFENDANT:  No, ma'am.
16              THE COURT:  Has anyone told you not to use a
17         lawyer?
18              THE DEFENDANT:  Unfortunately dealing with the
19         individuals that I've dealt with and, like you say,
20         you haven't looked at the information in the case,
21         but it's just best that if I keep my facts to
22         myself, that way it won't be shared with anyone
23         else and just go to trial and handle business,
24         that's it.
25              THE COURT:  Okay.  Has anyone threatened you
```

OFFICIAL REPORTERS, INC.

```
 1    that if you hire a lawyer or accept a lawyer from

 2    this Court, has anyone threatened you not to do

 3    that?

 4         THE DEFENDANT:  It's just the sharing of

 5    information, Your Honor, just the sharing of

 6    information, that's all.

 7         THE COURT:  Of course you understand that the

 8    Court -- a lawyer can be appointed by the Court to

 9    represent you for free, money is not an issue here.

10    Do you understand that?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  And I think I asked you before,

13    but have you ever represented yourself in a trial

14    before?

15         THE DEFENDANT:  I didn't make it to the trial,

16    ma'am, but, no.

17         THE COURT:  Okay.  Do you have any questions

18    about having a lawyer appointed to defend you?

19         THE DEFENDANT:  No, ma'am.

20         THE COURT:  All right.  Well, having been

21    advised of your right to counsel, the advantages of

22    having counsel, the disadvantages and dangers of

23    proceeding without counsel, the nature of the

24    charges and possible consequences in the event of

25    conviction, are you certain that you do not want me
```

OFFICIAL REPORTERS, INC.

```
 1          to appoint a lawyer to defend you?

 2                 THE DEFENDANT:  Uh-huh, yes, ma'am.

 3                 THE COURT:  You are certain about that?

 4                 THE DEFENDANT:  Yes, ma'am.

 5                 THE COURT:  You do not want Mr. Gates to

 6          represent you?

 7                 THE DEFENDANT:  I am certain.

 8                 THE COURT:  All right.  I'm going to allow you

 9          to represent yourself --

10                 THE DEFENDANT:  Thank you.

11                 THE COURT:  -- as you requested.  I can have

12          Mr. Gates as standby counsel to you in the event

13          that you would like his assistance throughout the

14          trial.  He will be available if you have any

15          questions during these proceedings.

16                 Would you like standby counsel?

17                 (Mr. Brooks conferring with Ms. Galnor.)

18                 THE COURT:  Yeah, it can't be Ms. Galnor,

19          Mr. Brooks, because she has a conflict.

20                 THE DEFENDANT:  No.

21                 THE COURT:  No what, you don't want standby

22          counsel?

23                 THE DEFENDANT:  If it's not Ms. Galnor, there

24          is nothing I can do about that.

25                 THE COURT:  I mean, I'm sorry, I'm not --
```

OFFICIAL REPORTERS, INC.

1    you're confusing me.

2         THE DEFENDANT:  I already asked and requested

3    for Ms. Galnor, and I'm not changing the request.

4         THE COURT:  Okay.  I understand you're not

5    changing your request.  I cannot give you

6    Ms. Galnor as standby counsel.

7         THE DEFENDANT:  I understand.  So there is

8    nothing that I can do, I made a request, but there

9    is nothing that I can do.

10        THE COURT:  That's right, but you could accept

11   Mr. Gates as standby counsel if you want standby

12   counsel.  Do you want standby counsel?

13        THE DEFENDANT:  If it's Ms. Galnor then, yes.

14        THE COURT:  And if it's not Ms. Galnor?

15        THE DEFENDANT:  Then I have no choice.  You've

16   already asked me that question.

17        THE COURT:  I need an answer.  It's not going

18   to be Ms. Galnor, take her out of the equation.

19        Do you want standby counsel, yes or no?

20        THE DEFENDANT:  No.

21        THE COURT:  All right.  I do find based on my

22   conversations with you this morning you are

23   competent to waive counsel, your waiver seems to be

24   knowing and intelligent, in terms of understanding

25   the questions I've asked you, highlighting the

OFFICIAL REPORTERS, INC.

```
1     dangers, the disadvantages and the advantages.  You

2     want to represent yourself, I will let you

3     represent yourself.  You do not want standby

4     counsel if it cannot be Ms. Galnor, so I'm not --

5     can't assign you standby counsel, contrary to your

6     wishes.

7          Your case is set for final pretrial,

8     Mr. Brooks, for February the 4th, that's a week

9     from today, and your case remains on the February

10    11th jury selection date.

11         MS. HIXON:  Your Honor --

12         THE COURT:  Do you understand that?

13         Yes.

14         MS. HIXON:  If possible, could we make

15    February 4th a motion date to be set as well?  I

16    have filed several motions and now will be filing a

17    couple more that we need to have heard before trial

18    next week.

19         THE COURT:  Okay.  So the next motion date --

20         THE DEFENDANT:  What exactly are the motions?

21         THE COURT:  I'm sorry?

22         THE DEFENDANT:  What exactly are these

23    motions?

24         THE COURT:  What are the motions?

25         MS. HIXON:  I filed two Williams Rule motions
```

OFFICIAL REPORTERS, INC.

```
 1    and now I'll be filling motions in limine, and I

 2    will mail them to the defendant at the jail once I

 3    complete them.  The motions in -- the Williams Rule

 4    were previously provided to Ms. Galnor.  If he did

 5    not receive them, I will again send them.

 6              THE COURT:  Okay.

 7              THE DEFENDANT:  Who was the Williams rule for?

 8              THE COURT:  The State has filed two motions

 9    for Williams Rule?

10              MS. HIXON:  Yes, Your Honor.

11              THE COURT:  Okay.  Two motions for Williams

12    Rule and provided those to Ms. Galnor.

13              Have you seen those or are you familiar with

14    those?

15              THE DEFENDANT:  As I stated, she has given me

16    no information.  I have nothing on my case.

17              THE COURT:  Okay.

18              MS. HIXON:  Well, I'll mail new ones, Your

19    Honor.

20              THE COURT:  Then Ms. Hixon will make sure that

21    you get those motions.  She's also going to file

22    some motions in limine, those are pretrial motions.

23    You'll get those as well, and we will hear all

24    those motions next week.

25              THE DEFENDANT:  Okay.  Also, I can file my
```

OFFICIAL REPORTERS, INC.

```
 1    motions then also?

 2           THE COURT:  Yes.  If you have any motions, you

 3    need to file those next week.

 4           THE DEFENDANT:  Okay.

 5           THE COURT:  Next week is the deadline to hear

 6    all motions.

 7           THE DEFENDANT:  Okay.

 8           THE COURT:  Because we have to have that

 9    resolved before we head into jury selection on

10    February 11th.

11           THE DEFENDANT:  Okay.

12           THE COURT:  Okay.

13           THE DEFENDANT:  Yes, ma'am.

14           THE COURT:  I'll see you on Monday, February

15    the 4th.

16           MS. HIXON:  Thank you, Judge.

17           May I be excused?

18           THE COURT:  Yes.

19           MS. HIXON:  Thank you.

20           (Whereupon the proceedings were concluded.)

21

22

23

24

25
```

OFFICIAL REPORTERS, INC.

1                    C E R T I F I C A T E

2    STATE OF FLORIDA)

3    COUNTY OF DUVAL )

4         `

5         I, Sharron Ann McLendon, certify that I was

6    authorized to and did stenographically report the

7    foregoing proceedings and that the transcript is a true

8    and complete record of my stenographic notes.

9              DATED this 1st day of January, 2014.

10

11

12

13                          _Sharron A. M'Clau_
                            Sharron A. McLendon
14                          Court Reporter

15

16

17

18

19

20

21

22

23

24

25

OFFICIAL REPORTERS, INC.

1

IN THE CIRCUIT COURT OF THE
FOURTH JUDICIAL CIRCUIT, IN
AND FOR DUVAL COUNTY, FLORIDA

CASE NO.: 16-2012-CF-006884
DIVISION: CR-E/SAD

**STATE OF FLORIDA**

   -vs-

**CLIFTON BROOKS,**

        Defendant.

_____

> **FILED**
>
> JAN 1 0 2014
>
> _Ronnie W. Fussell_
> CLERK CIRCUIT COURT

STATE OF FLORIDA)
COUNTY OF DUVAL )


  **COURT PROCEEDINGS** held before the Honorable

Tatiana Salvador, Circuit Court Judge, in the

above-entitled action, held on February 4th, 2013,

at 9:00 a.m., at the Duval County Courthouse,

501 West Adams Street, Courtroom Number 308, and

taken down stenographically by Ashley Whitehair,

Certified Court Reporter, and Notary Public, in

and for the State of Florida at Large.



-----------------------------

Ashley Whitehair
Official Reporters, Inc.
201 East Adams Street
Jacksonville, Florida 32202
(904) 358-2090


**Official Reporters, Inc.**

ORIGINAL

2

A P P E A R A N C E S

**ANNA HIXON, Esquire**

Assistant State Attorney

Office of the State Attorney
Courthouse Annex
220 East Bay Street
Jacksonville, Florida  32202

*Attorney on behalf of the State of Florida.*

**CLIFTON BROOKS, Pro Se Defendant**

*On behalf of himself.*

**Official Reporters, Inc.**

**3**

<u>I N D E X</u>

Page No.

**COURT PROCEEDINGS**................................5

**CERTIFICATE OF REPORTER**........................20

Official Reporters, Inc.

4

E X H I B I T S

Page No.

### Court

*(None Entered/Admitted.)*

### State

*(None Entered/Admitted.)*

### Defense

*(None Entered/Admitted.)*

Official Reporters, Inc.

5

1 February 4, 2013                              9:52 a.m.

2                    P R O C E E D I N G S

3                         *  *  *  *  *

4          MS. HIXON:  Good morning, Your Honor.

5     May the State call Clifton Brooks, at the

6     bottom of Page 3?

7          THE COURT:  Yes.

8          MS. HIXON:  And, Your Honor, we are

9     here for final pretrial and a hearing on

10     motion to be set.

11          THE COURT:  Okay.

12          MR. SERMONS:  Your Honor, while we are

13     waiting on the defendant, may I approach?

14          THE COURT:  Yes.

15          (Off-the-record sidebar discussion was

16     held between Court and Counsel.)

17          (Defendant enters the courtroom.)

18          THE COURT:  Good morning, Mr. Brooks.

19          THE DEFENDANT:  Good morning, Your

20     Honor.

21          THE COURT:  We're here today just for

22     a hearing on motion to be set, but we're

23     going to schedule it for hearing some time

24     later this week, four motions that have been

25     filed by the State.

**Official Reporters, Inc.**

1          There's two of what are called motions

2     in limine; and two Williams rule notices

3     to be set for hearing later this week.

4          Are there any issues, State, with

5     witnesses that you may or may not be calling

6     for these hearings, or is this just legal

7     argument?

8          MS. HIXON:  It would be legal

9     argument.  There might be the testimony of

10    one witness.  The other Williams rule victim

11    was previously deposed, and I can provide

12    that transcript to Your Honor.

13         And there might be one that I would

14    call.  If I don't call her, then, obviously,

15    I would abandon that Williams rule notice.

16         THE COURT:  Okay.

17         MS. HIXON:  The State would be asking

18    for, if possible, for Friday, just to make

19    sure that we have everything in order.

20         I don't know if the defendant has any

21    motions or not?

22         THE COURT:  Mr. Brooks, do you have

23    any motions that you were planning on filing

24    to be heard this week?

25         THE DEFENDANT:  Yes, I do, ma'am.  I

1    also have an issue that I need to get on

2    judicial notice.

3         THE COURT:  Okay.  What is that, sir?

4         MS. HIXON:  Your Honor, can he be

5    sworn in?

6         THE COURT:  Yes.  Let's let madam

7    clerk swear you in first.

8         THE DEFENDANT:  Okay.

9         THE CLERK:  Raise your right hand for

10   me, please.

11        (Defendant duly sworn by clerk.)

12        THE DEFENDANT:  I do.

13        THE CLERK:  Thank you, sir.

14        THE DEFENDANT:  All right.  Your

15   Honor, I would like to make this a matter of

16   record.  This would be a judicial notice.

17        The Public Defender's Office provided

18   me with Ms. Darcy Galnor, which has violated

19   my attorney-client privilege, instructing

20   the state attorneys to withhold evidence

21   from me, and to provide said information

22   close to trial dates in order to have me

23   waive my rights.  Let the record reflect I

24   am reserving this issue for the appellate

25   review.  Thank you.

**8**

1      THE COURT: If you will clarify for

2   me, because I don't know that I understand

3   what you're saying. I know that you were

4   previously represented by the public

5   defender?

6      THE DEFENDANT: Yes, ma'am.

7      THE COURT: And Ms. Galnor in

8   particular?

9      THE DEFENDANT: Uh-huh (affirmative).

10      THE COURT: And due to a conflict, the

11   PD's Office had to withdraw, and I appointed

12   Mr. Tyler Gates, Regional Conflict Counsel,

13   and while you had no complaints of

14   Mr. Gates, if I recall, we were here back on

15   January 28th, you didn't want him to

16   represent you, you wanted to represent

17   yourself; is that sill the case?

18      THE DEFENDANT: Yes, ma'am.

19      THE COURT: And you had wanted backup

20   counsel, but you specifically wanted

21   Ms. Galnor as your backup; is that right?

22      THE DEFENDANT: Right.

23      THE COURT: And you recall me telling

24   you I couldn't even do that because of the

25   conflict that the PD's Office has, she can't

**Official Reporters, Inc.**

**PAGE # 0436 OF 0500**

1    be your backup counsel.  You understood

2    that?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  And I offered to you

5    Mr. Gates as backup counsel, but you didn't

6    want him as backup counsel; is that right?

7              THE DEFENDANT:  Yes, ma'am.

8              THE COURT:  So what are you saying

9    today about Ms. Galnor?  I don't know that I

10   quite understood.

11             THE DEFENDANT:  She violated my

12   attorney-client privilege.

13             THE COURT:  How did she do that?

14             THE DEFENDANT:  I don't know if I'm at

15   liberty to say that much.

16             THE COURT:  I don't want you to say

17   something if it will put your matter at

18   risk, but she doesn't represent you any

19   longer.

20             THE DEFENDANT:  Yes, ma'am.

21             THE COURT:  And even though as you sit

22   here that she violated your attorney-client

23   privilege, you still were requesting her as

24   your backup counsel as of last week; is that

25   right?

**Official Reporters, Inc.**

1        THE DEFENDANT:  Yes, ma'am.

2        THE COURT:  Okay.  So you just wanted

3    to put on the record that she violated your

4    attorney-client privilege?

5        THE DEFENDANT:  Yes, ma'am.

6        THE COURT:  Okay.

7        THE DEFENDANT:  All right.  The motion

8    that I have here today is a discovery

9    sanction motion.  Do I pass them to you?

10       THE COURT:  Yeah.  Do you have a copy

11   for the Court and a copy for the State?  If

12   you want to hand that out, you can hand it

13   to the bailiff, who will make sure we all

14   get our copies.

15       THE DEFENDANT:  All right.  No

16   problem.

17       MS. HIXON:  And, Your Honor, just so

18   the Court's aware, based on whatever filings

19   I get today, I may file additional motions

20   to be heard on Friday.

21       THE COURT:  Understood.

22       THE DEFENDANT:  The first motion is

23   discovery sanctions.  Some information was

24   missing out of my room, and I wanted to make

25   sure that I get that noted.

1          (Tenders instruments.)

2          THE COURT:  I'm sorry?  Motion

3     information that's missing out of your room?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Over at the jail?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  How is that the State to

8     be sanctioned for that?

9          THE DEFENDANT:  Oh, no, just in case

10     anybody comes forward with any other

11     information saying I provided to them.

12          THE COURT:  On, I see.  Let me just

13     review this motion just briefly, since I

14     haven't seen it just before now.

15          THE DEFENDANT:  Okay.

16          (Pause.)

17          THE COURT:  Okay.  So I see what

18     you're saying is that your legal work had

19     been stolen from your room at the Duval

20     County Jail, and should anyone come forward

21     with your legal work, you want them to be

22     charged with theft and/or perjury, for lying

23     under oath about that violation; is that

24     correct?

25          THE DEFENDANT:  Yes, ma'am.

Official Reporters, Inc.

1          THE COURT:  So it's not anything

2     specifically directed at this time to the

3     State Attorney's Office?

4          THE DEFENDANT:  No, Your Honor, just

5     getting it on record.

6          THE COURT:  State, do you have any

7     issue with having this heard this week?

8          MS. HIXON:  No, Your Honor.

9          THE DEFENDANT:  Also, I have a witness

10    that needs to be depositioned [sic], a

11    Ms. Tina Dozier, that was provided by the

12    State's witness during deposition.

13         MS. HIXON:  Your Honor, if I could?

14    My copy only has one person, and then

15    there's nothing else showing up on the

16    bottom portion of it (indicating).

17         THE COURT:  Yeah, mine either.  Do you

18    have a better copy of this "Witnesses to be

19    Depositioned"?

20         THE DEFENDANT:  That's the copy

21    machine at the jail that I have to use.

22         THE COURT:  Do you have -- because I

23    do see faintly there's a 1 through 6.  Is

24    there anything else written on here?

25         THE DEFENDANT:  No, just the one

1    person.

2         THE COURT:  So it's just the one

3    person, Tina Dozier, that you're wishing to

4    depose?

5         THE DEFENDANT:  Yes.

6         THE COURT:  Is this a witness, State,

7    that was listed on your witness list?

8         MS. HIXON:  If I may check, just a

9    moment, Your Honor.

10        THE COURT:  Okay.  And while she's

11   looking for that, Mr. Brooks, I just want,

12   again, for you at any point if you want

13   Mr. Gates to be your backup counsel in this

14   matter, whether today or whether on Friday

15   for the hearings on the motion or at jury

16   selection or at trial, please let me know,

17   and I'll appoint him as backup counsel,

18   should you wish to have that.

19        THE DEFENDANT:  Yes, ma'am.  Thank

20   you.

21        THE COURT:  Would you like him today?

22        THE DEFENDANT:  No, ma'am, that'd be

23   okay.

24        THE COURT:  Would you like him for

25   Friday?

1          THE DEFENDANT:  No, I would not.

2          THE COURT:  Okay.

3          MS. HIXON:  No, she is not listed,

4     Judge.

5          THE COURT:  So who is Ms. Dozier, and

6     where did you get her name and address?

7          THE DEFENDANT:  She's actually one of

8     the State's witnesses who made a comment in

9     depositions towards this individual, and

10    apparently they had some type of

11    altercation, so I wanted to get her deposed

12    as far as for showing some of the -- proving

13    some of the information that I can bring

14    forward.

15         THE COURT:  State, is there any issue

16    with having Ms. Dozier deposed?

17         MS. HIXON:  No, Your Honor.  He would

18    be responsible for subpoenaing her, paying

19    for a court reporter.  He would need to

20    coordinate a time for deposition.

21         So, I mean, unless he paid for the

22    court reporter, they're not going to show

23    up.

24         THE COURT:  Right.

25         THE DEFENDANT:  Also, I have a motion

Official Reporters, Inc.

1    for appointing of a private investigator.

2         THE COURT:  Well, generally speaking,

3    you get a statement of some sort from the

4    JAC, the administrative agency that deals

5    with paying these costs.  Have you submitted

6    your request to them in any way to see if

7    they have any objection to paying these

8    costs?

9         THE DEFENDANT:  No, ma'am.  I will be

10   doing that.

11        THE COURT:  Okay.

12        THE DEFENDANT:  Okay.  And, also, I

13   have an order setting material witness bond,

14   16 in all.  Do I have to get each individual

15   on record, or is it just the bond

16   information for them?

17        THE COURT:  I'm sorry?  What is this

18   for?  I see here order setting material

19   witness bond, a writ of attachment?

20        THE DEFENDANT:  Yes, ma'am.

21        THE COURT:  For Ms. Corey?

22        THE DEFENDANT:  Yes, ma'am.

23        THE COURT:  For Ms. Hurtado?  What is

24   it that you're seeking to do, have them

25   brought in as witnesses in your case?

1        THE DEFENDANT:  Actually, I would like

2    to have them held to trial.

3        THE COURT:  I'm sorry?

4        THE DEFENDANT:  Stand on trial.  Be

5    placed on, I guess, what is that, the bench

6    or whatever.

7        THE COURT:  You mean for them to be

8    witnesses, or for them to be brought to

9    trial?

10        THE DEFENDANT:  Yeah, for them to be

11    witnesses, I guess, on going to trial.

12        MS. HIXON:  Your Honor, he's also done

13    one for me and Ms. Galnor as well.  He's

14    also sent us all notices that he intends to

15    sue all of us.  Ms. Hurtado notarized the

16    charging document.

17        THE COURT:  Okay.  All right.  Well,

18    with that, Mr. Brooks, that would not all

19    happen simultaneously at your trial.

20        THE DEFENDANT:  Okay.

21        THE COURT:  If those are going to be

22    proceedings coming before the Court, they

23    would be separate proceedings.  They don't

24    get jumbled into the trial of the State

25    proving whatever charges that they may have

1    brought against you in a jury trial.

2            THE DEFENDANT:  Okay.

3            THE COURT:  Okay.  It's noted, and you

4    have filed those papers.  I'm not going to

5    grant those right now.

6            THE DEFENDANT:  All right.

7            THE COURT:  And you heard the State

8    say they have their four motions, two

9    motions in limine, and two Williams rule

10   notices, and they're seeking to have those

11   set for hearing this Friday, and that's when

12   I'm intending to schedule that.

13           Do you have any problems with Friday?

14           THE DEFENDANT:  No, I'm incarcerated.

15   I guess, I don't.

16           THE COURT:  Okay.  Well, if you need

17   more time, or if you want to move for backup

18   counsel or anything, that's why I just

19   wanted to make sure.

20           THE DEFENDANT:  Okay.  Am I supposed

21   to be pleading to those Friday, I guess?

22           THE COURT:  No, there's no pleading.

23           THE DEFENDANT:  Oh, no pleading, okay.

24           THE COURT:  The State has motions,

25   they're going to present argument and

1    witnesses, I'm going to rule on them, and

2    you have to be prepared to defend against

3    them, if you don't want them to be granted.

4         THE DEFENDANT:  Oh, yes, ma'am.  I'm

5    ready.  I'm ready.

6         THE COURT:  Okay.  So we're going to

7    schedule it for Friday, which is

8    February 8th, hearing on motion, let's say

9    10:00, because I'm not quite sure what

10   calendar I have that morning.  So we'll do

11   those at 10:00.

12        MS. HIXON:  Yes, Your Honor.

13        THE COURT:  Is there anything else

14   from either the State or Mr. Brooks?

15        THE DEFENDANT:  No, Your Honor.

16        MS. HIXON:  No, Your Honor.

17        THE COURT:  All right.  I will see

18   you-all on Friday.

19        THE DEFENDANT:  All right.

20        MS. HIXON:  Thank you, Judge.

21        That concludes my business.  May I be

22   excused?

23        THE COURT:  Yes.

24        MS. HIXON:  Thank you.

25        THE COURT:  Thank you.

19

1                          *   *   *   *   *

2                 (Whereupon, the proceedings for this

3         defendant, were adjourned at 10:07 a.m.)

4                          -   -   -

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Official Reporters, Inc.

## C E R T I F I C A T E   O F   R E P O R T E R

STATE OF FLORIDA)
COUNTY OF DUVAL )

     I, Ashley Whitehair, Certified Court Reporter, certify that I was authorized to and did personally stenographically report the foregoing proceedings on February 4th, 2013, and that the transcript is a true and complete record of my stenographic notes.

                      _____
                      Ashley Whitehair
                      Certified Court Reporter

1

```
 1                    IN THE CIRCUIT COURT OF THE
                     FOURTH JUDICIAL CIRCUIT, IN
 2                    AND FOR DUVAL COUNTY, FLORIDA.

 3                    CASE NO.: 16-2012-CF-006884

 4                    DIVISION: CR-E

 5   STATE OF FLORIDA

 6       -vs-

 7   CLIFTON BROOKS

 8   ----------------------------------------

     STATE OF FLORIDA    )
 9                       )
     COUNTY OF DUVAL     )
10

11

12        Proceedings held before The Honorable Judge

13   Tatiana Salvador, Circuit Judge, held at the Duval

14   County Courthouse, located at 501 West Adams Street,

15   Courtroom 308, Jacksonville, Florida, on Friday,

16   February 8th, 2013, at 10:15 a.m, before Jane Harrison,

17   Certified Shorthand Reporter and Notary Public in and

18   for the State of Florida at Large.

19

20

21                        -  -  -

22

23

24

25
```

FILED

FEB 10 2014

CLERK CIRCUIT COURT

ORIGINAL

APPEARANCES

1

2

3    ANNA HIXON, Esquire

4    Assistant State Attorney

5    City Hall Annex

     220 E. Bay Street

6    Jacksonville, Florida 322C2

7    Appearing on behalf of

8    the State of Florida.

9    CLIFTON BROOKS, Defendant

10   Pro Se

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

2

1                        I N D E X

2   WITNESS                                        PAGE

3   RENA HARRIS

4   Direct Examination by Ms. Hixon                   7

5   Cross-Examination by Mr. Brooks                  13

6   Certification Page                               40

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              P R O C E E D I N G S

 2    February 8, 2013                    10:15 a.m.

 3                        *  *  *

 4         THE COURT:  We can move forward with

 5    Mr. Brooks.

 6         MS. HIXON:  Clifton Brooks, he's at the top

 7    of Page 2.

 8         (Thereupon, the defendant, Clifton Brooks,

 9  enters the courtroom.)

10         THE COURT:  Good morning, Mr. Brooks.

11         THE DEFENDANT:  Good morning, Your Honor.

12         THE COURT:  We are here today in Case Number

13    2012-CF-6884, for hearings on motions.  We have

14    the State's Williams rule motion, as well as two

15    motions in limine; is that correct?

16         MS. HIXON:  Yes, Your Honor.  There were two

17    Williams rule, one of whom I did provide Your

18    Honor the deposition, the other I have here, live,

19    to give the testimony, since she was not able to

20    be deposed.  And then, yes, two motions.

21         THE COURT:  All right.  Why don't we take up

22    the motions in limine first, unless -- is the

23    witness is here already and ready --

24         MS. HIXON:  She's here, yes, Your Honor.  I

25    mean, I don't have any problem doing the motion in
```

```
 1      limine first.
 2           THE COURT:  Well, let's go ahead and do the
 3      Williams rule.
 4           Are you prepared to proceed, Mr. Brooks?
 5           THE DEFENDANT:  Yes, ma'am.
 6           THE COURT:  And I'll ask you again, as I will
 7      at each stage of the proceeding, if you would like
 8      to have counsel appointed to represent you in this
 9      matter?
10           THE DEFENDANT:  No, ma'am.
11           THE COURT:  Okay.  I'm just checking.  I know
12      you've told me previously that you don't want to,
13      but I want to be sure that you understand that at
14      any moment should you want an attorney, you can
15      have one appointed to represent you.
16           THE DEFENDANT:  Yes, ma'am.  Thank you.
17           THE COURT:  All right.
18           THE DEFENDANT:  I'm all right.
19           MS. HIXON:  Is he sworn in?
20           THE COURT:  Yes, why don't we swear you in as
21      well, Mr. Brooks.
22           THE CLERK:  Raise your right hand.
23           THE DEFENDANT:  (Complying.)
24           THE CLERK:  Do you solemnly swear or affirm
25      that the testimony you shall give shall be the
```

```
 1          truth, the whole truth and nothing but the truth

 2          so help you God?

 3               THE DEFENDANT:  I do.

 4               THE CLERK:  Thank you.

 5               THE DEFENDANT:  All right.

 6               THE COURT:  We're going to proceed with the

 7          two Williams rule motions that the State has

 8          filed, so we're going to start with those first.

 9          Okay?

10               THE DEFENDANT:  All right.

11               THE COURT:  All right.  State.

12               MS. HIXON:  Yes, Your Honor.  I can argue the

13          first one and then give testimony on the second

14          one.  I don't know if Your Honor wishes -- or

15          wishes me to do testimony and --

16               THE COURT:  Let's do testimony and then we'll

17          hear the argument on both.

18               MS. HIXON:  All right.  Your Honor, the State

19          would call

20               THE COURT:                     if you'll come

21          forward and be sworn, please.

22               THE CLERK:  Please raise your right hand,

23          ma'am.

24               THE WITNESS:  (Complying.)

25               THE CLERK:  Do you solemnly swear or affirm
```

```
 1              that the testimony you shall give shall be the

 2              truth, the whole truth and nothing but the truth

 3              so help you God?

 4                      THE WITNESS:  Yes, ma'am.

 5                      THE CLERK:  Thank you, ma'am.

 6                      MS. HIXON:  May I inquire, Your Honor?

 7                      THE COURT:  Yes, go ahead.

 8                           DIRECT EXAMINATION

 9    BY MS. HIXON:

10         Q     Good morning.  Can you state your name and

11    spell it for the record.

12         A

13         Q     Can you make sure you speak into the

14    microphone?

15         A     Uh-huh.

16         Q     Okay.  And,        do you know an individual

17    by the name of Clifton Brooks?

18         A     Yes.

19         Q     And how do you know Clifton Brooks?

20         A     That's my sister's kids father.

21         Q     And who is your sister?

22         A     Shantell Harris.

23         Q     All right.  And how many children do they

24    have together?

25         A     Two.
```

```
 1        Q    All right.  Now, I want to direct your

 2   attention specifically to why you're here today.  Did

 3   you report an incident that happened a while back with

 4   Clifton?

 5        A    When it first happened?

 6        Q    Well, no.  Did you report one at any time?

 7        A    Yes.

 8        Q    And Clifton Brooks that we're talking about,

 9   do you see him here in court today?

10        A    Yes.

11        Q    Can you point him out and identify him for

12   the court reporter?

13        A    Yes.

14        Q    And what's he wearing?

15        A    Green.

16        Q    All right.

17             MS. HIXON:  Your Honor, may the record

18        reflect that the witness has identified the

19        defendant?

20             THE COURT:  Yes, the record will so reflect.

21   BY MS. HIXON:

22        Q    And what did you report happened between you

23   and the defendant?

24        A    One day my mom asked him to take me to the

25   store, and my little sister asked can she ride and he
```

```
 1    told her, no, we'll be right back.  But the way that we

 2    normally go to that particular store, he didn't take me

 3    that way.

 4            So we was riding, and then he -- he put his

 5    hand on the back of the seat and then he moved his hand,

 6    then he put his hand back up there again.  Then he

 7    touched me in my chest area and moved his hand and

 8    placed it on his gun.

 9            So as we riding down to the store, that's when

10    he touched me in my private area.

11       Q    How old were you when this happened?

12       A    Thirteen.

13       Q    And how old are you now?

14       A    Twenty-five.

15       Q    And you said he touched you on your chest

16    area, what specifically did he do?

17       A    He was feeling on my breasts, on top of my

18    clothes.

19       Q    Okay.  And how did that make you feel?

20       A    Uncomfortable.

21       Q    Did you say anything?

22       A    No.

23       Q    Why not?

24       A    Because I was scared.

25       Q    Okay.  And why were you scared?
```

```
 1        A     Because he had a gun.

 2        Q     Okay.   And you said that he touched your

 3  private area?

 4        A     Uh-huh.

 5        Q     Is that your vagina?

 6        A     Yes.

 7        Q     All right.   How did he touch that?

 8        A     Under my clothes.

 9        Q     Under your clothes?

10        A     Uh-huh.

11        Q     How did he do that?

12        A     He put his hand inside of my clothes and was

13  touching me.

14        Q     All right.   Was it over your underwear or

15  under your underwear?

16        A     Under.

17        Q     All right.   And did he touch the outside or

18  the inside?

19        A     The outside.

20        Q     And was he saying anything to you while this

21  was going on?

22        A     He was just like, wow.

23        Q     Did you say anything back to him?

24        A     No.

25        Q     And did you keep going to the store?
```

```
 1      A    Yes.
 2      Q    What, if anything, happened on the way to the
 3  store, anything else?
 4      A    He -- once we was riding, he was like, don't
 5  tell nobody, because he was going to kill my sister and
 6  my nephew.
 7      Q    Did you believe he would do that?
 8      A    Yes.
 9      Q    Why did you believe that?
10      A    Because he said it.
11      Q    Now, I know you said that Clifton -- well,
12  once he said that, did you continue on to the store?
13     .A    Uh-huh.
14      Q    Is that a yes?
15      A    Yes, ma'am.
16      Q    All right.  And did anything happen after
17  that, on the way to the store?
18      A    No.
19      Q    Okay.  What about on the way home from the
20  store?
21      A    I sat in the back coming back from the store,
22  and he asked me why I'm in the back, and I said, I feel
23  more comfortable in the backseat.
24      Q    Okay.  And did he say anything else to you?
25      A    No.
```

PAGE OF 0500

1    Q    Did he ever try to touch you again?

2    A    No.

3    Q    Did you ever make it so that you couldn't be

4    around him?

5    A    I just stayed my distance from him.

6    Q    And when did you finally tell what happened?

7    A    It was one day we was sitting down talking,

8    me and Shantell was sitting down talking, and we was

9    talking about something, then it came up and then I

10   just finally broke down and told her what happened.

11   Q    Okay.  And up until that point did you

12   believe the defendant would carry out his threat if you

13   told?

14   A    Yes.

15   Q    Now, I know you said that the defendant had

16   children with Shantell, was he around your family on a

17   regular basis because of that?

18   A    Yes.

19   Q    Okay.  Because they're no longer together,

20   though, right?

21   A    Right.

22   Q    So up until they were no longer together, was

23   he around your family on a regular basis?

24   A    Yeah.

25   Q    All right.

```
 1              MS. HIXON:  I don't have anything further,
 2         Your Honor.
 3              THE COURT:  Okay.  Mr. Brooks, you're
 4         permitted to cross-examine.
 5                      CROSS-EXAMINATION.
 6    BY THE DEFENDANT:
 7         Q    ███████████     how old were you when this
 8    situation happened?
 9         A    Thirteen.
10         Q    And were you the one who made the initial
11    phone call to the police officers about this situation?
12         A    No.
13         Q    Who made that initial call?
14              MS. HIXON:  Objection; relevance.
15              THE COURT:  Okay.  Mr. Brooks, this is
16         limited to the issue of Williams rule evidence.
17              THE DEFENDANT:  Okay.
18              THE COURT:  At trial, if ████████ is called
19         to trial, you may cross-examine her on other
20         matters, but this is limited to this instance and
21         whether or not the Court will make a finding that
22         that is admissible for the jury to hear.
23              THE DEFENDANT:  Okay.
24              THE COURT:  I'm going to sustain that
25         objection.
```

14

1    BY THE DEFENDANT:

2       Q    So exactly what year, can I ask that -- what

3    year did that happen?

4       A    I don't remember the year.

5       Q    But you were 13 at the time?

6       A    Yes.  I remember the incident like it was

7    yesterday.

8       Q    Okay.  But you were 13 at the time?

9       A    Yes.

10      Q    Okay.

11           THE DEFENDANT:  I rest, Your Honor, I guess.

12           THE COURT:  Okay.  You have no further

13   questions?

14           THE DEFENDANT:  No, ma'am.

15           THE COURT:  Okay.  Ms. Hixon, anything

16   further?

17           MS. HIXON:  No, Your Honor.

18           THE COURT:  Okay.  May this witness be

19   excused?

20           MS. HIXON:  Yes, Your Honor.

21           THE COURT:  All right.  Thank you, Ms.

22   Harris, you may be excused.

23           MS. HIXON:  And all the other testimony was

24   presented via deposition, Your Honor.

25           THE COURT:  Correct.  I received the

```
 1          deposition of                      and Shantell
 2      Harris.  This is                 correct?
 3              MS. HIXON:  Yes, Your Honor.
 4              THE COURT:  And I have reviewed that
 5      deposition.
 6              MS. HIXON:  There was also
 7              THE COURT:  That's correct,
 8
 9          All right.  Are there any other witnesses?
10              MS. HIXON:  No, Your Honor.
11              THE COURT:  All right.  Then let's hear
12      argument on the Williams rule.  State.
13              MS. HIXON:  Yes, Your Honor.  The State would
14      argue that under the Williams rule statute, under
15      90.404, there is -- the statute goes on to talk
16      about how an incident of sexual molestation and
17      other incidences of sexual molestation can be
18      admissible.  And, obviously, there is the normal
19      balancing test and gate-keeping tests that Your
20      Honor needs to perform.  However, when you start
21      getting down into when they're in a familial
22      context, then there is a more relaxed standard,
23      and what is actually a familial context has sort
24      of changed throughout the years.
25          One of the main cases from the Supreme Court
```

```
1         of Florida is McLean versus State, which is found

2         at 934 So.2d 1248, and I do have a copy for Your

3         Honor and the defendant.

4              THE COURT:  Okay.

5              MS. HIXON:  And that goes on to sort of --

6         and this goes on to talk about it and sort of do

7         an analysis of these things, and it points back to

8         Rawls, which also points back to Coleman, which

9         starts talking about the fact that a familial

10        relationship or a familial context for purposes of

11        these things -- it's even gone back to a sexual

12        battery by a person in familial or custodial

13        authority, doesn't necessarily mean someone who's

14        related by blood or affinity.

15             McLean, in particular, talks about -- and,

16        obviously, going into this, the State understands

17        we do not make these the feature of the trial and

18        we would never have any intention of doing so,

19        but, Your Honor, the State has the burden of

20        proving that these acts happened by clear and

21        convincing evidence.  And I would submit to you

22        that          testimony, as well as the

23        deposition testimony of              , clearly

24        shows these that incidents happened.  The

25        defendant, in both of those -- the defendant in
```

1 ████████ was her uncle, her -- his brother

2 was her father.   In ██████ case,

3 her -- █ mother was best friends with the

4 defendant and she saw him on a regular basis.   And

5 for ████████, her sister had children with the

6 defendant, who then interacted with the family.

7 So this is not something -- while not

8 necessarily, except for ████████, blood, these

9 are all in a familial context, but -- in a

10 familial context.

11 And, in fact, McLean goes on to state, We

12 recognize that in cases involving sexual abuse

13 against children, the child victim is typically

14 the sole eye witness and corroborative evidence is

15 scant, so credibility becomes the focal issue.

16 Further, because the victim knows the perpetrator,

17 who is often another family member or close family

18 friend, identity is not an issue.

19 So at this point, Your Honor, given the

20 descriptions given by ████████, as well as

21 Shantell as to what she saw happened to

22 McLauren, which given -- especially the fact that

23 ██████ was of such a young age when Ms. Harris

24 saw some of those things occur to her, when you

25 take that, combined with ██████ and

 1            ████████████    testimony, it develops of pattern of
 2       conduct by the defendant that shows that he is
 3       someone who is in the familial context, picking
 4       convenient victims.
 5            Your Honor -- but there is that relaxed
 6       standard extended to the familial cases that
 7       should be extended in this case as well.  Your
 8       Honor, I -- they all describe --  ████████   describes
 9       now she was in her room and she felt rubbing on
10       her butt;  ████████████████   describes that she was
11       in her room.  All of these situations in which
12       they are away from other people this happens.  The
13       defendant took  ████████████   into a location where
14       she would not be with anyone else and began doing
15       these things.
16            I can tell the Court, you know,  ████████████
17       testified that he threatened her family; Ms.
18       ████████████ , in her deposition, testified that he
19       .threatened her.  And when Ms. Shantell Harris
20       witnessed and confronted him about what happened
21       when  ████████████   was eight years,  ████████████
22       was then on the receiving end of a domestic
23       battery.
24            So at this point, Your Honor, I think there
25       is sufficient similarities between these familial

```
 1        acts done by the defendant that they should be
 2        allowed, obviously with the proper warning
 3        instruction to the jury, as well as jury
 4        instruction, that they should be allowed to
 5        testify and the jury should hear that.
 6             THE COURT:  Okay.  Mr. Brooks, argument.
 7             THE DEFENDANT:  Yes, ma'am.  There is
 8        actually no proof that any of this alleged
 9        incidents, except for one person, that particular
10        one she just called, and that's Ms. Shantell
11        Harris.
12             At this time I have a motion to dismiss this
13        information.  I was made aware of this new
14        amendment of charges on January 28th, 2013, at my
15        Faretta hearing.  I never waived my rights to a
16        speedy trial, which ended on January 2nd, 2013.
17        It has exceeded my 175 days.  I have a motion to
18        dismiss the information, and I cite Piesal
19        (phonetic) vs. State.
20             THE COURT:  Okay.  We'll hear your motion in
21        a minute.  I haven't seen your motion, and right
22        now we're arguing the State's motion.
23             THE DEFENDANT:  Okay.
24             THE COURT:  So we're going to take things in
25        order.  Okay?
```

```
 1            THE DEFENDANT:  Okay.

 2            THE COURT:  The State, as you know, because

 3       you were served with a Williams rule notice, is

 4       seeking to introduce at your trial next week   we

 5       have jury selection on Monday -- this evidence of

 6       other wrongs, crimes or acts that are allegedly

 7       committed by you, that you heard the argument here

 8       today against --            who just testified,

 9                      and                  They've

10       made the argument as to why I should permit the

11       evidence of those three instances against those

12       three girls then at your trial next week.

13            I'm giving you the opportunity now to make

14       argument as to why I should not permit those

15       instances or allegations of other wrongs committed

16       by you at your trial next week.  So do you have

17       argument as to that?

18            THE DEFENDANT:  I'm sorry.  You know, I'm not

19       familiar and I really don't know how to argue in

20       the first place, but --

21            THE COURT:  Well, that's why I offered you an

22       attorney.

23            THE DEFENDANT:  Yes, ma'am, that's

24       understandable.

25            THE COURT:  Again, as I previously advised,
```

```
 1      you can -- if at trial next week you're convicted,
 2      you're not going to be able to make the argument
 3      of ineffective assistance of counsel because it's
 4      been your choice, freely, willingly and
 5      voluntarily made, that you want to represent
 6      yourself.  Is that still the case?
 7           THE DEFENDANT:  Yes, ma'am.
 8           THE COURT:  Okay.  Go ahead and make argument
 9      on the Williams rule.
10           THE DEFENDANT:  Like I said, I don't know how
11      to argue, but I'm not going to try to argue.  I
12      will accept these individuals taking the stand and
13      I will defend myself then.
14           THE COURT:  So you agree and consent that
15      they can testify?
16           THE DEFENDANT:  Yes, ma'am.  Let them get on
17      the stand.
18           THE COURT:  Okay.  Well, regardless of your
19      consent -- I will accept that stipulation, but I
20      am, nonetheless, still going to weigh the evidence
21      and see whether or not the relevancy is outweighed
22      by any unfair prejudice to you, as I'm required to
23      do --
24           THE DEFENDANT:  Okay.
25           THE COURT:  -- and be the gatekeeper that is
```

22

1    required, to determine whether or not these

2    collateral acts have been proven by a clear and

3    convincing evidence that is required.

4            I am going to find, based on my review of the

5    deposition and of listening to █████████,

6    testimony today, that it has been proven by clear

7    and convincing evidence that these acts, indeed,

8    occurred and that it is to be used only to show at

9    trial, not the highlight of the trial, but to show

10   proof of motive, opportunity, intent, plan,

11   knowledge or absence of mistake, and that this

12   evidence is not substantially outweighed by the

13   danger of unfair prejudice.

14           So I am going to permit the Williams rule

15   evidence to come in and I will give the

16   appropriate instruction at the time of the

17   testimony and, of course, at the end of the trial.

18   I will introduce, or rather, I will prepare a more

19   detailed written order to the effect, but I am

20   going to grant the State's motion for Williams

21   rule.

22           THE DEFENDANT: Okay.

23           THE COURT: Okay.

24           MS. HIXON: Thank you, Your Honor. We will

25   include the appropriate instruction in the jury

```
 1          instructions as well.

 2               THE COURT:  Okay.  Very good.

 3          All right.  We have also -- the State has

 4          also filed, Mr. Brooks, you should have received

 5          two, what are called, motions in limine.  These

 6          are some pretrial motions to address what may or

 7          may not be introduced at your trial next week.

 8          One is State's first motion in limine, citing --

 9          do you have that one?  Do you see it?

10               THE DEFENDANT:  Yes, ma'am, I do.

11               THE COURT:  Okay.

12               MS. HIXON:  Yes, Your Honor.  There is --

13          specifically, they're both rape shield and there's

14          also a provision in the lewd statute under 800.04

15          that specifically prohibit any mention of a

16          victim's prior sexual activity with anyone other

17          than the defendant.  So at this point we would

18          just put on record that, you know, pursuant to

19          those statutes, the defendant is precluded from

20          asking any of the victims or witnesses about the

21          victim's prior sexual history.

22               THE COURT:  Do you understand that,

23          Mr. Brooks?  The law prevents you -- and I'm going

24          to grant the motion because it is pursuant to the

25          case law and Florida statute, when we have a trial
```

```
 1         such as this, where you have victims -- alleged
 2         victims of a sexual offense, you, or any defendant
 3         in your position, are prohibited from asking them
 4         about any prior sexual activity that they may have
 5         had.  Do you understand that?
 6              THE DEFENDANT:  That's one I've got a
 7         question on.  I mean, if I can ask a question?
 8              THE COURT:  Yes, what question do you have?
 9              THE DEFENDANT:  If the evidence I have was
10         authenticated by a State witness during deposition
11         do I get to use it?
12              THE COURT:  I'm sorry?
13              THE DEFENDANT:  If it was authenticated by
14         the State's witness during deposition, the
15         questions at depositions, do I still get to use
16         it?
17              THE COURT:  And I'm not sure if I understand,
18         what do you mean authenticated?  Do you mean if
19         someone in deposition talked about their prior
20         sexual activity, do you get to ask them about
21         that?
22              THE DEFENDANT:  Yes.
23              THE COURT:  No, you don't.
24              THE DEFENDANT:  Wow, that's crazy.
25              THE COURT:  I want you to understand
```

```
 1          something, just because something is said in a
 2          deposition doesn't mean it's admissible in a
 3          trial.  A deposition has a much broader range of
 4          things that you can ask someone about --
 5               THE DEFENDANT:  Okay.
 6               THE COURT:  -- that may not be admissible in
 7          trial because it might violate the rules of
 8          hearsay or it may be inadmissible for some other
 9          reason.
10               THE DEFENDANT:  All right.
11               THE COURT:  So that's why the State has
12          moved, especially since you're representing
13          yourself, for you know and understand, they have
14          filed this motion to make sure that you understand
15          that you cannot get into their prior sexual
16          activity, because that's prohibited under the law.
17          Do you understand that?
18               THE DEFENDANT:  Yes, ma'am.
19               THE COURT:  Okay.  So I'm going to grant
20          their first motion in limine.
21               THE DEFENDANT:  All right.
22               THE COURT:  They have also filed a second
23          motion in limine.  Do you have that, Mr. Brooks?
24               THE DEFENDANT:  Yes, ma'am, I believe I do.
25               THE COURT:  Okay.  And that was a
```

26

1   five-paragraph motion, it cites to different

2   cases, you see there Haliburton and Overton and

3   others?

4          THE DEFENDANT:  Uh-huh.

5          THE COURT:  Okay.  State, go ahead.

6          MS. HIXON:  Yes, Your Honor.  As to the first

7   paragraph, the State would argue that the

8   defendant cannot argue to the jury the possible

9   penalty he would receive.  In fact, it's in 3.390

10  under the jury instructions, the Judge shall not

11  instruct the jury on a sentence that may be

12  imposed, and, in fact, Your Honor repeatedly

13  instructs the jury that they are the finder of

14  fact and you are the one that determines what the

15  sentence, if appropriate, once they make that

16  determination.  So it would be improper for the

17  defendant to argue any penalty he's facing to the

18  jury as an excuse for why they should find him not

19  guilty.

20         THE COURT:  Okay.  And let's take these one

21  by one.

22         MS. HIXON:  Yes, Your Honor.

23         THE COURT:  Do you have any argument to the

24  contrary as to that?  That is, indeed, the law,

25  Mr. Brooks.

```
 1              THE DEFENDANT:  Yes, ma'am.  I wouldn't
 2       provide that information anyways.
 3              THE COURT:  You can't tell the jury, look, if
 4       I'm convicted, I'm looking at X number of years.
 5       That is no concern of theirs.  I'm the one who
 6       does the sentencing.  They simply determine
 7       whether you're guilty or not guilty.
 8              THE DEFENDANT:  Yes, ma'am.
 9              THE COURT:  Do you understand?
10              THE DEFENDANT:  Yes, ma'am.
11              THE COURT:  As to Paragraph 1 then, that's
12       granted.
13              Paragraph 2 is Haliburton.
14              MS. NIXON:  Yes, Your Honor.  That would be
15       the -- Haliburton is basically that the defendant
16       cannot comment on the State's failure to call
17       witnesses that are equally available to both
18       sides.  And that's as to the defense -- I mean,
19       the State can also not comment on witnesses that
20       the defense didn't call because they are equally
21       available to both sides, if listed by the defense.
22              THE COURT:  All right, Mr. Brooks.  This is
23       also a standard motion.  Do you understand what
24       the State has just stated?
25              THE DEFENDANT:  Not really.
```

```
 1              THE COURT:  Okay.  Let me explain this -- in
 2      a trial -- you have presumably gotten a list of
 3      all of the State's witnesses in discovery; is that
 4      correct?
 5              THE DEFENDANT:  Yes, ma'am.
 6              THE COURT:  The State --
 7              THE DEFENDANT:  Well, I can't say that,
 8      because information has been withheld from me, so
 9      I don't really know exactly all of the witnesses
10      they have.
11              THE COURT:  Have you gotten their discovery
12      where they've listed all the Category A witnesses
13      and whatnot?
14              THE DEFENDANT:  I believe I may have, yeah.
15              THE COURT:  Okay.  Well, what you're
16      prevented from doing, and the State is also
17      prohibited from doing, is you can't come into
18      court at trial and say -- if the State, let's say,
19      puts on five witnesses and they didn't put on all
20      the witnesses that they listed because they didn't
21      feel that was necessarily important, you can't
22      come in and say, well, where is witness John Doe,
23      why aren't they here, as to comment -- and John
24      Doe could have easily just -- have easily been
25      subpoenaed by you.  You can't come in and say
```

```
 1      that.

 2            Likewise, the State can't come in and say,

 3      well, Mr. Brooks, didn't call so and so as a

 4      witness, why not, if the witness was equally

        available to the State.  Neither side is permitted
 5
 6      to do that; do you understand that?

 7            THE DEFENDANT:  Okay.

 8            THE COURT:  And that's what they're moving

 9      for in the second paragraph of the motion, which

10      I'm going to grant.

11            THE DEFENDANT:  Okay.  And does that apply my

12      witnesses also?

13            THE COURT:  That does.

14            THE DEFENDANT:  Okay.  Now, how do I know if

15      I even have witnesses that was deposed?  Because,

16      like I said, I didn't receive any information from

17      the public defender.

18            THE COURT:  It's not deposed, it's if you

19      choose to subpoena them to come in to testify next

20      week for your trial.  Your trial is next week.

21            THE DEFENDANT:  Yeah, I know that.

22            THE COURT:  Okay.

23            THE DEFENDANT:  I'm saying some information

24      was provided to the Public Defender's Office a

25      while back and I never was given any response as
```

```
 1        to whether or not they had actually contacted the
 2        people.
 3              THE COURT:  Well, they con't represent you
 4        now.
 5              THE DEFENDANT:  Yeah, but it was when they
 6        were representing me --
 7              THE COURT:  Okay.
 8              THE DEFENDANT:  -- this information was
 9        provided.
10              THE COURT:  Okay.
11              THE DEFENDANT:  If there's any way I can find
12        out -- like I said, I didn't get any information
13        so I don't know who could have been contacted and
14        who wasn't.
15              THE COURT:  Well --
16              MS. HIXON:  Your Honor, I can tell the Court
17        as of today I've received no defense witness list
18        from anybody, not the defendant, or the public
19        defender when they were representing him.
20              THE COURT:  Okay.  So you understand that
21        they've gotten no defense witness list, so you
22        don't have any witnesses that you have listed that
23        you wish to call at trial?  If you have a witness
24        today that you believe you'd like to call at
25        trial, you have to let the State know what
```

```
1       witnesses you're going to present.  You've got to
2       disclose your witnesses to the State or else you
3       can't call witnesses, just like they have to
4       disclose them to you.
5            THE DEFENDANT:  So by me submitting the
6       information to the Public Defender's Office and
7       them not providing that to the State, it's
8       actually a -- it's a mark against me for that?
9            THE COURT:  Well, if you've got witnesses, I
10      would suggest getting them to Ms. Hixon.
11           THE DEFENDANT:  Okay.  I guess I can mail
12      them to her.
13           THE COURT:  I'll give you time to sit down
14      and write down their names and give them to her
15      today if you've got any witnesses that you're
16      going to call for trial next week.
17           THE DEFENDANT:  Okay.
18           THE COURT:  But let's move on here and then
19      we'll get back to that point if that's an issue.
20           THE DEFENDANT:  All right.
21           THE COURT:  Paragraph 3, there shall be no
22      reference to any self-serving statements of the
23      defendant.  And that's based on a case called
24      Overton versus State, which is also a standard
25      request in these motions in limine.  Do you
```

```
 1        understand that?

 2              THE DEFENDANT:  Yes, ma'am, I understand

 3        that.

 4              THE COURT:  And do you have any problem with

 5        me granting that?

 6              THE DEFENDANT:  No, not at all.

 7              THE COURT:  All right.  Then, I'm going to

 8        grant Paragraph 3 as well.

 9              THE DEFENDANT:  Okay.

10              THE COURT:  Paragraph 4, State.

11              MS. HIXON:  That there should be no testimony

12        regarding the general moral character of the

13        victim or witnesses.  And, essentially, what that

14        goes to is, it's not moral character, it's if he

15        has someone who's going to testify as to their

16        reputation in the community for truth.  Obviously,

17        if he has evidence that they've been previously

18        convicted of a felony or a crime of dishonesty, he

19        can ask that question, but unless he has some sort

20        of evidence of that, he can't ask that question.

21              THE COURT:  Okay.  Do you understand that?

22              THE DEFENDANT:  Yes, ma'am.

23              THE COURT:  I'm going to grant that as well.

24        And the last one, Paragraph 5.

25              MS. HIXON:  I think it kind of goes to the
```

```
 1      same thing, there will be no reputation testimony
 2      as to the truth and voracity of a witness unless
 3      it's relevant to the time of the testimony or the
 4      time the offense was allegedly committed.  So,
 5      obviously, it kind of goes hand in hand with
 6      Number 4.
 7              THE COURT:  Okay.  Mr. Brooks.
 8              THE DEFENDANT:  Yes, ma'am.
 9              THE COURT:  What's your position on Paragraph
10      5?
11              THE DEFENDANT:  That's fine.
12              THE COURT:  Okay.  Then I'm going to grant
13      that as well.
14              So State's motion in limine Number 1 and all
15      parts of Number 2 are granted.  So do you
16      understand those prohibitions for purposes of
17      trial next week, Mr. Brooks?
18              THE DEFENDANT:  Yes, ma'am.
19              THE COURT:  Okay.  Are there any other
20      motions pending by the State?
21              MS. HIXON:  No, Your Honor.  The State would
22      just orally move that the defendant be precluded
23      from arguing to the jury, I con't normally
24      represent myself, like what he's been doing here
25      today, playing on the sympathy of the jury.  It's
```

```
1        whether or not the defendant committed the crime,

2        not whether they feel sympathy for him simply

3        because he has chosen to represent himself.

4                THE COURT:  Okay.  Do you understand that,

5        Mr. Brooks?

6                THE DEFENDANT:  Well, would I have any

7        control over that?

8                THE COURT:  You sure do.  I gave you three

9        options and you chose to represent yourself, so

10       that's --

11               THE DEFENDANT:  No, I'm saying, as far as how

12       the jury would feel about that.

13               THE COURT:  No, but one of the rules that I'm

14       going to tell the jury is that sympathy and

15       emotions play no part in their deliberation --

16               THE DEFENDANT:  Okay.

17               THE COURT:  -- and they have to only base

18       their decision on the facts that come from that

19       witness stand or from any documents or items moved

20       into evidence or from the law that I tell them.

21               THE DEFENDANT:  Yes, ma'am.

22               THE COURT:  Not playing on their sympathy,

23       not playing on their emotions.  And this isn't

24       directed to you, the State can't do that either.

25               THE DEFENDANT:  Okay.
```

```
 1              THE COURT:  And I'll hold the State to that
 2        same standard as I'm going to hold you to, so I
 3        want you to understand, you can't get up here and
 4        play the, poor me, I'm representing myself, I
 5        don't know how to do this, I don't know how to
 6        argue, because this was a decision you made.  You
 7        chose freely, willingly and voluntarily to
 8        represent yourself; do you understand?
 9              THE DEFENDANT:  Yes, ma'am, but I didn't plan
10        to.
11              THE COURT:  Well, again, if you want to have
12        an attorney --
13              THE DEFENDANT:  To play the sympathy card, I
14        don't plan to play the sympathy card.
15              THE COURT:  Okay.  But, you know, I offered
16        you, not only counsel, but backup counsel, should
17        you want it, and you have declined every time I've
18        offered; is that right?
19              THE DEFENDANT:  Yes, ma'am.
20              THE COURT:  And you still don't want backup
21        counsel for trial next week?
22              THE DEFENDANT:  No, I do not.
23              THE COURT:  All right.
24              THE DEFENDANT:  All right.
25              THE COURT:  So, State, any other motion --
```

```
1          I'm going to grant that oral motion.
2               MS. HIXON:  Yes, Your Honor.
3               THE COURT:  Any other motions, written or
4          oral?
5               MS. HIXON:  Not that I have right now, no,
6          Your Honor.
7               THE COURT:  All right.  Mr. Brooks, you
8          talked about a motion that you filed, but I don't
9          have it.  Do you have a copy for me to look at?
10              THE DEFENDANT:  Yes, ma'am, I do.
11              THE COURT:  And I think we handled a series
12         of motions this past Monday that you had.
13              MS. HIXON:  Yes, Your Honor.  There was the
14         one that he had said that his legal papers were
15         stolen.
16              THE DEFENDANT:  Yes, unfortunately, the copy
17         is --
18              THE COURT:  I apologize, but I can't read
19         this, the copy did not do well.  Do you have the
20         original that I can look at and I'll return it to
21         you?
22              This is a motion to dismiss the information.
23              THE DEFENDANT:  Yes, ma'am, as far as the
24         amended and new charges that the State is trying
25         to bring forth.
```

```
 1              MS. HIXON:  And, Your Honor, for the record,
 2        I've not amended the information.
 3              THE COURT:  All right.  No, your charge
 4        remains the three counts with which you were
 5        charged.  That is, sexual battery with the
 6        defendant 18 or older and the victim less than 12;
 7        one count of lewd and lascivious molestation with
 8        the victim under 12.
 9              THE DEFENDANT:  Okay.
10              THE COURT:  One count of lewd and lascivious
11        exhibition with the victim under 16.
12              I think what you are, perhaps, mistaken is
13        the Williams rule.  You're not being charged with
14        that, but it's going be produced -- presented to
15        the jury as evidence of other crimes and wrongs
16        that you've allegedly done in an effort to prove
17        these.
18              THE DEFENDANT:  All right.  Okay.
19              THE COURT:  It's not that there are
20        additional charges with which you're now being
21        charged; do you understand?
22              THE DEFENDANT:  Yes, ma'am.  I was just
23        making sure.
24              THE COURT:  Okay.  I just want to be sure.
25        So this motion to dismiss was under the belief
```

```
 1       that your information had been amended?

 2              THE DEFENDANT:  Yes, ma'am.

 3              THE COURT:  Okay.  And it hasn't been

 4       amended, so I'm going to deny this as moot.

 5              THE DEFENDANT:  Okay.

 6              THE COURT:  Okay.  But I'm going to return it

 7       to you.

 8              THE DEFENDANT:  All right.  I appreciate it.

 9              MS. HIXON:  And, Your Honor, for the record,

10       speedy trial was waived back in December by Ms.

11       Galnor.

12              THE COURT:  Okay.

13              THE DEFENDANT:  And, for the record, I did

14       not authorize her to do that.

15              THE COURT:  Okay.  Well, presuming that even

16       if it -- let's say today he was filing his request

17       for a speedy trial, we're trying it on Monday.

18              THE DEFENDANT:  Okay.

19              THE COURT:  Okay?

20              THE DEFENDANT:  Yes, ma'am.

21              THE COURT:  Are there any other motions that

22       you have pending or outstanding, Mr. Brooks?

23              THE DEFENDANT:  No, ma'am, that's pretty much

24       it.

25              THE COURT:  All right.  Then, I will see
```

1          everyone back here Monday, February the 11th for

2          jury selection.

3               MS. HIXON:  Thank you, Judge.

4               (Thereupon, the proceedings were concluded at

5      10:50 a.m.)

6                              *  *  *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3    STATE OF FLORIDA    )

 4    COUNTY OF DUVAL     )

 5
           I, Jane Harrison, Certified Shorthand Reporter,
 6    certify that I was authorized to and did
      stenographically report the foregoing proceedings held
 7    before The Honorable Tatiana Salvador, Circuit Judge,
      and that the transcript is a true record of the
 8    proceedings held.

 9
           I further certify that I am not attorney or
10    counsel of any of the parties, nor am I a relative or
      employee of any attorney or counsel of party connected
11    with the action, nor am I financially interested in the
      action.
12
           The foregoing certification of this transcript
13    does not apply to any reproduction of the same by any
      means unless under the direct control and/or direction
14    of the certifying reporter.

15         IN WITNESS WHEREOF, I have hereunto set my hand
      this 10th day of February 2014.
16

17

18

19                              _____
                                JANE HARRISON, CSR
20

21

22

23

24

25
```

```
 1                    IN THE CIRCUIT COURT OF THE
                      FOURTH JUDICIAL CIRCUIT, IN
 2                    AND FOR DUVAL COUNTY, FLORIDA

 3                    CASE NO.:  16-2012-CF-6884-AXXX-MA

 4                    DIVISION:  CR-E

 5

 6   STATE OF FLORIDA

 7          -vs-

 8   CLIFTON MCNEIL BROOKS,

 9          Defendant.

10  _____

11   STATE OF FLORIDA )

12   COUNTY OF DUVAL  )

13

14        TESTIMONY AND PROCEEDINGS taken before the

15   Honorable TATIANA SALVADOR, Judge of the Circuit Court,

16   Division CR-E, in the Duval County Courthouse,

17   Jacksonville, Florida, on Wednesday, February 27, 2013,

18   at 10:07 a.m., and as reported by Colleen S. David, a

19   Notary Public in and for the State of Florida at Large

20   and Court Reporter.

21

22

23                      OFFICIAL REPORTERS, INC.
24                      201 EAST ADAMS STREET
                        JACKSONVILLE, FL 32202
25                       (904) 358-2090
```

FILED

JAN 06 2014

CLERK CIRCUIT COURT

```
 1  APPEARANCES:

 2          ANNA E. HIXON, Esquire,
                Assistant State Attorney, appearing on
 3              behalf of the State of Florida.

 4          CLIFTON MCNEIL BROOKS, pro se,
                appearing on behalf of the himself.

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

PAGE # 0491 OF 0500

```
 1
 2                           I N D E X
 3
                                                    PAGE
 4    WITNESS:

 5    DONNA GRAYDEN

 6    DIRECT EXAMINATION BY MS. HIXON           7

 7    SHONTELL HARRIS   .

 8    DIRECT EXAMINATION BY MS. HIXON           8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1           P R O C E E D I N G S

2   February 27, 2013                    10:07 a.m.

3            MS. HIXON:  Your Honor, may the State call

4   Clifton Brooks, at the bottom of page 1.

5            THE COURT:  Now?

6            MS. HIXON:  I have a lot of people here.

7            THE COURT:  Oh, okay.

8                         * * *

9                                      10:08 a.m.

10           THE COURT:  Okay.  We're here calling the case

11   of Clifton Brooks 16-2012-CF-6884, we're here for

12   sentencing following a jury trial that was held on

13   February the 13th, 2013.

14       Mr. Brooks is present.  Good morning,

     Mr. Brooks.  And Ms. Hixon for the State.
15
16           MS. HIXON:  Yes, Your Honor.

17           THE COURT:  Before we begin, I've just been

18   handed a motion to supplement the record that was

19   filed February 14th, the day after trial, by

20   Mr. Brooks.  Have you received that, Ms. Hixon?

21           MS. HIXON:  No, Your Honor, I have not.

22           THE COURT:  All right. Let me review this and

23   see exactly what it is.  It looks like the

24   defendant is seeking to supplement the record with

25   one document titled inmate law firm.

```
 1              THE DEFENDANT:  Oh, that's wrong.

 2         THE COURT:  I'm sorry?

 3         THE DEFENDANT:  Yes, ma'am, that's wrong.

 4         THE COURT:  Is that wrong?

 5         THE DEFENDANT:  Yes, ma'am.

 6         THE COURT:  You don't wish to supplement the

 7    record with this?  I haven't reviewed it, I don't

 8    know what it is.

 9         THE DEFENDANT:  Yeah.  I had sent some

10    information here, that's all.

11         THE COURT:  You sent what information?

12         THE DEFENDANT:  I sent that information in,

13    but it was for something else.

14         THE COURT:  So, it is not for this case?

15         THE DEFENDANT:  I was just going to add it to

16    my case actually, but it's not really referring to

17    the case itself.

18         THE COURT:  Okay.  I'm just trying to

19    understand.  Do you want to supplement the record

20    in this case, 2012-CF-6884, with this document or

21    not?

22         THE DEFENDANT:  Yes, ma'am, I will.  But it's

23    not really pertaining to the case itself.

24         THE COURT:  Well, let me review it real quick

25    to see if I can grant the motion.  Because if it's
```

1    not pertaining to the case, I may not grant the

2    motion.

3              THE DEFENDANT:  All right.

4              MS. HIXON:  Your Honor, I haven't seen that.

5              THE COURT:  Do you have one that you can print

6    out and provide to the State, Madam Clerk?

7              THE CLERK:  I can, Your Honor.  It's 26 pages.

8              THE COURT:  Okay.  I know Ms. Hixon you

9    probably have not had an opportunity to review this

10   document yet.  I have flipped through it and read

11   it, and Mr. Brooks, you're right, it has nothing to

12   do with this case.  It is basically an instruction

13   manual for other inmates in the jail on what

14   motions to file and what to do.  And more

15   significantly it contains inappropriate language,

16   offensive language, obscenities, curse words, and

17   other things, in addition to drawings and pictures.

18   So, I find that it is not relevant, it is not

19   related to this case, I'm going to deny the motion

20   and not allow you to supplement the record with

21   this document.  So, your motion is denied,

22   Mr. Brooks.

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  Are the parties ready to proceed

25   to sentencing?

1          MS. HIXON:  Yes, Your Honor.

2          THE DEFENDANT:  Yes, ma'am.

3          THE COURT:  Okay.

4          MS. HIXON:  And Your Honor, I do know Count 1

5     does carry a mandatory life sentence, but there are

6     two individuals that wanted to address Your Honor

7     before you impose sentence.

8          THE COURT:  Okay.

9          MS. HIXON:  First we have Ms. Donna Grayden

10    (phonetic), and Your Honor, Ms. Grayden is the

11    victim's mother.

12                    DONNA GRAYDEN,

13  having been produced and first duly sworn as a witness

14  on behalf of the State, testified as follows:

15                  DIRECT EXAMINATION

16  BY MS. HIXON:

17     Q    And could you state your name for the record?

18     A    Donna Grayden.

19     Q    And Ms. Grayden, what would you like Judge

20  Salvador to know?

21     A    Judge Salvador, I just came to say thank you

22  to you for not allowing the shenanigans and

23  foolishness, for staying affirmative and true to the

24  victims.  I also wanted to say thank you to Ms. Anna

25  and everybody in the State Attorney's Office for being

1   there for my daughter and the other victims in this
2   case.  As well as to say thank you to the victims that
3   I knew and did not know for coming forward to say what
4   type of character this defendant has.  And furthermore,
5   I wanted to say thank God for the mandatory sentence,
6   because to quote the commercial, we can spend $25,000
7   for a car, $250,000 for a home, however, a child's
8   innocence and chastity is priceless.  And with this
9   defendant being locked up the rest of his life, we
10  don't have to worry about nobody else going through the
11  turmoil in which my child did.  Thank you.
12              THE COURT:  Thank you, ma'am.
13              MS. HIXON:  And Your Honor, the State also has
14          Shontell Harris (phonetic).
15              THE COURT:  Okay.
16                      SHONTELL HARRIS,
17  having been produced and first duly sworn as a witness
18  on behalf of the State, testified as follows:
19                  DIRECT EXAMINATION
20  BY MS. HIXON:
21      Q    And could you state your name for the record?
22      A    Shontell Harris.
23      Q    And Ms. Harris, what would you like Judge
24  Salvador to know?
25      A    I want you to know that I thank you and

1  everybody else that had a part in this.  I want the
2  defendant to know that we have two small children, I
3  teach to love and not to hate.  I want him to know that
4  we forgive him, although the victims has been betrayed
5  as well as misled, and now that eight years has passed,
6  February 13, 2005, February 13, 2013, a chapter of my
7  life has closed.  Thank you.

8            THE COURT:  Thank you, Ms. Harris.
9            THE WITNESS:  Thank you.
10           THE COURT:  Any other witnesses or testimony
11       or evidence the State wishes to put on?
12           MS. HIXON:  No, Your Honor.  Just argument.
13           THE COURT:  Okay.  Mr. Brooks, do you have any
14       witnesses, evidence, or testimony you wish to put
15       on?
16           THE DEFENDANT:  No, ma'am, I'm good.
17           THE COURT:  Okay.  We'll proceed to argument,
18       State.
19           MS. HIXON:  Your Honor, the defendant was
20       found guilty at a jury trial of Count 1, capital
21       sexual battery, which carries a mandatory life
22       sentence; and Count 2, lewd or lascivious
23       molestation of a child under 12, which carries
24       pursuant to statute a sentence of no less than 25
25       years in prison, followed by the balance of

```
 1     probation up to life.

 2          Your Honor, given the evidence at trial, as

 3     well as the jury's findings, the State would ask

 4     that in imposing the mandatory life on Count 1,

 5     that you also impose a life sentence concurrent on

 6     Count 2.

 7          THE COURT:  Okay.  Thank you.  Mr. Brooks,

 8     argument on your sentencing?

 9          THE DEFENDANT:  No, ma'am.  You know, I'm not

10     an arguer, so that's not necessary.

11          THE COURT:  Well, I don't mean literally

12     argument.  But is there anything you'd like to say

13     or address to the Court prior to imposing sentence?

14          THE DEFENDANT:  No, ma'am.  I'm good.

15          THE COURT:  Okay.  Well, Mr. Brooks, on

16     February 13, 2013, the jury found you guilty of

17     Count 1, which was capital sexual battery; Count 2,

18     lewd or lascivious on a child under 12; as you

19     recall, the Court granted a JOA on Count 3 that was

20     pending, so you're only being sentenced on Counts 1

21     and 2.

22          Having found you guilty, I'm going to

23     adjudicate you guilty of Count 1 and Count 2, I'm

24     going to sentence you in Count 1 to the mandatory

25     life in prison that Count 1 calls for, and I'm
```

```
 1      going to sentence you in Count 2 to life in prison.
 2           And of course, Mr. Brooks, you have the right
   3    to appeal these sentences, if the sentences that
 4      I've imposed are illegal.  But you must do so
   5    within 30 days.  If you cannot afford one, an
 6      attorney can be appointed for you for that purpose,
 7      do you understand that, sir?
 8           THE DEFENDANT:  Yes, ma'am, I do.
 9           THE COURT:  Is there anything else State or
10      defense?
11           MS. HIXON:  No, Your Honor.
12           THE DEFENDANT:  No, ma'am.
13           THE COURT:  All right.  That concludes your
14      case today, Mr. Brooks.
15           THE DEFENDANT:  All right.  Thank you.
16           THE COURT:  All right.  He will be given
17      credit for the 230 days he has served.  Those are
18      all concurrent, by the way.
19           (Proceedings concluded at 10:20 a.m.)
20                          - - -
21
22
23
24
25
```

12

```
 1                 C E R T I F I C A T E

 2

 3    STATE OF FLORIDA )

 4    COUNTY OF DUVAL  )

 5

 6         I, Colleen S. David, Court Reporter, certify

 7    that I was authorized to and did stenographically

 8    report the foregoing proceedings and that the

 9    transcript is a true and complete record of my

10    stenographic notes.

11         DATED this 10th day of January , 2014.

12

13

14

15                    _____
                      COLLEEN S. DAVID
16

17

18

19

20

21

22

23

24

25
```

## CERTIFICATE OF CLERK

**STATE OF Florida,**
**COUNTY OF DUVAL**

**16-2012-CF-006884-AXXX-MA**
**1D13-1073**

**I, RONNIE FUSSELL, Clerk of the Circuit and County Courts for the County of Duval, State of Florida, do hereby certify that the foregoing pages 01 to 500 inclusive contain a correct transcript of the record of the judgment in the case of STATE OF FLORIDA vs. CLIFTON MCNEIL BROOKS and a true and correct recital and copy of all such papers and proceedings in said cause as appears from records and files of my office and that have been directed to be included in said record by the directions furnished to me.**

**VOLUME 1 PAGES 001-201               VOLUME 2 PAGES 202-398**
**VOLUME 3 PAGES 399-500**

**Inclusive embrace the transcribed notes of the reporter as made at the trial and certified by him to me.**

**VOLUME 4 PAGES 001-200               VOLUME 5 PAGES 201-240**
**In Witness Whereof, I have set my hand and affixed the Seal of said Court this 11th day of February, A.D. 2014.**

RONNIE FUSSELL,
CLERK OF THE CIRCUIT AND
COUNTY COURTS OF DUVAL
COUNTY

BY **ADANNA M RUSSELL**
    **Deputy Clerk**

**501 West Adams St. Room 1262**
**Jacksonville, FL 32202**
**(904) 255-2206**
**Email:Adanna.Russell@duvalclerk.com**

