IN THE UNTIED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CLIFTON MCNEIL BROOKS,

      Petitioner.

v.

MARK S. INCH, Secretary of the
Florida Department of Corrections
(FDC).

      Respondent.

CASE NO.  3:19-cv-787-MMH-MCR

## FDC'S EXHIBIT 19

### RECORD VOL 4 - JURY TRIAL

### DIRECT APPEAL - 1D13-1073

213·1·19833

# IN THE
# 1st District Court of Appeal
## TALLAHASSEE, FLORIDA

CASE NO.                16-2012-CF-006884-AXXX-MA
                        DIVISION CR-E

APPEAL NO.              1D13-1073

# NOT FOR PUBLIC DISCLOSURE

CLIFTON MCNEIL BROOKS        Appellant____,          RONNIE FUSSELL,
       VS                                               CLERK
                                                   OF THE CIRCUIT AND
STATE OF FLORIDA            Appellee____,            COUNTY COURTS

## RECORD ON APPEAL

### VOLUME 4 OF 5

Appeal from the Circuit Court

Duval County, Florida



BEFORE THE HONORABLE JUDGE TATIANA SALVADOR



PUBLIC DEFENDER              2·17·14 CH              ATTORNEY GENERAL
FOR APPELLANT              Florida Attorney          FOR APPELLEE
                             General

# NOT FOR PUBLIC DISCLOSURE

1
2

IN THE CIRCUIT COURT, OF THE
FOURTH JUDICIAL CIRCUIT, IN
AND FOR DUVAL COUNTY, FLORIDA

3
4

CASE NO.:  2012-CF-6884-AXXX-MA
DIVISION:  CR-E

5  STATE OF FLORIDA,

6       vs.

7  CLIFTON McNEIL BROOKS,

8            Defendant.

9  _____

10

11            TRIAL PROCEEDINGS

12            taken on

13       Wednesday, February 13, 2013,

14  before the Honorable Tatiana Salvador, Judge of the

15  Circuit Court, in the Duval County Courthouse,

16  Jacksonville, Florida, as reported by Cindy M. Griffis,

17  Registered Professional Reporter.

18

19            VOLUME I

20

21

22

23       OFFICIAL REPORTERS, INC.
         201 EAST ADAMS STREET
24       Jacksonville, FL  32202
         (904) 358-2090
25            - - -

FILED
FEB 10 2014
CLERK CIRCUIT COURT

```
 1   APPEARANCES:

 2

 3   ANNA EILEEN HIXON, ESQUIRE, and

 4   SANDRA ROSENDALE, ESQUIRE,

 5        Assistant State Attorneys,

 6        appearing on behalf of the State.

 7

 8   CLIFTON McNEIL BROOKS, pro se.

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25              -  -  -
```

```
 1                        I-N-D-E-X

 2   PROCEEDINGS:                                        PAGE:
```

```
 3   FEBRUARY 13, 2013 (WEDNESDAY)....................    4
     PRELIMINARY MATTERS AND MOTIONS IN LIMINE.........    6
 4   JURY SWORN........................................   57
     PRELIMINARY INSTRUCTIONS TO THE JURY..............   57
 5   OPENING STATEMENT BY MS. HIXON....................   69
     OPENING STATEMENT BY MR. BROOKS...................   71

 6
     STATE WITNESSES:
 7   ██████████████████
             Direct Examination by Ms. Rosendale..........   73
 8
     SHANTELL NECOLE HARRIS
 9           Direct Examination by Ms. Hixon..............   85
             Cross-Examination by Mr. Brooks..............   89
10           Redirect Examination by Ms. Hixon............  112

11   AFTERNOON SESSION.................................  117

12   M. J. COLLINS
             Direct Examination by Ms. Rosendale..........  119
13           Cross-Examination by Mr. Brooks..............  126

14   ████████████████████
             Direct Examination by Ms. Hixon..............  149
15           Cross-Examination by Mr. Brooks..............  154

16   STATE RESTED......................................  174
     DISCUSSION WITH DEFENDANT REGARDING TESTIFYING....  174
17   ACQUITTAL GRANTED AS TO COUNT 3...................  186
     CHARGE CONFERENCE.................................  187
18   DEFENSE RESTED....................................  199
     CLOSING ARGUMENT BY MS. ROSENDALE.................  200
19
     CONTINUED TO VOLUME II............................  200

20
                          -  -  -

21
                      E-X-H-I-B-I-T-S

22
     DEFENDANT'S EXHIBIT NO. 1 (DRAWING OF HOUSE)......   93
23   DEFENDANT'S EXHIBIT NO. 2 (CERTIFICATE OF TITLE)..  146
```

```
24

25                        -  -  -
```

1          **P-R-O-C-E-E-D-I-N-G-S**

2    **February 13, 2013                            Wednesday**

3                         **- - -**

4          **THE COURT:  Let's go on the record and let's**

11:35AM    5    **bring out Mr. Brooks.**

6          **All right.  Mr. Brooks is entering the**

7    **courtroom.  He is present, as are the attorneys for**

8    **the State.**

9          **Mr. Brooks, if you will have a seat at counsel**

11:35AM   10    **table.  We're still waiting for one of the jurors,**

11    **but we can handle any housekeeping or preliminary**

12    **matters before we get started.**

13          **MR. BROOKS:  Yes, ma'am.**

14          **THE COURT:  Ah, I just wanted to, once again,**

11:35AM   15    **put on the record and advise you that I see you are**

16    **still in the jail garb from the Duval County Jail.**

17    **Um, I wanted to make sure that that was your**

18    **decision to dress in that fashion and that you**

19    **don't want to dress in civilian clothes.  Is that**

11:35AM   20    **correct?**

21          **MR. BROOKS:  Yes, ma'am.**

22          **THE COURT:  Okay.  Have you changed your mind**

23    **from Monday?  Are you still wanting to go forward**

24    **with trial dressed in the jail uniform?**

AM   25          **MR. BROOKS:  Yes, ma'am, I'm fine.**

 1          THE COURT:  Okay.  Also, if you don't mind, if

 2     you can pull the microphone a little closer to you

 3     so that we can all hear?

 4          MR. BROOKS:  Actually, I can't because it's

 5     wrapped around the --

 6          THE COURT:  Okay.  Well, then, if you'll just

 7     speak up a little, the court reporter needs to take

 8     down everything that you're saying.

 9          All right.  Is the equipment adjusted, then?

11:35AM  10          MR. BROOKS:  That much.

11          THE COURT:  Okay.  Let me, once again, Mr.

12     Brooks, ah, since we're getting ready to begin your

13     trial, offer you the assistance of counsel, should

14     you want it, or backup counsel.  I know that the

11:35AM  15     three or four prior occasions you've been before me

16     I have offered you the right to have an attorney

17     represent you.  As you know, that is your right if

18     you can't afford one, but you also have the right

19     to represent yourself, and I know previously you

11:35AM  20     stated that's what you want to do, but, once again,

21     this morning offering, should you want to have an

22     attorney represent or backup counsel.

23          MR. BROOKS:  Um, as I stated before, ma'am, if

24     Ms. Darcy Galnor is not going to be my counsel,

25     then I guess I have to proceed by myself.

1        THE COURT:  Okay.  You have stated that many

2    times, and I think that I've responded to you

3    numerous times that the Office of the Public

4    Defender has a conflict and can't represent you.

11:35AM   5    Do you understand that?

6        MR. BROOKS:  Yes, ma'am.

7        THE COURT:  And she can't even be your backup

8    counsel.  Do you want another backup counsel, Mr.

9    Tyler Gates, who had been previously appointed to

11:35AM  10    represent you?

11        MR. BROOKS:  Uh, no, ma'am.

12        THE COURT:  Okay.  All right.  Just to

13    refresh, remind everyone, there has been several

14    pretrial motions that have been filed, motions in

11:35AM  15    limine filed by the State, as well as motions that

16    you filed, Mr. Brooks, and the Court's rulings on

17    that still stand.  So everyone needs to abide by

18    those rulings and orders.

19        Mainly, Mr. Brooks, I know that on Monday

11:35AM  20    during jury selection one of the motions in limine

21    that I had granted, that being the State's request

22    that you not tell the jury -- or try to elicit

23    empathy or sympathy from the jury because you are

24    representing yourself, that's your choice that you

 AM  25    decided to do, to not repeatedly mention, I'm not a

1     lawyer, I'm representing myself.  You understand

2     that I've ruled that you can't say that?

3           MR. BROOKS:  Okay.

4           THE COURT:  Okay.  I just want to be sure you

11:35AM  5     remember that ruling, because we're getting ready

6     to start a trial, and if you say that the State's

7     going to object and I'm going to object and I'm

8     going to sustain that again.

9           MR. BROOKS:  Yes, ma'am.  I'll make sure I

11:35AM  10    won't.

11           THE COURT:  Okay.  Any housekeeping matters

12     that need to take place before we bring the jury

13     in?

14           MS. HIXON:  No, Your Honor.

11:35AM  15           THE COURT:  Mr. Brooks?

16           MR. BROOKS:  Yes, I do have (indiscernible).

17           THE COURT:  Okay.  What is that?

18           THE COURT REPORTER:  Can you ask him to stand

19     up?

11:35AM  20           MR. BROOKS:  Mr. Brooks, if I could ask you

21     when you speak, if you don't mind standing up, the

22     court reporter can't really see you very well and

23     can't hear you.  You're speaking very quietly, so

24     if you wouldn't mind standing up to speak.

25           MR. BROOKS:  All right.  Sorry about that.

1          THE COURT:  Can you tell me what the issue is

2     this morning?

3          MR. BROOKS:  Yes, ma'am, I'm working on

4     getting (indiscernible).

11:35AM  5          THE COURT:  You know, Mr. Brooks, you can take

6     all your papers from your Manila envelope and

7     spread them out.  You've got that whole table just

8     to yourself, so it can make things easier to find

9     as we progress along the trial.

11:35AM  10          MR. BROOKS:  Yes, ma'am, I will.

11          THE COURT:  Okay.

12          MR. BROOKS:  Okay.  The first question I have

13     is, or issue is, I was looking in the practice and

14     procedure books as far as filing my exhibits with

11:35AM  15     the Court.  Is that fine, or do you wish another

16     way?

17          THE COURT:  Well, typically what happens is

18     any items that you're planning on introducing as

19     evidence in trial, first of all, you need to have

11:35AM  20     shown and exchanged with each other prior to today.

21     If you've not previously disclosed any items to the

22     State, you may not be permitted to use them at

23     trial today, but we don't know what they are.  So,

24     do you have any items of evidence that you're

25     seeking to introduce at trial today?

1           MR. BROOKS:  Yes, I do.  Also, this

2    information was provided to the Public Defenders,

3    and it was also written to provide information to

4    the State Attorney's Office while they were

11:35AM    5    representing me.

6           THE COURT:  Well, what are the items?  Can you

7    tell us right now?  What are the items, so we can

8    see if the State has a problem with it or not.

9           MR. BROOKS:  All right.  I have my -- let's

11:35AM   10    see -- each one?

11           THE COURT:  Yeah, let's go through each item

12    that you're planning to introduce.  If you've

13    not -- to see if you previously provided it to the

14    State, to see if there's any objection to it, if

11:35AM   15    there's not, then you'll be permitted to introduce

16    it as evidence in your trial.

17           MR. BROOKS:  My Operation Enduring Freedom

18    orders -- Operation Enduring Freedom orders.

19           THE COURT:  Okay.  And what would be the

11:35AM   20    purpose --

21           First of all, State, have you been provided

22    Mr. Brooks Operation -- what did you call it --

23    Enduring Freedom Orders?

24           MR. BROOKS:  Yes, ma'am.

25           MS. HIXON:  I have seen a piece of paper, I

1       haven't seen any orders.  Um, I don't -- there's no

2       basis for authentication of it or anything.

3       There's been no witness disclosed to authenticate

4       that it is, in fact, what he says it is, so the

11:35AM   5       State would object, one, for a discovery violation,

6       and, two, for lack of authentication.

7               THE COURT:  Okay.

8               MR. BROOKS:  Actually, can I have the State

9       Attorney sworn in before I continue with my list of

11:35AM   10      items?

11              THE COURT:  No, because what she says, what

12      Ms. Rosendale says, and even what you say, as you

13      represent yourself an attorney, is not evidence, so

14      it is not required that the attorneys, or you, as

11:35AM   15      an attorney, be sworn in.

16              MR. BROOKS:  Well, I know that the State has

17      been provided my information, though.

18              THE COURT:  Well, let me ask you this, though:

19      What relevance does your Operation Enduring Orders

11:35AM   20      have to this charge in this case?

21              MR. BROOKS:  It goes to the credibility of the

22      witnesses.

23              THE COURT:  And whose order is it, the

24      Operation Enduring Order?  Is it your order?

25              MR. BROOKS:  It's my order.  Yes, ma'am.

1           THE COURT:  Then how does that affect the

2      credibility of the witnesses that may be called?

3           MR. BROOKS:  Because it actually affects the

4      timeframe that has been changed that I spoke about

11:35AM    5      when we had the last hearing we had.

6           THE COURT:  The Williams Rule hearing?

7           MR. BROOKS:  Yes.  And I was given the amended

8      form where the dates have been changed.  It

9      actually coincides with those dates.

11:35AM   10           THE COURT:  Are you saying that you were out

11      of this country in Operation Enduring Freedom

12      during the dates that are being alleged here?

13           MR. BROOKS:  The original dates, not the

14      amended, but the original dates.

11:35AM   15           THE COURT:  Okay.  Do you understand that you

16      are not on trial for the original dates, you are on

17      trial for the amended dates?  That original

18      Information is not what the jury is going to hear

19      and is not what you're being tried on today.  It's

11:35AM   20      this amended Information that has the dates of

21      January 3rd, 2003, through January 2, 2005, has the

22      dates of January 3, 2004, through January 2, 2005,

23      in Count 2.  Now, on Count 3, it has the dates of

24      January 3, 2006, through January 2, 2008.  Does

25      that order apply to these three dates?

1          MR. BROOKS:  And that's why I asked you last

2     time when I was here to get my cellmate records to

3     the initial count form, and you said yes.

4          THE COURT:  I don't recall that I said yes,

11:35AM   5     but --

6          MR. BROOKS:  Yes, ma'am, you did, because I

7     asked.

8          THE COURT:  Well, sir, the Information you're

9     being tried on is the amended one.  This is what's

11:35AM  10     relevant, the facts as alleged in here, the dates

11     as alleged in here, not in two Informations ago,

12     because the State, as I understand it, filed that

13     Information, amended it once, and has amended it

14     twice.  This is the Information we're going on.  If

11:35AM  15     that order doesn't reflect the dates or have any

16     relevance to these dates, then that would not have

17     any impact on your case.

18          MR. BROOKS:  Okay.  And then the --

19          THE COURT:  Not to mention to which apparently

11:35AM  20     -- I don't know if you understood what the State

21     said, is that you can't just move a document into

22     evidence, you have to have a witness or a

23     stipulation by the State that that document is

24     authentic.  They have to be able to say this is a

11:35AM  25     true and correct document, it is -- you know, or if

 1    it's a photocopy, it's a true and accurate

 2    photocopy of the original document.  Somebody has

 3    got to be able to authenticate it.

 4         MR. BROOKS:  Okay.  If it has been

 5    authenticated through the clerk of courts, is that

 6    fine?

 7         THE COURT:  I don't know how the clerk of

 8    court would authenticate that document because they

 9    don't produce or issue that document.

10         MR. BROOKS:  Yes, but if my paperwork and all

11    the evidence that I have here is already on file

12    with the clerk of courts --

13         THE COURT:  It's not on file.  They don't keep

14    those items on -- the only thing they have on file

15    are pleadings, and then at trial whatever evidence

16    is moved in, not -- the discovery exchange between

17    the parties, the documents themselves, are not on

18    file with the Clerk's Office.  People don't file

19    the documents with the clerk.

20         MR. BROOKS:  Well, I don't know, mine are

21    filed.  I don't know how it works here, but it's

22    filed.

23         THE COURT:  No, sir, they're not.

24         MS. HIXON:  Your Honor, for the record, what

25    we were provided with is something that's not on

1       letterhead, has handwriting on it, um, and at no

2       point would we stipulate to its authenticity.

3              THE COURT:  Do you have the actual document

4       you want to move into evidence?

11:35AM   5      MR. BROOKS:  Yes, it's the same copy she has.

6              THE COURT:  That's the document that she has

7       in her hand?

8              MR. BROOKS:  Yes, it's just a copy.  I have

9       the original, but it's just a copy I sent to the

11:35AM  10      clerk, I mean.

11             THE COURT:  Well, sir, unless you have a

12      witness to authenticate it, the State is not

13      stipulating and that wouldn't be admissible in this

14      trial.

11:35AM  15     MR. BROOKS:  So I would have to have a witness

16      to authenticate it?  If I have a witness on my -- I

17      sent everything to supplement the record.

18             THE COURT:  Who -- who produces -- who issues

19      those orders?  The military, I assume, the

11:35AM  20     government?

21             MR. BROOKS:  Yes, that's who it was, yes.

22             THE COURT:  Okay.

23             MR. BROOKS:  So I have to have a military

24      officer?

AM  25        THE COURT:  Do you have somebody who has

1    knowledge of that order to be able to come into

2    court and say this is a true and accurate order.

3    And whose handwriting is on the document?

4         MR. BROOKS:  The handwriting is just some

11:35AM   5    points that I was going to make reference to,

6    that's all, it's marked.  Everything else is pretty

7    much typed.

8         THE COURT:  Unless you can lay the proper

9    predicate to get an item of evidence, exhibit into

11:35AM   10    evidence, I can't allow you to move it into

11    evidence.

12         MR. BROOKS:  Okay.  So if one of the witnesses

13    make reference to it on the stand, doesn't that

14    move it into predicate?

11:35AM   15         THE COURT:  It doesn't, no, but I don't know

16    which of the State witnesses would refer to your

17    Enduring Freedom orders.

18         MR. BROOKS:  They all already have on

19    depositions.

11:35AM   20         THE COURT:  That doesn't mean that they will

21    today.  I guess we'll have to wait and see what the

22    witnesses say regarding that, if anything.

23         MR. BROOKS:  So if it entered, then I may be

24    able to use it?

25         THE COURT:  Not necessarily, no, sir.  They

1        can't authenticate a document either.  Did any of

2        the State witnesses produce that and can they say

3        that's a fair and accurate and truthful authentic

4        order from the U. S. Government?

11:35AM    5        MR. BROOKS:  Actually, it states on the

6        paper -- I don't see where -- it doesn't state that

7        it is.  I don't understand how it's written here

8        that it's from a certain battalion and it's

9        authenticated, it even says, "Original."

11:35AM   10        THE COURT:  I understand that, but that is not

11        -- again, that's why I asked if you wanted an

12        attorney all those many times before.  A document

13        in and of itself -- there are certain exceptions,

14        but you have to be able to authenticate the

11:35AM   15        document to move it into evidence.  That's all I

16        can tell you.  We'll see what, if any, witnesses

17        you have, or what, if any, witnesses the State has

18        and whether or not that can be authenticated.

19        MR. BROOKS:  All right.  The next one would be

11:35AM   20        a hand drawn -- a hand drawn diagram of a

21        residence.  Is that fine, since, um, they are

22        saying that these incidents happened in an alleged

23        residence?

24        THE COURT:  All right.  And who hand drew the

25        diagram?

1      MR. BROOKS:  I did.

2      THE COURT:  And you are planning to use them?

3  Obviously, you have the right to remain silent, but

4  you also have the right to testify, should you

5  choose.  I can't rule on that right now, because I

6  don't know if you're going to testify or not.  If

7  you testify and you want to produce or talk about

8  that diagram that you have drawn, then we'll

9  address it at that point, but if you are not going

10  to testify, I don't see how that diagram would be

11  able to come in.

12      MR. BROOKS:  Well, there were certain

13  references made in the deposition as far as for

14  room placement and the, um, situations in rooms and

15  stuff, so I would have to be able to show that

16  these individuals are correct in where they are

17  placing these incidents that happened.

18      THE COURT:  Absolutely, you can cross-examine

19  them about where instances occurred, but if you are

20  intending to move in a hand drawn diagram that you

21  drew, unless those witnesses can say, This is an

22  accurate rendition of the house, I agree with the

23  diagram as you have drawn it, I can't rule on that

24  right now whether that's going to come in or not,

25  because I don't know what the testimony is going to

1    be.

2            MR. BROOKS:  But --

3            THE COURT:  Perhaps the State will have them

4    draw a diagram of the house, I don't know, and you

11:35AM   5    are free to cross-examine them on those diagrams.

6            Has the State been provided with the hand

7    drawn diagram that the defendant produced?

8            MS. HIXON:  I have been provided with several

9    hand drawn diagrams, none of which are of an

11:35AM  10    apartment.  I have one that have roads on them.

11    Um, I have -- actually, I have a total of three,

12    that none of which are of an apartment, they are

13    different locations which have things like, "Gas

14    station, ice cream store, Edgewood Post."  And then

11:35AM  15    there's one that's, "Jammes, San Juan and Lane

16    with, "convenience store, check cashing, fire

17    department, car wash."

18            THE COURT:  And who drew those, do you know?

19            MS. HIXON:  I do not who drew those.

11:35AM  20            MR. BROOKS:  Actually, um, it was these --

21    this information was sent in on February the 16th,

22    2013.

23            THE COURT:  February 16th?

24            MR. BROOKS:  Yes, ma'am.

25            THE COURT:  2013?

1    MR. BROOKS:  Yes.

2    THE COURT:  We haven't gotten there yet.

3 Today is only February 13th.

4    MR. BROOKS:  Oh, I'm sorry, I'm sorry,

11:35AM    5 January.  I'm sorry, January.

6    THE COURT:  All right.  January 16th?  And

7 sent in by whom and to whom?

8    MR. BROOKS:  Um, sent to the Clerk of Courts.

9    THE COURT:  You sent in a diagram to the Clerk

11:35AM   10 of Courts?

11    MR. BROOKS:  Yes, ma'am.

12    THE COURT:  Okay.  Well, let me ask you this,

13 can you please show the State the diagram that you

14 are intending to move in and let them look at it

11:35AM   15 first?

16    MS. HIXON:  I see this hand drawn diagram.  I

17 don't know if any of the witnesses will be able to

18 authenticate it.  There is no label as to what it

19 is supposed to be a diagram of.  I see it's

11:35AM   20 obviously a residence, but obviously someone would

21 have to authenticate it before the State would make

22 any -- otherwise, as now, we would object, but,

23 obviously, if they authenticate it.

24    THE COURT:  Well, and as I said Mr. Brooks,

.  AM   25 we'll see how the testimony comes out and what the

1    witnesses are going to say.  You can clearly

2    cross-examine the witnesses on the location of the

3    alleged occurrences, and if you show them that

4    diagram and they say, Yes, that's a correct

11:35AM  5    rendition of the house -- I don't know whose house

6    it is or whose apartment it is, but if they say

7    that's a correct rendition and they mark on it and

8    you wish to move that into evidence, we'll see at

9    that time if that's appropriately done and if the

11:35AM  10   proper predicate has been laid.  I can't rule on it

11   right now, because I don't know what the facts and

12   the testimony are going to be.

13          MR. BROOKS:  Okay.  No problem.

14          THE COURT:  All right.  What's the next item?

11:35AM  15          MR. BROOKS:  I have a police incident report

16   filed December 5th, 2004.

17          THE COURT:  Okay, I'm sure the State has that

18   report.  Correct?

19          MS. HIXON:  Um, I received a portion of it.

11:35AM  20   It was attached to I believe stuff about Shantell

21   Harris, and the State would object.  It has no

22   relevance.  In fact, it's prior bad conduct and it

23   would violate the motion in limine as to improper,

24   um -- I'm trying to find --

11:35AM  25          THE COURT:  Prior bad conduct on the part of

1 **Ms. Harris?**

2   **MS. HIXON:  Prior bad conduct on part of Ms.**

3 **Harris as well as the defendant, because the State**

4 **has instructed its witnesses very clearly not to**

5 **discuss prior bad acts by the defendant other than**

6 **what we are here to discuss today.  However, this**

7 **2004 incident, where she says that she was at his**

8 **residence, um, she saw the defendant and another**

9 **female outside of the residence hugging and**

10 **kissing, she grabbed a firearm off the dresser and**

11 **went outside, um, then he saw the firearm and took**

12 **it away from her.  These are all improper character**

13 **evidence against Ms. Harris, all of -- and prior --**

14 **improper prior bad conduct of the defendant to be**

15 **introduced.**

16   **THE COURT:  All right.  Mr. Brooks, what do**

17 **you say to that?**

18   **MR. BROOKS:  Actually that's incorrect.  It's**

19 **all bad evidence against Ms. Harris.  Um, Ms.**

20 **Harris stated that she called the police in 2004**

21 **because of Ms. ▮▮▮▮▮▮s incident, which is**

22 **incorrect.  This actually shows that she called the**

23 **police because of this incident after she attacked**

24 **me with my weapon, and there's no instances in this**

25 **report about Ms. ▮▮▮▮▮▮▮▮▮▮ situation at**

11:35AM (lines 5, 10, 15, 20)
AM (line 25)

1    all.

2         THE COURT:  Okay.

3         MR. BROOKS:  And it's on deposition, she's

4    actually saying that this incident where she calls

11:35AM  5    -- it's the only incident in 2004 where the police

6    was called.  She said in deposition she called

7    because of the ███████████ incident that they

8    have now changed the date on to make fit with this,

9    and it has no reference to ██████████ at all

11:35AM  10    besides with the information that I told them was

11    that they were at my house at that time, but they

12    were not there at the time, they was actually at

13    their sister's house for the weekend.  So the only

14    reason there is this document is because I told the

11:35AM  15    police officer that.

16         THE COURT:  All right.  I'm going to reserve

17    on that one, because I don't know if it's going to

18    be established that in 2004 that was the one and

19    only time she called the police.

11:35AM  20         MR. BROOKS:  Yes, that's it, ma'am.

21         THE COURT:  But let me say this:  You can --

22    you can question the witnesses in an effort to

23    impeach them.  I don't know if I will allow the

24    report to actually be moved into evidence, because,

25    first and foremost, it contains hearsay, so it is

full of hearsay.  I don't see an exception to the

hearsay rule where that applies.  So, the item

itself may not get moved into evidence, but you may

be able to cross-examine and impeach her, if that

11:35AM    is the case, with reference to how often or when

she called the police in 2004.  But I will defer on

that.  I will have to wait and hear what the

evidence is that come out in the course of the

trial.

11:35AM        MR. BROOKS:  Okay.  Next would be, um, I guess

my the Supreme Court writ of criteria and

self-defense laws, which is --

THE COURT:  I'm not sure what that is.  What

document is that?

11:35AM        MR. BROOKS:  This is what actually went along

with the police report, because the State has

already said that Ms. Harris grabbed a firearm off

of my dresser, and, um --

THE COURT:  Okay.  Well, listen.  This trial

11:35AM    today has nothing to do with the firearm incident

between you and Ms. Harris back in 2004.

MR. BROOKS:  It actually does when the, um,

witnesses are making references to it.

THE COURT:  Well, I have to wait and see if

AM    they're going to make references to it.  If they're

1       making no references to this incident, I'm not

2       going to let you confuse the jury and bring in

3       matters that have nothing to do with the three

4       charges which have been charged against you.  And,

11:35AM 5   quite frankly, it probably would not be to your

6       benefit to advise the jury of another prior bad act

7       that has no relation or no relevance to this thing.

8            MR. BROOKS:  But It wasn't a bad act on my

9       part, ma'am.

11:35AM 10           THE COURT:  All right.

11           MR. BROOKS:  Okay.  Next would be a

12      Certificate of Title for an Acura, Legend, that the

13      witness ███████████ said she was assaulted in.

14           THE COURT:  And who owns that car?

11:35AM 15           MR. BROOKS:  I own that car.  It's downtown.

16           THE COURT:  Have you provided that title to

17      the State?

18           MR. BROOKS:  Yes, ma'am, she has it.

19           MS. HIXON:  I have it.

11:35AM 20           THE COURT:  Do you-all have any objection to

21      the title of the car?

22           MS. HIXON:  Again, Your Honor, I mean, I have

23      a copy of it, but I don't have anything that

24      authenticates it that shows it's actual -- I mean,

25      I have the defendant's writing on it under, "Date

1    of issue," but I don't know -- again, there's no

2    one that has been listed who could authenticate

3    this that this is actually what it is.

4         THE COURT:  Well, we'll see if the defendant

11:35AM   5    chooses to take the stand on his own behalf, and if

6    he does and can testify that that is the title to

7    his car, I don't see why I wouldn't allow it.  So

8    we'll wait and see how the trial goes with regard

9    to his testimony.

11:35AM  10         MR. BROOKS:  All right.  The State's

11    discovery exhibit filed July 3rd of 2006.

12         THE COURT:  You want to move in the State's

13    discovery exhibit?

14         MR. BROOKS:  Yeah.  I mean, it's from 2006,

11:35AM  15    though, it's not this year.

16         THE COURT:  And what is that exactly?

17         MS. HIXON:  It's from, um, Mr. Brooks' trial

18    wherein he was arrested and charged with battery on

19    Shantell Harris.  He was found guilty of battery

11:35AM  20    and was sentenced to a year in County Jail.

21         THE COURT:  Okay.  So, it's the discovery

22    response that the State completed in that case?

23         MS. HIXON:  I believe it's a supplemental

24    discovery if it's what was provided to me.

5AM  25         THE COURT:  All right.  But is this the

1     pleading that he wants to move in or --

2              MS. HIXON:  Yes.

3              THE COURT:  And what's the purpose of that?

4              MR. BROOKS:  It's not actually the pleading,

11:35AM   5     it was just the category A witnesses.

6              THE COURT:  Um, I'm not going to allow that

7     because that's not in relation to this case.  What

8     Category A witnesses the State listed back in 2006

9     in another matter involving you and Ms. Shantell

11:35AM  10     Harris has no bearing on this case unless you can

11     tell me otherwise.

12              MR. BROOKS:  Yes, um, the witness ███████

13     ████████, um, I don't know if, um, I guess I can

14     say it --

11:35AM  15              THE COURT:  You can say it.

16              MR. BROOKS:  Her grandmother was used in the

17     case to aid Ms. █████ in the fabrication that they

18     had against me in 2006, and now she's been aided

19     again by Ms. Butler, and that represents my

11:35AM  20     evidence against Ms. ██████████

21              THE COURT:  Is Ms. Butler a witness in this

22     case?

23              MR. BROOKS:  No, Ms. ██████████████ is.

24              THE COURT:  Okay.  Perhaps if Ms. Butler was a

_  ᴬM  25     witness, you can certainly bring out the fact that

1    she previously assisted the State in some other

2    litigation against you, but it's ███████████

3    who's the witness?

4         MR. BROOKS:  Um-hum.

11:35AM    5         THE COURT:  And unless you can make that --

6    just because her grandmother assisted in that case,

7    I'm not inclined to allow you to bring in just the

8    discovery document from a 2006 case unrelated to

9    this one.

11:35AM   10         MR. BROOKS:  But if the witness, um --

11         THE COURT:  You can question the witnesses

12    about that, but the document -- that's what we're

13    talking about, I'm not saying you can't ask certain

14    questions, but I'm reviewing right now what

11:35AM   15    documents you intend to move into evidence, and

16    that document itself is not an item I'm inclined to

17    allow at this point.  We'll have to wait and see

18    what testimony comes out, but I don't see how on

19    earth that is relevant.

11:35AM   20         MR. BROOKS:  Okay.  If you say --

21         THE COURT:  What other documents do you have

22    or exhibits?

23         MR. BROOKS:  Um, final judgement of injunction

24    from, I think it says, March 8th, 2006.

_  ,AM   25         THE COURT:  And who were the parties on that

| | |
|---|---|
| 1 | injunction? |
| 2 | MR. BROOKS:  Shantell Nicole Harris and |
| 3 | myself. |
| 4 | THE COURT:  Why would you want to move in the |
| 11:35AM   5 | injunction between you and Ms. Harris? |
| 6 | MR. BROOKS:  Because Ms. Harris has stated in |
| 7 | deposition that we had injunctions. |
| 8 | THE COURT:  Okay.  But just because she stated |
| 9 | in deposition doesn't necessarily mean that it's |
| 11:35AM  10 | relevant in this case.  Deposition has a much wider |
| 11 | and broader area for questioning than does trial |
| 12 | testimony.  If Ms. Shantell Harris is a witness in |
| 13 | this case, and I, again, don't know who all is |
| 14 | going to come in here and testify, and if you-all |
| 11:35AM  15 | still have this active injunction against each |
| 16 | other, then perhaps you could question her in an |
| 17 | effort to bring out any -- on cross-examination, |
| 18 | but I can't say right now at this point, I don't |
| 19 | know who the witnesses will be, I don't know what |
| 11:35AM  20 | they're going to say, whether that's admissible or |
| 21 | not. |
| 22 | MR. BROOKS:  Okay. |
| 23 | THE COURT:  I'll defer on that one. |
| 24 | MR. BROOKS:  All right. |
| AM  25 | MS. HIXON:  And for the record, it is a |

1   permanent injunction against the defendant on

2   behalf of Shantell Harris.

3   THE COURT:  Okay.  And you understand that if

4   you bring that out yourself, that's another item of

11:35AM  5   what is considered prior bad acts that the jury is

6   going to hear about you?

7   MR. BROOKS:  Yes, ma'am, that's fine.  It's no

8   problem.

9   Um, a petition for injunction filed December

11:35AM  10   7th, 2004.

11   THE COURT:  I assume that's the petition that

12   Ms. Shantell Harris filled out to get this

13   injunction against you?

14   MR. BROOKS:  Uh, no, actually that's my

11:35AM  15   injunction against Shantell Harris.

16   MS. HIXON:  Okay.  That was not provided to

17   the State.

18   MR. BROOKS:  Oh, I have it for you.  I have it

19   for you.

11:35AM  20   MS. HIXON:  And, Your Honor, again, the State

21   would object.  This is not an authenticated copy,

22   it's not certified, there's no one to testify to

23   it's authenticity.  Furthermore, there is

24   handwriting all over it, so even if it were a

25   certified copy, it would no longer be something

1        that someone would be able to authenticate it.

2             MR. BROOKS:  She --

3             THE COURT:  Just a minute, Mr. Brooks.

4             MS. HIXON:  There is writing, um, asterisks,

11:35AM   5        things underlined, so, there is no one to

6        authenticate it, and, even if they did, it would

7        not be an authentic copy.

8             THE COURT:  Okay.  I'll say this, Mr. Brooks,

9        the Court can take judicial notice of court

11:35AM  10        records, so, for that, I could do that, however,

11        it's got to be an actual clean copy.  It can't have

12        your handwritten notes or things that you wrote --

13        that you added onto the document, I won't allow it

14        to be moved into evidence.

11:35AM  15             But, again, I'm going to defer on this,

16        because I need to wait and see what the testimony

17        is, and if Shantell Harris comes in here, that

18        petition -- well, let me ask you this:  Was an

19        injunction actually entered on the petition that

11:35AM  20        you filed with the court?

21             MR. BROOKS:  Um, yes, ma'am, actually that was

22        in this --

23             THE COURT:  So, wait.  You have an injunction

24        against Shantell Harris as well?

25             MR. BROOKS:  Um, if I can explain it?

1      THE COURT:  Go ahead.

2      MR. BROOKS:  In my injunction, I was granted

3   my children.  The problem was in the police report

4   there was an actual written statement when I turned

11:35AM   5   in my information to the domestic violence office,

6   they made my case about this written statement that

7   Ms. Harris had given that really incriminated

8   herself, but that statement walked out of my file

9   before it got to the Judge.  And my statement was.

11:35AM   10   So worded down, that the Judge denied my

11   injunction.

12      THE COURT:  Okay.  Well, I'm going to wait on

13   that, because, again, because I feel like you are

14   concentrating too much on the issues between you

11:35AM   15   and Ms. Shantell Harris that may not have any

16   relevance to this case, but I will defer on that,

17   but you have to have a clean copy, if I allow it,

18   you cannot move in a scribbled on handwritten copy.

19      All right.  Do you have any other exhibits and

11:35AM   20   items that you're seeking to get in?

21      MR. BROOKS:  Are the -- are my interviews

22   already on file, my interviews, the DVD's?

23      THE COURT:  I don't know -- when you say on

24   file, I don't want you to think that -- when the

AM   25   State and the defense exchange things that the

1    **clerk is going to have it or that I'm going to have**

2    **it.  I see none of this, so I don't know what**

3    **interviews that you're talking about.**

4         **MR. BROOKS:  Okay.  Well, my interviews with**

11:35AM   5    **Detective Collins.**

6         **THE COURT:  Were those audio or videotaped?**

7         **MS. HIXON:  They were videotaped and provided**

8    **to the Public Defender -- provided to the Public**

9    **Defender's Office.**

11:35AM   10    **THE COURT:  Okay.  Well, I don't know if the**

11    **State is going to move those into evidence or not,**

12    **or if you wish to move those into evidence?**

13         **MR. BROOKS:  Yes, I wish to move those into**

14    **evidence, but what I'm asking, will I be able to**

11:35AM   15    **use those?  Because I -- as I said, I have to**

16    **question Detective Collins, and I won't be able to**

17    **do that without actually accessing and looking at**

18    **the DVD's to set up questions.  And I believe at my**

19    **last hearing I also said that I was going to need**

11:35AM   20    **to see those DVD's and you said it might be**

21    **possible for me to see them in the back, I guess,**

22    **with one of the computers or something.  I just**

23    **would like to go through and reference what I need**

24    **to reference.**

25         **THE COURT:  So you want the jury to see the**

1    DVD of your interviews as evidence?

2         MR. BROOKS:  Yes, I do.

3         THE COURT:  Okay.  All right.  Well, when we

4    get to your part of the case, you can certainly

11:35AM   5    have the jury view your DVD's, if the State doesn't

6    move them in on their own.

7         MR. BROOKS:  All right.  Um, next will be the

8    police incident report from July 10th, 2012.

9         THE COURT:  What incident was that?

11:35AM  10         MR. BROOKS:  Um, that's Ms. ███████████'

11    incident.

12         THE COURT:  What incident was that?

13         MS. HIXON:  A General Offense Report was

14    generated based upon her allegations that she's

11:35AM  15    already testified to, um, but due to Statute of

16    Limitations, there was no case that was proceeded,

17    but it was reported to law enforcement, so a

18    General Offense was --

19         THE COURT:  Okay.  Well, generally, Mr.

11:35AM  20    Brooks, police reports, because they're written by

21    police and contain hearsay information, are not

22    admissible in court.

23         MR. BROOKS:  Well, my problem is I never

24    received any depositions from Ms. ███████████ --

AM   25         THE COURT:  Well, I understand she wasn't

 1    deposed.  Is that correct?

 2         MS. HIXON:  Correct, she was not deposed,

 3    that's why I had her here on Friday.

 4         MR. BROOKS:  So -- and I didn't receive that

 5    information either to be able to base my questions

 6    off of, so the only thing I had was just the police

 7    report.

 8         THE COURT:  Well, you can certainly cross-

 9    examine her based on the information you have from

10    the police report, but the police report itself is

11    not going to be moved into evidence as an item that

12    the jury is going to take back in the jury room to

13    deliberate with.  Do you understand?

14         MR. BROOKS:  Yes, ma'am.

15         Okay.  The notice of other crimes filed

16    October 2nd, 2012.

17         THE COURT:  You want the jury to have as

18    evidence the notice of other crimes?

19         MR. BROOKS:  No, I want to know if I can use

20    it, if I can use it as far as for my evidence.

21         THE COURT:  You can -- you can -- well, you

22    cannot -- that is a document on file with the

23    clerk.

24         MR. BROOKS:  Okay.

25         THE COURT:  The State filed it, provided it to

1   you.  It's a notice filed by the State of what they

2   want to use as other -- we had a hearing on it.

3          MR. BROOKS:  Yes, ma'am.

4          THE COURT:  And I'm allowing it.  The document

11:35AM   5   itself isn't going to be something the jury takes

6   back with them in the jury room.

7          MR. BROOKS:  I don't want them to.

8          THE COURT:  You don't want them to?

9          MR. BROOKS:  No, I just want to know if I can

11:35AM   10  use it.

11         THE COURT:  Well, when you say if you can use

12  it, I think I'm a little confused.  The jury can

13  only view items that have been moved into evidence.

14  You cross-examine the witnesses with all those

11:35AM   15  documents, but you are not going to be able to show

16  those documents.

17         MR. BROOKS:  Oh, that's cool.  I didn't plan

18  on showing it them.

19         THE COURT:  Okay.  Well, that's what I'm kind

20  of asking you right now is what documents you're

21  planning on moving into evidence?

22         MR. BROOKS:  So, regardless if I'm moving it

23  into evidence, I can still use it, as long as the

24  witness says -- or make reference to it?

. AM   25         THE COURT:  Well, with -- with -- on all the

1    documents we've gone through this morning, you have

2    some limitations based on my prior rulings.  Again,

3    you can't get into prior bad acts of the witnesses

4    that have no relevance to this case here today, as

11:35AM    5    I have previously ruled.

6         On this issue with Shantell Harris and the

7    injunctions back in 2006, I told you I'm deferring

8    on that.  So, before you are going to mention this

9    to the jury, if you need to have clarification, ask

11:35AM   10   for a sidebar with the attorneys, yourself and me

11   to say, Judge, I am planning now to talk about

12   this, am I permitted or am I not permitted, don't

13   just blurt it out in front of the jury.

14        MR. BROOKS:  Okay.  But as long as they bring

11:35AM   15   up the reference on the stand, then I ask for a

16   sidebar to see if I can use it at that time?

17        THE COURT:  Yes, that would be advisable.

18        MR. BROOKS:  Okay.  Okay.  Cool.

19        Okay.  Hand drawn diagram of the home located

11:35AM   20   on 3438 Greenbrier Drive, Jacksonville, Florida.

21        THE COURT:  Is that the same hand drawn

22   diagram we already talked about?

23        MR. BROOKS:  No, ma'am, this is a different

24   one.

25        THE COURT:  Who lives at that house?

1    MR. BROOKS:  That would be in reference to Ms.

2    ████████s incident in, I guess, she said in 2011,

3    or they didn't know the date, so it was around, but

4    they said the incident that happened at the 2000 --

11:35AM    5    at the initial incident that the police were

6    called.

7        THE COURT:  So an incident outside of the

8    timeframe that you're being charged?

9        MR. BROOKS:  No, that's within, I mean, they

11:35AM    10    just didn't have the correct dates at the time, so

11    it was all in the place -- with the information I

12    had, so I guess that would be the third count.

13    Third count.

14        THE COURT:  Okay.  Well, that's January, 2006,

11:35AM    15    through January, 2008.  Is that where she lived

16    during that time?

17        MR. BROOKS:  Yes, ma'am.  That's where --

18    that's where she lived.

19        THE COURT:  All right.  Well, the same thing

11:35AM    20    with the other diagram, we'll have to wait and see.

21        MR. BROOKS:  Woo, all right.

22        THE COURT:  The State, do you have that

23    diagram?

24        MS. HIXON:  No, we do not.

AM    25        THE COURT:  All right.  You need to show the

1       State.  Any items that you are going to move into

2       evidence, you need to show them before you do that.

3       Likewise, they'll need to show you first whatever

4       they plan to move into evidence.

11:35AM   5       MR. BROOKS:  Um, police incident report,

6       9980-3 from January 4th, 2012.

7       THE COURT:  And what is that an incident of?

8       MR. BROOKS:  That's Ms. ████████

9       statement to Detective Collins.

11:35AM   10      THE COURT:  And, again, like previously, you

11      can't move the report into evidence because that's

12      hearsay.  You can certainly question her on it when

13      she's on the stand, but the jury is not going to

14      look at that document.  Do you understand?

11:35AM   15      MR. BROOKS:  Yes, ma'am.  Yes, ma'am.

16      THE COURT:  All right.  Is that it?

17      MR. BROOKS:  When it comes to -- when it comes

18      to asking -- okay, if a witness is on the stand,

19      and I plan on using their deposition to question

11:35AM   20      them about it, do you have to file it as an exhibit

21      or can I just make reference to it and use it?

22      THE COURT:  Well, you need to provide -- if

23      the State doesn't have one, provide a copy to the

24      State.  If I don't have one, you need to provide a

AM   25      copy to me.  I don't have the depositions.  I have

1   to be able to follow along.

2          MR. BROOKS:  (Indiscernible).

3          THE COURT:  I'm sorry?

4          MR. BROOKS:  I thought that would have been an

11:35AM  5   item that the Court and the State Attorneys would

6   have since they're depositions.

7          THE COURT:  The State Attorney has it.  Just

8   because the parties have it does not mean the Court

9   has it.  I don't know the facts of this case.  I'm

11:35AM  10   going on the Information, that's all I have.

11          MR. BROOKS:  All right.  But, I mean, I can

12   use it if the witness --

13          THE COURT:  You can -- you can try to impeach

14   a witness if they say something different on the

11:35AM  15   stand compared to what they said at deposition, but

16   you have be able to refer to the page and line

17   number and provide me a copy of the deposition so I

18   can see what you are referring to.

19          MR. BROOKS:  Um, well, can I -- I guess can I

11:35AM  20   get a copy made or something?  How does that work?

21          THE COURT:  You need to get a copy made.

22          MR. BROOKS:  How do I do that now, I mean, we

23   have a jury now.

24          THE COURT:  Well, what depositions do you have

AM  25   that you're planning to use?

 1          MR. BROOKS:  Um, the depositions for each

 2    witness.

 3          THE COURT:  Well, I have some of them from the

 4    Williams Rule hearing, but I don't have

11:35AM  5    everybody's.

 6          All right.  What else, Mr. Brooks.

 7          MR. BROOKS:  State's count form filed from

 8    July 27, 2012.

 9          THE COURT:  The State's what?

11:35AM 10          MR. BROOKS:  The State's count form.

11          THE COURT:  Count form?

12          MR. BROOKS:  Yes.

13          THE COURT:  What is that?

14          MR. BROOKS:  The counts.  I don't know what

11:35AM 15    you call it, but the counts.

16          THE COURT:  The Information?

17          MR. BROOKS:  Yep.

18          THE COURT:  You have three counts on this

19    Information.

11:35AM 20          MR. BROOKS:  Right.  I plan on using the

21    original and the amended also.

22          THE COURT:  You mean moving the Informations

23    into evidence?

24          MR. BROOKS:  Well, no, because you say that's

:  AM 25    (indiscernible) for the jurors.  I'm just saying I

1    plan on using it to cross-examine the witnesses.

2         THE COURT:   That's -- the witnesses didn't

3    prepare the Information, so that would not be

4    proper cross-examination, but we'll wait and see

11:35AM  5    and hear what it is that you're intending to do.

6    Again, you're being charged and you have to go by

7    the amended Information.   Going by the prior

8    Informations is irrelevant.

9         MR. BROOKS:   Yes, ma'am.   Okay.

11:35AM  10         THE COURT:   Is that it?

11         MR. BROOKS:   All right.   And I guess just the

12    DVD viewing, because I -- actually I have Detective

13    Collins as my second person to be questioned.

14         THE COURT:   I understand.   You know the State

11:35AM  15    goes first?   We're going to put on their witnesses

16    first.

17         MR. BROOKS:   I know.

18         THE COURT:   So it may be actually tomorrow

19    before we get to your case.

11:35AM  20         MR. BROOKS:   No problem.

21         MS. HIXON:   I have a question based on the

22    things the defendant has said and I just want to

23    make sure I understand.

24         THE COURT:   Okay.

25         MS. HIXON:   He keeps saying he wants to view

 1    the DVD's before he questions Detective Collins.

 2              THE COURT:  Okay.

 3              MS. HIXON:  So, my question is, is he saying,

 4    as we stand here right now, he is not ready for

 5    trial?

 6              THE COURT:  Can you answer that, Mr. Brooks?

 7              MR. BROOKS:  Um, that is not what I'm saying.

 8    I already have my questions.  I need the tracking

 9    numbers for what she said I have said at the

10    hearing -- um, at the interview.  I need those

11    tracking numbers, so I need to be able to get

12    those, so when I ask a question, I can play the

13    DVD, to see if what she's saying is true.

14              THE COURT:  Okay.  But, so my question to you

15    is, I understand she'll take the stand, you'll

16    cross-examine her after the State has examined her.

17              MR. BROOKS:  Um-hum.

18              THE COURT:  Are you planning to play the video

19    or DVD's during your case after the State has

20    called their witnesses?

21              MR. BROOKS:  Yes, ma'am, I do.

22              THE COURT:  Is that my understanding?

23              MR. BROOKS:  Yes, ma'am.

24              THE COURT:  Okay.  You can always recall the

25    detective back; do you understand that?

1       MR. BROOKS:  Yeah, I guess.  I mean --

2       THE COURT:  Well, I mean, if you're just going

3   to ask the detective, you know, a tracking number,

4   I don't know, 45 minutes and 60 -- or 30 seconds or

11:35AM   5   something, I mean, is that -- I'm not sure -- I'm

6   not sure I understand, Mr. Brooks, you're going to

7   have to explain.

8       MR. BROOKS:  Okay.  I already have my

9   questions done.  The questions are done.

11:35AM  10       THE COURT:  Okay.

11       MR. BROOKS:  But the detective stated that

12   there was some inconsistencies in the statements

13   that I made at the interview.

14       THE COURT:  Well, can we wait and see what the

11:35AM  15   detective is going to say on the stand?

16       MR. BROOKS:  I understand.

17       THE COURT:  Because that's the testimony that

18   will be relevant here for the jury.  Remember,

19   again, what has been said in deposition, well, if

11:35AM  20   it's different than today, certainly you can use to

21   impeach her, but you can't say, Well, you know, at

22   the deposition they testified X, Y and Z.  That's

23   not proper.  Do you understand?

24       MR. BROOKS:  Yes, ma'am, that's not -- that's

25   not what I'm trying to do.  What I'm trying to do

1       is be able to get to that reference point so I

2       won't have to sit here and run a DVD trying to find

3       exactly where we were at when she said that

4       inconsistency happened.

11:35AM    5          THE COURT:  All right.  Let me ask you this:

6       It's almost 11:15, the jury has been here since

7       10:30.  During the lunch break, which we'll be

8       taking shortly, maybe 12:30 or so, can he sit and

9       watch the DVD?

11:35AM   10          MS. HIXON:  I don't have any problem with

11       that, Your Honor.

12          THE COURT:  Officer Boyd, is that a problem if

13       he remains here and watches the DVD?

14          THE BAILIFF:  We can stay in here.

11:35AM   15          MS. HIXON:  The other question I have, Judge,

16       is he said, That was the second person I was going

17       to call.

18          THE COURT:  Uh-huh.

19          MS. HIXON:  I don't have a witness list from

11:35AM   20       the defendant, so I don't know who it is he intends

21       to call.

22          THE COURT:  Okay, Mr. Brooks, what, if any,

23       witnesses are you intending to call in your case?

24          MR. BROOKS:  Well, actually, all of my

AM   25       witnesses were denied, so I would think that I

1    would be calling the State's witnesses.  I mean

2    that's the only ones here; right?

3          THE COURT:  Will, you certainly -- first of

4    all, who are all your witnesses who were denied?  I

11:35AM    5    understand that there has been no witness list ever

6    presented to the State or provided to the clerk.

7          MR. BROOKS:  Do you really want all the names?

8          THE COURT:  Have they previously been provided

9    to the State or the clerk?

11:35AM    10          MR. BROOKS:  They were provided to the clerk.

11          THE COURT:  When was this?

12          MR. BROOKS:  November 12th, 2012.

13          THE COURT:  And who are the witnesses?

14          MR. BROOKS:  Besides the State witnesses,

11:35AM    15    let's see, Alan S. Mizrahi.

16          MS. HIXON:  That's my director.

17          MR. BROOKS:  Rebecca Hurado.

18          MS. HIXON:  She notarized the Information.

19          MR. BROOKS:  Angela Corey.

11:35AM    20          MS. HIXON:  She's my boss.

21          MR. BROOKS:  Mary Harris.

22          MS. HIXON:  And she's --

23          MR. BROOKS:  That's Shantell Harris' mother.

24          Officer Randolph was the responding officer in

AM    25    2004.

1        Let's see, <u>Krisaya</u> Alexander, which is the

2    niece of ███████████████

3        <u>Nishanta</u> Alexander, which is the sister of

4    ███████████████

11:35AM   5        Sharon Alexander, which is the mother of

6    ███████████████

7        <u>Mieka</u> Graham, which is the girlfriend of the

8    brother of ███████████████

9        Lorenzo Sessions, which is the brother of

11:35AM  10    ███████████████

11        Mary <u>Motley</u> Butler, or Mary Butler Motley,

12    which is the grandmother of ███████████████

13        Police officer -- ah, this was the information

14    I was supposedly to be gotten by the Public

11:35AM  15    Defender's, um, investigator, but, like I said,

16    they didn't get back with me.  The actual police

17    officer, or whoever it was at DCF, that did the

18    investigation in 2006.

19        The two police officers that responded to the

11:35AM  20    incident in 2007 to the residence at Greenbrier.

21        <u>Brelon</u> Graydon, Donna Graydon's son and

22    ███████████████ s brother.

23        William ███████, ███████████████'s father.

24        Raymond Richardson, ███████████████ -- well,

25    I'm sorry, William ███████'s uncle.

1          <u>Poris</u> Richardson, William ██████'s uncle.

2          Jonathan McLaurn, William ██████'s brother.

3          Darcy Galnor, Public Defender's Office.

4          As Ms. Anna Hickson.

5          MS. HIXON:  That would be me.

6          THE COURT:  Yes.

7          When you say that you were denied, who denied?

8    Because this Court has not denied you those

9    witnesses.

10          MR. BROOKS:  Oh, I guess that would be the

11   Public Defender's Office, since Ms. Darcy Galnor

12   was provided this list and did absolutely nothing

13   to obtain these individuals.

14          THE COURT:  All right.  So this is a list that

15   you provided your lawyer in the hopes that they

16   would help you in your case, and you're saying your

17   attorney didn't want to call all of those people at

18   this trial?

19          MR. BROOKS:  Apparently not if I don't have

20   any witnesses on my side.

21          THE COURT:  Okay.

22          MS. HIXON:  I mean, then my question becomes,

23   because I want to get a clear record, is he saying

24   because those people are not able to be called,

25   that he is not ready for trial?

1       THE COURT:  Right.  If you want to call those

2   people, mind you, the State Attorney and Alan

3   Mizrahi, Ms. Hickson's division chief, and Ms.

4   Hickson herself, who is the prosecutor in your

11:35AM   5   case, and the woman who notarized the Information,

6   and whatever secretaries that the State Attorney's

7   Office might have signed any of these documents, or

8   Ms. Galnor, herself, as your PD, are not going to

9   be witnesses in this case in relation to these

11:35AM   10   three charges and the alleged victim, ████████████

11   ████████████   Do you understand that?

12       MR. BROOKS:  Yes, ma'am, I do.

13       THE COURT:  Do you want to call any of those

14   witnesses, and do you want a continuance of your

11:35AM   15   trial in order to get them here?

16       MR. BROOKS:  No, no, no, we're going to trial

17   today.

18       THE COURT:  You want to go to trial today?

19       MR. BROOKS:  Yes, I'm not putting this off any

11:35AM   20   longer.

21       THE COURT:  All right.  Did you have any of

22   those witnesses today?  Did you get any of them to

23   come to testify in your behalf?

24       MR. BROOKS:  Well, what I was told -- what I

25   was told at my hearing was if I can produce those

 1    documents today of those names, and they wouldn't

 2    be called by you yourself.

 3         THE COURT:  Yes, you have to -- well, you have

 4    to disclose the witnesses to the State, and I

 5    understand none of those witnesses that you have

 6    just read out in open court have ever been

 7    disclosed to the State.

 8         MR. BROOKS:  Because I also stated at that

 9    time that I did not bring my list at that time.

10         THE COURT:  Okay.  So you agreed you've never

11    disclosed those witnesses to the State?

12         MR. BROOKS:  I would agree that the Public

13    Defenders never disclosed this list to the State,

14    not me.

15         THE COURT:  All right.  But you haven't had

16    the Public Defender represent you in the last 30 or

17    40 days, whenever they withdrew; is that correct?

18         MR. BROOKS:  That is correct, ma'am, but

19    November 12th I was be represented by the Public

20    Defender's Office.

21         THE COURT:  Okay.

22         MR. BROOKS:  And that's when this information

23    was sent in.

24         THE COURT:  I will give you a continuance, if

25    you want --

```
 1            MR. BROOKS:  No, ma'am.
 2            THE COURT:  -- to be able to call those
 3       witnesses.
 4            MR. BROOKS:  No, ma'am.
11:35AM  5   THE COURT:  You want to go forward today?
 6            MR. BROOKS:  Yes, ma'am.
 7            THE COURT:  All right.  Are you ready to go
 8       forward now?  Is there any other housekeeping
 9       matters?  It's already is 11:20.
11:35AM 10            MR. BROOKS:  Just the DVD issue, that's it.
11            THE COURT:  All right.  We will try to have
12       you watch it during the lunch break.
13            MR. BROOKS:  All right.  Can we bring the jury
14       in?
11:35AM 15            MS. HIXON:  That's fine, Your Honor.
16            THE COURT:  I would ask the State, I believe
17       for the rest of the trial, when you do call the
18       Williams Rule witnesses, to let me know so I can
19       give the instructions.
11:35AM 20            MS. HIXON:  And, Your Honor, um, just so I can
21       -- just so -- I just -- out of an abundance of
22       caution, I just want to make sure the record is
23       clear.  Is he saying those witnesses have pertinent
24       information that are valid to his defense and he's
25       not calling them?
```

1    MR. BROOKS:  No, what I'm saying is I was

2    denied my witnesses by the Public Defender's

3    Office, and because I didn't have the list on me at

4    my -- what was that hearing we had?

11:35AM    5         THE COURT:  The Williams Rule hearing?

6         MR. BROOKS:  Yeah -- no, I think it was the --

7         THE COURT:  The Faretta hearing?

8         MR. BROOKS:  The motion hearing, the actual

9    was coming -- was at the hearing before the

11:35AM    10    scheduled motion hearing.

11         THE COURT:  Okay.

12         MR. BROOKS:  And since I didn't have my, um --

13    my actual people at that time, I was told that I

14    couldn't use them, even though I had provided

11:35AM    15    the -- what was those things -- the material

16    witness bonds in order to get them, I guess, here

17    to the court.

18         THE COURT:  Well, can you answer Ms. Hickson's

19    question, are you saying these witnesses are

11:35AM    20    material to your defense and you need to call them?

21         MR. BROOKS:  I don't want to say that, because

22    then you might issue a continuance a detainment,

23    seeing I was denied, I'm not going to be able to

24    use them, so I'm just going to keep going.

25         THE COURT:  You do not want a continuance in

```
 1    your trial?
 2           MR. BROOKS:  No, ma'am, I do not.
 3           THE COURT:  And you're willing to go forward
 4    without these witnesses?
 5           MR. BROOKS:  I was given no choice, so I guess
 6    I am.
 7           THE COURT:  Well, you keep saying that, but
 8    I'm giving you the choice, because I've never
 9    denied you the ability to call these witnesses.
10           MR. BROOKS:  I understand, but, as I said at
11    the time, I was told if I couldn't produce those
12    individuals at that time that I could not call
13    them.
14           THE COURT:  I told you if you did not disclose
15    the witnesses to the State you would not be able to
16    call them in trial.
17           MR. BROOKS:  The State had a copy.
18           THE COURT:  Of that list you just read?
19           MR. BROOKS:  If she has the other documents
20    from the pictures and the orders and my certificate
21    for my vehicle, then she has the rest, ma'am.
22           THE COURT:  Ms. Hixon, do you have that list
23    of the witnesses that Mr. Brooks just read out?
24           MS. HIXON:  No, I have the list that has,
25    like, um -- I have a list that has things like
```

11:35AM (line 5)
11:35AM (line 10)
11:35AM (line 15)
11:35AM (line 20)
AM (line 25)

1          complaining about Ms. Galnor and things like that,

2          but nothing that is a disclosure of witnesses or

3          addresses or some means for me to contact them, no.

4               MR. BROOKS:  Ma'am, I can show you my

11:35AM   5          documents right now that represents the items that

6          she has just showed you that I supplement the

7          record.  Now, if she has --

8               THE COURT:  I'm not questioning those items,

9          because there has been disclosures back and forth

11:35AM  10          throughout the progress of this case.  She does

11          have the car title, I understand, yes, that proves

12          that it was provided either by you or Ms. Galnor to

13          her.  I'm simply inquiring about that list that you

14          just held up and read --

11:35AM  15               MR. BROOKS:  Um-hum.

16               THE COURT:  -- that had all of those names.

17          Has that list been provided to Ms. Hixon, and she

18          said it hasn't.

19               MR. BROOKS:  But how can she has these and not

11:35AM  20          have that also?

21               THE COURT:  I don't know, maybe they were done

22          --

23               MR. BROOKS:  I can't see -- I would have to

24          say, yes, she does.  If she has those, she has to

.   ,AM  25          have these.

1          THE COURT:  All right.  Well, regardless of

2     whether she has it or not, do you want to call

3     those people at your trial here today?

4          MR. BROOKS:  There is no way to do that,

11:35AM   5     because, unfortunately, by you providing me with

6     the new witness list and telling me that I was not

7     able to use my own, I had to switch my whole plan

8     around now.  So I have no questions for those

9     individuals, because I done got rid of everything

11:35AM   10    and now I'm focussing specifically on the

11    individuals that's coming in here today, so there

12    is no way I can do that.

13         THE COURT:  And that's why both Ms. Hixon and

14    I have asked you, that if they are material

11:35AM   15    witnesses and you want to call them in your

16    defense, because these are serious charges you're

17    facing, if you are emphasizing today these

18    witnesses are critical to your case, I will

19    continue the case so that you can obtain them and

11:35AM   20    get them in court to testify in your behalf, if

21    that is what I want.  I am giving you that option.

22    I am not preventing you from calling those

23    witnesses.  It is your choice, though.  What do you

24    want to do?

1   AM   25         MR. BROOKS:  We will continue the trial today,

1      ma'am.

2              THE COURT:  You want to continue it?

3              MR. BROOKS:  Yes, ma'am.

4              THE COURT:  Meaning you don't want to hold the

11:35AM   5    trial today, we'll pass it for another day so you

6      can get those witnesses in?

7              MR. BROOKS:  No, ma'am, we will be going to

8      trial today.

9              THE COURT:  You want to proceed with trial?

11:35AM   10   MR. BROOKS:  Yes, ma'am.

11             THE COURT:  All right.  Then let's bring the

12     jury in.

13             MR. BROOKS:  Okay.

14             MS. HIXON:  And, Your Honor, just to be clear,

11:35AM   15   I would ask that the defendant be prevented from

16     arguing that he has witnesses that he cannot call,

17     because he's been given ample opportunity to be

18     given more time to get those witnesses in.

19             THE COURT:  Well, that's correct, and that

11:35AM   20   would be a violation of one of the motions in

21     limine.  Do you understand you cannot, in front of

22     this jury, say, I had witnesses I could have

23     brought, but I didn't call them today, or the Court

24     wouldn't let me call them today.  Do you understand

25     you cannot make that argument, Ms. Brooks?

1           MR. BROOKS:  Yes, ma'am, they have already

2      been excluded from my witness list.

3           THE COURT:  Nobody has been excluded from your

4      witness list.

11:35AM   5           MR. BROOKS:  I mean --

6           THE COURT:  You haven't provided a witness

7      list.  I just want the record to be clear.

8           MR. BROOKS:  Well, then, yeah --

9           THE COURT:  This is not a joke, Mr. Brooks.

11:35AM  10           MR. BROOKS:  Well, it is kind of, but --

11           THE COURT:  It is not a joke.

12           MR. BROOKS:  No, ma'am (inaudible).

13           THE COURT:  We're going to get started now,

14      because it's been almost an hour since the jury has

11:35AM  15      been waiting.

16           So let's bring the jury in.

17           (The jury entered the courtroom, and the

18      further proceedings were had as follows:)

19           THE COURT:  Thank you, ladies and gentlemen.

11:35AM  20      Have a seat.  I do apologize for the delay.  We

21      always have some regular court business that we

22      need to take care of before we can begin a trial,

23      and sometimes it's a little hard to estimate how

24      long that will take, but I do want to thank you for

AM  25      your attendance and participation here today.

1          The case set for trial today is the State of

2     Florida vs. Clifton McNeil Brooks.  It is Case No.

3     16-2012-CF-6884.

4          Is the State ready to proceed?

11:35AM    5          MS. HIXON:  Yes, Your Honor.

6          THE COURT:  Is the defense ready to proceed?

7          MR. BROOKS:  Yes, ma'am.

8          THE COURT:  Madam clerk, will you swear the

9     jury in, please?

11:35AM   10          THE CLERK:  Would each of you raise your right

11     hand.

12          Thank you.

13          (A jury of consisting of six and one alternate

14     was sworn in by the clerk).

11:35AM   15          THE COURT:  Thank you.

16          Ladies and gentlemen, you have now been sworn

17     as the jury to try the case of the State of Florida

18     vs. Clifton McNeil Brooks.

19          This is a criminal case, and the defendant,

11:35AM   20     Mr. Brooks, is charged with sexual battery in Count

21     1, lewd and lascivious molestation in Count 2, and

22     lewd or lascivious exhibition in Count 3.  The

23     definitions and -- the definition of the elements

24     of those three offenses will be explained to you

AM   25     later.

1        The Court is now going to read you a synopsis

2   of the law that it expects to give at the end of

3   trial, but, of course, the Court is not in a

4   position to know exactly what law applies to the

11:35AM    5   case until all the evidence has been presented.

6   However, we can anticipate some of it, and I will

7   give it to you at the beginning it trial so that

8   you know what to look for.  If the Court later

9   decides that a different law applies to the case,

11:35AM   10   you must base your verdict only at the law -- on

11   the law given at the end of the case.

12        It is your solemn responsibility to determine

13   if the State has proved its accusation beyond a

14   reasonable doubt against the defendant, Clifton

11:35AM   15   McNeil Brooks.  Your verdict must be based solely

16   on the evidence, or lack of evidence, and the law.

17        The Information is not evidence and is not to

18   be considered by you as any proof of guilt.

19        It is the judge's responsibility to decide

10:42AM   20   which laws apply to this case and to explain those

21   laws to you.  It is your responsibility to decide

22   what the facts of the case may be, and to apply the

23   law to those facts.  Thus, the province of the jury

24   and the province of the court are well defined, and

.   AM   25   they do not overlap.  This is one of the

1       fundamental principles of our system of justice.

2              Before proceeding further, it will be

3       helpful if you understand how a trial is

4       conducted.

10:42AM   5          At the beginning of the trial, the attorneys

6       and Mr. Brooks will have an opportunity, if they

7       wish, to make an opening statement.  The opening

8       statements give the parties a chance to tell you

9       what evidence they believe will be presented

10:42AM  10       during the trial.  What the attorneys and what

11       Mr. Brooks says, as he is representing himself as

12       he's elected to do as an attorney, is not

13       evidence and is not the law and are not to

14       consider it as such.

10:42AM  15          Following the opening statements, witnesses

16       will be called to testify under oath.  They will

17       be examined and cross-examined by the attorneys

18       and by Mr. Brooks; and documents and other

19       exhibits also may be produced as evidence.

10:43AM  20          After the evidence has been presented, the

21       attorneys and Mr. Brooks will have an opportunity

22       to make the final arguments.

23          Following the arguments, the attorneys and

24       Mr. Brooks and the Court -- excuse me, following

25       the final arguments by the attorneys and Mr.

1       Brooks, the Court will instruct you on the law

2       applicable to the case.

3              After the instructions are given, that's

4       when you will retire to consider your verdict.

10:43AM    5              You should not form any definite or fixed

6       opinion on the merits of the case until you have

7       heard all of the evidence, all of closing

8       arguments by the attorneys and by Mr. Brooks, and

9       the instructions on the law by as given by the

10:43AM   10       judge.  Until that time you should not discuss

11      the case among yourselves at any time.

12              If a member of the jury attempts to discuss

13      this case prior to the time when the Court

14      instructs you to retire to consider your verdict,

15      you have a duty to stop them immediately.  If they

16      persist and continue to discus this, then you have

17      a duty to inform the Court that the member of the

18      jury has violate this Court's instruction.

19              Now, during the course of the trial, the

10:43AM   20       Court will take recesses, and, of course, we're

21      scheduled for two days, so we'll have an

22      overnight recess as well.  During this time you

23      are permitted, of course, to separate and go

24      about your personal affairs.  During these

25      recesses, and especially over the overnight

recess, you will not discuss the case among

yourselves or with anyone else nor permit anyone

to say anything to you or in your presence about

the case.  If anyone attempts to say anything to

10:44AM    you or in your presence about this case, you must

tell him or her that you are on the jury trying

the case and ask him or her to stop.  If he or

she persists, leave him or her at once and

immediately report the matter the bailiff, who

10:44AM    will advise me.

This case must be tried by you only on the

evidence presented during the trial in your

presence, in the presence of the defendant, in

the presence of the attorneys, and in the

10:44AM    presence of the judge.  Jurors must not conduct

any investigation of their own, therefore, you

must not visit any of the places described in the

evidence, and you must not read nor listen to any

reports about the case should they air or be

printed.  Jurors must not conduct any legal

research regarding any subject matter concerning

this case.  Further, you must not discuss the

case with any person, and you must not speak with

the attorneys, the witnesses or the defendant

about any subject until your deliberations are

1  finished.

2  Now, in every criminal proceeding a defendant

3  has the absolute right to remain silent.  At no

4  time is it the duty of a defendant to prove his

10:44AM  5  innocence.  From the exercise of a defendant's

6  right to remain silent, a jury is not permitted to

7  draw any inference of guilt, and the fact that a

8  defendant did not take the witness stand must not

9  influence your verdict in any manner whatsoever.

10:45AM  10  The attorneys are trained in the rules of

11  evidence and trial procedure, and it is their

12  objection -- it is their duty, and Mr. Brooks as

13  well, to make any objections that they feel are

14  proper.  When an objection is made you should not

10:45AM  15  speculate on the reason why it is made; likewise,

16  when an objection is sustained, or upheld, by me,

17  you must not speculate on what might have

18  occurred had the objection not been sustained,

19  nor what a witness might have said had he or she

10:45AM  20  been permitted to answer.

21  The defendant has entered a plea of not

22  guilty.  This means you must presume or believe

23  that the defendant is innocent.  The presumption

24  stays with the defendant as to each material

JPM  25  allegation in the Information through each stage of

1    the trial unless it has been overcome by evidence

2    to the exclusion of and beyond a reasonable doubt.

3        To overcome the defendant's presumption of

4    innocence the State has the burden of proving two

03:00PM   5    things.  Number one, the crime with which the

6    defendant is charged was committed.  And, number

7    two, the defendant is the person who committed the

8    crime.

9        The defendant is not required to present

03:00PM   10    evidence or prove anything.

11        Whenever the words reasonable doubt are used,

12    you must consider the following:

13        A reasonable doubt is not a mere possible

14    doubt, a speculative, imaginary or forced doubt.

03:00PM   15    Such a doubt must not influence you to return a

16    verdict of not guilty if you have an abiding

17    conviction of guilt.  On the other hand, if, after

18    carefully comparing, considering, and weighing all

19    the evidence, there is not an abiding conviction of

03:01PM   20    guilt, or, if, having a conviction, it is one which

21    is not stable but one which wavers and vacillates,

22    then the charge is not proved beyond every

23    reasonable doubt and you must find the defendant

24    not guilty because the doubt is reasonable.

25        It is to the evidence introduced in this

1  trial, and to it alone, that you are to look for

2  that proof.

3  A reasonable doubt as to the guilt of the

4  defendant may arise from the evidence, the conflict

03:01PM  5  in the evidence or the lack of evidence.

6  If you have a reasonable doubt, you should

7  find the defendant not guilty.  If you have no

8  reasonable doubt, you should find the defendant

9  guilty.

04:23PM  10  Now, it is up to you to decide what evidence

11  is reliable.  You should use your common sense in

12  deciding which is the best evidence, and which

13  evidence should not be relied upon in considering

14  your verdict.  You may find some of the evidence

04:23PM  15  not reliable, or less reliable than other evidence.

16  You should consider how the witnesses act as

17  well as what they said.  And some things you should

18  consider are:

19  No. 1.  Does the witness seem to have an

11:35AM  20  opportunity to see and know the things about which

21  the witness is testifying?

22  No. 2.  Does the witness seem to have an

23  accurate memory?

24  No. 3.  Is the witness honest and

AM  25  straightforward in answering the attorneys' or Mr.

1   Brooks' questions?

2        And, No. 4.  Does the witness have some

3   interest in how the case should be decided?

4        And, No. 5.  Does the witness' testimony agree

5   with the other testimony and other evidence in the

6   case?

7        You may rely upon your own conclusion about

8   the witness.  A juror may believe or disbelieve all

9   or any part of the evidence or the testimony of any

10  witness.

11       Now, during this trial I will permit you to

12  take notes.  The Court has provided you with

13  notepads and pencils so that you may take notes

14  during the trial, if you wish.  Please do not write

15  on the cover page.  That will prevent your notes

16  from being inadvertently read when the notepads are

17  collected.  Many courts do not permit jurors to

18  take notes, so a word of caution is in order.

19       If you want to take notes during the course of

20  the trial, you may do so.  However, it is difficult

21  to take detailed notes and pay attention to what

22  the witnesses are saying at the same time.

23       If you do take notes, please be sure that your

24  taking of notes does not interfere with your

25  listening to and considering all the evidence.

11:35AM

11:35AM

JAM

1          On the other hand, of course, you're not

2     required to take notes if you would prefer not to

3     do so.  That would be left entirely and

4     individually up to you.

09:29AM    5          If you choose not to take notes, remember it

6     is your own individual responsibility to listen

7     carefully to the evidence.  You cannot give this

8     responsibility to someone who is taking notes.  We

9     depend on the judgment of all members of the jury,

11:36AM   10     so you must all remember the evidence presented in

11     this case.

12          If you do take notes, please remember there is

13     always a tendency to attach some undue importance

14     to matters which one has written down.  Some

11:36AM   15     testimony which considered unimportant at the time

16     presented, and thus not written down, takes on

17     greater importance later on in the trial in light

18     of all the evidence presented.  Therefore, you are

19     instructed your notes are only a tool to aid your

11:36AM   20     own individual memory and you should not compare

21     your notes with other jurors in determining the

22     contents of any testimony or in evaluating the

23     importance of any evidence.  Your notes are not

24     evidence and are by no means a complete outline of

25     the proceedings or a highlight of the trial.  Above

1      all, your memory should be your greatest asset when

2      it comes to deliberate -- to deliberate and to

3      render a decision in this case.

4              The notepad have your names or a juror number

11:37AM   5      on the cover page and they will be collected at

6      every recess and at the end of the day by the

7      bailiff and they will turned over to the clerk, who

8      will lock and secure them.  You are not to take

9      your notes with you during any recess or at the end

11:37AM   10     of the day.  Be sure to leave them on your seats or

11     in the jury room at the end of the end of each day

12     and during any extended breaks.

13              After you have reached your verdict and have

14     been discharged from jury service, your notes will

11:37AM   15     be collected one final time by the bailiffs, they

16     will be turned over to the clerk for sealing, and

17     will thereupon be destroyed in a manner as directed

18     by the Court.  Your notes will not be read by

19     anyone, including this Court.

11:37AM   20              Now, deciding a verdict is exclusively your

21     job.  I cannot participate in that decision in any

22     way.  You will disregard anything that I may say or

23     do during the trial that might make you think I

24     prefer one verdict over another.

JAM   25              Now, this concludes Part I of the

                 1     instructions.  When all the evidence has been taken

                 2     and after the attorneys and Mr. Brooks have made

                 3     their closing arguments to you, then the Court will

                 4     instruct you on Part II of the instructions.

11:38AM          5          All right.  May I have the attorneys and Mr.

                 6     Brooks approach up here at sidebar with the court

                 7     reporter, please.

                 8          (A sidebar conference was has as follows:)

                 9          THE COURT:  Okay.  Are there any exceptions or

11:38AM         10     objections to the preliminary instructions I have

                11     given to the jury?

                12          MS. HIXON:  No, Your Honor.

                13          MR. BROOKS:  No, Your Honor.

                14          THE COURT:  Is everyone ready to proceed with

11:38AM         15     opening statements?

                16          MS. HIXON:  Yes.

                17          THE COURT:  Mr. Brooks?

                18          MR. BROOKS:  Um-hum.

                19          THE COURT:  Proceed.  Thank you.

11:38AM         20          (At the conclusion of the sidebar conference,

                21     the further proceedings were had as follows:)

                22          THE COURT:  Is the State ready to proceed with

                23     opening statement?

                24          MS. HIXON:  Yes, Your Honor.

  JAM           25          THE COURT:  Mr. Brooks, are you ready to

1      proceed with your opening statement?

2              MR. BROOKS:  Yes, Your Honor.

3              THE COURT:  State.

4              MS. HIXON:  May it please the Court?

11:39AM   5              THE COURT:  Yes, ma'am.

6              MS. HIXON:  Mr. Brooks.

7              Ladies and gentlemen, ███████████ is a

8      beautiful 17 year old girl.  She's a junior at

9      Forrest High School, she's in the Dual Enrollment

11:39AM   10     Program.  But back when ███████ was about seven or

11     eight years old, life didn't really seem as good,

12     because when ███████████ was seven or eight

13     years old she and her mother and a couple of

14     siblings were living with the defendant, Clifton

11:39AM   15     Brooks, and while there, she became a victim.

16             Now, ████████ is going to come in and she's

17     going to talk to you, and she's going to tell you

18     that when she was seven or eight, she was sleeping

19     in a bedroom one night, and while she was sleeping,

11:40AM   20     she starts feeling something on her, as she called

21     sometimes her rump, her bottom, and then she began

22     to start feeling something go into her butt, and

23     she turns around, and lo and behold there is that

24     defendant, and he had like she'll describe it as

JAM   25     this little Dragonball Z Toy, and she'll talk about

1    she had that, but she'll talk about how he was

2    right there and she felt this go into her butt,

3    into her seven or eight year old butt.

4         But it didn't really stop there, because you

11:40AM   5    will also hear from Shantell Harris.  Now, Shantell

6    Harris shares children with the defendant, and they

7    are no longer together, but she's going to talk to

8    you about how when ██████ was eight, she witnessed

9    things going on with the defendant and ██████.

11:41AM   10   And she's going to talk to you about how when

11        ██████ was eight, she would see her on his lap,

12   and he would tickle her on her thighs and work his

13   way up and tickle her on her vagina.  And then

14   she's going to tell you about an incident where she

11:41AM   15   goes and catches him in ████████s bedroom, and

16   catches him in ████████s bedroom with her legs wide

17   open and she sees the defendant's hand cover up

18   going and catches him.

19        She's going to talk to you about those things,

11:41AM   20   and she's going to -- they are both going to tell

21   you about those things, because, while you're doing

22   that, you're also going to hear from two other

23   people.  You're going to hear from two other people

24   who are going to tell you about their experiences

25   with this defendant, and their names are ████

1        ▮▮▮▮  and ▮▮▮▮▮▮▮▮▮        And ▮▮▮  is going to

2        tell you about a time this defendant took her to

3        Wal-Mart and fondled her and threatened her,

4        threatened to kill her family if she ever told.

11:42AM  5        And then ▮▮▮▮  is going to tell you about the

6        time -- because ▮▮▮▮ 's mom is this defendant's

7        best friend, and ▮▮▮▮  is going to tell you about

8        a time when he came into her bedroom when she was

9        12 years old and forced her to have sex with him.

11:42AM  10            So, ladies and gentlemen, I'm going to ask,

11        and Ms. Rosendale is going to ask that you listen

12        to all of the evidence and you listen to everything

13        on both sides, because at the end of this trial,

14        Ms. Rosendale and I are going to be right back here

11:42AM  15        asking that you find that defendant guilty.

16                Thank you.

17                THE COURT:  Mr. Brooks, your opening?

18                MR. BROOKS:  Good morning, everyone.  United

19        States box laborer in 1865, but they continue a

11:43AM  20        psychological and physical instruction of

21        containing, a foolproof method for containing and

22        creating --

23                MS. HIXON:  Objection.  Improper opening

24        statement.

JAM  25                THE COURT:  Mr. Brooks, opening is to advise

|  |  |  |
|--|--|--|
| | 1 | **the jury of what you believe the evidence will show** |
| | 2 | **them in the course of the trial.  You can certainly** |
| | 3 | **make a closing at the end of all the evidence.** |
| | 4 | **MR. BROOKS:  Okay.** |
| 11:43AM | 5 | **THE COURT:  If you'll focus on the evidence in** |
| | 6 | **this trial.  Thank you, sir.** |
| | 7 | **MR. BROOKS:  Okay.  What you will see in this** |
| | 8 | **courtroom throughout my trial is all statements** |
| | 9 | **from witnesses except by police officers that did** |
| 11:44AM | 10 | **not investigate what they were saying or said;** |
| | 11 | **State's Attorneys who make the lies work; a Public** |
| | 12 | **Defenders that provide client information to the** |
| | 13 | **State Attorneys for --** |
| | 14 | **MS. HIXON:  Objection.  This is improper** |
| 11:44AM | 15 | **opening statement.** |
| | 16 | **THE COURT:  Mr. Brooks --** |
| | 17 | **MR. BROOKS:  Yes, ma'am.** |
| | 18 | **THE COURT:  Part of that is improper, but the** |
| | 19 | **reference to Public Defender, you have chosen to** |
| 11:44AM | 20 | **represent yourself, so there is no relevance or** |
| | 21 | **argument to be made about Public Defenders in this** |
| | 22 | **case.** |
| | 23 | **MR. BROOKS:  Okay.** |
| | 24 | **THE COURT:  Do you understand?** |
| ,AM | 25 | **MR. BROOKS:  All right.** |

```
          1              THE COURT:  Okay.  Thank you.

          2              MR. BROOKS:  And in the end you will find that

          3         I am innocent.

          4              Thank you.

11:44AM   5              THE COURT:  Thank you, Mr. Brooks.  The State

          6         may call your first witness.

          7              MS. ROSENDALE:  Your Honor, at this time the

          8         State would call ███████████████████

          9              And, Your Honor, while ████  ████████  is

11:45AM  10         approaching, may I move the podium?

         11              THE COURT:  Yes.

         12              Ms. ██████████, if you will come forward and be

         13         sworn by the clerk.

         14              THE CLERK:  Please raise your right hand.

11:45AM  15                        ██████████████████

         16    having been produced and first duly sworn, testified as

         17    follows:

         18              THE CLERK:  Thank you.

         19              THE COURT:  Come have a seat in the witness

11:45AM  20         stand.

         21                        DIRECT EXAMINATION

         22    BY MS. ROSENDALE:

         23         Q    Good morning.

         24         A    Good morning.

    JAM  25         Q    ██████████, would you please introduce yourself
```

1  to the jury?

2       A       Hello, jury.  I'm ▮▮▮▮▮▮▮▮

3       Q       And, now, ▮▮▮▮▮▮, so that we have a clear

4  record, would you please spell your first name and your

5  last name for madam court reporter?

6       A       Okay.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

8       Q       Thank you.  ▮▮▮▮▮ how old are you?

9       A       17.

10       Q       And what is your date of birth?

11       A       01/03 of '96.

12       Q       And do you attend school?

13       A       Yes, ma'am.

14       Q       Where do you go you to school?

15       A       Nathan Bedford Forrest.

16       Q       What grade are you currently in?

17       A       I'm in my junior year.

18       Q       And are you taking additional courses along

19  with the regular high school courses?

20       A       I'm in Dual Enrollment.

21       Q       Okay.  Now, ▮▮▮▮▮, do you know an

22  individual by the name of Clifton Brooks?

23       A       Yes, ma'am.

24       Q       And how do you know Mr. Brooks?

25       A       He's my uncle through my father.

```
 1      Q     Do you see that individual in the courtroom
 2   today?
 3      A     Yes, ma'am.
 4      Q     ████████, would you please identify that
 5   individual by an article of clothing he's wearing?
 6      A     He's wearing a green, I don't know what
 7   you-all call it, I guess a jumpsuit or a
 8   (indiscernible), whatever.
 9            MS. ROSENDALE:  Okay.  Your Honor, at this
10        time may the record reflect that ████████ has
11        identified the defendant?
12            THE COURT:  The record will so reflect.
13            MS. ROSENDALE:  Thank you.
14   BY MS. ROSENDALE:
15      Q     Now, ████████, I want to return your attention
16   back to some incidents that occurred between January
17   3rd of 2003, and January 2nd of 2005.  Do you recall an
18   incident that took place during that time with Mr.
19   Brooks?
20      A     I don't know the specific years, but there
21   were incidents that took place.
22      Q     Okay.  During that timeframe between 2003 and
23   2005, how old were you?
24      A     Around seven, eight, going --
25      Q     Okay.  Do you recall an incident that took
```

1   place at that time?

2          A     Yes, ma'am.

3          Q     Okay.  And did this incident occur inside the

4   house?

11:48AM   5          A     Yes, ma'am.

6          Q     And do you recall what area of town that

7   house was located in?

8          A     Um, I think it's on the north side.  I'm not

9   sure where Sherwood is, but it was Sherwood.

11:48AM   10          Q     Okay.  Was that here in Duval County in

11   Jacksonville?

12          A     Yes, ma'am.

13          Q     Okay.  And who was living in that house with

14   you at that time?

11:48AM   15          A     Um, my brother, Ja'Cobi, and Clifton Brooks.

16          Q     Was there anybody else living with you?

17          A     Other than that, I'm not sure.  I think

18   Shannon was living with us, but I don't really, you

19   know, recall, it's been a long time.

11:48AM   20          Q     Okay.  Now, when this incident occurred,

21   where were you in the house?

22          A     I was in the room.

23          Q     What room?

24          A     One of the three rooms I suppose that I would

.   JAM   25   sleep in.

         1          Q    Okay.  What were you doing in your room at
         2    this time?
         3          A    Well, I was trying to go to sleep.
         4          Q    Okay.  Did you observe anything while you
11:49AM  5    were trying to go to sleep?
         6          A    I remember watching my brother play in the
         7    hallway.
         8          Q    Okay.  Do you remember anything else?
         9          A    Yeah.
11:49AM 10          Q    What do you remember?
        11          A    Well, I remember waking up because of the
        12    incident.
        13          Q    Okay.
        14          A    And my brother was no longer in the hallway,
11:49AM 15    he was somewhere asleep I suppose.
        16          Q    Okay.  You said you woke up because of the
        17    incident.  What incident are you referring to?
        18          A    I don't know how I'm going to word this, but
        19    the incident where Cliff -- Clifton Brooks touched me
11:49AM 20    inappropriately.
        21          Q    Okay.  Now,  ████████  I know this is
        22    difficult, but could you please explain to the jury
        23    what Mr. Brooks did to you?
        24          A    Well, I was woken up in the middle of the
   ⅃AM 25    night with him laying behind me, and I don't know what

```
 1   was inserted, but something was inserted in my butt,

 2   and when I turned to look around, he's laying there.

 3        Q    Before that incident occurred, did you see

 4   Mr. Brooks with anything in his hand?

 5        A    A toy.

 6        Q    Do you know what kind of a toy it was?

 7        A    It was this Dragonball Z Toy, it was Napa, he

 8   was bald and (indiscernible).

 9        Q    Now,          after this first incident

10   happened, did you tell anybody?

11        A    No, ma'am.

12        Q    Can you explain why you didn't tell anybody?

13        A    Fear, I suppose.

14        Q    Okay.  Now,         , I want to talk to you

15   about another incident.

16        A    Okay.

17        Q    Now, this incident, do you recall happening

18   between January 3rd of 2004, and approximately January

19   2nd of 2005?

20        A    I don't remember the specific dates.

21        Q    Okay.  How old would you have been between

22   those time periods?

23        A    2005?  It's 2013 now.

24        Q    Let me ask it this way:  The next incident

25   that occurred, how old do you recall being?
```

11:50AM (line 5)
11:50AM (line 10)
11:50AM (line 15)
11:50AM (line 20)
.AM (line 25)

1      A      Around ten.

2      Q      Okay.  And did this incident also involve Mr.

3   Brooks?

4      A      Yes, ma'am.

11:51AM   5      Q      Okay.  And did this incident take place

6   inside of a house?

7      A      Yes, ma'am.

8      Q      Was this the same house that the first

9   incident took place?

11:51AM   10      A      No, ma'am.

11      Q      Where was this house located?

12      A      Greenbrier.

13      Q      And do you recall who was living with you at

14   that house at this time?

11:51AM   15      A      It was my brother -- well, my two brothers,

16   my mother and Mr. Brooks.

17      Q      Okay.  And is this house also located in

18   Duval County, in Jacksonville?

19      A      Yes, ma'am.

11:51AM   20      Q      Okay.  Now, when the second incident

21   occurred,        , where were you in the house?

22      A      I was in my room.

23      Q      And what were you doing?

24      A      Watching TV.

▪ .AM   25      Q      Okay.  And what happened next?

1          A     Um, me and the defendant got into a dispute,
2     I cannot remember over what.
3          Q     Okay.
4          A     And I remember him leaving.  He knocked on
11:52AM   5     the door to make a request to get his drink, and when I
6     opened the door, he's standing in the hallway with it
7     up in his hand exposing his penis to me.
8          Q     Okay.  Did the defendant say anything to you
9     at that time?
11:52AM   10         A     He laughed.
11         Q     Okay.  Now, ▆▆▆▆, after the incident
12     occurred, did you ever tell anybody right away?
13         A     Not right away.
14         Q     And, again, why didn't you tell anybody right
11:52AM   15     away?
16         A     Fear.
17         Q     Now, ▆▆▆▆, there was a third incident.  I
18     want to talk to you about that.  Do you recall a third
19     incident happening?
11:53AM   20         A     Yes, ma'am.
21         Q     Do you recall how long this third incident
22     happened after the second one?
23         A     Not how long, but it was not very long at
24     all.
JAM   25         Q     Okay.  How old were you at the time of the

         1  third incident?

         2        A     Around the same age, 10 or 11.

         3        Q     Okay.  And did this incident involve the

         4  defendant?

11:53AM  5        A     Yes, ma'am.

         6        Q     And did this incident also occur inside of

         7  the house?

         8        A     Yes, ma'am.

         9        Q     And was this the same house that was on

11:53AM 10  Greenbrier?

        11        A     Yes, ma'am.

        12        Q     Now, when the incident happened, where were

        13  you in the house?

        14        A     I was in the kitchen ironing my clothes,

11:53AM 15  preparing for school.

        16        Q     Okay.  Now, what happened next when you were

        17  ironing your clothes?

        18        A     The defendant came out of the bathroom, which

        19  is located in my mom's room, and the way the house is

11:54AM 20  setup, the doors were right next to the kitchen, and

        21  the bathroom door is right next to that door, and he

        22  came out and, yet again, he exposed himself to me.

        23        Q     Now, what did you do this time when you saw?

        24        A     I told him -- I told him I was going to tell

   AM   25  on him.

1        Q       And who did you tell?

2        A       I told my mom.

3        Q       What did your mom do?

4        A       She immediately got up and she grabbed the

11:54AM  5   three of us and we left.  He was still left in the

6   house.

7        Q       Were the police ever contacted?

8        A       Yes, ma'am.

9        Q       Did the police come to your house that day?

11:54AM  10       A       Yes, ma'am.

11        Q       And after this third incident, did the

12   defendant remain in your home?

13        A       He was removed.

14        Q       Okay.  All right.  Now, ▮▮▮▮▮▮  during these

11:54AM  15   two incidents where the defendant exposed himself to

16   you, do you recall whether or not he was doing anything

17   unusual with his penis at the time?

18        A       No, ma'am.

19        Q       Okay.  Now, going back to -- do you need a

11:55AM  20   break?

21        A       I'm okay.  I'm sorry.

22        Q       Okay.  Going back to the first incident that

23   occurred when you were eight, did you eventually tell

24   someone about that incident?

          25        A       Yes, ma'am.

1        Q      And who did you tell?

2        A      I told my mom.

3        Q      And when did you tell your mom?

4        A      The day after my 16th birthday, January 4th

11:55AM   5   of last year.

6        Q      And why did you wait so long to tell her?

7        A      I really don't know.

8        Q      Now, what happened once you told your mom

9   about this incident that happened to you when you were

11:55AM  10   eight?

11       A      Um, she cried on the couch.  She contacted

12   the police and then called my brother.

13       Q      Did you at any point in time speak with a

14   female detective about all of these incidents?

11:55AM  15       A      Yes, ma'am.

16              MS. ROSENDALE:  Your Honor, may I have a

17       moment?

18              THE COURT:  Yes.

19                    (Short pause).

11:56AM  20              MS. ROSENDALE:  Your Honor, at this time I

21       have no further questions of this witness.

22              THE COURT:  Okay.  Mr. Brooks, you may

23       inquire.

24              MR. BROOKS:  Your Honor, at this time I

25       reserve the right to call back any and all

```
 1         individuals that take the stand.

 2              THE COURT:  Okay.  You can cross-examine her

 3         right now.

 4              MR. BROOKS:  I have no questions for her at

 5         this time.

 6              THE COURT:  Okay.  May this witness be

 7         excused?

 8              MS. ROSENDALE:  Your Honor, not at this time,

 9         she's subject to recall.

10              THE COURT:  Okay.  Thank you, Ms. ████████.

11                    (Witness excused).

12              THE COURT:  State, you may call your next

13         witness.

14              MS. HIXON:  Your Honor, the State would call

15         Shantell Harris.

16              THE COURT:  Ms. Harris, if you will come

17         forward and be sworn in by the clerk.

18              THE CLERK:  Raise your right hand, ma'am.

19                    SHANTELL NECOLE HARRIS,

20    having been produced and first duly sworn, testified as

21    follows:

22              THE WITNESS:  Yes, ma'am.

23              THE CLERK:  Thank you.

24              THE COURT:  Have a seat in the witness stand.

25              MS. HIXON:  May I inquire?
```

11:56AM (line 5)
11:56AM (line 10)
11:57AM (line 15)
11:57AM (line 20)
JAM (line 25)

```
 1              THE COURT:  Yes, ma'am.
 2                       DIRECT EXAMINATION
 3   BY MS. HIXON:
 4        Q     Good afternoon.  Could you introduce yourself
 5   to the jury?
 6        A     My name is Shantell Harris.
 7        Q     And, Ms. Harris, do you know someone by the
 8   name of Clifton Brooks?
 9        A     Yes, ma'am.
10        Q     How do you know Clifton Brooks?
11        A     He's the father of my children.
12        Q     And do you see Clifton Brooks here in court
13   today?
14        A     Yes, ma'am.
15        Q     And could you point him out and identify him
16   by an item of clothing?
17        A     He's right there.
18        Q     And an item of clothing?
19        A     He have on the green jumpsuit.
20              MS. HIXON:  Your Honor, may the record reflect
21        this witness has identified the defendant?
22              THE COURT:  The record will so reflect.
23   BY MS. HIXON:
24        Q     How long have you known the defendant?
25        A     Since I was 17.
```

1    Q    All right.  And how old are you now?

2    A    29.

3    Q    And do you also know someone by the name of

4    ███████████████

11:58AM  5    A    Yes, ma'am.

6    Q    How do you know her?

7    A    It's his niece.

8    Q    And how long have you known her?

9    A    I've been knowing her since she was about,

11:59AM  10   say five or six.

11   Q    Okay.  Now, I want to direct your attention

12   to when ████████ was about eight years old.

13   A    Yes, ma'am.

14   Q    Did you have occasion to witness something

11:59AM  15   happen between ████████ and the defendant?

16   A    Yes.

17   Q    What did you see happen?

18   A    It was a day when her mom, Donna, was in the

19   hospital, and, um, we went to see her, and Clifton and

11:59AM  20   I went to go get the kids from grandma and we took them

21   to his house, and later that night Ja'Cobi, her twin

22   brother, was playing a game, and he was tickling her

23   between her legs.

24   Q    Who is he?

25   A    Clifton was tickling ████████ between her

1  legs.

2       Q    What do you mean by between her legs?

3       A    On her thighs and on her vagina.

4       Q    Was it actually on the vagina?

11:59AM  5       A    Yes, ma'am.

6       Q    Okay.  And did that eventually stop?

7       A    I asked him why he tickling her like that.

8  He said because she liked it.  And I told him, You

9  don't tickle no child between their legs, and he just

12:00PM 10  kept doing it.  I got upset and I went up front to the

11  house and I played a game on the cell phone because it

12  was disturbing.

13       Q    Was there another time that you saw something

14  happen involving the defendant and ▮▮▮▮▮▮▮?

12:00PM 15       A    Yes, ma'am.

16       Q    Okay.  Can you describe that to the jury?

17       A    Okay.  It was time for bed, I tucked them

18  into bed.

19       Q    Who's that?

12:00PM 20       A    ▮▮▮▮▮▮  and Ja'Cobi.

21       Q    Okay.

22       A    And Clifton, Sr., Jr., and my daughter

23  Shamira was asleep on the couch.  It was a sofa bed,

24  and throughout the night, he would get up and say he

JPM 25  was going to check on the twins, Clifton was going to

```
        1    check on the twins, and he would -- the way the house
        2    was, you could go through the hallway to the bathroom
        3    through the -- to the master bedroom.  And he went in
        4    there quite often during the night.
12:01PM 5        Q    Okay.  When he came back, would anything be
        6    different about him?
        7        A    Yes, ma'am.
        8        Q    What?
        9        A    He would be aroused.
12:01PM 10       Q    At any point did you follow him to see if he
       11    was checking on the twins?
       12        A    The third time he got up right before day
       13    broke, I got up and then I went down the hallway while
       14    he went through the bathroom, and he was sitting on the
12:01PM 15    bed, and I saw his hand like going under the cover.
       16        Q    Okay.  Where was it specifically going under
       17    the cover?
       18        A    Between her legs.
       19        Q    How do you know it was between her legs?
12:01PM 20       A    Because when I opened the door, I asked him
       21    what he was doing.  He said he was looking for the
       22    remote, but it was on the dresser where he put it at
       23    the night before when we went to sleep.  So, when I sat
       24    down after he went out of the room to see what he was
     2PM 25    doing, I saw she was sleeping on her stomach, ███████
```

1  was sleeping on her stomach and her legs were part, and

2  that's where his hand was going.

3          MS. HIXON:  All right.  May I have a moment,

4      Your Honor?

12:02PM   5          THE COURT:  Yes.

6                      (Short pause).

7          MS. HIXON:  I don't have anything further,

8      Your Honor.

9          THE COURT:  Okay.  Mr. Brooks, you may cross.

12:02PM  10                  CROSS-EXAMINATION

11  BY MR. BROOKS:

12      Q    Ms. Harris, I'm going to ask you some

13  questions from the depositions taken on December 13th

14  at 2:15.  Ms. Anna Hixon was there from the State

12:03PM  15  Attorney's Office and she --

16          MS. HIXON:  Objection.  Improper impeachment.

17          THE COURT:  Mr. Brooks, you just need to ask

18      the witness some questions first.

19          MR. BROOKS:  Okay.  All right.

12:03PM  20  BY MR. BROOKS:

21      Q    Ms. Harris, do you know if I was in the

22  military?

23          MS. HIXON:  Objection.  Relevance.

24          THE COURT:  Sustained.

_  JPM   25  BY MR. BROOKS:

1    Q    Getting back to this situation, when you

2    relayed this situation, would you explain that one more

3    time exactly what happened?  What did you see?

4    A    Which situation?

12:03PM   5    Q    The initial situation where you was there and

6    you went upstairs with the -- with the game, or

7    something on the phone, you didn't finish, but it was

8    something around that?  What exactly --

9    A    I never said I went upstairs, I said I went

12:04PM   10   in the living room and I sat on the couch.

11   Q    But that's what you said in the depositions;

12   is that not?

13                MS. HIXON:  Objection.  Improper impeachment.

14                THE COURT:  All right.  That's improper.

12:04PM   15   BY MR. BROOKS:

16   Q    What is this incident that happened in the

17   morning --

18                THE COURT:  Wait, Mr. Brooks.  If you could --

19          Mr. Brooks.

12:04PM   20                MR. BROOKS:  Yes, ma'am.

21                THE COURT:  If you can be sure to speak into

22          the microphone.  You are having a tendency to lean

23          down and mumble and I can't hear.  I don't know if

24          the jurors can.  If you can be sure to speak into

25          the microphone, sir.

```
 1              MR. BROOKS:  It isn't on.  Hold on a second.

 2              THE COURT:  Okay.

 3    BY MR. BROOKS:

 4         Q    All right.  You stated that Donna Graydon was

 5    in the hospital?

 6         A    Yes.

 7         Q    Okay.  What happened after that situation

 8    when you picked the children up from the hospital?

 9         A    We picked the children up.

10         Q    What happened?

11         A    We went back to Sherwood to your house.

12         Q    Um, where is it located at?

13         A    5004 Fredericksburg Avenue.

14         Q    Okay.  But what happened once we got there?

15         A    Everybody was playing.

16         Q    Um-hum.

17         A    Ja'Cobi played the game and you were playing

18    with ██████.

19         Q    Um-hum.  And where were we at again?

20         A    In the master bedroom.

21         Q    But didn't you just say we was up front on

22    the couch?

23         A    No, I did not.

24         Q    I could swear you said that.

25              MS. HIXON:  Objection.  Argumentative.
```

12:05PM (lines 5, 10, 15, 20)
⌐PM (line 25)

1          MR. BROOKS:  Okay.  I need a sidebar, Your

2     Honor.  Can I --

3          THE COURT:  I'm sorry?

4          MR. BROOKS:  I need a sidebar.

12:06PM    5          THE COURT:  All right.  Can I have the

6     attorneys and Mr. Brooks and the court reporter at

7     sidebar.

8          (Sidebar conference was had as follows:)

9          THE COURT:  Okay.  Go ahead, Mr. Brooks.

12:06PM    10          MR. BROOKS:  Your Honor, I heard the address.

11     Can I now enter my exhibit?

12          THE COURT:  Bringing up the address of your

13     house?

14          MR. BROOKS:  Yes.

12:06PM    15          THE COURT:  Which exhibit?

16          MR. BROOKS:  The diagram.

17          THE COURT:  Of your house?

18          MR. BROOKS:  Yes.

19          THE COURT:  You want to show it to her?

12:07PM    20          MR. BROOKS:  Yes.

21          THE COURT:  Any problem with the State?

22          MS. HIXON:  I have no problem, I would just

23     ask that it be given to a bailiff to be given to

24     her.

/PM    25          THE COURT:  Okay.

```
 1              (At the conclusion of the sidebar conference,

 2         the further proceedings were had as follows:)

 3              MR. BROOKS:  At this time I would like to

 4         enter an exhibit with the Court's permission.

 5              THE COURT:  Okay.  We'll have the bailiff

 6         collect your exhibit.  We'll number this

 7         Defendant's Exhibit 1.

 8              MR. BROOKS:  Okay.

 9              (The drawing was received in evidence as

10         Defendant's Exhibit No. 1).

11              THE COURT:  All right.  It's being marked by

12         the clerk.  Are you going to question the witness

13         regarding Defendant's Exhibit 1?

14              MR. BROOKS:  Yes, I am.

15              THE COURT:  I would ask the bailiff, after

16         it's marked, to please hand it to the witness.

17              All right.  You may proceed, Mr. Brooks.

18    BY MR. BROOKS:

19         Q    Do you recall the drawing that you're looking

20    at now?

21              THE COURT REPORTER:  I'm sorry.  Could you

22         speak up?

23              MR. BROOKS:  I'm sorry.

24    BY MR. BROOKS:

25         Q    Do you recall the drawing that you're looking
```

12:08PM (line 5)
12:08PM (line 10)
12:08PM (line 15)
12:09PM (line 20)

|    |   |   |
|----|---|---|
| 1  |   | at now? |
| 2  | A | Yes. |
| 3  | Q | What's the drawing of? |
| 4  | A | The house on Fredericksburg Road. |

12:09PM   5   Q   Is it a correct and accurate drawing of the

6   house on Fredericksburg?

7   A   No, sir.

8   Q   Where is it inaccurate?

9   A   It's missing a door in the bathroom to the

12:09PM   10   master bedroom.

11   Q   Okay.  During deposition, you stated that you

12   went upstairs --

13   MS. HIXON:  Objection.  Improper impeachment.

14   THE COURT:  Mr. Brooks, you can certainly use

12:09PM   15   the deposition to attempt impeachment, but you need

16   to do it properly.  Can you lay the proper

17   predicate for the use of the deposition, sir?

18   MR. BROOKS:  Okay.

19   BY MR. BROOKS:

12:10PM   20   Q   And you stated that you brought the children

21   -- we brought the children home from the hospital;

22   correct?

23   A   We brought them home from Donna's house with

24   her mom.

25   Q   No, you just stated that you brought them

```
          1    home from the hospital.

          2            MS. HIXON:  Objection.  Argumentative.

          3            THE COURT:  Mr. Brooks, rather than argue with

          4        the witness, you just need to ask a question and

12:11PM   5        allow her to answer.

          6            MR. BROOKS:  All right.

          7            THE COURT:  Thank you.

          8    BY MR. BROOKS:

          9        Q    What year did this situation occur in?

12:11PM  10        A    I do not remember.

         11            MR. BROOKS:  At this time I am going to be

         12        referring to Shantell Necole Harris' deposition.

         13            THE COURT:  Okay.  Do you have a page number

         14        and line number of the deposition?

12:11PM  15            MR. BROOKS:  I'm referring to page 18, lines

         16        21 through 22.

         17    BY MR. BROOKS:

         18        Q    You were questioned --

         19            MS. HIXON:  Your Honor, the State would ask

12:12PM  20        for a sidebar before that question is asked.

         21            THE COURT:  Okay.  Approach sidebar with the

         22        court reporter, please.

         23            (A sidebar conference was had as follows:)

         24            THE COURT:  Mr. Brooks.

         25            MR. BROOKS:  Yes, ma'am.
```

1           THE COURT:  You would have referenced page 18,

2       line 21 to 22, and in the copy of the deposition

3       I'm looking at that's referencing the pistol

4       whipping incident.

12:12PM   5           MR. BROOKS:  Yes, ma'am.

6           THE COURT:  Is that what you are trying to get

7       into right now?

8           MR. BROOKS:  No, ma'am, she said she did not

9       remember when the incident happened.  This here she

12:13PM  10       said it was prior to the pistol whipping incident.

11           THE COURT:  All right.  But this doesn't tell

12       us when the pistol whipping occurred.

13           MR. BROOKS:  The pistol whipping incident

14       occurred the in 2004.

12:13PM  15           THE COURT:  I know, but neither her testimony

16       nor this deposition tells us when it occurred.  Do

17       you understand?  So that's not going to --

18           MS. HIXON:  Actually, Your Honor, this is the

19       incident for which he was arrested in 2006, and,

12:13PM  20       quite frankly, Your Honor, if he asks this

21       question, there are several questions I have not

22       asked Ms. Harris in a direct intent not to ask

23       about prior bad acts.  If he intends to ask that,

24       that's fine, but I asked for sidebar to put him on

25       notice I'm going to go in redirect to the other

1     incidents that led to that pistol whipping

2     incident.

3          THE COURT:  Do you understand this question

4     may open the door for the State to get into other

12:13PM   5     prior bad acts of yours that could very well

6     prejudice the jury against you?

7          MR. BROOKS:  Yes, ma'am, but the incident

8     actually happened in 2004, not 2006.  That's what

9     she's alleging.  There was two alleged incidents of

12:14PM  10     pistol whipping.  The first one is 2004, where she

11     said the children had lived in the house, which is

12     on the police report, the alleged police report --

13          THE COURT:  So which incident are you asking

14     her about?  Because she has testified about two

12:14PM  15     incidents that she --

16          MR. BROOKS:  I'm referring to the first

17     incident.  She's saying it was at my house and that

18     she seen this happen.

19          THE COURT:  The tickling?

12:14PM  20          MR. BROOKS:  Yes.

21          THE COURT:  And is that what this is referring

22     to in the deposition?

23          MR. BROOKS:  That's what this is referring to.

24     And she's saying that she does not remember when it

.PM  25     was, but during the deposition she said it was

1    before the pistol whipping incident.  That was

2    2004.

3         MS. HIXON:  Yes, ma'am, Your Honor, I'm just

4    putting him on notice that on redirect I will be

12:14PM  5    asking the things I did not ask before.

6         THE COURT:  If you want to try to impeach her

7    by bringing in the pistol whipping incident, do you

8    understand the State is going to get up and ask

9    more detailed questions about that that may not be

12:15PM 10    favorable to you?

11         MR. BROOKS:  And then I get to reask.

12         THE COURT:  You can ask more, but we are not

13    going to make a circus of this trial by getting

14    into this incident of charges that were not brought

12:15PM 15    against you.  Do you understand?

16         MR. BROOKS:  Yes, it is a part of it.

17         THE COURT:  No, this incident, whenever it

18    was, 2004, 2006, doesn't have to do with the

19    allegations against you relating to Jacksonville.

12:15PM 20    Do you understand?

21         MR. BROOKS:  Yes, it does, because she's

22    saying this was when the ███████ children was

23    touched, and I can show that was not the case.

24         THE COURT:  I'll leave it up to you, you're

25    your own attorney, so go ahead.

```
          1              MR. BROOKS:  So you are fine with it?

          2              THE COURT:  (Nods head).

          3              (At the conclusion of the sidebar conference,

          4         the further proceedings were had as follows:)

12:16PM   5  BY MR. BROOKS:

          6         Q    During this deposition hearing, you stated

          7  that it was before the pistol whipping incident; is

          8  that correct?

          9         A    Yes.

12:16PM  10         Q    What year was the pistol whipping incident?

         11         A    It was in 2004 or 2005.

         12              MR. BROOKS:  At this time I would like to

         13         enter as an exhibit -- enter into as an exhibit the

         14         police -- police incident report 100-9643.

12:16PM  15              MS. HIXON:  Objection.  Hearsay and lack of

         16         foundation.

         17              THE COURT:  Yeah, I'm going to have to agree.

         18         Mr. Brooks, that report cannot be introduced into

         19         evidence.

12:17PM  20  BY MR. BROOKS:

         21         Q    Okay.  And you say that was in 2004, 2005?

         22         A    I would.

         23         Q    Did you report that to the authorities?

         24         A    Yes.

     /PM 25         Q    How did you do so?
```

1       A       What, the pistol whipping?

2       Q       No, you said it happened before that, so how

3   did you report Ms. ▇▇▇▇▇s incident to the

4   authorities?

12:17PM   5       A       No, I didn't report it to the authorities, I

6   reported it to her parents.

7       Q       But at your deposition hearing -- oh, I'm

8   sorry.   Okay, page 17 to 18, line 25 through 1, you was

9   asked, "Was there a time you called the police about

12:18PM  10   seeing Clifton do something inappropriate to ▇▇▇▇?

11   You said, "Yes."   So did you call the police or not?

12       A       That was after the pistol whipping.

13       Q       No, no, no, because that's going right

14   back --

12:18PM  15           MS. HIXON:   Objection.   Argumentative.

16           MR. BROOKS:   I'm sorry.   Am I bad?

17           THE COURT:   Please, Mr. Brooks, you can ask

18       the questions and let the witness answer but don't

19       argue with the witness.

12:18PM  20           MR. BROOKS:   Okay.   I'm sorry.

21   BY MR. BROOKS:

22       Q       You stated that the incident with ▇▇▇▇ was

23   before the pistol whipping incident and now you're

24   saying -- I mean, did you not?

.   JPM  25       A       Repeat the question.

```
 1        Q     You stated at your deposition hearing that

 2   the incident with ████████ was before the pistol

 3   whipping incident?

 4        A     Yes, I did.

 5        Q     Okay.  Did you call the police for the

 6   incident?

 7        A     I told her parents.

 8        Q     And you stated at deposition you called the

 9   police.

10             MS. HIXON:  Objection.  Argumentative.

11             MR. BROOKS:  I'm sorry.  I keep doing that.

12   BY MR. BROOKS:

13        Q     But you was questioned, "Did you call the

14   police," at deposition.

15             MS. HIXON:  Objection.  Argumentative and

16        asked and answered.

17             THE COURT:  You can refer to the page number

18        and the line number, read the question, read her

19        answer, and ask her if that's what she said.

20             MR. BROOKS:  Okay.

21   BY MR. BROOKS:

22        Q     So I want to make sure -- I did it again.

23   Page 17 -- 18, line 25 through 1.  You were asked, "Was

24   there a time you called the police about seeing

25   Clifford doing something inappropriate to ████████
```

12:18PM (line 5)
12:19PM (line 10)
12:19PM (line 15)
12:19PM (line 20)
PM (line 25)

```
            1              MS. HIXON:  Objection.  Asked and answered.
            2              THE COURT:  I'll allow it a second time and no
            3          more after this.
            4              MR. BROOKS:  Okay.  All right.
12:19PM     5  BY MR. BROOKS:
            6      Q    Okay.  All right.  Referring to page 7
            7  through 8, line 25 through 2.
            8              MS. HIXON:  Your Honor, I would object as to
            9          improper impeachment and improper character
12:20PM    10          evidence.
           11              THE COURT:  I'm going to sustain.  I don't
           12          think a question has been asked that would bring
           13          this into relevance at this time.
           14              MR. BROOKS:  Okay.
12:20PM    15  BY MR. BROOKS:
           16      Q    Okay.  The question was asked, what was the
           17  pistol whipping incident you spoke of in depositions?
           18              MS. HIXON:  I'm unaware of what page is he on.
           19              THE COURT:  Are you referring to a page or a
12:21PM    20          line in the deposition.
           21              MR. BROOKS:  Let's see, the problem is --
           22              THE COURT:  Or are you just asking a question.
           23              MR. BROOKS:  Yes, I'm asking a question.
           24              THE COURT:  And what was the question?
     .PM   25  BY MR. BROOKS:
```

1  Q     What was the pistol whipping incident you
2  spoke of in depositions?
3  A     That you -- you dropped me off to my
4  sister-in-law's house, you left us there.  I called and
12:21PM  5  told you we were ready to go home, get the kids out of
6  the cold.  You came back with a passion mark on your
7  neck, some people know it as a hickey, and I asked you
8  where you got it from, and you told me that ███████ did
9  it.
12:21PM  10  Q     During that incident -- did that incident,
11  did that pistol whipping incident go to trial?
12        MS. HIXON:  Objection.  Relevance.
13        THE COURT:  Sustained.
14  BY MR. BROOKS:
12:22PM  15  Q     How old was ███████ at the time of that
16  pistol whipping incident?
17  A     She was eight.
18  Q     And what year was the pistol whipping
19  incident?
12:22PM  20  A     After (inaudible) 2004, 2005, this all
21  occurred within that timeframe.
22        MR. BROOKS:  I object, Your Honor.
23        THE COURT:  I'm sorry?
24        THE COURT REPORTER:  I can't hear you.
25        THE COURT:  I can't hear you either.

```
 1            MR. BROOKS:  I'm sorry.
 2    BY MR. BROOKS:
 3        Q    So, you do know Donna Graydon?
 4        A    Yes.
 5        Q    What was your relationship like with Donna
 6    Grayton?
 7        A    It wasn't all that good because of you.
 8        Q    How do you know Donna?
 9        A    Through you.
10        Q    Where did you first meet Donna and where was
11    she living at the time?
12        A    I don't remember where she was staying at at
13    the time.
14        Q    But at the deposition hearing on page 45 --
15            MS. HIXON:  Objection.  Improper impeachment.
16            THE COURT:  Let's not argue.  Let's just
17        advise of the page and line number, and you can
18        recite the question and answer given.
19    BY MR. BROOKS:
20        Q    All right.  On page 45, line 19 through 24,
21    you were asked, "Where did Donna live when you first
22    met her?"  And your response was, "Jammes Road."  Is
23    that correct?
24        A    Yes.
25            MR. BROOKS:  At this time I would like to file
```

12:23PM (lines 5, 10, 15, 20)
4PM (line 25)

1       an exhibit with the clerk.

2             THE COURT:  I'm sorry?

3             MR. BROOKS:  At this time I would like to file

4       the following exhibit with the clerk with the

12:24PM  5       Court's permission.

6             THE COURT:  What exhibit is that?

7             MR. BROOKS:  Um, my orders.

8             THE COURT:  I'm sorry.

9             MR. BROOKS:  My orders that you said --

12:24PM 10            THE COURT:  No, sir.

11  BY MR. BROOKS:

12       Q    Was there a time that Clifton left during the

13  military, his military career?

14       A    Repeat that.

12:24PM 15       Q    Was there a time when Clifton left during his

16  military career?

17       A    That he left when?

18       Q    Um, Jacksonville, Florida.

19       A    Yeah, he left a lot of times.

12:25PM 20       Q    Do you recall a time when Clifton left with

21  the military, around that time?

22       A    When I met Donna, yes.

23       Q    When was that?

24       A    I don't remember -- well, I do remember.  I

25  was pregnant with my son, our son, and it was like 2002

1    or '3.  2002.  2003 is when you went to Iraq.

2        Q    Was Donna still living on Jammes Road at that

3    time?

4        A    Yes.

12:25PM  5        Q    Were the children living with Donna at the

6    time?

7        A    Yes.

8        Q    What area did Clifton live in at the time?

9        A    On the north side.

12:25PM  10       Q    Where was that again?

11       A    On the north side.

12       Q    What area was that?

13       A    Sherwood.

14       Q    Okay.  Was there ever a time that Clifton

12:26PM  15   helped Donna financially?

16            MS. HIXON:  Objection.  Relevance.

17            THE COURT:  I'll sustain at this point.  I

18       don't know how that's relevant.

19            MR. BROOKS:  Okay.

12:26PM  20   BY MR. BROOKS:

21       Q    During your deposition, on page 11, line 10

22   through 12 --

23            MS. HIXON:  I would object.  Improper

24       impeachment.  There has been no question posed that

12:26PM  25       would require this.

```
 1              THE COURT:  Mr. Brooks, do you have a question
 2         you can ask the witness?
 3              MR. BROOKS:  Yeah.  (Inaudible).
 4              THE COURT REPORTER:  I'm sorry, I can't hear
 5         you.
 6              MR. BROOKS:  Yes, I already did.  I'm sorry.
 7              THE COURT:  Okay.
 8   BY MR. BROOKS:
 9         Q    During the incident when you walked in with
10   the Clifton supposedly --
11              THE COURT REPORTER:  Could you speak up?
12   BY MR. BROOKS:
13         Q    -- with Clifton touching ██████, do you
14   recall what she had on at that time?
15         A    A T-shirt and some shorts.
16         Q    That's it?
17         A    She had on underclothing, a T-shirt and some
18   shorts.
19         Q    Okay.  I'm referring to -- I'm referring to
20   page 24, line 6 through 8.  You stated that she had on
21   jean shorts and her underwear.  Is that true?
22              MS. HIXON:  Objection.  Rule of completeness.
23              THE COURT:  Which means you need to read the
24         whole question and the whole answer, Mr. Brooks.
25              MR. BROOKS:  Okay.
```

1   BY MR. BROOKS:

2       Q      "What did ███████ have on under her clothes,

3   do you remember?"  You said, "She had on jeans shorts

4   and her underwear was white and she had on a T-shirt."

12:29PM   5       A      Exactly what I said.

6              MR. BROOKS:  At this time I am referring to

7          ████████s deposition at -- taken on October --

8              MS. HIXON:  Objection.  Improper impeachment.

9              THE COURT:  No, Mr. Brooks, you can't use

12:29PM   10         someone else's deposition on this witness, you can

11         only use her deposition when questioning her.

12             MR. BROOKS:  Okay.  At this time I would like

13         to file an exhibit.

14             THE COURT:  And what exhibit would that be?

12:30PM   15         MR. BROOKS:  ████████████████ deposition from

16         October 31st, 2012.

17             THE COURT:  No, sir, that's not appropriate at

18         this time, so I'm not going to let you do that.

19             MR. BROOKS:  Okay.

12:30PM   20   BY MR. BROOKS:

21       Q      Did you and ████████ have a conversation about

22   the incident?

23       A      Yes.

24       Q      Tell us about that conversation.

25             MS. HIXON:  Objection.  Hearsay.

```
 1                  THE COURT:  Sustained.
 2    BY MR. BROOKS:
 3        Q    What time of day did that conversation take
 4    place?
 5        A    8:30 a.m.
 6        Q    I'm referring to your deposition, page 24,
 7    lines 20 through 21, you was asked what was -- "When
 8    was that conversation?
 9                  MS. HIXON:  Objection.  Improper impeachment.
10                  THE COURT:  Can you read the question and the
11             whole answer, Mr. Brooks?
12                  MS. HIXON:  And, Your Honor, again, I would
13             object, because he's attempting to elicit hearsay
14             by reading the deposition.
15                  THE COURT:  Well, the lines he's referenced --
16             what lines were those again, Mr. Brooks?
17                  MR. BROOKS:  See, the problem is --
18                  THE COURT:  20 to 21, I think.  That doesn't
19             have hearsay in it, so that I would permit.  You
20             were starting to read into line 23.  I won't allow
21             it.
22                  MR. BROOKS:  Yes, ma'am.  Okay.
23    BY MR. BROOKS:
24        Q    You stated, "It was around real close to
25    7:00."  Is that correct?
```

12:30PM 5
12:31PM 10
12:31PM 15
12:31PM 20
.PM 25

```
 1   A      (Inaudible).

 2          THE COURT REPORTER:  I'm sorry?

 3          THE WITNESS:  I don't remember saying that.

 4          MS. HIXON:  Your Honor, again, I would object,

 5   this doesn't -- the question in the deposition is

 6   not what he previously asked her and elicited an

 7   answer, this is an answer to a completely different

 8   subject matter, and he's attempting to impeach her

 9   with something --

10          THE COURT:  I see.  This doesn't ask when the

11   conversation between ████████ and Ms. Harris took

12   place, so I'll have the jury disregard that last

13   statement.  The 7:00 does not correlate to the

14   question that he's just asked the witness.  That's

15   not what this question in the deposition says.

16          If you can find a different area, you are

17   welcome to question her about it.

18          A JUROR:  (Raising hand).  Can I ask the

19   defendant to speak louder?

20          THE COURT:  I have just adjusted the

21   microphone setting so we can all hear.  Thank you

22   Mr. Juror.  We're all having a little bit of

23   difficulty hearing him.

24          Again, I remind you, Mr. Brooks, if you would

25   speak up and speak into the microphone.  If you
```

12:32PM (line 5)
12:32PM (line 10)
12:32PM (line 15)
12:34PM (line 20)
4PM (line 25)

```
 1      will adjust it closer to your mouth, because the

 2      court reporter and the jurors and I am having

 3      difficulty hearing you.

 4            And I ask for the witness, as well, so we can

 5      all hear better.  It's a big courtroom and we want

 6      to make sure we can hear the testimony.

 7            MR. BROOKS:  Yes, ma'am.

 8            THE COURT:  Thank you.

 9  BY MR. BROOKS:

10      Q     Did you and ████████ have a conversation about

11  the incident?

12            MS. HIXON:  Objection.  Asked and answered.

13            THE COURT:  Sustained.

14            MR. BROOKS:  Yes, ma'am.  At this time I'm

15      going to reserve the right to call this individual

16      back because I don't have the information being

17      material --

18            THE COURT:  Okay.  You don't have to tell me

19      why.  That's fine.  Are you done cross- examining

20      her?

21            MR. BROOKS:  Yes, ma'am.  I reserve the

22      right --

23            THE COURT:  Okay.  I understand you reserve

24      the right to recall her as a witness.

25            State, do you have any redirect?
```

12:34PM (line 5)
12:34PM (line 10)
12:35PM (line 15)
12:36PM (line 20)
3PM (line 25)

1           MS. HIXON:  Just briefly, Your Honor.

2                   REDIRECT EXAMINATION

3     BY MS. HIXON:

4           Q     Ms. Harris, I wanted to talk to about that

12:36PM   5     pistol whipping incident.

6           A     Yes, ma'am.

7           Q     Was that pistol whipping incident brought on

8     by things that happened with      █████?

9           A     He said that it did.  He said that █████

12:36PM  10     put the markings on his neck.

11          Q     Okay.  And did you confront him about that?

12          A     Yes, ma'am.

13          Q     Okay.  And I want to go back to, you were

14     asked by Mr. Brooks on cross-examination if there was

12:36PM  15     any time you called the police about doing something

16     inappropriate.  Um, did you ever call them when he

17     pistol whipped you and tell them about what happened?

18          A     Yes, ma'am.

19          Q     Okay.  And did you -- did you tell them it

12:37PM  20     was when he beat you?

21          A     Yes, ma'am.

22          Q     Okay.  And was that in 2006?

23          A     I believe so.

24          Q     Okay.  All right.  And a police report was

7PM  25     generated for that?

1    A    Yes, ma'am.

2    Q    Okay.  All right.  And was there any other

3 time after that you confronted him about what happened

4 to ████████ or what you saw him do to ████████

12:37PM  5    A    No, ma'am.

6    Q    Why not?

7    A    Because we have a permanent injunction for no

8 contact.

9         MS. HIXON:  All right.  I have nothing

12:37PM 10       further, Judge.

11         THE COURT:  Any recross at this time?

12         MR. BROOKS:  No, ma'am.  I'd reserve the

13       right.

14         THE COURT:  All right.  So may this witness be

12:38PM 15       excused at this point?

16         MS. HIXON:  Yes, subject to recall.

17         THE COURT:  Subject to recall.

18         All right.  Ms. Harris, thank you very much.

19       You are subject to recall.

12:38PM 20              (Witness excused).

21         THE COURT:  All right, ladies and gentlemen, I

22       think at this time would be a good opportunity to

23       take your lunch recess.

24         Um, let me remind you again that you will be

. __PM 25       permitted to go about your business and your

1   personal affairs, but please, during this recess,

2   do not discuss this case among yourselves or with

3   anyone else nor permit anyone to say anything to

4   you or in your presence about this case.  If anyone

12:38PM   5   attempts to say anything to you or in your presence

6   about this case, please remind them that you are on

7   this jury trying this case and ask him or her to

8   stop.  If either he or she persist, please report

9   the matter to the bailiff, who will then report it

12:38PM   10   to me.

11   Again, this case can only be tried by you on

12   the evidence presented during the trial in the

13   presence of the attorneys, and the presence of Mr.

14   Brooks, and in the presence of this Court, so

12:39PM   15   please do not conduct any investigation of your own

16   or try to visit any of the places described in the

17   evidence.  Quite frankly, you won't have enough

18   time to go and visit any of these places, but I

19   wanted to admonish you about that anyway.

12:39PM   20   We will be returning your cell phones so that

21   you can make any personal calls, but if your phones

22   have, you know, internet or Google capabilities,

23   let me admonish you to not conduct any legal

24   research on your own, don't look anything up on

JPM   25   your phones in reference to any matter about this

1 case.

2   Lastly, again, do not speak with the attorneys

3 or any of the witnesses or the defendant or anyone

4 should you see them out in the hall or during your

5 lunch recess.  The bailiffs will give you the

6 information about where you can grab something to

7 eat.  We do have an eating establishment here on

8 the second floor which may be the quickest and

9 easiest for all of you, but certainly they'll share

10 with you where you can grab something to eat or

11 drink.

12   So, we will be in recess till 1:45.  That

13 gives you just about five minutes over an hour.  At

14 1:45, you will reconvene in here and continue with

15 the trial.  And if you would also leave your

16 notebooks.  We will collect them and secure them,

17 but do not take them with you as we recess for

18 lunch.

19   All right, ladies and gentlemen, we'll be in

20 recess until 1:45.

21   (The jury was excused from the courtroom, and

22 the further proceedings were had as follows:)

23   MS. HIXON:  Your Honor, what I did is I

24 e-mailed our paralegal to bring a laptop so he can

25 view the DVD over the lunch hour.

1          THE COURT:  Okay.  Very good.  You'll be able
2     to see your DVD's.
3          MR. BROOKS:  All right.  Thank you, ma'am.
4          THE COURT:  Okay.  We'll be in recess until
12:41PM    5     1:45.
6                    (Luncheon recess).
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25                   - - -

1        **AFTERNOON SESSION**

2   **February 13, 2013                    1:45 p.m.**

3                    **- - -**

4        THE COURT:  Okay.  We're back on the record.

01:47PM   5   The defendant is present in the courtroom, as are

6   the attorneys for the State.

7        We need to get the handcuffs off the

8   defendant.  Thank you.

9        MR. BROOKS:  Yeah, unfortunately we had a lot

01:48PM   10  of issues with the DVD player and we couldn't get

11  it working right.  We had to have a tech come down

12  and it took a minute, so I still wasn't able to

13  fully watch the DVD.

14       THE COURT:  How much more do you have to

01:48PM   15  watch?

16       MS. HIXON:  Your Honor, this is why I asked

17  him if he needed to watch these and was not ready

18  to proceed to trial before we even began opening

19  statements, and he said he was ready to go.

01:49PM   20      THE COURT:  What would you like to do, Mr.

21  Brooks?

22       MR. BROOKS:  Seeing we had problems with the

23  computer itself and not me and the DVD, I guess if

24  I could have a couple more minutes, if possible?

25       THE COURT:  I'll give you a couple more

1      minutes.

2              MR. BROOKS:  Okay.

3              THE COURT:  All right.

4              MR. BROOKS:  That's pretty much it.

01:49PM    5              THE COURT:  All right.  Then have a seat and

6      you can view the DVD while we wait.  I know the

7      jurors are back there, but they just got back

8      there, so we'll wait a couple more minutes.

9                      (Short recess).

01:56PM   10              MR. BROOKS:  Okay.  I'm done.

11              THE COURT:  Okay.  Did you watch what you

12      wanted to see on the DVD?

13              MR. BROOKS:  Yes, ma'am.

14              THE COURT:  All right.  Thank you.

01:56PM   15              Let's bring the jury out please.

16              THE BAILIFF:  Jurors entering the courtroom.

17              (The jury returned to the courtroom, and the

18      further proceedings were had as follows:)

19              THE COURT:  Thank you, ladies and gentlemen.

01:57PM   20      Have a seat.

21              Make sure that the notebooks that you have

22      grabbed are those that are yours and we will

23      proceed with the trial.

24              The State, you may call your next witness.

/PM   25              MS. ROSENDALE:  Thank you, Your Honor.  The

```
 1          State would like to call Detective Collins.

 2                THE COURT:  Detective Collins.

 3                THE BAILIFF:  Officer Brown went out to look

 4          for her.

 5                THE COURT:  Detective, step forward and be

 6          sworn, please.

 7                THE CLERK:  Please raise your right hand.

 8                         M. J. COLLINS,

 9   having been produced and first duly sworn, testified as

10   follows:

11                THE WITNESS:  I do.

12                THE COURT:  Thank you.  Come have a seat.

13                     DIRECT EXAMINATION

14   BY MS. ROSENDALE:

15        Q    Good afternoon, detective.

16        A    Hello.

17        Q    Would you please introduce yourself for the

18   jury?

19        A    I'm Detective Collins with the Jacksonville

20   Sheriff's Office.

21        Q    Detective Collins, how long have you been

22   employed with the Jacksonville Sheriff's Office?

23        A    Ten years.

24        Q    What is your current assignment with the

25   Jacksonville Sheriff's Office?
```

01:58PM (line 5)
01:58PM (line 10)
01:59PM (line 15)
01:59PM (line 20)
PM (line 25)

1    A    I'm in the Sex Crimes Unit.

2    Q    And how long have you been assigned to the

3 Sex Crimes Unit?

4    A    Almost two years.

01:59PM  5    Q    And where were you assigned prior to sex

6 crimes?

7    A    I was a burglary detective.

8    Q    Now, in order to go the Sex Crimes Unit, did

9 you receive any specialized training?

01:59PM  10    A    Um, I did.  I had interview interrogation

11 training.  Also, while I was in the Sex Crimes Unit, I

12 -- they sent me to Kansas to the Forensic Unit, seeing

13 patterns and trends of sex crimes, and also how to

14 collect evidence forensically, and things like that.

01:59PM  15    Q    Detective, I'd like to turn your attention

16 back to an investigation that took place regarding

17 incidents between January of 2003 and January of 2008.

18 Do you recall that investigation?

19    A    Yes, I do.

02:00PM  20    Q    And how were you assigned to investigate this

21 case?

22    A    Um, the cases come through our office, and

23 the supervisors on a rotating schedule them, um, divide

24 cases accordingly.  So, on that day apparently it was

.PM  25 my turn to get the case, so when it came in, I was

1   assigned the case.

2       Q     And did you have occasion to come in contact

3   with an individual by the name of

4       A     I did.

02:00PM   5       Q     How did you come in contact with

6       A     She was -- her mother actually filed a report

7   on her behalf after she disclosed some incidents that

8   had occurred.

9             MR. BROOKS:   I object, Your Honor.

02:00PM  10             THE COURT:   What's the basis for your

11         objection?

12             MR. BROOKS:   It's hearsay.

13             THE COURT:   I'm going to overrule the

14         objection.   She has not told us what anyone out of

02:00PM  15         court said.

16             MR. BROOKS:   Thank you.

17             THE COURT:   Thank you.

18   BY MS. ROSENDALE:

19       Q     Did you conduct an interview with

02:00PM  20         ?

21       A     I did, I met with          at her residence.

22       Q     And during your interview, did you make any

23   physical observations about

24       A     Um, she was very uncomfortable to talk about

⌐  .PM  25   the incident.   Um, when she proceeded to talk about the

1  incident she became upset and she had stated that she

2  was actually unsure now of her sexuality because of

3  what had transpired in the past.

4          MR. BROOKS:  I object, Your Honor.  Hearsay.

02:01PM  5          THE COURT:  The statements made out of court,

6      I will sustain that as hearsay, but observations

7      are not hearsay and I will overrule as to that.

8          So, ladies and gentlemen of the jury, the out

9      of court statements that have just been testified

02:01PM  10      about, if you will please disregard those

11      statements.

12          MS. ROSENDALE:  May I proceed, Your Honor?

13          THE COURT:  You may.

14  BY MS. ROSENDALE:

02:01PM  15      Q    Now, detective, during your conversation with

16  ████████, were you able to develop a suspect in this

17  case?

18      A    Yes, I was.

19      Q    And based on that information did you make

02:01PM  20  contact with that suspect?

21      A    I did.

22      Q    And what was the suspect's name?

23      A    Clifton Brooks.

24      Q    And do you see that person in the courtroom

25  here today?

1     A     I do.

2          Q     And could you please identify him by an

3     article of clothing that he's wearing?

4          A     He's wearing a green jumpsuit.

02:02PM   5          MS. ROSENDALE:  Your Honor, let record reflect

6          that the witness has identified the defendant.

7          THE COURT:  The record shall so reflect.

8     BY MS. ROSENDALE:

9          Q     Once you identified Mr. Brooks as the

02:02PM  10     suspect, what did you do next?

11          A     Um, I called him several times.  We somewhat

12     played phone tag, and then I asked him to come in for

13     an interview.

14          Q     And did you meet with him to discuss the

02:02PM  15     allegations?

16          A     I did.

17          Q     And after your initial contact with the

18     defendant, did he ever provide you with a date of

19     birth?

02:02PM  20          A     He did.

21          Q     And do you recall what he told you what his

22     date of birth was?

23          A     May I look?

24          Q     Do you need, or --

02:02PM  25          A     It's in my police report where I wrote it

1    down.

2         Q    Do you not remember?

3         A    November -- I don't remember the exact date.

4    I have it written down.

02:02PM  5         Q    Would it help to refresh your memory if I

6    were to show you a copy of your report?

7         A    Yes.

8              MS. ROSENDALE:  Your Honor, may I approach the

9         witness?

02:03PM  10             THE COURT:  Yes, you may.

11             MS. ROSENDALE:  And, Your Honor, may I ask the

12        bailiff to show the defendant what I'm about to

13        show the witness?

14             THE COURT:  Certainly.  Would you please show

02:03PM  15        that to Mr. Brooks first?

16             Thank you.  Thank you, officer.

17   BY MS. ROSENDALE:

18        Q    Detective Collins, the bailiff has just

19   handed you what was your General Offense Report.  Let

02:03PM  20   me know when you've had a moment to review that and

21   your recollection has been refreshed.

22        A    I have.

23        Q    Okay.  Detective Collins, do you recall the

24   defendant's date of birth?

25        A    November 5th, '73.

|   |   |
|---|---|
| 1 | Q      Now, after you spoke with the defendant the |
| 2 | first time, did you continue your investigation? |
| 3 | A      I did. |
| 4 | Q      And did this investigation reveal any |
| 5 | additional potential witnesses? |

02:04PM (line 5)

|   |   |
|---|---|
| 6 | A      It did. |
| 7 | Q      And what was the individual's name that this |
| 8 | investigation revealed? |
| 9 | A      Shantell Harris and ███ , but I believe she |
| 10 | says it ████████████ |

02:04PM (line 10)

|   |   |
|---|---|
| 11 | Q      Okay.  And did Ms. Harris, Shantell Harris, |
| 12 | provide you with additional information regarding the |
| 13 | interaction between the defendant and ████ ? |
| 14 | A      She did. |
| 15 | Q      And based on that information that you |

02:04PM (line 15)

|   |   |
|---|---|
| 16 | received from these witnesses during your |
| 17 | investigation, what did you do next? |
| 18 | A      I took that information to the State |
| 19 | Attorney's Office. |
| 20 | Q      And what happened next? |

02:05PM (line 20)

|   |   |
|---|---|
| 21 | A      They issued a warrant for the suspect's |
| 22 | arrest. |
| 23 | Q      And did you actually arrest the defendant? |
| 24 | A      I did. |
| 25 | Q      And after his arrest, did you speak with him |

PM (line 25)

```
 1   again regarding the allegations?
 2        A    I actually spoke with him before I effected
 3   the arrest.
 4             MS. ROSENDALE:  Okay.  May I have a moment,
 5        Your Honor?
 6             THE COURT:  Yes.
 7                  (Short pause).
 8             MS. ROSENDALE:  Your Honor, at this time I
 9        have no further questions of this witness.
10             THE COURT:  Thank you.
11             Mr. Brooks, you may inquire.
12             MR. BROOKS:  Thank you, Your Honor.
13                  CROSS-EXAMINATION
14   BY MR. BROOKS:
15        Q    Good morning, Detective Collins.
16        A    Good morning.
17        Q    I'm going to ask you some questions myself.
18   What is your job title at JSO, or what is it that you
19   do?
20        A    I'm a detective.
21        Q    Can you tell me how it is that you first get
22   involved with cases?
23        A    They are assigned through a supervisor.
24        Q    So, can you walk me through the process as
25   far as, um, getting the incident before getting to the
```

02:05PM (line 5)
02:05PM (line 10)
02:06PM (line 15)
02:06PM (line 20)
PM (line 25)

```
 1  facts until actually arresting a suspect?

 2       A    Every case is different.

 3       Q    Just a basic walk-through.

 4       A    There's no real basic, because --

 5            MS. ROSENDALE:  Objection.  Asked and

 6       answered.

 7            THE COURT:  I'm going to overrule right now.

 8       I'm going to see how far this goes.

 9            MS. ROSENDALE:  Yes, ma'am.

10  BY MR. BROOKS:

11       Q    Okay.  Is there an interview process?

12       A    There is.

13       Q    Does the suspect give a statement at that

14  interview process?

15       A    He can.

16            MR. BROOKS:  At this time I would like to file

17       the following exhibit.

18            THE COURT:  What exhibit would that be?

19            MR. BROOKS:  The State's count form from July

20       27th, 2012.

21            THE COURT:  I'm not sure I know what that is.

22       Do you want to approach sidebar?

23            (A sidebar conference was had as follows:)

24            THE COURT:  All right, Mr. Brooks, you want to

25       enter an exhibit, State's count form, I'm not sure
```

02:07PM (line 5)
02:07PM (line 10)
02:07PM (line 15)
02:07PM (line 20)
PM (line 25)

1       what that is.

2                   MR. BROOKS:  Count form.

3                   THE COURT:  Which count form?

4                   MR. BROOKS:  The first count form.

02:08PM    5       THE COURT:  Mr. Brooks, as I've previously

6       instructed the jury earlier, the Information is not

7       evidence and they should not consider it as

8       evidence, so it would be counterintuitive for me

9       even to allow the current information into

02:08PM   10       evidence, much less the prior one that was amended,

11       so I'm not going to allow you to enter the first

12       Information filed by the State against you into

13       evidence.  That is not evidence in this case.

14                   MR. BROOKS:  Okay.  And --

02:09PM   15       THE COURT:  And, let me add, this detective

16       had nothing to do with the preparation of this

17       document, the signing of this document, or the

18       filing of this document, so it would be improper to

19       even use her to get in this document.

02:09PM   20       MR. BROOKS:  Yes, but the detective provided

21       the initial form to the count, because she did the

22       interview with me.

23                   THE COURT:  Well, you can certainly question

24       her about did she do an investigation, did she

JPM   25       interview you, did she help pass that information

```
 1              along to the State, but, otherwise, this document
 2              is not going to be moved and cannot be moved into
 3              evidence.
 4                   MR. BROOKS:  There is nothing I can do then.
 5                   THE COURT:  Okay.
 6                   MR. BROOKS:  Wow.  Thank you.
 7                   (At the conclusion of the sidebar conference,
 8              and further proceedings were had as follows:)
 9    BY MR. BROOKS:
10         Q    Okay.  Detective, did you make contact with
11    the alleged victim?
12         A    I did.
13         Q    What did the alleged victim give you account
14    of what she said happened?
15                   MS. ROSENDALE:  Objection.  Hearsay, Your
16              Honor.
17                   THE COURT:  Sustained.
18    BY MR. BROOKS:
19         Q    What is the victim's name?
20         A
21         Q    Did you have an interview with
22         A    Yes, I did.
23         Q    Where was the interview conducted at?
24         A    At her residence.
25         Q    Where's her residence located?
```

02:09PM
02:10PM
02:10PM
02:10PM
JPM

1      A      I would have to look at my General Offense

2   Report.

3      Q      During that time, did she say where the

4   incident happened?

02:11PM    5      A      Yes, she did.

6      Q      Where did she say the incident happened?

7      A      There were several incidents, which one in

8   particular are you referring to?

9      Q      The initial incident.

02:11PM   10      A      I believe 5005 Fredericksburg Avenue.

11      Q      Okay.  Did she say -- did she give you an age

12   at that time?

13      A      She did.

14      Q      What age did she give you?

02:11PM   15      A      Seven.

16      Q      Did she give you any alternate ages?

17      A      Yes.

18      Q      What alternate age did she give?

19      A      She gave me different ages for the two other

02:11PM   20   incidents.

21      Q      I'm just speaking of initial age.  Did she

22   give you an alternate age besides seven?

23      A      No, she told me she was only seven years old

24   when the first incident occurred.

2PM   25      Q      So specifically seven?

```
 1      A      Yes, that's what she said.

 2      Q      I'm going to speak about the next incident

 3  after that, did she also discuss that with you?

 4      A      She did.

 5      Q      Do you recall what she said or what the

 6  incident was?

 7      A      She referred to an incident where you had --

 8  where Clifton Brooks, or you, exposed your penis to

 9  her.

10      Q      All right.  Let me go to the third incident,

11  then.  Do you recall what the third incident was?

12      A      I do.

13      Q      Which was?

14      A      When you exposed your penis to her again.

15      Q      Okay.  But that was -- okay.  Was there ever

16  a time where              told you, or alleged that

17  she was touched on her vagina, her breasts, or in

18  between her legs, or anything like that?

19      A      Would you consider her anus between her legs?

20      Q      No, I'm considering her -- the question was

21  vagina or breasts or anything like that?

22      A      She did not allege her vagina or her breasts.

23  She did address her anus, though.

24      Q      Okay.  So she never told you that -- she

25  never alleged that incident to you?
```

02:12PM (line 5)
02:12PM (line 10)
02:12PM (line 15)
02:13PM (line 20)
PM (line 25)

```
 1      A     I don't understand the question.

 2      Q     Did ████████ ever tell you that she was

 3  touched on her vagina, her breasts, or anything like

 4  that?

 5      A     I don't feel that I can answer anything like

 6  that because she didn't say that you touched her

 7  vagina, she didn't say that you touched her breasts,

 8  she said that you digitally penetrated her anus.

 9          MR. BROOKS:  At this time I would like to

10      enter into an exhibit with the permission of the

11      Court.

12          THE COURT:  What exhibit?

13          MR. BROOKS:  State count form filed February

14      8th, 2003.  Or sidebar, if I can, to make sure it's

15      okay.

16          THE COURT:  Court reporter at sidebar.

17          (A sidebar conference was had as follows:)

18          THE COURT:  All right.  Show me the exhibit.

19          MR. BROOKS:  How can the State have this count

20      if Jacksonville never provided it?

21          THE COURT:  I'm sorry what count are you

22      referring to?

23          MR. BROOKS:  Count 2.

24          THE COURT:  Of an Information dated February

25      8th, 2013.  So -- so that's the current
```

02:14PM (line 5)
02:14PM (line 10)
02:14PM (line 15)
02:15PM (line 20)
PM (line 25)

1    Information?

2        MR. BROOKS:  ████████ ████████ never provided

3    this for -- to the detective, so how can it be on

4    there?

02:15PM   5        THE COURT:  Count 2, if you read it as or, so

6    it can be breast, genitals, genital area, or

7    buttocks, or the clothing covering them.  So

8    certainly if you want to make argument in closing,

9    but this document does not get moved into evidence.

02:15PM   10   This document is not evidence.

11       MR. BROOKS:  This is crazy.  Okay.  Unless, I

12   mean, does the State have any objection to the

13   defendant moving the Information into evidence?

14       MS. ROSENDALE:  Your Honor, it's not evidence.

02:15PM   15       THE COURT:  It isn't evidence, and I already

16   told them it's not evidence.

17       MR. BROOKS:  So, even though she provided the

18   initial -- she's saying she took the statement from

19   ████████████████

02:16PM   20       THE COURT:  Right.

21       MR. BROOKS:  And these are statements.

22       THE COURT:  No, this document is not

23   statements that she took from ████████████  this

24   is a document that the State filed against you for

25   the alleged crimes.

|   |   |
|---|---|
| 1 | MR. BROOKS:  Where did they get the |
| 2 | information from? |
| 3 | THE COURT:  You can certainly cross-examine |
| 4 | the detective what information she got and what |
| 5 | information she provided to the State all you want, |
| 6 | but this document isn't evidence, this is the |
| 7 | charging document.  This is like a traffic ticket. |
| 8 | MR. BROOKS:  Yeah, I understand that. |
| 9 | THE COURT:  That's not evidence.  Evidence is |
| 10 | what is necessary to prove -- well, you could argue |
| 11 | that the State hasn't met its burden of proving |
| 12 | this evidence, but this document in and of itself |
| 13 | is not evidence. |
| 14 | MR. BROOKS:  Wow.  Wow.  I guess I'm not going |
| 15 | many to be able to use it now. |
| 16 | THE COURT:  Okay. |
| 17 | (At the conclusion of the sidebar conference, |
| 18 | the further proceedings were had as follows:) |
| 19 | THE COURT:  Mr. Brooks, you may move on. |
| 20 | BY MR. BROOKS: |
| 21 | Q    Of the alleged incidents that ████████ told |
| 22 | you about, did you provide those to the State's |
| 23 | Attorney's Office? |
| 24 | A    Did I present them to the State Attorney's |
| 25 | Office? |

1     Q     Yes.

2     A     I did.

3     Q     And you presented all the, um, alleged

4 incidents?

02:17PM 5     A     I did.

6           MR. BROOKS:  I need a sidebar again, if

7     possible?

8           THE COURT:  Okay.  State Attorney and madam

9     court reporter.

02:18PM 10          (A sidebar conference was had as follows:)

11          MR. BROOKS:  Sorry I keep bringing everybody

12    back, but I need to understand this.

13          THE COURT:  Better this than in front of the

14    jury.

02:18PM 15          MR. BROOKS:  ███████████  never said she

16    told the detective this, so I can question her

17    about what she told?

18          THE COURT:  Not with this.  With ██████ you

19    can, but you can't use somebody else's deposition

02:18PM 20    who's not present at the deposition and who has no

21    information about the deposition.  You can't

22    impeach one witness with another witness'

23    deposition.  If you choose to call ██████,

24    certainly you can use her depositions when you

    JPM 25    question her if it's for impeachment purposes and

1    if you can do it properly, but, no, you cannot use

2    ████████s deposition with Detective Collins.

3         MR. BROOKS:  Okay.  Yes, ma'am.

4         THE COURT:  Okay?

02:19PM   5    MR. BROOKS:  All right.

6         (At the conclusion of the sidebar conference,

7    the further proceedings were had as follows:)

8         THE COURT:  Okay.  Mr. Brooks, you may

9    proceed.

02:20PM  10    MR. BROOKS:  Yes, ma'am.

11  BY MR. BROOKS:

12    Q    All right.  Detective, do you recall speaking

13  to a Shantell Necole Harris?

14    A    I did.

02:20PM  15    Q    Was there anything else that Shantell --

16  that, um, she testified about or had knowledge about

17  this case?

18    A    Can you rephrase the question?

19    Q    Was there anything else Shantell told you

02:20PM  20  about or testified or had knowledge about this case?

21    A    Anything else?  I haven't said anything that

22  she has said yet.

23    Q    Did Shantell provide you with any information

24  concerning this case?

1PM  25    A    She did.

1    Q    And what exactly did she say?

2    A    Um, she identified that she was your fiancée

3  during this timeframe.  He she had stated that she

4  observed the relationship between you and ███████ and

02:21PM  5  felt it was inappropriate, that she had witnessed a

6  time in particular that she remembered because there

7  was an argument afterwards where you were tickling, um,

8  ████████ on the top of her vagina, or on her vagina over

9  her clothing, and she got upset about it.

02:21PM  10    Q    Did she say where that incident had happened?

11    A    I don't recall.

12    Q    Does she have a sister?

13    A    She does.

14    Q    What was the sister's name?

02:22PM  15    A    I believe she has more than one.

16    Q    Was there another sister that came forward

17  that you had an interview with?

18    A    Yes, there was.

19    Q    And what was the sister's name?

02:22PM  20    A    ████    But I think she says it -- I have a

21  friend named ████, and it's spelled the same way, but I

22  think she's ████, though, ████.

23    Q    Okay.  Um, what she tell you about that

24  incident?

  .PM  25    A    ████?

1    Q    Yes?

2    A    She said there was a time you were a fiancée

3  of her sister, Shantell.  She was approximately 14

4  years old at the time.  Her mother had asked you, or

02:22PM    5  asked her to go to the store and for you to give her a

6  ride to Wal-Mart.  On the way to Wal-Mart, um, you

7  asked her to have sex with you.  She told you no.  You

8  proceeded to rub her breasts and her vagina over and

9  under her clothing, at which time she began to cry

02:22PM   10  because she stated she was scared and didn't know what

11  to do.  You then kept asking her why she was crying.

12  Um, you ended up pulling over the vehicle before

13  getting to Wal-Mart on Lem Turner and sitting in the

14  doorjamb of the vehicle and telling her not to cry, and

02:23PM   15  you told her that if she told anybody that you would

16  kill her sister and her nephews and that she wasn't

17  supposed to tell anybody, and she said that she

18  wouldn't, and you said that you were going to hold her

19  to it.  She then stated that you-all proceeded to

02:23PM   20  Wal-Mart, um, and on the way back -- because she was

21  sitting in the front seat on the way over, and on the

22  way back she made a point to sit in the back seat on

23  the ride home.

24    Q    Did she say what year that happened?

25    A    She said she was approximately 14 at the

```
 1   time.

 2         Q     So, um, roughly 2001, roughly?

 3         A     Could be.

 4         Q     Okay.  Did she say what type of vehicle?

 5         A     She said it was a dark colored blue vehicle.

 6         Q     Dark colored blue vehicle?  Did you have an

 7   interview with me?

 8         A     I had two.

 9         Q     Okay.  During those interviews, did I not

10   specifically acknowledge knowing who              was?

11         A     You did.

12         Q     I did?

13         A     You did.

14         Q     And did I admit to you to taking

15   to Wal-Mart?

16         A     You did.

17               MR. BROOKS:  At this time I would like to file

18         an exhibit, and that would be the first Police

19         Memorial Building interview between me and

20         Detective Collins.

21               MS. ROSENDALE:  Objection, Your Honor.

22               THE COURT:  Okay.

23               MS. ROSENDALE:  Entering evidence improperly

24         and Overton.

25               THE COURT:  Okay.  I'm going to need the
```

1      attorneys and Mr. Brooks at the sidebar with the

2      court reporter.

3          MR. BROOKS:  We're going to be over here a

4      lot.

02:25PM  5          (A sidebar conference was had as follows:)

6          THE COURT:  Okay.  So you want to move into

7      evidence at this point the interview -- excuse me,

8      the DVD of your interview?

9          MR. BROOKS:  Yes, ma'am.

02:25PM  10          THE COURT:  Which one?  Because I understand

11      she interviewed you twice.  Were they both taped?

12          MR. BROOKS:  I wanted the one with ████

13      ████, I believe that might be the second one,

14      when I got arrested.

02:26PM  15          THE COURT:  So you were arrested for the ████

16      ████ incident and you were interviewed for that?

17          MR. BROOKS:  No, it was the second interview,

18      because she had got information from ████████

19      and they collaborated, so they actually tainted me.

02:26PM  20          THE COURT:  So was that interview focused on

21      the ████████ incident?

22          MR. BROOKS:  Yes, it was.

23          THE COURT:  State?

24          MS. ROSENDALE:  Your Honor, he's attempting to

02:    PM  25      enter evidence in on cross-examination, which is

1    improper.

2         THE COURT:  That's correct.

3         MS. ROSENDALE:  And he's also additionally

4    violating the Overton case law, which is in

02:26PM   5    violation of the motion in limine and making it a

6    feature of the trial.

7         THE COURT:  All right.  Let me explain that,

8    because you are looking confused at the moment.

9         Mr. Brooks, first and foremost you are on

02:26PM   10   trial for the incident against ███████████   not

11   against ██████████

12        MR. BROOKS:  Right.

13        THE COURT:  While the State is going present

14   █████, as I understand, as a possible Williams Rule,

02:27PM   15   we don't want to make that a feature of the trial

16   because that's a focus overly prejudicial to you.

17   By you wanting to move into evidence the DVD of the

18   interview that focusses on the incident with ██████

19   █████████, you are making it a focus of this trial and

02:27PM   20   it will be prejudicial to you I believe to this

21   jury.  The decision is yours, but that's not going

22   to prove or disprove or assist you in your case

23   against ██████████

24        Secondly, the State filed what's called a

.PM   25   motion in limine based upon the case of Overton vs.

1       State which is preventing you from bringing in

2       self-serving statements, which I granted, and I'm

3       not sure -- and I haven't seen the video, so I'm at

4       a little bit of a loss, because I'm not sure what

02:27PM    5       the video has or does not have in it.

6            MR. BROOKS:  But if it goes to the credibility

7       of the person on the stand, can I use it?  Because

8       she just stated that I said I took her to Wal-Mart.

9       I never said that.

02:28PM   10            THE COURT:  The video shows -- do you have the

11       specific part of the video that you want to

12       reference, or how long is the video?

13            MR. BROOKS:  I just went to the specific right

14       number it is.

02:28PM   15            THE COURT:  So you don't want to move in the

16       whole video, you just want to share that one

17       portion?

18            MR. BROOKS:  Not the whole video, but just

19       from that track to the spot, I guess.

02:28PM   20            MS. HIXON:  Well --

21            MS. ROSENDALE:  That I believe violates the

22       rule of completeness.  I mean, if he's wanting to

23       show a portion, this officer has statements on

24       there --

25            MS. HIXON:  It's sort of a back door of

1       getting self-serving statements in.

2            THE COURT:  Well, if Mr. Brooks -- clearly I

3       don't think it's a good idea to show the whole

4       video.  I understand it's multiple hours.

02:28PM    5            MR. BROOKS:  It's pretty long, yes.

6            THE COURT:  And if we don't show the whole

7       video, it won't have the self-serving statements --

8       if I understand correctly, you stated that you did

9       not admit to taking her to Wal-Mart, but the

02:29PM   10       detective said you did admit to her --

11            MR. BROOKS:  Yes.  As a matter of fact, she

12       didn't respond her name is █████.  As I said at the

13       time, I hadn't seen these people in years, so I

14       don't know the names, so when she was saying the

02:29PM   15       name, she was like █████.  Well, she had so many

16       daughters, I don't remember all the names, so she

17       kind of snuck in █████ one time when she was asking

18       about as far as going to Wal-Mart.  I was like, I

19       done take them a lot of places, but I don't recall

02:29PM   20       taking anyone to Wal-Mart.

21            THE COURT:  I don't know, Mr. Brooks, because,

22       first of all --

23            MR. BROOKS:  Well, how can I ask this?  Since

24       she spoke about the vehicle, can I bring in my car

  ʟ  ⸝PM   25       title now?

1              THE COURT:  You can move in the car title,

2       sure.

3              MS. HIXON:  If I may, Your Honor, the only

4       thing is it's a dark blue vehicle, they didn't

02:30PM   5       identify the make, the model, nothing by the year,

6       nothing.

7              THE COURT:  I know, but if he wants to put in

8       his car title to show he owns an Acura, I don't see

9       anything wrong with that.  If he wants to do, it's

02:30PM  10       out of sequence.  I don't think it's going to --

11       are you okay with that?

12              MR. BROOKS:  Uh-huh.

13              THE COURT:  You need to answer verbally.

14              MS. HIXON:  Your Honor, the only thing we ask,

02:30PM  15       if we can see what he intends to move in, because

16       many of the documents I have had handwriting on

17       there and I don't know if anything would be

18       objectionable.

19              THE COURT:  If you move the document in, you

02:30PM  20       need to do it through the State, as I said prior,

21       there is no scribbling and handwriting on it, there

22       is a clean copy.

23              MR. BROOKS:  It's the same one I showed them

24       with the hand --

25              THE COURT:  Does your title have handwriting

1   on it?

2           MR. BROOKS:  Uh-huh.

3           THE COURT:  What does your copy have on it?

4           MS. HIXON:  I know there was asterisk and

02:31PM   5   writing, I don't know if what he intend to move in

6   evidence has anything more than what was provided.

7           THE COURT:  Let me see them, and if we have to

8   make a clean photocopy of it, we'll do that.

9           MR. BROOKS:  All right.

02:31PM   10          THE COURT:  Is that satisfactory?

11          MR. BROOKS:  Yes, ma'am, I guess it has to be.

12          THE COURT:  Okay.

13          (At the conclusion of the sidebar conference,

14   the further proceedings were had as follows:)

02:31PM   15          THE COURT:  All right.  Mr. Brooks, you may

16   proceed.

17          MR. BROOKS:  Thank you, ma'am.  At this time

18   I'd like to admit into evidence the following

19   exhibit -- the State -- should I show it to the

02:32PM   20   State?

21          THE COURT:  Yes.  What number is it?  Are we

22   on Defendant's Exhibit 2?

23          MR. BROOKS:  Yes, ma'am.

24          THE CLERK:  Yes.

_PM   25          THE COURT:  Yes, Defendant's Exhibit 2.

```
 1              (The car title was received in evidence as

 2         Defendant's Exhibit No. 2).

 3              THE COURT:  State, you have had an opportunity

 4         to see Defendant's Exhibit 2?

 5              MS. ROSENDALE:  Yes, ma'am.  No objection from

 6         the State.

 7              THE COURT:  Okay.  All right.  Mr. Brooks,

 8         what would you like to do with Defendant's Exhibit

 9         2?

10              MR. BROOKS:  I'd like the detective to look at

11         it, please.

12              THE COURT:  All right.

13    BY MR. BROOKS:

14         Q    Detective Collins, do you know the form

15    that's in your hand right now, have you ever seen it

16    before?

17         A    No, this is the first time that I've seen it.

18         Q    Have you ever --

19              THE COURT REPORTER:  Could you please speak

20         up?

21    BY MR. BROOKS:

22         Q    What's the name of the form that you have?

23         A    It's titled "Certificate of Title".

24         Q    Could you tell me who the registered owner

25    is, No. 1?
```

         1          A     Ah, the No. 1 that you marked?

         2          Q     Yes, the one I marked?

         3          A     Okay.   Clifton McNeil Brooks.

         4          Q     Okay.   Can you tell me what the make is, No.

02:34PM  5     4?

         6          A     It says an Acura.

         7          Q     Can you tell me what the color is, No. 3?

         8          A     Black.

         9          Q     What is the date of issue, No. 2?

02:34PM 10          A     It says, 7/25 of 2003.

        11          Q     All right.   When you spoke to Shantell

        12     Harris, did you do a background check on her?

        13                MS. ROSENDALE:   Objection, Your Honor.

        14           Relevance.

02:35PM 15                THE COURT:   Sustained.

        16                THE WITNESS:   Actually, I did.

        17                MR. BROOKS:   Ma'am?

        18                THE WITNESS:   I did.

        19                THE COURT:   Well -- and thank you, but I

02:35PM 20           sustained the objection, so you don't need to

        21           answer that question.

        22                THE WITNESS:   I apologize.

        23                THE COURT:   Mr. Brooks, you can move forward.

        24                MR. BROOKS:   All right, Your Honor.   All

  ᴸPM  25           right.   At this time I'm going to reserve the right

1    to call Detective Collins back.

2        THE COURT:  Okay.  State, do you have any

3    redirect?

4        MS. ROSENDALE:  Not at this time, Your Honor.

02:36PM    5        THE COURT:  All right.  Detective Collins, you

6    are excused, but you are subject to recall by Mr.

7    Brooks.  Thank you.

8                (Witness excused).

9        THE COURT:  All right.  State, you may call

02:36PM    10    your next witness.

11        MS. HIXON:  Yes, Your Honor, the State would

12    call ███████████

13        THE COURT:  All right.  Let me instruct the

14    jury before we hear from Ms. ██████.

02:36PM    15        Ladies and gentlemen, the evidence you are

16    about to receive concerning evidence of other

17    crimes, wrongs, or acts allegedly committed by the

18    defendant will be considered by you for the limited

19    purpose of proving motive, opportunity, or intent,

02:37PM    20    preparation, plan, knowledge, or the absence of

21    mistake or accident on the part of the defendant,

22    and you shall consider it only as it relates to

23    those issues.  However, the defendant is not on

24    trial for a crime, wrong or act that is not

25    included in the Information.

1        Thank you.

2              Ms. ███████, you can be sworn by the clerk.

3              THE CLERK:  Please raise your right hand,

4        please.

02:37PM  5                              ████████████

6    having been produced and first duly sworn, testified as

7    follows:

8              THE WITNESS:  I do.

9              THE COURT:  Thank you, ma'am.  Just have a

02:37PM 10        seat.

11              MS. HIXON:  May I inquire?

12              THE COURT:  Yes.

13                   DIRECT EXAMINATION

14    BY MS. HIXON:

02:37PM 15        Q    Good afternoon.  Could you introduce yourself

16    to the jury?

17        A    My name is ███████████

18        Q    And, █████, how did you spell your first name?

19        A    ████████.

02:37PM 20        Q    And, █████, what's your date of birth?

21        A    3/27/87.

22        Q    All right.  So, as you sit here today, how

23    old are you?

24        A    25.

25        Q    Now, Ms. ██████, do you know someone by the

 1  name of Clifton Brooks?

 2        A      Yes, ma'am.

 3        Q      How do you know Clifton?

 4        A      He has kids with my sister.

02:38PM   5        Q      Who is your sister?

 6        A      Shantell Harris.

 7        Q      Now, the person you know as Clifton Brooks,

 8  do you see him here in court today?

 9        A      Yes.

02:38PM  10        Q      Could you point him out and identify him by

11  an item of clothing?

12        A      Yes, he has on green.

13               MS. HIXON:   Your Honor, may the record reflect

14        the witness identified the defendant?

02:38PM  15               THE COURT:   Yes, the record will so reflect.

16  BY MS. HIXON:

17        Q      Ms. Harris, how long have you known the

18  defendant?

19        A      Um, for quite a while.

02:38PM  20        Q      All right.   I want to take you back to when

21  you were about 13 or 14.   Did you know him then?

22        A      Yes.

23        Q      All right.   And, specifically, has anything

24  ever happened between you and the defendant?

 ,PM   25        A      Yes.

1    Q    All right.  Do you remember how old you were?

2    A    13.

3    Q    13?  Okay.  And could you tell the jury what

4    the circumstances were surrounding that incident?

02:39PM    5    A    One day my mother asked him to take me to the

6    store, and my sister -- my little sister asked can she

7    ride with us, and he told her, No, we'll be right back,

8    but the way we went to the store, I never went that way

9    before.  So we was riding to the store, he put his hand

02:39PM    10    on the seat and he took his hand off the seat.  He put

11    his hand back on the seat, and then he placed his hand

12    on his gun, then he touched me in my breasts, in my

13    chest area.

14    Q    Did he say anything to you during this?

02:39PM    15    A    No.

16    Q    All right.  And then what happened?

17    A    We kept riding to the store, then he placed

18    his hand on my vagina under my clothes.

19    Q    All right.  And what happened?

02:39PM    20    A    We went on to the store.

21    Q    All right.  Did he ever say anything to you

22    on the way to the store?

23    A    He told me if I told anyone that he was going

24    to kill my sister and my nephews, that's why I never

25    did say anything about it.

```
 1        Q    Okay.  When you were on the way to the store,
 2   did you ever -- did he ever stop touching you?
 3        A    Yes.
 4        Q    Okay.  And once you got to the store -- what
 5   store was it?
 6        A    We went to Wal-Mart.
 7        Q    Do you remember which Wal-Mart?
 8        A    Lem Turner.
 9        Q    Once you got to Wal-Mart, did you go back
10   with him?
11        A    Yes.
12        Q    Was anything different about your seating
13   arrangement when you went back?
14        A    On the way back from Wal-Mart I sat in the
15   back seat.
16        Q    Why?
17        A    I felt more comfortable in the back.
18        Q    Um-hum.  Okay.  Did he notice that you sat
19   sat in the back seat?
20        A    Yes.
21        Q    Did he make any comments about it?
22        A    No.
23        Q    Did -- when you got home, did you tell
24   anybody what happened?
25        A    No.
```

|        |    |         |                                               |
|--------|----|---------|-----------------------------------------------|
|        | 1  | Q       | Why not?                                      |
|        | 2  | A       | Because I was scared.                         |
|        | 3  | Q       | Did you believe he would carry out that       |
|        | 4  | threat? |                                               |
| 02:41PM | 5 | A       | Yes.                                          |
|        | 6  | Q       | Did you finally decide to tell somebody?      |
|        | 7  | A       | Yes.                                          |
|        | 8  | Q       | Why?                                          |
|        | 9  | A       | Because I was tired of holding it in.         |
| 02:41PM | 10| Q       | After that happened, did you still hang       |
|        | 11 | around the defendant? |                           |
|        | 12 | A       | No.                                           |
|        | 13 | Q       | Why not?                                      |
|        | 14 | A       | Because I was scared.                         |
| 02:41PM | 15| Q       | Did you make active efforts to stay away from |
|        | 16 | him?   |                                               |
|        | 17 | A       | Yes.                                          |

18                MS. HIXON:  May I have just one moment, Your

19           Honor?

02:41PM 20                THE COURT:  Yes.

21                     (Short pause).

22                MS. HIXON:  I don't have anything further,

23           Your Honor.

24                THE COURT:  All right.  Thank you.

.PM 25      (          Mr. Brooks, you may inquire.

```
 1              MR. BROOKS:  Thank you, Your Honor.

 2                    CROSS-EXAMINATION

 3   BY MR. BROOKS:

 4         Q    Ms. ███████████, how did the incident get

 5   reported to the authorities?

 6         A    Say that again?

 7         Q    How did your incident get reported to the

 8   authorities?

 9         A    My sister, Shantell.

10              MR. BROOKS:  We need a sidebar, Your Honor.

11              THE COURT:  Okay.

12              (A sidebar conference was had as follows:)

13              THE COURT:  Yes, sir.

14              (A sidebar conference was has as follows:)

15              MR. BROOKS:  This is my question.

16              THE COURT:  Go ahead, Mr. Brooks.

17              MR. BROOKS:  At our hearing on the second, she

18         stated that she called the police initially, but I

19         don't have any depositions for that.

20              THE COURT:  Okay.

21              MR. BROOKS:  So how can I cross the road if I

22         never received any depositions I can use?

23              THE COURT:  You mean at the hearing from last

24         Friday?

25              MR. BROOKS:  Um-hum.
```

|||
|---|---|
| 1 | **THE COURT:  Did you order transcripts to be** |
| 2 | **prepared from that hearing?** |
| 3 | **MR. BROOKS:  Ah, no, I didn't.** |
| 4 | **THE COURT:  Okay.  And I don't believe the** |
| 02:43PM  5 | **State -- have you ordered any transcripts?** |
| 6 | **MS. HIXON:  No, we have not, Your Honor.** |
| 7 | **THE COURT:  So those transcripts don't exist,** |
| 8 | **and you can't impeach her without those** |
| 9 | **transcripts.  You can't just say, Did you say, and** |
| 02:44PM  10 | **she says no.  If she says no, that's the end of it,** |
| 11 | **that's all you can do.  If you don't have the** |
| 12 | **transcripts, you can't impeach her with a prior** |
| 13 | **inconsistent statement.  Okay?** |
| 14 | **MR. BROOKS:  Okay.** |
| 02:44PM  15 | **(At the conclusion of the sidebar conference,** |
| 16 | **the further proceedings were had as follows:)** |
| 17 | **BY MR. BROOKS:** |
| 18 | **Q    All right.  Ms.          , who did you speak to** |
| 19 | **about the incident, I mean, when the authorities got** |
| 02:44PM  20 | **involved?** |
| 21 | **A    The only two persons that know about it is my** |
| 22 | **sister, Shantell, and my kin.** |
| 23 | **Q    Okay.  Did you ever speak to a female** |
| 24 | **detective?** |
| ͻPM  25 | **A    Yes.** |

1    Q    Do you recall the detective's name?

2    A    I don't remember her name.

3    Q    Do you recall when you spoke with the

4 detective?

02:45PM    5    A    What -- what you said?

6    Q    Do you recall when you spoke to the

7 detective?

8    A    What did I tell her?

9    Q    No, do you recall when you spoke to her?

02:45PM   10    A    I don't remember when I spoke to her.

11    Q    Okay.  What -- what information did you

12 provide to the detective at that time?

13    A    What happened.

14    Q    As far as the incident, as far as what

02:45PM   15 happened?

16    A    That you took me to Wal-Mart.

17    Q    Okay.  Did you tell the detective how old you

18 were at that time?

19    A    I told her I was 13.

02:45PM   20    Q    So, then roughly that places it around 2000?

21    A    Yes, because I was in the seventh grade.

22    Q    Okay.  Do you recall telling Detective

23 Collins -- I mean, the detective where you were living

24 at when this incident happened?

02:45PM   25    A    Yes.

| | | |
|---|---|---|
| | 1 | Q    Where were you living at the time? |
| | 2 | A    On Springfield Boulevard. |
| | 3 | Q    Do you recall telling the detective the color |
| | 4 | of the vehicle the defendant had at the time? |
| 02:46PM | 5 | A    The color of your car was blue. |
| | 6 | Q    Do you recall the car itself? |
| | 7 | A    It was an Acura. |
| | 8 | Q    Acura?  Do you know the model? |
| | 9 | A    No, I don't.  It was an Acura. |
| 02:46PM | 10 | MR. BROOKS:  Okay.  All right.  At the time, |
| | 11 | Your Honor, I would be asking that Ms. ████ is |
| | 12 | provided with Exhibit 2 that we just put in, if |
| | 13 | possible. |
| | 14 | THE COURT:  The car title? |
| 02:47PM | 15 | MR. BROOKS:  Yes, ma'am. |
| | 16 | THE COURT:  All right.  Could one of the |
| | 17 | bailiffs provide Ms. ████ with the Defense |
| | 18 | Exhibit No. 2?  Thank you. |
| | 19 | BY MR. BROOKS: |
| 02:47PM | 20 | Q    Ms. ████, do you understand -- do you know |
| | 21 | what the form is you are holding right now? |
| | 22 | A    No. |
| | 23 | MR. BROOKS:  Your Honor, can I tell her what |
| | 24 | it is?  Your Honor, is that all right? |
| PM | 25 | THE COURT:  No, you can ask her questions and |

1    she can answer your questions.

2            MR. BROOKS:  All right.

3    BY MR. BROOKS:

4        Q    I'm going to get you to read what I ask you

02:47PM  5    to read off the form if you don't mind.

6            MS. HIXON:  Your Honor, I'm going to object to

7        hearsay.  She's already said she doesn't know what

8        the form is, and these have been previously read

9        into evidence by another witness.

02:47PM  10           THE COURT:  That's correct.  This witness just

11       stated she doesn't know what it is.  If you are

12       just going to have her read it -- the jury will

13       have this document to view for themselves when they

14       deliberate, plus your prior witness just read the

02:48PM  15       information off that document, so I'm going to

16       sustain the objection.

17           MR. BROOKS:  Okay.

18    BY MR. BROOKS:

19       Q    But, Ms. Harris, I'm going to ask you a

02:48PM  20    question.

21           MR. BROOKS:  If I can do that?

22           THE COURT:  Go ahead.

23    BY MR. BROOKS:

24       Q    How could I take you to Wal-Mart in 2000 when

02:48PM  25    I didn't purchase the vehicle until 2003?

|  |  |  |
|---|---|---|

1          MS. HIXON:  Objection.  Argumentative.

2          THE COURT:  That is argumentative.  Do you

3     have a question for Ms. Harris?

4          MR. BROOKS:  (Indiscernible).

02:48PM  5 BY MR. BROOKS:

6     Q    Now, you did tell the detective that you were

7  13 at the time?

8     A    Yes.

9          MR. BROOKS:  Okay.  At this time, Your Honor,

02:49PM  10     I have a motion.

11          THE COURT:  You have a what?

12          MR. BROOKS:  I have a motion.

13          THE COURT:  A motion?

14          MR. BROOKS:  Because --

02:49PM  15          THE COURT:  Well --

16          MS. HIXON:  Then, Your Honor, we have to be

17     heard at sidebar.

18          (A sidebar conference was had as follows:)

19          THE COURT:  Okay, Mr. Brooks?

02:50PM  20          MR. BROOKS:  Yes, Your Honor.  Ms. █████████

21     gave two conflicting statements.  She said she was

22     13 at the time, when she was actually 14 at the

23     time, and I want to charge her with perjury on the

24     stand.

25          THE COURT:  Okay.  That's not a motion we're

|  | 1 | going to handle right now in the middle of the |
|---|---|---|

1          going to handle right now in the middle of the

2          trial.   That's not an appropriate motion.   If you

3          want to the impeach her with her prior testimony,

4          you may do so.   What motions are you raising?

02:50PM  5          MR. BROOKS:   Hold her in contempt for perjury.

6          THE COURT:   I can't hold her in contempt for

7          perjury, she hasn't done anything in my presence to

8          merit contempt.

9          MR. BROOKS:   She just lied about her age in

02:50PM  10         your presence.

11         THE COURT:   I wasn't present previously when

12         you claim she said she was 14 at the time of the

13         incident.

14         MR. BROOKS:   Yes, at the -- at the -- she said

02:51PM  15         she was 13 at the wrongful hearing.

16         THE COURT:   At the Williams Rule hearing?

17         MR. BROOKS:   Yeah, that's what it was.

18         THE COURT:   She said she was 13?

19         MR. BROOKS:   Yes.

02:51PM  20         THE COURT:   And isn't that what she said

21         today, that she was 13?

22         MR. BROOKS:   Yes, but on the paperwork it says

23         that she was 14.

24         THE COURT:   I understand that, but that is not

.PM  25         contempt of court.   I cannot hold her in contempt

1    for that.

2            MR. BROOKS:  Okay.

3            THE COURT:  So we can't hear that motion right

4    now.  Rather, I'm going to deny that motion right

02:51PM 5    now.  All right.  We can proceed.  Thank you.

6            (At the conclusion of the sidebar conference,

7    the further proceedings were had as follows:)

8            THE COURT:  All right.  Mr. Brooks, you may

9    proceed.

02:52PM 10           MR. BROOKS:  At this time I would like to

11   enter an exhibit with the Court's permission.

12           THE COURT:  What?

13           MR. BROOKS:  The incident report No. 059475.

14           THE COURT:  Have you shown that exhibit to the

02:53PM 15   State?

16           MS. HIXON:  Yes, Your Honor.  It is a police

17   report, which the State would object to as hearsay.

18           THE COURT:  I'm going to sustain that

19   objection.

02:53PM 20           MR. BROOKS:  All right.  Then at this time I

21   would reserve the right to call Ms. ██████ back

22   tomorrow.

23           THE COURT REPORTER:  I'm sorry?

24           MR. BROOKS:  I reserve the right to call Ms.

██PM 25   ██████ back tomorrow.

1          **THE COURT:  Sir, are you finished cross-**

2     **examining her?**

3          **MR. BROOKS:  Yes.**

4          **THE COURT:  All right.  State have any**

02:53PM   5     **redirect?**

6          **MS. HIXON:  No, Your Honor.**

7          **THE COURT:  All right.  Ms. ▇▇▇▇, you are**

8     **excused, but you are subject to recall by Mr.**

9     **Brooks.  Okay?**

02:53PM   10               **(Witness excused).**

11          **THE COURT:  State, you may call your next**

12     **witness.**

13          **MS. HIXON:  Yes, Your Honor, the State would**

14     **call ▇▇▇▇▇▇▇▇▇▇▇▇**

02:53PM   15          **THE COURT:  All right.  Ladies and gentlemen,**

16     **I'm going to read to you the same instruction, and**

17     **that is that the evidence you are about to receive**

18     **concerning evidence of other crimes, wrongs, or**

19     **acts allegedly committed by the defendant will be**

02:54PM   20     **considered by you for the limited purpose of**

21     **proving motive, opportunity, intent, preparation,**

22     **plan, knowledge, or the absence of mistake or**

23     **accident on the part of the defendant, and you**

24     **shall consider it only as it relates to those**

⌐  .PM   25     **issues.  However, the defendant is not on trial for**

1    a crime, wrong, or act that is not included in the

2    Information.  Thank you.

3              Ms. ███████, you may be sworn in.

4              THE CLERK:  Please raise your right hand.

02:54PM 5                        ███████████████,

6    having been produced and first duly sworn, testified as

7    follows:

8              THE WITNESS:  I do.

9              THE COURT:  Thank you, ma'am.  Go around by

02:54PM 10        the officer and have a seat.

11             MS. HIXON:  May I inquire, Your Honor?

12             THE COURT:  Yes, you may.

13                  DIRECT EXAMINATION

14   BY MS. HIXON:

02:55PM 15        Q    Good afternoon.  Could you introduce yourself

16   to the jury?

17        A    Hi.  My name is -- my name is ███████

18   ████████.

19        Q    ███████, when were you born?

02:55PM 20        A    September 7, 1989.

21        Q    So, as you sit here today, how old are you?

22        A    23.

23        Q    ███████, do you know somebody by the name of

24   Clifton Brooks?

25        A    Yes.

```
 1        Q      How do you know Clifton Brooks?

 2        A      He was my mom's best friend.

 3        Q      And how long did you know Clifton Brooks?

 4        A      Since I was a little girl.

 5        Q      Okay.  Now, the person we're talking about,

 6   Clifton Brooks, do you see him in court today?

 7        A      Yes.

 8        Q      Can you point him out and identify him by an

 9   article of clothing?

10        A      Yes.

11        Q      Okay.  Could you go ahead and do that?

12        A      (Pointing).

13        Q      What is he wearing?  What color is he

14   wearing?

15        A      Green.

16               MS. HIXON:  Okay.  Your Honor, may the record

17        reflect this witness has identified the defendant?

18               THE COURT:  The record shall so reflect.

19   BY MS. HIXON:

20        Q      Now,          , I want to talk to you about an

21   incident that happened with the defendant.  Did

22   something happen with him?

23        A      Yes, ma'am.

24        Q      How old were you?

25        A      12.
```

1    Q    Could you tell the jury what happened?

2    A    Yes, ma'am.

3    Q    Okay.  Go ahead and tell them.

4    A    I had -- my mom was in the other room asleep

02:56PM    5    and she told me to go to bed in my mother's room, and

6    when she told me to go to bed, I was in -- I went to

7    bed, and I woke up -- how I woke up, because Clifton

8    was rubbing on my leg, rubbing up my dress, and then

9    after that, he had sexual intercourse with me.

02:57PM    10    Q    Did you want to have sexual intercourse with

11    him?

12    A    No, ma'am.

13    Q    Okay.  And how did he -- did he hold you

14    down, what did he do?

02:57PM    15    A    He started rubbing on me and stuff and then

16    had intercourse with me.

17    Q    Okay.  Did he say anything to you?

18    A    Yes.

19    Q    What did he say?

02:57PM    20    A    He was like, if I tell, he would hurt

21    everybody.

22         MR. BROOKS:  I object, Your Honor.  That's

23         hearsay.

24         THE COURT:  No, that's not.  Sustained.

/PM    25    BY MS. HIXON:

1    Q     When that happened, did you tell anybody?

2          THE COURT:   I'm sorry, I meant overruled.  I

3    apologize.   That's not hearsay.   I overrule the

4    objection.   Proceed.

02:57PM    5          MR. BROOKS:   Okay.

6    BY MS. HIXON:

7    Q     Did you tell anybody after that happened?

8    A     I told my grandmother when I was 19.

9    Q     Okay.   Why didn't you tell anybody when you

02:57PM   10    were 12?

11    A     Because I was a child, I was scared.   He said

12    he was going to hurt everyone, so I was scared, I

13    didn't want to tell.

14    Q     And you finally told when you were 19?

02:58PM   15    A     Yes.

16    Q     Okay.   And after that happened, did you hang

17    around the defendant a lot?

18    A     No.

19    Q     Why not?

02:58PM   20    A     Because I was scared of him because what he

21    had done to me.

22    Q     And it happened the one time when you were

23    12?

24    A     Yes, it happened one time.   He had sex with

⌐  ⌐PM   25    me one time when I was 12, and then when I was 14,

          1    (crying) (indiscernible) Clifton was rubbing all over
          2    my arm and stuff.
          3         Q    And what did you do?
          4         A    And someone was coming, so he stopped and
02:58PM   5    I -- I was so scared.
          6              MS. HIXON:  All right.  May I have just one
          7         moment, Your Honor?
          8              THE COURT:  Yes.
          9                       (Short pause).
02:59PM  10              MS. HIXON:  Okay.  I don't have anything
         11         further.
         12              THE COURT:  Okay.  Mr. Brooks, you may
         13         inquire.
         14                       CROSS-EXAMINATION
02:59PM  15    BY MR. BROOKS:
         16         Q    How old are you now,  ▮▮▮▮▮▮▮?
         17         A    23.
         18         Q    And how old were you when this alleged
         19    incident happened?
03:00PM  20         A    When I was 12.
         21         Q    Okay.  So that puts us roughly at maybe 2003,
         22    is that kind of correct around the year?
         23         A    Yes.
         24         Q    Okay.  Do you recall Clifton being in the
  ⌐ ⌐PM  25    military?

|    |   |   |
|----|---|---|
| 1  | A | **Yes.** |
| 2  | Q | **Okay.  Do you know what branch he was in?** |
| 3  | A | **No.** |
| 4  | Q | **Okay.  Were you aware of a time when Clifton** |

03:00PM

| 5  | **might have left with the military at any time?** |
|----|---|
| 6  | A | **No.** |
| 7  | Q | **Were you aware of Clifton actually leaving** |
| 8  | **for war?** |
| 9  | A | **No.** |

03:01PM

| 10 | Q | **Who was the first person you told about this** |
|----|---|---|
| 11 | **incident?** |
| 12 | A | **My grandmamma.** |
| 13 | Q | **What is your grandmother's name?** |
| 14 | A | **Mary Motley.** |

03:01PM

| 15 | Q | **Have you lived with Mary in the past?** |
|----|---|---|
| 16 | A | **Yeah, a while back.** |
| 17 | Q | **Have you lived with Mary between 2006 and** |
| 18 | **2007?** |
| 19 | **MS. HIXON:  Objection.  Relevance.** |

03:01PM

| 20 | **THE COURT:  I'm not sure where this is going.** |
|----|---|
| 21 | **I'll overrule for now.  Let's see, Mr. Brooks, if** |
| 22 | **you have any relevance to that question.** |
| 23 | **BY MR. BROOKS:** |
| 24 | Q | **Okay.  Have you lived with Mary between 2006** |

:PM

| 25 | **and 2007?** |

1       A       No.

2       Q       Do you know Shantell Harris?

3       A       Yes.

4       Q       How do you know Shantell Harris?

03:01PM   5       A       From coming around when she was your

6   girlfriend.

7       Q       Does Mary know Shantell Harris?

8               MS. HIXON:  Objection.  Relevance.

9               THE COURT:  Well -- and I don't know how you

03:02PM   10       establish if this witness knows what another

11       witness -- what another person knows, so I'm going

12       to sustain.

13               MR. BROOKS:  Well, it's her grandmother, so --

14               THE COURT:  Whatever.  Her grandmother's

03:02PM   15       knowledge doesn't necessarily have to be impugned

16       to her, Mr. Brooks.  I'm sorry.

17               MR. BROOKS:  I'm sorry.

18   BY MR. BROOKS:

19       Q       Was there any time you were at your

03:02PM   20   grandmother's house -- since you lived with her, did

21   Shantell Harris ever visit the home?

22       A       No.

23       Q       All right.  But did you have contact with

24   your grandmother between 2006 and 2007?

03:___PM   25       A       Not that I know of.

1    Q    So you were not aware -- hold it, let me back

2  up.  Why was it that you didn't feel comfortable coming

3  forward with this information until now?

4    A    Because it's crazy, because I had to

03:03PM   5  (indiscernible) (crying).

6    Q    Are you good now?  Okay?  Did you have any

7  contact with your grandmother between 2006 and 2007?

8         MS. HIXON:  Objection.  Asked and answered.

9         THE COURT:  It has been asked and answered,

03:04PM  10      Mr. Brooks.  I'm going to sustain that objection.

11         MR. BROOKS:  All right.

12         THE COURT:  Ms. Alexander, if you need to take

13      a break, we can take a short recess for you to

14      compose yourself, or we can move forward.  I'll

03:04PM  15      leave that up to you, ma'am.  Would you like a

16      brief recess?

17         THE WITNESS:  (No response).

18         THE COURT:  No?  What would you like to do?

19         THE WITNESS:  Be finished.

03:04PM  20         THE COURT:  You want to finish?

21         THE WITNESS:  (Nods head).

22         THE COURT:  Okay.  Mr. Brooks, you can

23      proceed.

24         MR. BROOKS:  Okay.

03:04PM  25  BY MR. BROOKS:

1        Q    You stated that you was in fear of Mr. Brooks

2   harming your family members.  If there was a time where

3   you could have came forward previous to now, would you

4   have?  If you would have felt comfortable knowing that

03:05PM   5   Clifton couldn't harm your family members, would you

6   felt comfortable with it?

7        A    This is why I'm here today.

8        Q    That's not what I'm asking.

9             MR. BROOKS:  Can I reask that?

03:05PM  10             THE COURT:  Clarify your question.

11   BY MR. BROOKS:

12        Q    What I'm asking is, now that I'm in jail and

13   you feel comfortable that your family is safe coming

14   forward now, if there had been a time in the past that

03:05PM  15   I maybe were in jail, would you have felt comfortable

16   coming forth then with your information?

17        A    Yes.

18        Q    Okay.  Were you aware of Mr. -- of Clifton's

19   arrest in 2006?

03:05PM  20        A    No, I don't know nothing about that.

21             MR. BROOKS:  I would like to enter in an

22        exhibit.

23             THE COURT:  What exhibit Mr. Brooks?

24             MR. BROOKS:  Do I have to show the State

PM  25        before I tell you?

1          THE COURT:  Can you tell me what exhibit you

2     are trying to --

3          MR. BROOKS:  This is the State's discovery

4     filed July 3rd, 2006.

03:06PM    5          THE COURT:  Okay.  You don't even need to show

6     the State, I'm not going to allow that.

7          MR. BROOKS:  All right.

8  BY MR. BROOKS:

9     Q          ████████     have you ever been engaged at any

03:07PM   10  point?

11          MS. HIXON:  Objection.  Violation of motion in

12     limine.  Irrelevant.

13          THE COURT:  I will sustain.

14  BY MR. BROOKS:

03:07PM   15     Q    Okay.  At the hearing on -- I'm sorry, I want

16  to make sure I understand this correctly.  One more

17  time, did you say you were 13 at the time this

18  situation happened?

19     A    No.

03:07PM   20     Q    How old did you say you was?

21     A    I was 12.

22          MR. BROOKS:  Okay.  At this time I'm referring

23     to the notice of -- okay.

24  BY MR. BROOKS:

25     Q    When is your birthday, ████████

1        A       September 7th, 1990.

2        Q       September?

3        A       September 7, 1990.

4        Q       Could you -- can you tell me exactly -- I got

03:08PM    5    to put it -- when exactly -- around the time that it

6    happened, was it close to your birthday, in the middle

7    towards your next birthday?  Do you know what month

8    this occurred in?

9        A       No.

03:08PM   10        Q       Can you say exactly -- can you tell if it

11   was --

12       A       No.

13       Q       I'm getting back to Shantell Harris.  You

14   said you know her.  Were there ever any incidents of

03:09PM   15   violence between -- well, I can't say that.

16            MR. BROOKS:  At this time I would like to

17       reserve the right to recall.

18            THE COURT:  All right.  Are you through with

19       cross-examination?

03:09PM   20            MR. BROOKS:  Yes, ma'am.

21            THE COURT:  Is there any redirect?

22            MS. HIXON:  No, Your Honor.

23            THE COURT:  Ms. ███████████ you are excused,

24       except you are subject to recall by Mr. Brooks.  Do

JPM   25       you understand?

```
 1              THE WITNESS:  (Nods head).

 2              THE COURT:  Okay.  Thank you, ma'am.

 3                    (Witness excused).

 4              THE COURT:  State you may call your next
03:10PM  5      witness.

 6              MS. HIXON:  Your Honor, at this time the State

 7      would rest.

 8              THE COURT:  All right.  Thank you.

 9              Okay.  Ladies and gentlemen, at this time we
03:10PM 10      do -- we will take a recess, a short recess to take

11      up some matters outside of your presence that are

12      not related, but we're going to take a 15 minute

13      recess.  It's now 3:10, so at 3:25 we'll resume.

14              I'll ask you to please leave your notebooks on
03:10PM 15      your seats.  I'm going to allow you to go into the

16      jury room.  You can get something to drink, use the

17      facilities, if you need to make a phone call, the

18      bailiffs will return your phone momentarily to make

19      such a call.

03:11PM 20              And, again, let me remind you, do not talk

21      about this case amongst yourselves.  The case is

22      not over -- the case -- I have not yet instructed

23      you nor have you heard any closing arguments.

24      Please do not use your phones to do any independent

  .PM  25      legal research or to, um, try to find out any
```

1   matter about any portion of this case, and we will

2   resume shortly in 15 minutes.  Thank you.

3        (The jury retired to the jury room, and the

4   further proceedings were had as follows:)

03:12PM  5        THE COURT:  Where is Mr. Brooks going?

6        THE BAILIFF:  I'm going to take Mr. Brooks to

7   the restroom.

8        THE COURT:  You may take Mr. Brooks to the

9   restroom and then we need to do some things on the

03:12PM  10  record.

11                     (Short recess).

12        THE COURT:  All right.  Let's go on the

13  record.  All right.  We're still in recess.  The

14  jury is still in the jury room.  The defendant is

03:16PM  15  present.  He's used the facilities.  State -- the

16  attorney for the State is here, and the State has

17  rested.

18        Mr. Brooks, you heard the State is not putting

19  on any further evidence in your case, so,

03:17PM  20  naturally, or next the matter would turn over to

21  you to call any witnesses or put on any additional

22  items of evidence that you choose to put in that

23  are admissible and relevant and that I allow to be

24  moved in.  So far you have two defense exhibits

_ .PM  25  that will go back with the jury when they

1    deliberate.  But, first and foremost, if you

2    haven't already thought about it, you need to think

3    about whether or not you want to testify in this

4    case.  So, if you will think about that decision

03:17PM  5    and let me know.

6        I do have to advise you that you have the

7    absolute right not to testify in this matter.  That

8    is your constitutional right.  The jury, as you

9    already heard me preliminarily instruct them, I

03:17PM 10    will instruct them again at the conclusion, that

11    you have that right, and they must not view your

12    decision not to testify as any type of admission of

13    guilt or in any way be influenced by that decision.

14        Of course, you also have the right to testify,

03:18PM 15    if that is what you choose to do here today, that

16    is also your constitutional right.  If you choose

17    to testify, you will be treated like any other

18    witness by the State, and if you have any prior

19    felony convictions or convictions for crimes of

03:18PM 20    dishonesty, the State will be permitted to bring

21    those out before the jury if you are to take that

22    stand.

23        If you don't testify, of course, they wouldn't

24    be permitted to bring that information out and the

03:18PM 25    jury would never know if you have any prior felony

convictions or convictions for crimes involving

dishonesty.  But I wanted to let you know that if

you choose to testify, you will be treated as any

other witness in this case and your testimony will

03:18PM  be evidence for the jury's consideration.

So, the decision, of course, though, to

testify or not testify is solely yours to make.

And so if you made that decision, I would like to

hear now what it is.  If you need an additional

03:19PM  moment or time to think about it, then please take

that time.  What would you like to do?

MR. BROOKS:  I will not testify.

THE COURT:  You want to testify?

MR. BROOKS:  No, I will not.

03:19PM  THE COURT:  Oh, you will not?  Okay.  All

right.  That is your right, so you don't have to

testify.  I will instruct the jury that they are

not to take any addition -- any view or perception

of guilt or be influenced in any way by that

03:19PM  decision.  Do you have any witnesses that you are

planning to call in your case?

MR. BROOKS:  Tomorrow?

THE COURT:  No, today.  It's only 3:20, we can

proceed to trial.

MS. HIXON:  And, Your Honor, I wanted to let

1    you know, because he did keep, um, a couple of --

2    he kept Shantell and ███. Um, they are -- if we

3    go too much longer, they are going to start

4    experiencing childcare issues. They are attempting

03:19PM    5    to find someone to take care of that.

6        THE COURT: Okay.

7        MS. HIXON: Um, but I know -- I think 4:30 is

8    when ███ has to pick her child up, so I just -- I

9    wanted to let the Court -- just put the Court on

03:19PM    10    notice that they are going to start experiencing

11    those issues if they can't find someone, but they

12    are actively trying to find someone.

13        THE COURT: Okay. And, Mr. Brooks, of course,

14    you don't have to share your strategy with us, or

03:20PM    15    with me, but who -- are you planning to call any

16    witnesses?

17        MR. BROOKS: Um, yes, ma'am. I wasn't able to

18    get no witnesses.

19        THE COURT: I'm sorry?

03:20PM    20        MR. BROOKS: I wasn't able to get no

21    witnesses.

22        THE COURT: Well, you -- you said all the

23    witnesses who testified here today, I believe

24    ████████████ and Shantell Harris, ████████

JPM    25    ████████, Detective Collins, I think everybody,

1   and ███████████ you wanted them subject to recall,

2   so that means they don't get to leave.  They are

3   still waiting outside, and that's why Ms. Hixon

4   said, if you are going to call them, some of them

03:20PM   5   have childcare issues, and perhaps we can call them

6   first and now and get them over and done with, or

7   tomorrow, but I'm ready to continue with trial, as

8   I'm sure the jury is.  It's only 3:20, we're not

9   going to break for the day, so do you have any

03:20PM   10   witnesses you want to call?

11       MR. BROOKS:  Well, I thought we were going to

12   continue until tomorrow, that's what I was

13   assuming.

14       THE COURT:  Are you not prepared to call

03:21PM   15   anyone of the ones that you've held subject to

16   recall.

17       MR. BROOKS:  Well, with all my questions and

18   exhibits, you know, not being allowed in, it kind

19   of does limit my capability of asking questions,

03:21PM   20   because my questions apply to my exhibits, so, I

21   mean --

22       THE COURT:  Well, the only exhibits I

23   prevented from coming in so far are the old

24   Informations, that was first filed in this case,

25   the current Information that's been filed in this

1          case, because those Informations are not evidence.

2          I've also not permitted the depositions to be moved

3          into evidence, because those are not appropriately

4          moved into evidence.  The police reports are all

03:21PM   5          hearsay, those cannot come into evidence.  And,

6          other than that, I think you have a diagram and a

7          car title that were moved into evidence.

8               MR. BROOKS:  Yeah, but, unfortunately, a lot

9          of my exhibits that I can't get in, my questions

03:22PM  10          are based on that, so, I mean, yeah.

11               THE COURT:  Well, do you have any other

12          questions that you could ask the witnesses that

13          would be admissible and relevant to the charges

14          that you're facing?

03:22PM  15               MR. BROOKS:  Without me being able to use my

16          exhibits, it would be kind of impossible, because

17          my exhibits contradict what they are saying, so I

18          don't really know with my questions how they could

19          be done without the exhibits.

03:22PM  20               THE COURT:  Well, give me an example, because

21          I'm losing you.  I don't know how an Information

22          filed by the State, either the original one or the

23          amended one, contradicts what these witnesses are

24          saying given that these witnesses didn't prepare

25          those documents.  That's where you lose me a little

```
 1      bit.  You can't question those witnesses about the

 2      Information that's been filed in your case.  You

 3      can't question those witnesses about police reports

 4      that they didn't prepare, and you don't have the

 5      officers who prepared those reports to come in

 6      here, and they couldn't testify about what they

 7      were told if it's hearsay.  So I'm not sure how, or

 8      what example you can give my of a question that you

 9      can't ask that you feel is admissible or relevant,

10      because you can't move into evidence the State's

11      discovery that they filed in 2006 in another

12      matter, or the Information in this case, both the

13      original and the amended one, give me an example.

14          MR. BROOKS:  Ms. ████████████████  just said

15      on the stand she was unaware of me going to jail in

16      2006, and if she had the opportunity -- if the

17      opportunity had arose where she would have felt

18      comfortable coming forward with this information.

19      If I had been in jail prior, she would have done

20      it, because she said yes.

21          THE COURT:  Okay.  And how do any of those

22      documents that didn't come in evidence, how do any

23      of those disprove or in any way impeach what she

24      had said?

25          MR. BROOKS:  Ms. ████████████████  was living
```

1    **with her grandmother, Ms. Mary Butler Motley, at**

2    **the time I was in jail in 2006.**

3    **THE COURT:  How can you prove that with the**

4    **Information or with the discovery document?**

03:24PM    5    **MR. BROOKS:  Ms. Mary Butler Motley is**

6    **actually a Category A witness in this Information,**

7    **so there is no way that Ms. [REDACTED]     could**

8    **sit here and say she was unaware when her**

9    **grandmother was actually on the case.**

03:24PM    10    **THE COURT:  So you're saying because the State**

11    **listed Mrs. Mary Butler as a Category A witness in**

12    **a 2000 (sic) case that that somehow proves that**

13    **Ms. [REDACTED]     would have been living with**

14    **her grandmother in 2006?**

03:24PM    15    **MR. BROOKS:  That went back to the other**

16    **individuals that I had down as far as my witnesses,**

17    **like I said, I had quite a number that was going**

18    **to --**

19    **THE COURT:  I know, but you wanted to go**

03:25PM    20    **forward today without calling those people.  That**

21    **was your choice.**

22    **MR. BROOKS:  Yes.  Um-hum.  So, like I said, I**

23    **mean, I can't -- there is nothing I can do, because**

24    **my questions go with the exhibits, and since my**

03:25PM    25    **exhibits aren't being allowed in --**

1        THE COURT:  So then what are you saying?  Do

2   you want to call these witnesses or do you not want

3   to call these witnesses?  It's up to you, it's your

4   case.

03:25PM  5        MR. BROOKS:  What I would like to call --

6        THE COURT:  You don't have to prove anything,

7   you don't have to disprove anything, you don't have

8   to put on any witnesses.  I've instructed the jury

9   that it not your burden to prove or disprove

03:25PM  10  anything.  Of course, if you want to put on

11  witnesses, that's your absolute right as well, and

12  we are here today and I'm ready and we're going

13  forward on trial.  And if you want recall any of

14  the witnesses that have already testified, we can

03:25PM  15  put them on and you can question them.  I will only

16  allow, of course, admissible relevant information,

17  if you have those types of questions that you wish

18  to ask.

19       MR. BROOKS:  I can't use none of my stuff, so

03:26PM  20  I guess I can't, because I can't use any of my

21  stuff.

22       THE COURT:  So what is your choice?  What is

23  your decision?

24       MR. BROOKS:  I guess I can't call anymore

25  witnesses.

1        THE COURT:  You can't or you don't want to?

2        MR. BROOKS:  Can't.  I mean, I don't want to.

3    I can't.

4        THE COURT:  Do you have any other types of

03:26PM    5    questions that you could ask them that aren't

6    related to the Information or the discovery?

7        MR. BROOKS:  All my questions pretty much go

8    towards impeaching individuals with the evidence or

9    exhibits that I have.  It goes to what their

03:26PM   10    credibility, and that was pretty much it.

11        THE COURT:  Well, you -- you are certainly

12    entitled to call witnesses and impeach their

13    credibility if you can do so properly and with

14    information and evidence that is admissible, but

03:26PM   15    you can't impeach these witnesses' credibility with

16    an Information filed by the State or a discovery

17    document prepared by the State, or a police report

18    written by someone other than them.  Do you

19    understand?

03:27PM   20        MR. BROOKS:  Um-hum.

21        THE COURT:  Do you have anything other than

22    those items, or any other question that you could

23    ask them that don't pertain to those items?

24        MR. BROOKS:  No, ma'am, I don't have that.

.PM   25        THE COURT:  All right.  So, if you hatch have

```
 1        other witnesses to call and you are not going to

 2        testify, do you have any other items that you wish

 3        to move into evidence, any exhibits or documents?

 4             MR. BROOKS:  I believe I can't.  I mean.

 5             THE COURT:  Well, any others, other than the

 6        ones we have already addressed here?

 7             MR. BROOKS:  I guess I can't, no, ma'am.

 8             THE COURT:  Okay.  Then we would be moving

 9        into closing arguments.  Are you prepared to move

10        into closing arguments?

11             MR. BROOKS:  I have a closing argument

12        statement, if that's the case as well.

13             THE COURT:  You've prepared one?

14             MR. BROOKS:  Yeah.

15             THE COURT:  Okay.  Are you prepared to go into

16        it this evening?

17             MR. BROOKS:  Yes, ma'am.

18             THE COURT:  State?

19             MS. HIXON:  Yes, Your Honor, the only thing

20        is, I know the defendant did not move for a

21        judgment of acquittal, but we would concede that

22        had he done so on Count 3, it would be properly

23        granted.

24             THE COURT:  And I was going to get to the JOA

25        in a minute.  I know the defendant did not file --
```

1          or did not orally move for a judgment of acquittal.

2          I do find as to Counts 1 and 2, in the light most

3          favorable to the State, that a prima facie case has

4          been shown for Count 1, sexual battery, Count 2,

03:28PM   5          lewd and lascivious.

6                For Count 3, I will grant an acquittal on

7          Count 3, Mr. Brooks, because the element -- even in

8          the light most favorable to the State, a prima

9          facie case of lewd or lascivious exhibition as

03:28PM   10         alleged in Count 3 was not proven, so that count

11         will go away.  That count has disappeared.  I am

12         granting an acquittal on Count 3.

13               MS. HIXON:  And, Your Honor, we would just ask

14         for a few moments.  I need to get someone up here

03:28PM   15         to get the Power Point ready and up and running, so

16         we would just ask for 15 or 20 minutes for someone

17         to do that, and then we would be prepared to go

18         into closing arguments.

19               THE COURT:  We need to have a charge

03:29PM   20         conference, then, of the jury instructions first.

21               MS. HIXON:  Oh, yes.  Yes.

22               THE COURT:  All right.  Mr. Brooks, did you

23         receive, as did I, I believe earlier this week on

24         Monday, a copy of the jury instructions?  Do you

PM        25         have them with you, sir?

1          MR. BROOKS:  No, ma'am, I don't believe I

2     brought that.

3          THE COURT:  Do you have an extra copy for Mr.

4     Brooks?

03:29PM    5          MS. HIXON:  Yes, Your Honor.

6          MR. BROOKS:  Thank you.

7          THE COURT:  All right, Mr. Brooks, now that

8     the State has rested, and when the jury comes back,

9     you can stand up and announce the defense has

03:29PM   10     rested, so that they know that no further evidence

11     or testimony will be put on.  Do you understand?

12          MR. BROOKS:  Yes, ma'am.

13          THE COURT:  And then we move into closings.

14     What we're now while the jury is out of this

03:29PM   15     courtroom -- you can have a seat.  What we're doing

16     now while the jury is out of the courtroom is going

17     through the jury instructions page by page, and you

18     should have your copy in front of you now.  Do you?

19          MR. BROOKS:  Um-hum.

03:30PM   20          THE COURT:  Okay.  And these are the jury

21     instructions you received this past Monday,

22     February the 11th?  Okay.  We're going to go

23     through those to make sure they're accurate and

24     correct and what I'm going to instruct the jury on

   ᴊPM   25     at the close of the case.  Do you understand?

1          MR. BROOKS:  Um-hum.

2          THE COURT:  All right.  So let's going to the

3     first page.  That says, "Statement of the charge."

4          MS. HIXON:  Yes, Your Honor, the State would

03:30PM  5     remove lewd or lascivious exhibition, and so it

6     would be crimes of sexual battery and lewd or

7     lascivious molestation.

8          THE COURT:  Okay.  And then we have Count 1,

9     sexual battery, victim less than 12 years of age,

03:30PM 10     and these are the three elements and these are

11     parts of the standard jury instructions.  Any

12     issues with this instruction, Mr. Brooks?

13          MR. BROOKS:  No, ma'am.

14          THE COURT:  Okay.  And then we have lesser

03:30PM 15     included crimes for sexual battery, those would

16     include attempted sexual battery, and then

17     misdemeanor simple battery.  This is the standard

18     instruction.  Do you have any objection to that?

19          MR. BROOKS:  No, ma'am.

03:31PM 20          THE COURT:  All right.  The next page is the

21     definition, the standard instruction on attempted

22     sexual battery with the two elements that the State

23     must prove for that offense.  Do you have any

24     objection to that instruction?

25          MR. BROOKS:  No, ma'am.

1　　　　　THE COURT:  The next is standard jury

2　　　instructions for battery.  Do you have an objection

3　　　to that instruction?

4　　　　　MR. BROOKS:  No.

03:31PM  5　　　　　THE COURT:  Okay.  Next we have Count 2, lewd

6　　　or lascivious molestation, and that is the standard

7　　　instruction and the three elements the State must

8　　　prove.  Do you have any objection to that

9　　　instruction?

03:32PM  10　　　　　MR. BROOKS:  No, ma'am.

11　　　　　THE COURT:  I do have a question, State.  I

12　　　know we're using the initials for the victim in

13　　　this matter.  Do you want to keep that or do you

14　　　want to have a full name?

03:32PM  15　　　　　MS. HIXON:  Yes, we normally keep those,

16　　　because they get filed with the clerk, otherwise

17　　　they -- it's because they get filed with the clerk

18　　　that we -- even if Your Honor reads her name, we

19　　　would still have to leave --

03:32PM  20　　　　　THE COURT:  Okay.  That's fine.

21　　　　　Count 3 we're going to remove since I granted

22　　　an acquittal on Count 3, so that will go in the

23　　　garbage can.

24　　　　　And on date of the crime, we'll remove that

25　　　third paragraph as to Count 3 since an acquittal

1    was granted.

2         MS. HIXON:  Yes, Your Honor.

3         THE COURT:  And we'll leave as to Counts 1 and

4    Count 2.  Is that okay with you, Mr. Brooks?

03:32PM   5         MR. BROOKS:  Yes, ma'am.

6         THE COURT:  Venue is the one sentence, that's

7    the standard instruction.  Do you have any problem

8    with that, Mr. Brooks?

9         MR. BROOKS:  No.

03:32PM   10        THE COURT:  Okay.  The next instruction is

11   plea of guilty -- excuse me, plea of not guilty,

12   reasonable doubt and burden of proof.  The same

13   instruction that I instructed the jury on

14   preliminarily.  I will give it again and that's the

03:33PM   15   standard instruction.  Any objection to that

16   instruction, Mr. Brooks?

17        MR. BROOKS:  No, ma'am.

18        THE COURT:  All right.  Weighing the evidence.

19   There are ten factors to consider, they don't all

03:33PM   20   necessarily apply in this case.  I will remove the

21   ones that don't apply.

22        State, what do you propose?

23        MS. HIXON:  Your Honor, I don't believe that

24   No. 6 applies.  I don't believe that No. 9 applies,

25   or No. 10.  Um, I know Mr. Brooks did use the

1       depositions, so arguably eight should stay in.  I

2       know some of the Williams Rule victims testified to

3    ·  threats, as well as Ms. Harris, but definitely 6, 9

4       and 10 don't apply.

03:33PM    5          THE COURT:  Okay.  I'm going in agreement that

6       six, nine and ten should come out.  Mr. Brooks, do

7       you have any other commentary or position on the

8       factors that I should read to the jury in weighing

9       the evidence?

03:34PM   10          MR. BROOKS:  Three.

11          THE COURT:  Well, one through five are

12       generally always included, and then six through

13       ten, depending on the facts of the case.  "3.  Was

14       the witness honest and straightforward in answering

03:34PM   15       the attorneys' questions," I am going to leave that

16       in.

17          MR. BROOKS:  Okay.

18          THE COURT:  Do you have any disagreement that

19       six, nine and ten should come out?

03:34PM   20          MR. BROOKS:  No, I do not.

21          THE COURT:  All right.  Do you have any

22       argument that seven or eight should come out or

23       would you like to leave those in?

24          MR. BROOKS:  I believe eight.

ᴸ  .PM   25          THE COURT:  You want eight out?

1          MR. BROOKS:  Yes.

2          THE COURT:  Well, it says, "Did the witness at

3     some other time make a statement that is

4     inconsistent with the testimony he or she gave in

03:35PM   5     court?"  And I do know you attempted to impeach

6     some of the witnesses --

7          MR. BROOKS:  Oh, yes, yes, yes, yeah.

8          THE COURT:  -- with the depositions.  I would

9     think you would want eight in; is that correct?

03:35PM   10          MR. BROOKS:  Yes, ma'am.

11          THE COURT:  Are you okay with one through

12     five, and then seven and eight?

13          MR. BROOKS:  Yes, ma'am.

14          THE COURT:  All right.  Thank you.

03:35PM   15          Next, the defendant testifying.  We will take

16     that out since you did not testify, and we will

17     leave in the instruction on the next page, the

18     defendant not testifying, that's a standard two

19     paragraph instruction.  Is that okay with you, Mr.

03:35PM   20     Brooks?

21          MR. BROOKS:  Yes, ma'am.

22          THE COURT:  All right.  Next is rules for

23     deliberation, and that is a standard instruction.

24     Do you have any objection to that, Mr. Brooks?

25          MR. BROOKS:  No, ma'am.

1       THE COURT:  All right.  Next is defendant's

2   statements.  Do you have any objection to that

3   being included, Mr. Brooks?

4       MR. BROOKS:  No, ma'am.

03:36PM  5       THE COURT:  Then I have to give the

6   instruction of evidence of other crimes, wrongs, or

7   acts.  That's the standard instruction that I gave

8   both at the beginning Ms. ████████   ████████

9   ███████████████████████████  testimony, and I'll

03:36PM 10   give again at the end.  Andy objection to that?

11       MR. BROOKS:  No, ma'am.

12       THE COURT:  The cautionary instruction is a

13   standard instruction that I'll give.

14       Notes is a standard instruction that is given.

03:36PM 15    ·  Verdict is a standard instruction that is

16   given.

17       Single defendant, multiple counts is a

18   standard instruction.

19       Are you okay with those standard instructions,

03:36PM 20   Mr. Brooks.

21       MR. BROOKS:  Yes, ma'am.

22       THE COURT:  And, lastly, is submitting the

23   case to the jury standard instruction.  No

24   objection to that instruction, Mr. Brooks?

25       MR. BROOKS:  No, ma'am.

1          THE COURT:  Okay.  Then we have the verdicts.

2     You should have copies of those as well.  We have

3     verdicts for Count I and for Count 2.  I'm going to

4     throw away the verdict for Count 3.  We're not

03:36PM    5     going to use that, of course.  Verdict as to Count

6     1 has the sexual battery and the lesser includeds,

7     which are attempted sexual battery, battery, and

8     not guilty.  Do you agree with the form of the

9     verdict for Count 1?

03:37PM   10          MR. BROOKS:  Yes, ma'am.

11          THE COURT:  And verdict for Count 2 is the

12     lewd and lascivious molestation, and no lessers --

13     no lessers for that.  Is that right, State?

14     Shouldn't we have battery?

03:37PM   15          MS. HIXON:  I believe so.  Is there no battery

16     in there?

17          THE COURT:  No.

18          MS. HIXON:  I'll add that in, Your Honor.  It

19     should be battery.

03:37PM   20          THE COURT:  And I think in the instructions as

21     well.

22          MS. HIXON:  Yes.  It's not in here.  That's my

23     error.

24          THE COURT:  We need to include the lesser for

᠘  /PM   25     battery instruction and we to include a lesser on

1      the verdict form.

2          MS. HIXON:  I'm fixing that right now, Your

3      Honor.

4          THE COURT:  Okay.  All right.  With those

03:37PM     5      revisions to be made, and we'll get a clean copy

6      for both you, for me and the State of the clean

7      version of jury instructions and a clean version,

8      one will go back with the jury when they

9      deliberate.  Do you have any exceptions or

03:37PM    10      objections to the jury instructions as proposed?

11          MR. BROOKS:  No, ma'am.

12          THE COURT:  Okay.  So, State, you will have

13      these corrected and then --

14          MS. HIXON:  I'm doing it right now, yes, Your

03:38PM    15      Honor.

16          THE COURT:  Before I read them, though, I'll

17      want to review the revised version.  And are we

18      going to show the jury the instructions on the

19      screen?  Are you-all prepared to do that?

03:38PM    20          MS. HIXON:  Um, I can be, yes, Your Honor.  I

21      will just need to -- once I save them, I'm working

22      off my thumb drive, I can go ahead and e-mail them

23      to madam clerk, or how do you want them?

24          THE COURT:  No, I think the way it's worked

PM     25      previously is if you have on the thumb drive and

1    corrected, we can plug it into the evidence cart

2    and one of the bailiffs can scroll down the

3    instructions, so, as I read, the jurors can see it

4    on their monitors in the jury box.

03:38PM    5    MS. HIXON:  All right.  I have it on my thumb

6    drive, I'll just make sure they know which file it

7    is.

8    THE COURT:  Okay.  So, since we're going into

9    closings shortly, I'll give you a couple more

03:38PM   10    moments to gather your thoughts, prepare your

11    closing arguments and finish the jury instructions,

12    and when we bring the jury back in we'll go

13    straight into closings.  The State will get to go

14    first, you will go afterwards, and then they get a

03:39PM   15    rebuttal closing.  Okay, Mr. Brooks?

16    MR. BROOKS:  Yes, ma'am.

17    MS. HIXON:  And our technical person is coming

18    to get all that set up.

19    THE COURT:  Okay.

03:50PM   20    (Short recess).

21    THE COURT:  Let's go back on the record.

22    We have the revised jury instructions.  And

23    Mr. Brooks has been provided a copy of the same.

24    Is that correct, sir?

.PM   25    MR. BROOKS:  Yes, ma'am.

|   |   |
|---|---|
| | 1 |
| | 2 |
| | 3 |
| | 4 |
| 03:52PM | 5 |

THE COURT:  Okay.  If I could, I would like to go through the revised jury instruction with the video to make sure that what the jury will see is the same thing as what I will read, so if we can scroll through those real quickly, I can confirm that.  Can you scroll through the instructions?

MS. ROSENDALE:  Yes, ma'am.

THE COURT:  Thank you.

Mr. Brooks, can you see that on your monitor?

MR. BROOKS:  Yes, ma'am.

THE COURT:  Okay.

MS. ROSENDALE:  Your Honor, let me know how fast or slow you want to go.

THE COURT:  Okay.  Okay.  Okay.  Okay.  All right.  Count 2, okay, lesser included is battery.  All right.  Definition, date of crime.  We're done with Count 2.  Okay.  Okay, that is correct.  Defendant not testifying.  Defendant's statements.  Evidence of other crimes.  And the two verdict forms for Count 1.  That's correct.  And Count 2.  Okay.

Okay.  I've reviewed the revised jury instructions, as well as what the jurors will see on their monitors.  They are one and the same.

Any exceptions or objections to these jury

                    1    instructions, Mr. Brooks?

                    2             MR. BROOKS:  No, ma'am.

                    3             THE COURT:  And you were able to view them on

                    4    your monitor as well; is that right, sir?

        03:55PM     5             MR. BROOKS:  Yes, ma'am.

                    6             THE COURT:  Okay.  And I understand, based on

                    7    you're not calling any witnesses, the witnesses

                    8    have now been excused, and so we will bring the

                    9    jury out and go straight into closing arguments.

        03:56PM     10            MR. BROOKS:  All right.

                    11            THE COURT:  All right.  So let's bring the

                    12   jury out.  And you can rest in front of the jury.

                    13            While we wait for the jury to come out, I do

                    14   want to say to those members of the gallery who are

        03:56PM     15   observing, of course it's your absolute right to be

                    16   here.  I would like there to be no commentary or

                    17   disruptions or noises during the closing arguments.

                    18            Thank you.

                    19            (The jury returned to the courtroom, and the

        03:57PM     20   further proceedings were had as follows:)

                    21            THE COURT:  Thank you, ladies and gentlemen of

                    22   the jury.  You can resume your seats and make sure

                    23   you have the correct notebook at your place for

                    24   this trial.

        PM          25            The State has now rested.

1          **Defense, do you wish to call any witnesses or**

2          **present any evidence?**

3                  **MR. BROOKS:  No, ma'am, at this time I rest.**

4                  **THE COURT:  All right.  The defense rests.**

03:58PM     5          **At this time, ladies and gentlemen, both the**

6          **State and the defendant have now rested their case.**

7                  **The attorneys and Mr. Brooks will present**

8          **their final arguments.  Each side will have equal**

9          **time, but the State is entitled to divide that time**

03:58PM    10          **between an opening argument and a rebuttal argument**

11          **after Mr. Brooks has given his closing argument.**

12                  **Please remember that what the attorneys say,**

13          **or what Mr. Brooks says, as he's representing**

14          **himself during this closing argument, is not**

03:58PM    15          **evidence and is not the law.  However, do listen**

16          **closely to the arguments as they are intended to**

17          **aid you in understanding the case.  But, again**

18          **remember, that what the attorneys say or what Mr.**

19          **Brooks says during the closing argument is not**

03:58PM    20          **evidence and is not the law.**

21                  **State, you may proceed.**

22                  **MS. ROSENDALE:  Thank you, Your Honor.  May it**

23          **please the Court?**

24                  **THE COURT:  Yes.**

〔   ⁄PM    25                  **MS. ROSENDALE:  Counsel.  Mr. Brooks.**

1     Good afternoon, ladies and gentlemen.  We've

2     heard a lot of evidence here today come from that

3     witness stand, and, as Ms. Hixon told you in jury

4     selection, the State has the absolute burden of

03:59PM   5     proof in this case.  We must prove each and every

6     element beyond and to the exclusion of a reasonable

7     doubt, and Ms. Hixon and I gladly accept that

8     burden.  And my job here today is going to be to

9     show you how we have met our burden as to the

03:59PM   10    elements of each crime that has been charged.

11         Now, again, I'm going to show you that through

12    reminding you about witness testimony that we've

13    heard here today, and the first count we have

14    charged is sexual battery.

04:00PM   15         Count 1, sexual battery on a person less than

16    12 years of age.  Now, the State must prove the

17    crime of sexual battery upon a person less than 12

18    years of age by proving the following three

19    elements beyond a reasonable doubt:

20         (CONTINUED TO VOLUME II).

21

22

23

24

25                   - - -