IN THE UNTIED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CLIFTON MCNEIL BROOKS,

      Petitioner.

v.                                          CASE NO.  3:19-cv-787-MMH-MCR

MARK S. INCH, Secretary of the
Florida Department of Corrections
(FDC).

      Respondent.

# FDC'S EXHIBIT 21

## SUPPLEMENTAL RECORD VOL 1

## DIRECT APPEAL - 1D13-1073 -VOIR DIRE

*L13.1.19833*

# IN THE
# 1st District Court of Appeal
## TALLAHASSEE, FLORIDA



CASE NO.        16-2012-CF-006884-AXXX-MA
DIVISION CR-E

APPEAL NO.      1D13-1073

# NOT FOR PUBLIC DISCLOSURE

CLIFTON MCNEIL BROOKS        Appellant___,⎞

VS                                        ⎬   RONNIE FUSSELL,
                                          ⎟   CLERK
STATE OF FLORIDA             Appellee___, ⎠   OF THE CIRCUIT AND
                                              COUNTY COURTS

# RECORD ON APPEAL

## SUPPLEMENTAL VOLUME 1

Appeal from the Circuit Court

Duval County, Florida

BEFORE THE HONORABLE JUDGE TATIANA SALVADOR

PUBLIC DEFENDER                    ATTORNEY GENERAL
FOR APPELLANT                      FOR APPELLEE

# NOT FOR PUBLIC DISCLOSURE

IN THE CIRCUIT COURT OF THE FOURTH
JUDICIAL CIRCUIT, IN AND FOR DUVAL
COUNTY, FLORIDA

CLIFTON MCNEIL BROOKS      CASE NO:   16-2012-CF-006884-AXXX-MA
                                      DIVISION CR-E
_____
          APPELLANT

STATE OF FLORIDA           APPEAL NO:  1D13-1073
_____
          APPELLEE

**SUPPLEMENTAL VOLUME 1**

| INSTRUMENT | DATE FILED | PAGE |
|---|---|---|
| MOT. FOR STATEMENT OF PARTICULARS | 10/19/12 | 1 |
| DESIGNATION TO COURT REPORTER | 05/08/14 | 2-4 |
| REPORTER'S ACKNOWLEDGEMENT | 05/13/14 | 5-7 |
| TESTIMONY & PROCEEDINGS OF FEBRUARY 11, 2013 BEFORE THE HONORABLE JUDGE TATIANA SALVADOR | 06/05/14 | 8-94 |
| CERTIFICATE OF CLERK | | |

***END***

FILED 12OCT19PM0432PM FULLER

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA.

CASE NO.: 2012-6884-CFA

DIVISION: CR-E

STATE OF FLORIDA

    VS.

CLIFTON BROOKS

_____

## MOTION FOR STATEMENT OF PARTICULARS

      Defendant, Clifton Brooks, by and through the undersigned attorney, the Public Defender for the Fourth Judicial Circuit of Florida, pursuant to Rule 3.140(n), Florida Rules of Criminal Procedure, respectfully moves this Honorable Court to order the State of Florida to file a written statement of particulars with the Court specifying as definitely as possible the place, date and time of the offense(s) charged in the Information(s).

      I HEREBY CERTIFY that a copy of the above and foregoing Motion for Statement of Particulars has been furnished to the Office of the State Attorney, by hand, this 19th day of October, 2012.

Respectfully submitted,

MATT SHIRK
PUBLIC DEFENDER

BY: _____

Darcy Galnor 0908681
Assistant Public Defender

smh

(D-02)

FILED
IN COMPUTER
DARLENE

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT,
IN AND FOR DUVAL COUNTY, FLORIDA

**CLIFTON MCNEIL BROOKS,**

      Defendant/Appellant,

v.

                              Circuit Case No. **12CF6884**
                              1st DCA Case No.   **1D13-1073**

**STATE OF FLORIDA,**

      Appellee.

_____/

**SUPPLEMENTAL DESIGNATION TO COURT REPORTER
AND DIRECTIONS TO THE CLERK**

      The Appellant, pursuant to the, order of the First District Court of Appeal (attached), First District Administrative Order 09-1, and Section 27.51(1)(f), Florida Statutes (2008), hereby designates **LORETTA SANDERS, (or assigned reporter),** Official Court Reporter, to transcribe the proceedings; and file one electronic copy and one copy of said proceedings with the Clerk of the Circuit Court, Duval County, Florida.

      Pursuant to the First District Court of Appeal's order, the Appellant directs the Circuit Clerk to prepare an electronic and two copies of a Supplemental Record on Appeal to include the following:

      1. The transcript of the all written Faretta motions filed by appellant and/or his counsel (possibly including an email of 1/25/13); the medical/doctor's evaluation as to competency to proceed with trial (possibly conducted on or after 12/7/12); transcript of the hearing on defendant's competency to proceed (different from Faretta hearing conducted on 1/28/13 already in the record); order on appellant's competency to proceed (different from Faretta hearing conducted on 1/28/13 already in record); transcript(s) of any hearings other than the Faretta hearing conducted on January 28, 2013; transcript of the jury selection held on February 11, 2013; transcript(s) of all other proceedings held on February 11, 2013; and state's response to appellant's motion for particulars of 10/19/2012 , and,

      2. A copy of these directions.

      Please prepare and forward an electronic original Supplemental Record on Appeal to **Hon. Jon S. Wheeler,** Clerk, First District Court of Appeal, 301 Martin Luther King, Jr., Boulevard, Tallahassee, FL 32399-1850; and hard copies to **Hon. Pam Bondi,** Attorney General, The Capitol, Tallahassee, FL 32399-1050, and **Hon. Nancy**

**A. Daniels,** Public Defender, Second Judicial Circuit, Leon County Courthouse, 301 South Monroe Street, Suite 401, Tallahassee, FL 32301, on or before **June 6, 2014,** in accord with the order of the First District Court of Appeal.

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the original of this document was provided by U.S. Mail and electronic transmission to **HON. RONNIE FUSSELL,** by electronic transmission to, **SANDY CONNOLLY,** Clerk of the Court, at sandy.connolly@duvalclerk.com, **LORETTA SANDERS,** Official Court Reporters,  at officialreportersinc.com,  and by electronic transmission to,**TRISHA MEGGS PATE,** Assistant Attorney General, counsel for the State of Florida, at crimapptlh@myfloridalegal.com; on this date, May 8, 2014.

Respectfully submitted,

NANCY A. DANIELS
PUBLIC DEFENDER
SECOND JUDICIAL CIRCUIT

/s/ Joanna A. Mauer
**JOANNA A. MAUER**
Assistant Public Defender
Florida Bar No. 763251
Leon County Courthouse
301 South Monroe Street, Suite 401
Tallahassee, FL 32301
(850) 606-8529
joanna.mauer@flpd2.com

ATTORNEY FOR APPELLANT

**DISTRICT COURT OF APPEAL, FIRST DISTRICT**
**2000 Drayton Drive**
**Tallahassee, Florida 32399-0950**
**Telephone No. (850)488-6151**

May 08, 2014

**CASE NO.: 1D13-1073**
L.T. No.: 16-2012CF006884-AXXX

Clifton Brooks                     v.          State of Florida

Appellant / Petitioner(s),                     Appellee / Respondent(s)

**BY ORDER OF THE COURT:**

Appellant's motion filed on May 6, 2014, seeking to supplement the record on appeal with all written Faretta motions filed by appellant and/or his counsel (possibly including an e-mail of 1/25/13); the medical/doctor's evaluation as to competency to proceed with trial (possibly conducted on or after 12/7/12); transcript of the hearing on defendant's competency to proceed (different from Faretta hearing conducted on 1/28/13 already in the record); order on appellant's competency to proceed (different than Faretta hearing conducted on 1/28/13 already in the record); transcript(s) of any hearings other than the Faretta hearing conducted on January 28, 2013; transcript of the jury selection held on February 11, 2013; transcript(s) of all other proceedings held on February 11, 2013; and state's response to appellant's motion for particulars of 10/19/12, is granted.  Counsel for movant shall ensure preparation and transmittal of the supplemental record on or before June 6, 2014, and time for service of the initial brief is extended to 30 days following transmittal of the supplemental record.

**I HEREBY CERTIFY** that the foregoing is (a true copy of) the original court order.

Served:

Hon.Pamela Jo Bondi, A.G.        Hon.Nancy A.Daniels, P.D.        Joanna Aurica Mauer, A.P.D.
Clifton Brooks                    Hon.Ronnie Fussell, Clerk        Cynthia Griffis

am

JON S. WHEELER, CLERK

May 13 2014 3:43 P

APPEAL: BILL: 1C

ATTORNEY: Mauer

DATE REC'D: 5-12-14

NOTIFIED BY: _____

DATE DUE: 6-2-14

IN THE CIRCUIT COURT OF THE F
IN AND FOR DUVAL CO

**CLIFTON MCNEIL BROOKS,**

Defendant/Appellant,

v.

Circuit Case No. 12CF6884

1st DCA Case No.  1D13-1073

**STATE OF FLORIDA,**

Appellee.

## SUPPLEMENTAL DESIGNATION TO COURT REPORTER
## AND DIRECTIONS TO THE CLERK

The Appellant, pursuant to the, order of the First District Court of Appeal (attached), First District Administrative Order 09-1, and Section 27.51(1)(f), Florida Statutes (2008), hereby designates **LORETTA SANDERS, (or assigned reporter),** Official Court Reporter, to transcribe the proceedings; and file one electronic copy and one copy of said proceedings with the Clerk of the Circuit Court, Duval County, Florida.

Pursuant to the First District Court of Appeal's order, the Appellant directs the Circuit Clerk to prepare an electronic and two copies of a Supplemental Record on Appeal to include the following:

1. The transcript of the all written Faretta motions filed by appellant and/or his counsel (possibly including an email of 1/25/13); the medical/doctor's evaluation as to competency to proceed with trial (possibly conducted on or after 12/7/12); transcript of the hearing on defendant's competency to proceed (different from Faretta hearing conducted on 1/28/13 already in the record); order on appellant's competency to proceed (different from Faretta hearing conducted on 1/28/13 already in the record); transcript(s) of any hearings other than the Faretta hearing conducted on January 28, 2013; transcript of the jury selection held on February 11, 2013; transcript(s) of all other proceedings held on February 11, 2013; and state's response to appellant's motion for particulars on 10/19/2012 , and;

→ K. Foster

2. A copy of these directions.

Please prepare and forward an electronic original Supplemental Record on Appeal to **Hon. Jon S. Wheeler,** Clerk, First District Court of Appeal, 301 Martin Luther King, Jr., Boulevard, Tallahassee, FL 32399-1850; and hard copies to **Hon. Pam Bondi,** Attorney General, The Capitol, Tallahassee, FL 32399-1050, and **Hon. Nancy**

A. Daniels, Public Defender, Second Judicial Circuit, Leon County Courthouse, 301 South Monroe Street, Suite 401, Tallahassee, FL 32301, on or before June 6, 2014, in accord with the order of the First District Court of Appeal.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the original of this document was provided by U.S. Mail and electronic transmission to HON. RONNIE FUSSELL, by electronic transmission to, SANDY CONNOLLY, Clerk of the Court, at sandy.connolly@duvalclerk.com, LORETTA SANDERS, Official Court Reporters, at officialreportersinc.com, and by electronic transmission to, TRISHA MEGGS PATE, Assistant Attorney General, counsel for the State of Florida, at crimapptlh@myfloridalegal.com, on this date, May 8, 2014.

Respectfully submitted,

NANCY A. DANIELS
PUBLIC DEFENDER
SECOND JUDICIAL CIRCUIT

/s/ Joanna A. Mauer
JOANNA A. MAUER
Assistant Public Defender
Florida Bar No. 763251
Leon County Courthouse
301 South Monroe Street, Suite 401
Tallahassee, FL 32301
(850) 606-8529
joanna.mauer@flpd2.com

ATTORNEY FOR APPELLANT

## II.   REPORTER'S ACKNOWLEDGEMENT

The foregoing designation was served on ___5-12-14___ and was received on ___5-12-14___.

Satisfactory arrangements *have* ( ) *have not* ( ) been made for payment of the transcript costs.   These financial arrangements were completed on ___5-12-14___.

The number of trial or hearing days is ___one___.   The estimated number of transcript pages is ___200___.

The transcript(s) will be completed on ___6-2-14___ or an extension of time is needed until _____.

Completion and filing of this acknowledgement by the court reporter constitutes submission to the jurisdiction of the court for all purposes in connection with these appellate proceedings.

The undersigned court reporter certifies that the foregoing is true and correct and that a copy has been furnished by mail ( ) hand delivery ( ) this ___13th___ day of ___MAY 2014___, to each of the parties or their counsel.


Date: ___5-13-14___                          _____
                                             Official Reporters, Inc.
                                             301 E. Adams Street
                                             Jacksonville, FL  32202

1

2

IN THE CIRCUIT COURT OF THE
FOURTH JUDICIAL CIRCUIT, IN
AND FOR DUVAL COUNTY, FLORIDA.

3

4

CASE NO:          12-CF-6884
1ST DCA CASE NO.: 1D13-1073
DIVISION:         CR-E

5    CLIFTON MCNEIL BROOKS

6          Defendant/Appellant

7          -vs-

*Jun 05 2014 2:49 PM*

8    STATE OF FLORIDA,

9          Appellee.

10

11   STATE OF FLORIDA )

12   COUNTY OF DUVAL  )

13

14       Proceedings before the Honorable Tatiana Salvador,

15   Judge of the Circuit Court, Division CR-E, as cause in this

16   matter came to be heard on the 11th of February, 2013,

17   before Kelly C. Foster, Court Reporter and a Notary Public

18   in and for the State of Florida at Large.

19

20

21

22

23

OFFICIAL REPORTERS, INC.
201 EAST ADAMS STREET
JACKSONVILLE, FL 32202
(904) 358-2090

24

25

```
 1    APPEARANCES:

 2          ANNA HIXON, Esquire,

 3                Assistant State Attorney,

 4                Appearing on behalf of the State of Florida.

 5          SANDRA ROSENDALE, Esquire,

 6                Assistant State Attorney,

 7                Appearing on behalf of the State of Florida.

 8          CLIFTON MCNEIL BROOKS, pro se

 9                Appearing on behalf of the Defendant.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1    (9:30 a.m.)                        February 11th, 2013
 2                    P R O C E E D I N G S
 3         MS. HIXON:  Your Honor, if the State could call
 4    Clifton Brooks at the bottom of page 2.  And I don't
 5    know if the Court got it, but I did put in the amended
 6    dates.
 7         THE COURT:  Good morning, Mr. Brooks.
 8         THE DEFENDANT:  Good morning.
 9         THE COURT:  We're here this morning for a jury
10    selection, but the State has amended your Information
11    to change a date, so you need to be re-arraigned on
12    that Information, Mr. Brooks.
13         MS. HIXON:  Yes, Your Honor.  In Count 1 and
14    Count 3 everything else is the same.  He's charged with
15    the exact same crimes, it's just we amended the date,
16    so the State would still be prepared to proceed to
17    trial.  None of the other evidence that has been
18    adduced at deposition would change.
19         THE COURT:  Do you understand that, Mr. Brooks?
20         THE DEFENDANT:  Yes, ma'am.  I'm reading the
21    Information.  I'm checking this out right quick.  This
22    is not what was said in the first place.
23         THE COURT:  So you have to enter a plea to the
24    amended Information.
25         THE DEFENDANT:  Okay.  I will not be entering a
```

```
 1        plea to this indictment because the State has yet to

 2        provide me with sworn testimony due to -- under

 3        3.140(G), so I would not enter any plea to this.

 4             THE COURT:  All right.  The Court will accept

 5        that as a plea of not guilty on your behalf on the

 6        amended Information wherein the State has changed the

 7        date.  Does the fact that an amended Information has

 8        been filed today against you change your position about

 9        going forward with jury selection and trial this week?

10        Are you ready to proceed?

11             THE DEFENDANT:  Well, I noticed Ms. Hixon had

12        changed around from the initial time.  It doesn't

13        really -- I guess that would cause a problem seeing

14        that the dates contradict the original count from the

15        prior -- from me being arrested.

16             THE COURT:  That's what the State has just

17        advised, they're amending the dates.

18             THE DEFENDANT:  Yeah.  I know.  I know that would

19        seem to be a problem, yes.  The information off of the

20        first count form is no longer credible?  I can't

21        address any issues from that first count form?

22             THE COURT:  The first count?

23             THE DEFENDANT:  Under the original --

24             MS. HIXON:  Your Honor, he's still charged in

25        Count 1 with sexual battery for the same crime, the
```

```
1     only difference is --
2            THE DEFENDANT:  No.  No.  What I'm referring to
3     is the dates has been changed.  This is what I'm
4     referring to, so on the original count form --
5            THE COURT:  Right.
6            THE DEFENDANT:  -- not the amended one --
7            THE COURT:  Right.
8            THE DEFENDANT:  -- the dates are totally
9     different, so I can't address those dates at trial?  Is
10    that what this form is denying me?
11           THE COURT:  What this form is saying is that it's
12    going to be the State's obligation to prove what's in
13    Count 1, 2 and 3 of that new amended Information.  They
14    have to prove beyond a reasonable doubt that you
15    committed that crime against that person on those
16    dates.  If you want to focus on dates from a prior
17    Information that they're not trying you on, that's
18    certainly your prerogative, but at trial this week,
19    they're going to be focussing on those amended
20    Informations, and so that's why you're now being
21    provided with that document.
22           THE DEFENDANT:  Okay.  But it's --
23           THE COURT:  You can either enter a plea of guilty
24    or not guilty to those offenses.
25           THE DEFENDANT:  Okay.  This is my question --
```

```
 1              THE COURT:  Okay.
 2              THE DEFENDANT:  I guess I'm not being heard.
 3              THE COURT:  I'm hearing you.
 4              THE DEFENDANT:  I'm just making sure.  If the
 5       Information that I was originally arrested on --
 6              THE COURT:  Right.  That's been changed.
 7              THE DEFENDANT:  -- had different dates --
 8              THE COURT:  Right.
 9              THE DEFENDANT:  -- then my whole case has been
10       built around these specific dates, and now you come in
11       and change that all around, can I still address those
12       dates and information that I have on those dates from
13       the original arrest?
14              THE COURT:  You can address whatever you wish at
15       trial if you're representing yourself.  What I'm
16       telling you is is that the State is going to go under
17       that Information, so I don't know how effective it's
18       going to be for you to address dates from an
19       Information that you're not being tried on, but that's
20       your choice.  Again, this is why every time that you've
21       been before me, do you want the representation and
22       assistance of an attorney.
23              THE DEFENDANT:  I did tell you I did, but you
24       denied me the individual that I asked for.
25              THE COURT:  Well, you can't specifically request
```

1      someone.  And again, just so the record is clear, the
2      person you've requested is Darcy Galnor.  Her office
3      has a conflict, and cannot represent you so I cannot
4      appoint Ms. Galnor to assist you either as counsel or
5      as backup.
6              THE DEFENDANT:  That's fine.
7              THE COURT:  So are you still wanting to represent
8      yourself?
9              THE DEFENDANT:  Yes, ma'am, I will.
10             THE COURT:  And you talked about now being
11     presented with a new Information that has new dates
12     when you've been preparing for trial with a different
13     date, so are you wanting to have your trial continued
14     or are you wanting to move forward with your trial
15     today?
16             THE DEFENDANT:  Actually, they have -- it has no
17     bearing on my trial.  It's fine.
18             THE COURT:  It has no bearing on your -- you want
19     to move forward today?
20             THE DEFENDANT:  Yep.  We can do that.  Is
21     everyone here?  No one's missing?
22             THE COURT:  I have no idea.  It's the State's
23     burden to prove this case, so whether they have their
24     witnesses here or not is up to them.  I have no idea
25     who is here and who isn't.

```
 1              THE DEFENDANT:  I want make sure y'all are here,

 2       and nobody is running.  I want to make sure y'all are

 3       here.

 4              THE COURT:  Okay.  We'll be picking your jury

 5       this afternoon, okay, sir?

 6              THE DEFENDANT:  I want make sure I can question

 7       someone when it begins if it's okay.

 8              THE COURT:  Okay.

 9              THE DEFENDANT:  At this time the State is not

10       being tried, I am, and this is my trial.

11              THE COURT:  This is your trial.

12              THE DEFENDANT:  I requested -- I waived my right

13       to a jury trial, and I requested a mistrial, so I want

14       to make sure I got it on the record again, I am

15       requesting a bench trial.

16              THE COURT:  Okay.  Do you understand, since

17       you've been citing the rules to me, that for you to get

18       a bench trial, the State has to consent to that, too,

19       and they don't?

20              Is that right, Ms. Hixon?

21              MS. HIXON:  Correct.

22              THE DEFENDANT:  I just want it on the record.

23              THE COURT:  It's on the record.  You wanted a

24       bench trial and not a jury trial, and it's on the

25       record, I think, from a couple of hearings ago that
```

1    Ms. Hixon objected to that.

2         THE DEFENDANT:  Okay.

3         THE COURT:  All right.  So we will be picking

4    your jury this afternoon.

5         THE DEFENDANT:  Will we be doing it this

6    afternoon or --

7         THE COURT:  We will be picking the jury this

8    afternoon.  Your trial will be Wednesday and Thursday

9    of this week.

10        THE DEFENDANT:  All right.  Cool.  That's good.

11   All right.

12        THE COURT:  Thank you.  I will see you later.

13        MS. HIXON:  Your Honor, what time will you begin

14   jury selection?

15        THE COURT:  It depends on how far we get here.

16   I'm hoping we can start at least as early as 1:30.

17        MS. HIXON:  May I be excused until then?

18        THE COURT:  Yes.

19        MS. HIXON:  Thank you.  I will still be in the

20   building.

21        THE COURT:  If we can somehow finish this earlier

22   we will try to start jury selection earlier because I

23   think we're picking three or more juries, so -- okay.

24                         * * * * *

25        THE BAILIFF:  All rise.  Circuit Court,

```
 1     Division E is back in session.
 2          THE COURT:  Just so I have everything, do I have
 3     the witness list?
 4          You can have a seat, Mr. Brooks.
 5          THE DEFENDANT:  All right.  Thank you, Your
 6     Honor.
 7          THE COURT:  We're here for the State of Florida
 8     versus Clifton Brooks.  It's Case Number 2012-CF-14276
 9     (sic).  We're still waiting on the jurors who will be
10     coming shortly in about 20, 25 minutes or so to do jury
11     selection, but wanted to bring Mr. Brooks out and make
12     sure any preliminary matters that need to be addressed
13     before the jury selection are addressed.
14          Let me ask first, are there any outstanding
15     motions or any matters pending that we have not already
16     resolved or addressed previously?
17          MS. HIXON:  None from the State.
18          THE COURT:  Mr. Brooks, any outstanding motions
19     or matters that have not been previously resolved or
20     addressed?
21          THE DEFENDANT:  There is one -- there is one, but
22     I didn't know we were going to be going --
23          THE COURT:  I couldn't hear you.
24          THE DEFENDANT:  Okay.  Yes, ma'am, but I didn't
25     we was going to go through this process today, so I
```

```
1    didn't bring the information, so I guess I won't be
2    able to address it, but --
3          THE COURT:  What process didn't you know we were
4    going to go through today?
5          THE DEFENDANT:  I didn't know we were going to
6    have this.  I'm not a lawyer.  I don't know the
7    process.
8          THE COURT:  I understand.  This is jury
9    selection, what we're doing today.
10         THE DEFENDANT:  Yes.  I didn't know we were going
11   to have additional matters.
12         THE COURT:  No.  But I always like to make sure
13   that any motions that are pending have been resolved,
14   so I simply ask the State if there's any other motions
15   that haven't been heard, and they said there weren't so
16   I'm giving you the same opportunity.  Were there any
17   other motions that haven't been filed or pending that
18   haven't already been resolved?
19         THE DEFENDANT:  I did file a motion in order to
20   receive the -- the Information that the State has on
21   me, because there are the DVDs or the interviews that I
22   do need to see to question Detective Collins, and I
23   still haven't had access to that yet.
24         THE COURT:  Okay.
25         MS. HIXON:  Your Honor, I have received no such
```

1    motion, but even if I had, I cannot provide him the

2    DVDs because the jail would not allow him to have them.

3    I know Ms. Galnor had them in her possession when she

4    represented him, and would have passed them on to

5    Mr. Gates.  I don't know if they still have them in

6    their possession.

7         THE DEFENDANT:  Actually, Your Honor, that is

8    incorrect because the jail will allow me to see the

9    DVDs.  When I spoke to the law library officer, he told

10   me that there was a holdup between the state attorney

11   and the public defender, and I can use them items in

12   the law library.

13        MS. HIXON:  I believe he can view them when

14   someone brings them, but they cannot possess them.

15        THE COURT:  Right.  I do know that.  So how would

16   you suggest -- since you're representing yourself, you

17   can't maintain possession of the DVDs in your cell.  If

18   you had a lawyer they would have brought them to you so

19   you could have viewed it in the law library.

20   Perhaps --

21        THE DEFENDANT:  What I provided the public

22   defender was a motion for the defense -- the defense

23   motion of something that --

24        THE COURT:  To supplement discovery?

25        THE DEFENDANT:  Yes, ma'am.  I believe that's

1     what it was.

2          THE COURT:  Right.  I recall that we addressed

3     that, and --

4          THE DEFENDANT:  We didn't address it, because I

5     didn't bring it up because I filed it -- I believe

6     September 21st is when I initially sent it to the

7     public defender, so within the other items that I was

8     asking for the public defender to get me so I could at

9     least know what's going on in my case, and she never

10    contacted me.  I couldn't reach her on the phone, I

11    sent letters --

12         THE COURT:  I'm sorry.  This is at the time when

13    Ms. Galnor was representing you?

14         THE DEFENDANT:  Yes, ma'am.

15         THE COURT:  You're saying you sent this

16    information to her so she could request of the State --

17    so she could request of the State these DVDs?

18         THE DEFENDANT:  Yes, ma'am.

19         THE COURT:  And Ms. Hixon has just advised that

20    she provided those DVDs to Ms. Galnor.

21         MS. HIXON:  Yes, Your Honor.  They would have

22    been provided -- Ms. Galnor and I's normal practice is

23    she e-mailed everything she needs, things like copying,

24    I send it on to my paralegal who then copies it, sends

25    me a notice back that says she's done that, so she had

1       all of those things when she -- when she withdrew.

2           THE COURT:  Well, perhaps we can find a way, I'm

3       not sure how, while you're here today, maybe later this

4       afternoon, I don't know, but before trial on Wednesday

5       to see if you can view these DVDs.

6           THE DEFENDANT:  Okay.  Well, I want to make sure

7       I got this is on the record also, at the time when I

8       made the request Mr. Todd Niemczyk was actually my

9       public defender at the time, and I had no idea that he

10      had removed himself or had been fired, so when I sent

11      this information it was actually for Mr. Niemczyk.

12      Ms. Darcy Galnor introduced herself to me prior to

13      coming to court that day, and she told me she was

14      representing me now.  So I asked her at that time,

15      excuse me, I sent some motions for him and one was to

16      view the DVDs, you know, that was in there.

17          THE COURT:  I understand.  And I don't know

18      Mr. Niemczyk.  I don't know if he was fired or if they

19      just moved divisions.  Oftentimes within these large

20      offices, both at the State Attorney's Office and the

21      Public Defender's Office, they transfer attorneys in

22      and out of different divisions, and so while you have

23      the right to an appointed counsel, you don't have the

24      right, as you've heard me say before, for a specific

25      appointed attorney.  So if the Office of the Public

1   Defender decided to transfer Mr. Niemczyk to one

2   division and Ms. Galnor into your -- this division and

3   handle your case, that's certainly their prerogative

4   and they can do that.  She would have gotten the file

5   from the prior public defender and moved on with your

6   case at that point.  Yes?

7       THE DEFENDANT:  So if she would have gotten the

8   file, she would have received the motions also?

9       THE COURT:  Presumably, yes.  I can't speak for

10  Ms. Galnor, but if she's gotten the file from the prior

11  public defender, she would have whatever's contained in

12  that file.

13      THE DEFENDANT:  So if I requested my case from my

14  attorney, which is Mr. Niemczyk at the time, and she

15  received that information, shouldn't she have provided

16  me with that information I asked before?  I just wanted

17  it on the record.

18      THE COURT:  It's all on the record.  I have to be

19  honest, I'm not quite sure if I understand, because you

20  seem to put on the record complaints you have of

21  Ms. Galnor --

22      THE DEFENDANT:  Yes.

23      THE COURT:  -- but at the same time you insist

24  that she's the person that you wanted representing you

25  in this matter, and I didn't permit her to represent

1    you here.

2           THE DEFENDANT: Uh-huh. Yes, ma'am. I can still

3    file a complaint, that doesn't mean I have a dislike of

4    the woman. If she failed to represent me properly, I

5    think I need to make sure that's on the record.

6           THE COURT: But she's not representing you now.

7           THE DEFENDANT: Yes, ma'am. She's not.

8           THE COURT: Before the jury comes, I do want to

9    say, and -- I can see that you are still in your jail

10   clothes.

11          THE DEFENDANT: Uh-huh.

12          THE COURT: You understand, of course, that you

13   have the right to be dressed in what we call civilian

14   clothes, not jail clothes, for the purpose of jury

15   selection and trial; is that correct?

16          THE DEFENDANT: Yes, ma'am. I was in the

17   military.

18          THE COURT: You were in the military?

19          THE DEFENDANT: I know civilian clothes, yes,

20   ma'am.

21          THE COURT: Is it your choice that you don't want

22   to be dressed in civilian clothes or are you remaining

23   in jail clothes because you want to?

24          THE DEFENDANT: Yes, ma'am. I don't want to lie

25   to the jurors and let them think that I've been free

```
1    all this whole time.  No.  They need to see me in my
2    natural state.
3            THE COURT:  So it's your choice for strategy
4    purposes, or otherwise, that you wish to remain dressed
5    in the jail garb?
6            THE DEFENDANT:  Yes, ma'am.  It's strictly
7    strategy.  That's all.
8            THE COURT:  Okay.  Well, I just wanted to be sure
9    that you're aware that you can change your clothes.
10   You don't have to be in front of the jury dressed that
11   way.
12           THE DEFENDANT:  Yes, ma'am.
13           THE COURT:  You still wish to be in front of the
14   jury dressed that way?
15           THE DEFENDANT:  Yes, I do.
16           THE COURT:  The other thing, while we're waiting
17   for the jury, again, I know you said several times
18   you're not a lawyer, so I do want to go through some
19   courtroom decorum and rules that I expect both sides to
20   follow, okay?
21           THE DEFENDANT:  Okay.
22           THE COURT:  Number one, is not talking over each
23   other and not talking over the Court.  We need one
24   person to talk at the time for two reasons, it's a
25   matter of courtesy, and secondly, the court reporter --
```

1    you see Madam Court Reporter sitting over there, can

2    only take down one person speaking at a time, so if you

3    will allow the jurors to answer their questions, the

4    attorneys to speak, the Court to speak and we will

5    likewise grant you the same courtesy of not talking

6    over each other.  Do you understand that?

7         THE DEFENDANT:  Yes, ma'am.  But now what happens

8    if the State does do that?  What happens?

9         THE COURT:  Well, I will intervene.  If people

10   are talking over each other I will intervene.  But it's

11   the same for the witnesses, you have to allow them to

12   answer the question, and then you can ask following

13   questions.  Do you understand?

14        THE DEFENDANT:  Yes, ma'am.  I have no problem

15   with that.

16        THE COURT:  Secondly, at no point should you be

17   specifically talking to the jury.  Obviously in opening

18   statements you can make your statement to the jury,

19   during your closing argument, you can make your closing

20   argument to the jury.  But during the course of the

21   trial, you are not to be directing any conversations to

22   them.  Your purpose is, of course, to ask questions of

23   the witnesses and get answers of the witnesses.  Do you

24   understand that?

25        THE DEFENDANT:  Yes, ma'am.  Okay.  The State

1    also?

2           THE COURT:  Of course, the State also.

3           THE DEFENDANT:  So -- so --

4           THE COURT:  The rule applies equally across the

5    board to the State and Defense.

6           THE DEFENDANT:  I'm just -- so if I do see it and

7    point it out, I say, Your Honor --

8           THE COURT:  You won't even need to point it out,

9    because I'm going to raise it.  They're not going to

10   talk directly to the jurors.  Now, if you or they move

11   an item into evidence and they ask to publish it to the

12   jury and I give permission for that, they will publish

13   the item of evidence to the jury.

14          THE DEFENDANT:  Okay.

15          THE COURT:  Likewise, no disruptions, no talking

16   out of turn, certainly no yelling or screaming, no

17   sassy comments, and again, this applies equally to the

18   State as it does to you.  I just want to be sure that

19   we're going to conduct a professional jury trial and

20   we're going to conduct it in a manner and the method

21   that the Court has established.  Do you understand?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  Do you have any questions before we

24   begin?

25          THE DEFENDANT:  Yes, I do.  Say a witness gets on

```
1    the stand and starts to tell their story, and then
2    start crying.  You know, it's theatrical to me, would
3    the State be allowed to provide them the box of tissues
4    that's located on the stand right there?
5         THE COURT:  Well -- the box of tissues is already
6    on the stand, so if they need it they can get it
7    themselves.
8         THE DEFENDANT:  Well, but wouldn't that be --
9    what -- what was we talking about last time?  I didn't
10   bring my information, but you said we can't play to the
11   emotions of the jurors, so wouldn't that be playing to
12   the emotions of the jurors?
13        THE COURT:  Well, if I find that it's
14   disingenuous, certainly, but if a witness is crying
15   because they are emotional and it's genuine, I can't
16   certainly tell them not to cry.  What I will do is
17   instruct the jury that they cannot let emotion or
18   feelings for one party or another sway their decision.
19   They have to base their verdict on the facts as they
20   come out at trial, and on the law that I will instruct
21   them.  That's what I will do.
22        THE DEFENDANT:  Okay.  I just wanted to make
23   sure.  Yes, ma'am.
24        THE COURT:  State, any questions?
25        MS. HIXON:  No, Your Honor.  But for the record I
```

```
 1        did provide the defendant -- I put on his table a
 2        proposed copy of the jury instructions, and I did
 3        provide them to the Court.
 4             THE COURT:  Yes.  I have received, and
 5        Mr. Brooks, you have as well, a packet that looks like
 6        this --
 7             MS. HIXON:  Actually, I believe they put it
 8        behind him.
 9             THE COURT:  It's right behind you at the table.
10             THE BAILIFF:  You're supposed to stand up when
11        you're talking to the Court.
12             THE DEFENDANT:  That I was supposed to stand up?
13        I'm sorry.  I didn't know.
14             THE COURT:  That's common courtesy, yes.  If
15        you're going to -- yes.
16             THE DEFENDANT:  I didn't know.
17             THE COURT:  All right.  I just want to make sure
18        you've received the jury -- well, I know you're
19        laughing and giggling, but this is not a funny matter.
20        This is a serious matter, and I would think you would
21        want to take them seriously.
22             THE DEFENDANT:  Ma'am, number one, you do not
23        know the facts of this situation, so --
24             THE COURT:  You're right, I don't.  I'm going
25        hear them just as you're going to hear them at trial.
```

```
1          THE DEFENDANT:  Yes, ma'am.  So let me tell you
2    something, this is not what you think, okay?
3          THE COURT:  Okay.  But I would still think
4    regardless, Mr. Brooks, that you would take this matter
5    seriously and quit the laughing and giggling.  And I
6    hope you don't do that in the middle of this jury
7    selection and during the course of the trial.  Do you
8    understand?
9          THE DEFENDANT:  Ma'am, I can't stop the way I
10   naturally am, because I'm a naturally happy guy, so I
11   hope you do not take offense to that, but I'm not going
12   to stop.  I hope it doesn't sway the jurors in any way.
13         THE COURT:  All right.  What I'm asking you now
14   is, the State provided both to me and you a copy of the
15   proposed jury instructions that at the conclusion of
16   trial I would be reading to the jurors, that is on
17   Thursday, so please -- we're not deciding on this at
18   this moment, but you have your copy so you can review
19   it between now and then, because prior to charging the
20   jury with the instructions, we will all go over what
21   the appropriate instructions are.  Do you understand?
22         THE DEFENDANT:  Yes, ma'am.
23         THE COURT:  Okay.  In addition you should also
24   have at your spot the order on the Williams' Rule.  If
25   you recall, we were here on Friday on a hearing on the
```

1    Williams' Rule.  I ruled on it orally, and I now

2    produced and provided a written order on the Williams'

3    Rule, and you should have your copy there as well.  Do

4    you have it?

5         THE DEFENDANT:  Yes.  (Unintelligible.)

6         COURT REPORTER:  Your Honor, I can't understand

7    what he's saying.

8         THE COURT:  You will also need to speak up and

9    clearly, because the court reporter needs to take down

10   what you're saying, so when you mumble it's a little

11   hard to hear you.

12        THE DEFENDANT:  Yes.  I'm sorry, Ms. Court

13   Reporter.  It's quite a number of papers here, and I'm

14   still looking through it.  Does it actually state --

15        THE COURT:  I'm sorry?

16        THE DEFENDANT:  The Williams' Rule, does it

17   actually say Williams' Rule or under another heading?

18        THE COURT:  No, it's a separate document

19   altogether.  It's not part of the jury instructions

20   that the State provided.

21        THE DEFENDANT:  I have it or are you saying --

22        THE COURT:  It should be at your table.

23        THE BAILIFF:  I gave them to him, Your Honor.

24        THE COURT:  Why don't you look at the back of

25   that pile.  It might be there.

```
 1              THE DEFENDANT:  The order allowing State's

 2        introduction of evidence?

 3              THE COURT:  That's it.

 4              THE DEFENDANT:  I have it.

 5              THE COURT:  All right.  I just want to make sure

 6        you have it.  So in about ten minutes we will have a

 7        panel of 35 jurors coming in.  You will get their

 8        names, Mr. Brooks.  They're going to be seated 1

 9        through 7 on those aisles -- or those benches down

10        there, 1 to 7, 8 to 14, et cetera, et cetera, up to 35.

11        I'm going to be asking them some questions, and then

12        the State gets an opportunity to ask them some

13        questions and you get an opportunity to ask them some

14        questions, and then after that we'll excuse them and

15        all of us here together will sit and go juror by juror

16        until we come up with the seven jurors that will sit in

17        your case.  You will get to strike some, they will get

18        to strike some.  Do you understand?

19              THE DEFENDANT:  Yes, ma'am.  But isn't this a

20        capital crime?

21              THE COURT:  Yes.

22              THE DEFENDANT:  So don't I receive 12 jurors

23        or --

24              THE COURT:  I'm sorry, no.

25              MS. HIXON:  No, Your Honor.  Under case law
```

1   unless he's actually being -- we are actually seeking

2   the death penalty, which it would be a mandatory life

3   sentence, then he would be entitled to 12, but because

4   this is not nothing where he could be put to death, he

5   would get six with an alternate under case law.

6          THE COURT:  So seven.  Now, you will have a

7   certain number of strikes, as well as the State, but

8   one thing I wanted to, again, put out there so you

9   understand, this opportunity at jury selection you will

10  be talking to the potential jurors.  It's not a time to

11  go into the facts of the case, it's not a time to tell

12  them what the law is or what it is not going to be

13  because that's my responsibility.  I have to advise

14  them of the what law is.  It's an opportunity to learn

15  a little bit about the potential jurors and decide

16  which ones you like and which ones you don't like based

17  on their answers so you can make a decision as to which

18  ones you want sitting on your jury.  Do you understand

19  that?

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  And just as if the State does it, if

22  you start getting up there and start talking about

23  things that shouldn't be talked about, I will interrupt

24  and say, that's not appropriate, and move on.  Do you

25  understand?

1      THE DEFENDANT:  Yes, ma'am.

2      THE COURT:  Okay.  Just making sure that everyone

3  understands how this process goes.  Does he have a

4  chart so he can write them down?

5      THE BAILIFF:  I'm giving it to him now.

6      THE COURT:  Mr. Brooks, Officer Boyd is giving

7  you a chart that looks like this.  The State uses one,

8  I use one, you can use one.  You can see the boxes and

9  they're numbered one to seven.

10      THE DEFENDANT:  Do I get something to write with?

11      THE BAILIFF:  Oh, yeah.  Just a second.

12      THE COURT:  Officer Colletti is giving you a

13  highlighter, you've got some writing instruments,

14  you've got the charts.  When we get the juror list in,

15  you want to be sure to -- obviously to write their

16  names and information in the boxes as they correlate to

17  their numbers, so when you see them up there you can

18  spot them on your chart.  Do you understand?

19      THE DEFENDANT:  Yes, ma'am.

20      THE COURT:  Okay.  We should be getting the names

21  hopefully in about five minutes, so unless there's

22  anything else -- is there anything else?

23      MS. HIXON:  No, Your Honor.

24      THE COURT:  Mr. Brooks?

25      THE DEFENDANT:  No, Your Honor.

```
1              Excuse me, Your Honor, do I get to keep this
2       list?
3              THE COURT:  Yes.
4              State and Defense, are we ready to proceed?
5              MS. HIXON:  May I have just a few more minutes?
6              THE COURT:  Okay.
7              Officer Boyd, are we ready?
8              THE BAILIFF:  Everyone's accounted for, Your
9       Honor.
10             THE COURT:  Thank you.
11             THE BAILIFF:  Jurors entering the courtroom.
12             THE COURT:  Thank you.
13             Ladies and gentlemen, you may have a seat.  The
14      case set for today is the State of Florida versus
15      Clifton McNeil Brooks.  It is Case Number 2012-CF-6884.
16             Is the State ready to proceed?
17             MS. HIXON:  Yes, Your Honor.
18             THE COURT:  Is the defense ready to proceed?
19             THE DEFENDANT:  Yes, Your Honor.
20             THE COURT:  All right.  Good afternoon, ladies
21      and gentlemen.  My name is Tatiana Salvador, and I will
22      be the judge presiding over the jury selection, as well
23      as the trial in this case.  I would like to welcome you
24      to the criminal division CR-E of the Circuit Court.
25      The Court realizes that service on a jury is not always
```

```
 1          convenient, however, service on a jury affords you an
 2          opportunity to be part of the administration justice by
 3          which the legal affairs and liberties of your fellow
 4          men and women are determined and protected.  I will
 5          make every effort to see that the demands upon your
 6          time for this jury service will not be unreasonable.  I
 7          want to thank you.  I know you all have been here since
 8          early this morning, but this is a crucial part of our
 9          criminal justice system, so for that I thank you for
10          even showing up today.
11               Madam Clerk, will you swear in the jury panel,
12          please.
13               If you all will stand.
14               (Prospective jury panel duly sworn.)
15               THE COURT:  Thank you.  You may be seated again.
16          So that you will all know the Court personnel and their
17          duties, let me introduce them to you at this time.
18               Madam Clerk, who is sitting right before me who
19          just swore you all in is Amanda Jones.  The clerk keeps
20          track of all the exhibits and acts as the judge's
21          assistant in the courtroom.
22               The court reporter, the young lady seated over
23          there closest to you all, is Kelly Prophet.  She is
24          recording all of the courtroom proceedings and the
25          testimony in this case, so all of your answers -- we
```

1    will be asking questions momentarily, need to be verbal

2    so that she can take down what you are saying.

3         You see scattered about the courtroom several

4    bailiffs and they are here to enforce the Court's order

5    and to have charge of the jury.  If you have any

6    questions about the personal welfare or any questions

7    about this trial, you should direct those questions to

8    the bailiff, and if necessary they will contact me.

9         Now, this part of the trial is commonly referred

10   to as voir dire or jury selection.  Essentially it is a

11   question-and-answer session.  I am going to ask you

12   some questions, and when I have finished, the attorneys

13   and Mr. Brooks will ask you some questions.

14        Now, these questions are not designed to try to

15   pry into your personal affairs, they are designed to

16   discover if you have any knowledge of this case or if

17   you have any preconceived opinions which you cannot lay

18   aside or if you have any personal experience that might

19   cause you to favor one side over the other.  These

20   questions are to ensure that both the defendant and the

21   State each receive a fair and impartial jury in trial.

22        You should remember that is it not unusual for

23   people to have strong feelings about certain subjects,

24   however, it would be a violation of your oath as

25   prospective jurors to fail to answer truthfully and as

1    completely as possible to any questions that are posed

2    to you about such matters.

3        Now, I will read to you part of the pertinent --

4    the pertinent part of the Information which sets forth

5    the charges against the defendant in this case.  The

6    Information, so that you know, is merely the charging

7    document which brought this case to trial.  You must

8    not be influenced by the fact that an Information has

9    been filed against the defendant.  It is merely the

10    legal name of the charging document.  The Information

11    is not evidence, and it is not any proof whatsoever of

12    the defendant's guilt.

13        The Information that has been filed by the State

14    in this case reads as follows:  State of Florida versus

15    Clifton McNeil Brooks, Case Number 2012-CF-6884.  And

16    it is:  In the name of and by the authority of the

17    State of Florida, Angela B. Corey, State Attorney for

18    the Fourth Judicial Circuit of the State of Florida in

19    and for Duval County, charges that in Count 1, Clifton

20    McNeil Brooks on or between January 3, 2003, and

21    January 2, 2005, in the County of Duval, in the state

22    of Florida, being a person 18 years of age or older did

23    commit a sexual battery upon J.M., a person less than

24    12 years of age by placing an object in J.M.'s anus

25    contrary to the provisions of Section 794.011(2)(a)

```
1     Florida Statutes.
2          In Count 2 the State has charged that Clifton
3     McNeil Brooks, a person 18 years of age or older on or
4     between January 3, 2004, and January 2, 2005, in the
5     County of Duval in the state of Florida did in a lewd
6     or lascivious manner intentionally touch the breast,
7     genitals, genital area or buttocks or the clothing
8     covering them of J.M., a child less than 12 years of
9     age, contrary to the provisions of Section 800.04(5)(d)
10    Florida Statutes.
11         And in Count 3 the State of Florida has charged
12    that Clifton McNeil Brooks, a person of 18 years of age
13    or older on or between January 3, 2006, and January 2,
14    2008, in the County of Duval and the state of Florida
15    did intentionally masturbate in the presence of J.M., a
16    person less than 16 years of age, contrary to the
17    provisions of Section 800.04(7)(c) Florida Statutes.
18         You have heard the charges made in the
19    Information against the defendant.  Do any of you know
20    anything about this case either through your own
21    personal knowledge or rumor or by discussion with
22    anyone else or by reading or hearing about it in any of
23    the news?  If you could please answer verbally.
24         VENIREMEN:  No.
25         THE COURT:  All right.  Now, this is a criminal
```

```
 1        case in which the State is represented by -- and I

 2        would ask them to please stand now, Assistant State

 3        Attorneys Anna Hixon and Sandra Rosendale.

 4             MS. HIXON:  Good afternoon.

 5             THE COURT:  Are any of you related by blood or

 6        marriage to these attorneys or know them from any

 7        business or social relationship?  If so, please answer

 8        out loud.

 9             VENIREMEN:  No.

10             THE COURT:  All right.  The defendant,

11        Mr. Clifton McNeil Brooks, has chosen to represent

12        himself.  He is standing here before you.

13             THE DEFENDANT:  Hi.  What's happening?

14             THE COURT:  Are any of you related by blood or

15        marriage to the defendant, Mr. Clifton McNeil Brooks,

16        or do you know him from any business or social

17        relationship?  Please answer out loud.

18             VENIREMEN:  No.

19             THE COURT:  I will now read the name of witnesses

20        -- of some -- the names of those who may possibly be

21        called to testify in this case.  That is not to say

22        that all of these individuals will testify, only that

23        there's a possibility that they may testify.  And I

24        will ask you again if any of you know them or are

25        related to them by blood or marriage, and if so, answer
```

1     out loud.  I will read the full list first.

2            , Officer M.J. Collins of the Jacksonville

3     Sheriff's Office, Donna Gragen,            , Shantel

4     Nicole Harris, Jacorey McCluren, and Officer J.A. Ruiz

5     of the Jacksonville Sheriff's Office.  Do any of you

6     know any of these witnesses or are related to them via

7     blood or marriage?  If so, please answer verbally.

8            VENIREMEN:  No.

9            THE COURT:  Now, the estimated time of this trial

10    will be two days.  The trial will begin on Wednesday

11    and hopefully conclude on Thursday.  We are expecting

12    to begin the trial on both days at approximately 10:30

13    in the morning.  We do have some regular unrelated

14    Court business that we take care of in the mornings

15    beforehand, so that is our estimated start time for

16    both Wednesday and Thursday.  Does the schedule as I

17    have explained it to you present a great hardship for

18    any of you?  And I will ask you to raise your hands,

19    and I will call you individually.

20           And let me just preface this by saying that while

21    you may have very good reasons, and we want to hear

22    what those are, they may not rise to the level of legal

23    reasons by which you could be excused, but we certainly

24    want to hear if anyone has a great hardship due to the

25    trial schedule being this Wednesday, February 13th, and

```
1     Thursday, February 14th.  If so, please raise your
2     hand.
3              VENIREMEN:  (No response.)
4              THE COURT:  No hands.  Okay.
5              Do any of you have any physical impairments,
6     hearing, sight or otherwise, which would render you
7     incapable of performing your duty as a juror in this
8     case?  If so, please raise your hand.
9              VENIREMEN:  (No response.)
10             THE COURT:  All right.  No hands.
11             Do any of you have a bias or prejudice either for
12    or against the defendant or for or against the State?
13    If so, please raise your hand.
14             VENIREMEN:  (No response.)
15             THE COURT:  I see no hands.  If you -- I do see a
16    hand.  I'm sorry.  This is -- I can't see who has
17    raised their hand.  Can you stand up, please.  What is
18    your name, sir?
19             PROSPECTIVE JUROR:  Corey Amos.
20             THE COURT:  Okay.  Mr. Amos, you have a bias or
21    prejudice either for or against the State or for or
22    against the defendant?
23             PROSPECTIVE JUROR:  Against the defendant.
24             THE COURT:  Okay.  All right.  You can have a
25    seat.  Thank you.
```

```
 1            If you are selected as a juror to -- in this
 2       case, will you render a fair and impartial verdict
 3       based upon the evidence presented in this courtroom and
 4       the laws as it pertains to this particular case as
 5       instructed by the Court?
 6            VENIREMEN:  Yes.
 7            THE COURT:  Can you do that?
 8            VENIREMEN:  Yes.
 9            THE COURT:  Do any of you have any other reason
10       why you cannot give this case your undivided attention
11       and render a fair and impartial verdict?  If so, please
12       raise your hand.  I see no hands.
13            Can each of you agree to follow the law as I
14       instruct you in it regardless of whether you agree or
15       disagree with the law?  If so -- if you can, please
16       answer verbally.
17            VENIREMEN:  Yes.
18            THE COURT:  If anyone can't, please raise their
19       hand.  Okay.  I see no hands.
20            As I'm sure you have noticed by now there's a
21       questionnaire that was in your seat when you sat down.
22       I'm going to ask each of you to read the answers to
23       those questions, and we're going to start with Juror
24       Number 1, Mr. Rivera.  I will just preface this by
25       saying, if you will go through -- I think there's 17
```

1    questions, and whether they apply to you or not, please

2    go through the answers to each one of those so that we

3    know whether you have or have not been a juror

4    previously or some other thing that is inquired about.

5         Also on your address you don't need to give your

6    exact home address, the area of town will suffice.  I

7    will say, my name is Tatiana Salvador.  I live at the

8    Beaches, or something to that effect.  We don't need

9    your exact address.  And if for some reason you've

10   forgotten your eyeglasses or can't read the form, I

11   will be happy to go through the questions, just let me

12   know.  Sometimes that happens to me.  I will wear

13   contacts, and I won't be able to see it very well, so

14   just let me know and we will be happy to work with you.

15        So Mr. Rivera, we will start with you, sir.  We

16   do have a microphone, and if you would stand and take

17   the microphone so that we can all hear you.  Thank you

18   very much.

19        PROSPECTIVE JUROR:  Thank you, Your Honor.

20        My name is Eric Rivera.  I live in the Arlington

21   area here in Jacksonville.  I have lived in this area

22   for approximately seven months.

23        I am employed by Kelly Services.  I work in the

24   staffing industry.  I am not retired.

25        I am married.  My spouse is employed by Vistakon.

```
 1        She works in customer service.  She is not retired.
 2             I have three children.  The ages of my children
 3        are 16, 2 and 1.  My oldest child is in school.
 4             I have never been a party or witness to a legal
 5        case before, and I have never served on a jury.
 6             THE COURT:  Thank you, Mr. Rivera.  If you will
 7        hand the mic over to Mr. Huff.
 8             PROSPECTIVE JUROR:  My name is Samuel Dewayne
 9        Huff.  I live on the Westside.  I've lived in the area
10        for 15 years.  I also lived in Clay County for 30.
11             I'm unemployed at the time.  I'm an iron worker.
12        No, I'm not retired.
13             I'm married.  My wife is employed by the
14        Sheriff's Office, and she does property and evidence
15        and she's not retired.
16             I have three children, 30, 22 and 15.  My oldest
17        is a cosmetologist, my middle son's not working and my
18        youngest is in school.  And, no, I have --
19             THE COURT:  You haven't been a witness, party or
20        juror?
21             PROSPECTIVE JUROR:  I've never served on a jury
22        before.
23             THE COURT:  Have you ever been a witness to a
24        case or a party to a lawsuit?
25             PROSPECTIVE JUROR:  No, ma'am.
```

1        THE COURT:  Thank you, Mr. Huff.  If you will

2    hand the microphone over to Ms. Lee.

3        PROSPECTIVE JUROR:  My name is Era Lee.  I live

4    on the south side of -- I live on the Southside.  My

5    home is located near the Avenues Mall on Southside in

6    Duval County.  I've lived in that area for seven years.

7        I am presently unemployed.  The kind of work I

8    normally do is higher education.  I'm not retired.

9        I'm married.  My spouse is retired.

10       I have -- we have two adult daughters, their ages

11   are 42 and 35.  My oldest daughter is a school teacher,

12   second year education.  My youngest daughter is in the

13   insurance industry, claims adjustor.

14       I've not been a party or witness in any legal

15   case, and I've not served on a jury before.

16       THE COURT:  All right.  Thank you, Ms. Lee.  If

17   you hand that over to -- Mr. Shaffer or Mr. Shaffer?

18       PROSPECTIVE JUROR:  Shaffer, ma'am.

19       THE COURT:  Mr. Shaffer, if you will take the

20   microphone.

21       PROSPECTIVE JUROR:  Yes.  My name is Eric

22   Shaffer.  I live in the Southside area of Jacksonville.

23   I've lived there about seven years.  I've also lived

24   out at the Beaches.

25       I'm employed in the beverage industry.  I am not

1    retired.

2         I am married, and my spouse is employed in the

3    banking industry, customer service.

4         I have two children, ages 16 and 7, and I have

5    never been a party or witness to a legal case and I've

6    never served on a jury before.

7         THE COURT:  Thank you, Mr. Shaffer.  If you will

8    hand it over to Mr. McLain.

9         PROSPECTIVE JUROR:  My name is John McLain.  I

10   live on the north side of Jacksonville.  I've lived

11   over there for 66 years.

12        I'm retired.  I was a telephone man.

13        I'm married.  My wife, she worked for Prudential.

14   She's retired also.

15        I have three children.  One is 31, one is 38 and

16   one is 44.  Two of the -- the two boys work in

17   telecommunications, and one works in the service area.

18        I have been a party or a witness in a jury trial.

19   I have served on a jury before.  It was criminal, and I

20   was the foreperson of the jury and we did reach a

21   verdict.

22        THE COURT:  Okay.  Thank you, Mr. McLain.  If you

23   will hand it over to Mr. Hewitt.

24        PROSPECTIVE JUROR:  My name is Joshua Hewitt, and

25   I live in the Town Center area of Jacksonville.  I've

1     lived there for about three years.  I also lived in

2     Orange Park and Fleming Island for, I'd say, the

3     duration of my life.

4           I'm employed by my dad right now.  He does real

5     estate and home improvement.  I'm a full-time student.

6     I'm not retired.

7           I'm single, no spouse, no children, and I've

8     never been a party or witness to a legal case and never

9     served on a jury.

10          THE COURT:  All right.  Thank you, Mr. Hewitt.

11    If you will hand it over to Ms. Caswell.

12          PROSPECTIVE JUROR:  My name is Crystal Caswell.

13    I live off of Hecksher Drive.  My home is located in

14    Fort George Island area of Duval County.  I've lived in

15    this area for 28 years.  I've also lived in Mandarin

16    and Bayard.

17          I'm employed by ING.  The kind of work I do is

18    administrative.

19          I am married.  My spouse is retired.  He used to

20    work from -- International Longshoreman's Association.

21          I have two children.  Their ages are 21 and 25.

22    The oldest is in the -- a restaurant server, the

23    youngest is unemployed.

24          I have never been a party or a witness to a legal

25    case.  I have served on a jury before.  It was a

Case 3:19-cv-00787-MMH-MCR   Document 7-21   Filed 02/11/20   Page 51 of 98 PageID 1208

41

```
1     Federal grand jury.  That's it.
2          THE COURT:  Thank you.  And pass it down to
3     Mr. Thibault.
4          PROSPECTIVE JUROR:  Thibault.  My name is Dennis
5     Thibault.  I live in Arlington.  I've been there for
6     30 years.  I also lived in Mandarin for about 30 years.
7          I'm employed by the Post Service.  I'm a letter
8     carrier.  I'm not retired.
9          I am married.  My wife is a hairdresser.  I had
10    one child.  She's deceased, and she used to work for
11    the Duval County Courthouse.
12         And I've never been a party to -- a witness or to
13    a legal case, and never served on a jury before.
14         THE COURT:  Okay.  What did your child do here at
15    the Duval County Courthouse?
16         PROSPECTIVE JUROR:  She worked in the record's
17    office.
18         THE COURT:  Thank you, Mr. Thibault.  If you will
19    hand it over to Mr. Barker.
20         PROSPECTIVE JUROR:  My name is Morgan Barker.  I
21    live in the Arlington section.  My home is located in
22    the Arlington section.  I have also lived in New York
23    City.
24         I am employed by MWR at Naval Station Mayport.  I
25    am a maintenance/bus driver there.  I'm retired from
```

**PAGE # 48 OF 94**

1    one job in New York City as a New York City park and

2    recreation supervisor.

3        I'm married.  My spouse is employed by British

4    Airways.  She's a ticket agent.  She's not retired.

5        I have three children, a daughter 35, a son 32, a

6    son 25.  My daughter works for the State of New York.

7    My oldest son is unemployed.  My youngest son is in the

8    United States Army.

9        I've been in -- I never been a witness on a legal

10   case, but I've served on a jury before, two criminal

11   cases.  Never been a foreperson on a jury, and we did

12   reach verdicts.

13       THE COURT:  In the both of the matters you

14   reached a verdict?

15       PROSPECTIVE JUROR:  Ma'am?

16       THE COURT:  In both cases you reached verdicts?

17       PROSPECTIVE JUROR:  Yes, ma'am.

18       THE COURT:  And were those jury trials here or

19   Florida or up in New York?

20       PROSPECTIVE JUROR:  New York.

21       THE COURT:  Thank you.

22       PROSPECTIVE JUROR:  My name is Sean Murphy.  I

23   live in Arlington.  I've lived there for 22 years.

24       I'm employed by Wright's Pharmacy.  I'm a

25   pharmacy technician.  I'm not retired.

```
 1              I'm single, no spouse, no kids.
 2              Never been a party or a witness, and never served
 3         on a jury.
 4              THE COURT:  All right.  Thank you, Mr. Murphy.
 5         Hand it over to Mr. Horton.
 6              PROSPECTIVE JUROR:  My name is Edward Horton.  I
 7         live on the Southside.  I've been there for 12 years.
 8         Prior to that I lived in Tennessee.
 9              I'm employed by Harrell Parsons.  I'm a manager
10         at a power plant.  I retired from my previous job,
11         believe it or not.
12              I'm married.  My spouse is not employed.  Not
13         retired.
14              I have two children, they're 16 and 17.  The
15         oldest works at a grocery store.
16              I have been a party and a witness to a legal
17         case.  It was criminal, and have not worked -- or
18         served on a jury.
19              THE COURT:  You were both a party and a witness
20         or --
21              PROSPECTIVE JUROR:  Yes.  I witnessed --
22              THE COURT:  All right.  Thank you.
23              PROSPECTIVE JUROR:  My name Juebrell Davis.  I
24         live on the Northside.  I've lived in this area for
25         22 years.  I lived on the Southside for 2 years.
```

1          I work for Heaven Sent Janitorial Service.

2          I'm single.  I have three -- two children, and

3     one on the way, and I've never been on -- a party or

4     witness in a legal case.

5          THE COURT:  And have you ever been on a jury

6     before?

7          PROSPECTIVE JUROR:  No, ma'am.

8          THE COURT:  Okay.  Thank you, sir.

9          Ms. Riner?

10         PROSPECTIVE JUROR:  I'm Diana Riner.  I live on

11    the Westside.  I've been there for a year and a half.

12    I also lived in Winter Haven, Florida.

13         I work for Long Horn Steakhouse.  I'm not

14    retired.

15         I'm single, no kids, and I've never served on a

16    jury before.

17         THE COURT:  And have you ever been a party or

18    witness in any case?

19         PROSPECTIVE JUROR:  No, ma'am.

20         THE COURT:  Okay.  Thank you.

21         PROSPECTIVE JUROR:  My name the Joe Vincennie.  I

22    live on the Southside.  I've been here for 25 years, in

23    New York and Connecticut before that.

24         I'm employed by North Florida Lubes.  I'm a

25    regional manager and supervisor of the stores.  I'm not

```
 1        retired.

 2             I'm in the process of a divorce.  My former wife

 3        is employed by a collection agency, collecting.  Let me

 4        see.  She's not retired.

 5             I have two kids.  I have an 11-year-old daughter

 6        and an 18-year-old son who is a student.

 7             I've never been a party or a witness.  I have

 8        personal knowledge of -- of a case, but not this case,

 9        something in my family.  And have I served on a jury?

10        No.

11             THE COURT:  All right.  Thank you so much.  We're

12        going to pass the microphone down to Mr. Evans.

13             PROSPECTIVE JUROR:  My name is Greg Evans.  I

14        live on the Northside.  My home is located -- I live at

15        -- my name is Greg Evans.  I live on the Northside.  My

16        home is located on the Northside.  I have lived in the

17        area for three years.  I have also lived in Washington,

18        D.C., for ten years.

19             I'm employed by Moore Medical.  The kind of work

20        I do is material handler.  I am not retired.

21             I am married.  My spouse works for the Internal

22        Revenue Service.  She does auditing.  She's not

23        retired.

24             I have three kids.  My -- my children age are 10,

25        18 and 23.  My kids -- my older kids is in school.  I
```

```
 1    have been a -- I've been on -- I have been on a -- a
 2    case in -- a civil case in Washington, D.C., and I have
 3    served on a jury.
 4         THE COURT:  So that civil jury in Washington,
 5    D.C., were you the foreperson?
 6         PROSPECTIVE JUROR:  No, ma'am.
 7         THE COURT:  And did you reach a verdict?
 8         PROSPECTIVE JUROR:  Yes, ma'am.
 9         THE COURT:  Thank you, sir.
10         PROSPECTIVE JUROR:  My name is Michael Somers.  I
11    live on the Southside, San Succi area.  I've lived
12    there for eight years.  I lived in the Spring Park area
13    the rest of my life.
14         I'm employed by Reline Techs.  I am a warehouse
15    foreman.
16         My spouse is not employed at the moment due to
17    injury.  She's doing her own cleaning business.
18         I have four children, two boys and two girls.
19    The oldest boy is building pools, the oldest daughter
20    is in the service industry.
21         I've never been a party or a witness, and never
22    served on a jury.
23         THE COURT:  Thank you, Mr. Somers.  If you will
24    pass the mic to Mr. Fusani.
25         PROSPECTIVE JUROR:  My name is Michael Fusani.  I
```

```
1    live in the East Arlington area.  My home is located in

2    the East Arlington area.  I have lived there for

3    21 years.  Also lived on the Southside for one year.

4         I'm employed by Suddath.  It's logical work.  I'm

5    not retired.

6         I'm single.  Don't have a spouse, I don't have

7    any kids.

8         I have never been a party or a witness to a legal

9    case, and I've never served on a jury.

10        THE COURT:  Thank you, sir.  Pass it to

11   Mr. Robbins.

12        PROSPECTIVE JUROR:  My name is Joseph Robbins.  I

13   live on the west side of Jacksonville.  I've lived

14   there for 29 years.  It's been my only residence as an

15   adult.

16        I'm a financial analyst for Florida Blue.  I am

17   not retired.

18        I'm married, and my wife is not retired.  She is

19   unemployed at this time.  She used to be a computer

20   security person.

21        I have three children, 26, 27, and 24.  One is a

22   mediator case specialist, one is a full-time student,

23   and one does inventory control.

24        I have never been a party or a witness to a legal

25   case, and I've never served on a jury.
```

```
 1              THE COURT:  Let me ask you about your child who
 2         is a mediator or case specialist.
 3              PROSPECTIVE JUROR:  Mediator or case specialist.
 4         I don't know much about that except that he's not a
 5         mediator here, he's in Savannah.
 6              THE COURT:  All right.  Thank you, sir.
 7              PROSPECTIVE JUROR:  My name is Joan Bretana.  I
 8         live on the Southside.  I've -- I'm a native of
 9         Jacksonville, so I've lived in Arlington and San Marco
10         and Northside.
11              THE COURT:  Okay.
12              PROSPECTIVE JUROR:  I am employed by the State of
13         Florida Department of Insurance Fraud, which is a law
14         enforcement agency.  I am not retired.
15              I am divorced, and he's also deceased.
16              I have two children.  One is married to a police
17         officer with the Jacksonville Sheriff's Office, and I
18         am a crime intelligence analyst.  I do background
19         investigations.  I am listed as a witness in a lot of
20         our investigations, and I have been a witness in a
21         civil case before.
22              I have served on jury duty one time in a criminal
23         case, and the person was found guilty.
24              THE COURT:  Were you the foreperson of that jury?
25              PROSPECTIVE JUROR:  No, I was not.
```

```
1              THE COURT:  You mentioned the one child is
2     married to law enforcement.  Do either of your children
3     work and, if so, what do they do?
4              PROSPECTIVE JUROR:  Both of them are stay-at-home
5     mothers.
6              THE COURT:  Okay.  Thank you, Ms. Bretana.
7              PROSPECTIVE JUROR:  My name is Curtis
8     Whittington.  I live in the East Arlington area of
9     Jacksonville.  I've been there about 30 years.  I was
10    in southwest Georgia before that.
11             I manage a company in Jacksonville.  I sell stuff
12    for a company called American Radio.  Never been
13    retired.
14             Married.  My wife works for the IRS.  She's a
15    customer service representative.  She's not retired.
16             Two children; daughter 33, son 30.  They are both
17    in the research field at a couple of universities here
18    in Florida.
19             And I've never been a party or a witness to a
20    legal case, and never served on the jury.
21             THE COURT:  Thank you, sir.  If you will hand
22    that to Ms. Loring.
23             PROSPECTIVE JUROR:  My name is Diana Loring, and
24    I live on the Westside.  I have been here for about
25    13 years.  I am unemployed.  I'm not retired.
```

```
 1              Married.  My husband works for Owens Corning.
 2      He's a mechanic.
 3              I have three children, 27, 33 and my oldest is
 4      deceased.  And they do customer service at a credit
 5      union and logistics.
 6              And I've never been a party or a witness, and
 7      I've never been on a jury before.
 8              THE COURT:  Okay.  Thank you, ma'am.  We're going
 9      to pass the microphone down to Mr. Amos.
10              PROSPECTIVE JUROR:  My name is Corey Amos.  I
11      live in San Marco.  I've lived in the area for about
12      four months.  I've also lived in the Arlington and
13      Beaches area.
14              I am unemployed.  The kind of work I normally do
15      is manual labor.  I am not retired.
16              I'm single, no spouse.  My spouse is not retired.
17      Obviously, I have no spouse.  I have one
18      four-and-a-half-month-old son.
19              And I've been a party and a witness to a criminal
20      case, and I've never served on a jury before.
21              THE COURT:  You were a party and a witness,
22      meaning two separate things?
23              PROSPECTIVE JUROR:  Two separate cases.
24              THE COURT:  And both of them were criminal?
25              PROSPECTIVE JUROR:  Yes.
```

```
 1              THE COURT:  And you said you have not served on a
 2      jury?
 3              PROSPECTIVE JUROR:  I have not served on a jury.
 4              THE COURT:  Thank you.
 5              PROSPECTIVE JUROR:  My name is Milta Tarrant.  I
 6      live on the Westside.  I've lived there for about
 7      15 years.  Before that on the Southside.
 8              I'm employed with Venison Gear.  The type of work
 9      I do is warehouse.  I'm not retired.
10              I am separated.  My spouse lives in a different
11      state.  I'm unsure as to whether or not -- he's
12      employed or not.  I don't know.
13              I have two kids, age 23 and 7.  My older child
14      works in retail, and I've never been a party or a
15      witness to a case.
16              THE COURT:  Have you ever served on a jury?
17              PROSPECTIVE JUROR:  No.
18              THE COURT:  Thank you, ma'am.
19              PROSPECTIVE JUROR:  Hello, Your Honor.  My name
20      is Terrell F. Machaby, Jr.  I live in Jax Beach, on the
21      east side.  I've lived there for about 15 years.  I've
22      also lived in Atlanta, Georgia; North Carolina;
23      Tennessee; Kentucky; Indiana; all around the southeast.
24      I moved around a lot.
25              I'm employed by Three R Group.  I'm a truck
```

```
 1    driver.  I'm not retired.
 2         I'm married, and have three kids.  9, 13 and 16.
 3    My spouse is in the jewelry business.  She sells
 4    diamonds.  Yeah.  That's -- that's about it.
 5         I have been a witness in a case here in Duval
 6    County.  It --
 7         THE COURT:  Was that criminal or civil?
 8         PROSPECTIVE JUROR:  It was a criminal case.
 9    Basically I was a victim, and they changed it to
10    witness.  And then --
11         THE COURT:  Okay.
12         PROSPECTIVE JUROR:  But --
13         THE COURT:  Have you ever been a party or a juror
14    in any case?
15         PROSPECTIVE JUROR:  No, ma'am.
16         THE COURT:  Okay.  Thank you, sir.
17         PROSPECTIVE JUROR:  My name is Scott Houser.  I
18    live in the Mandarin area.  I've lived there for about
19    22 years.  I've also lived in Boston and New York.
20         I'm employed by the Ravina.  I'm a chef.  I am
21    not retired.
22         I'm single.  I have no children, and I've never
23    been a party or a witness in a legal case nor have I
24    been a juror.
25         THE COURT:  Okay.  Thank you very much,
```

```
1        Mr. Houser.
2             PROSPECTIVE JUROR:  My name is Corey McKlevey.  I
3        live in Jacksonville on the Westside.  I also lived in
4        Columbus, Georgia.  I'm employed by Public National
5        Distribution.  I'm a truck driver.  I'm not retired.
6             I am married.  My spouse works for the US Bank.
7        She's an account specialist.  She's not retired.
8             I have three children, ages 24, 23 and 5.
9        They're all students.
10            I have not been a party or a witness to a legal
11       case.  I have served on a jury.  It was a civil case.
12       I wasn't the foreman, and we did reach a verdict.
13            THE COURT:  Thank you, sir.
14            Ms. Porter.
15            PROSPECTIVE JUROR:  My name is Nellie Porter.  I
16       live in the Springfield area.  My home is located in
17       the Springfield area.  I have lived in this area off
18       and on all my life, but I've lived in Springfield for
19       about seven years.  I've also lived in Mississippi.
20            I'm employed by Baptist Hospital.  The kind I do
21       is part-time sitter.  I'm retired Navy, civil service.
22       The type of work I did is environmental protection
23       specialist and inspector.
24            I'm divorced.  I have two daughters, 44 and 50.
25       The 50-year-old works for AT&T.  The 44-year-old was
```

```
 1        injured in an automobile accident, so she's disabled.
 2            And 16 and 17 do not apply.
 3            THE COURT:  Okay.  So you have not been a party,
 4        a witness or served on a jury?
 5            PROSPECTIVE JUROR:  No, ma'am.
 6            THE COURT:  Mr. Carter.
 7            PROSPECTIVE JUROR:  My name is John Carter.  I
 8        live at Jax Beach, the coastal area.  I've been there
 9        for about ten years now.  I also lived up north in New
10        York.
11            My employer is Lotus.  I'm in sales.  Not
12        retired.
13            I'm married.  My wife is disabled.
14            I have no children.
15            I have -- I haven't been in any legal or civil
16        case or on any jury.
17            THE COURT:  Thank you so much, Mr. Carter.
18            All right.  The last row.  We will pick it up
19        with Mr. Rivera.
20            PROSPECTIVE JUROR:  My name is Mark Rivera.  I
21        live in Mandarin.  I've been there for about seven
22        years now.  I've also lived in numerous places.  I was
23        in the Navy.  I retired.
24            Do you want me to run through the list?
25            THE COURT:  No.
```

1    PROSPECTIVE JUROR:  Okay.  Good.  I'm currently

2    worknig for Comcast.  I'm a communications technician.

3    I'm retired from the US Navy.

4        Married.  My wife works for Duval County Public

5    Schools.  She works with the children where their

6    language is -- English is the second language.

7        I have two children.

8        She's not retired.

9        I have two children, ages 25 and 22.  One is an

10   assistant manager at a Game Stop retail store, and the

11   other one is active-duty Army.

12       I have not been a party or a witness in a legal

13   case or a jury before.

14       THE COURT:  Mr. Rivera, let me ask you, are you

15   related to Juror Number 1, Eric Rivera.

16       PROSPECTIVE JUROR:  No.

17       THE COURT:  I just wanted to be clear about that.

18       We'll go over to Mr. McCollum.

19       PROSPECTIVE JUROR:  Michael McCollum.  I live in

20   Avondale.  Been in Jacksonville about ten years.

21   Athens, Georgia, for a couple years before that.  Green

22   Hazel Insurance Group, commercial insurance.  Not

23   retired.

24       My wife works with JEA in purchasing.  She is not

25   retired either.

```
 1              I have a son who is almost three, and one more on
 2       the way.  My son likes to play with trains, but does
 3       not work.
 4              I have not been a witness and not served on a
 5       jury before.
 6              THE COURT:  Have you ever been a party to either
 7       a civil or criminal case?
 8              PROSPECTIVE JUROR:  No, ma'am.
 9              THE COURT:  Thank you so much.
10              PROSPECTIVE JUROR:  My name is Chantay Blackwell.
11       I live in the Arlington area.  I've lived there for
12       14 years now.  I am employed by Bank of America/Merrill
13       Lynch, and I am in global information security, IT.  I
14       am not retired.
15              I am married.  My husband is employed by Homeland
16       Security, and he -- his work is with TSA.  He is
17       retired Navy.
18              We have two children -- well, three children.
19       One is 25, 23 and 21.  The 25-year-old is employed at a
20       cellular call center.  The 23-year-old is employed
21       through temporary agency at one of the hospitals.  I
22       believe at Shands.  And the 21-year-old is employed at
23       Wal-Mart.
24              I have not been a party or a witness to a legal
25       case.  I have served on a jury before.  It was civil,
```

1    and I was not the foreperson and we did reach a

2    verdict.

3              THE COURT:  Okay.  Thank you, ma'am.

4              Ms. Baumgarten.

5              PROSPECTIVE JUROR:  My name is Brenda Baumgarten.

6    I live in Mandarin.  I've lived there about 16 years.

7    Born and raised in the San Jose area, but I've also

8    lived in Georgia and Idaho.  I'm not employed, but I

9    used to be a recruiter for a staffing company.

10             I am married.  My spouse is employed by the

11   United States Department of Treasury, and he

12   specializes in tax exempt and government exempt

13   organizations.

14             We have no children.

15             I have never been a party or a witness to a legal

16   case, however, I have served on a jury.  It was a civil

17   trial.  I was not the foreperson, and the case ran

18   about three or four days and then they settled so we

19   didn't actually have to decide anything.

20             THE COURT:  Okay.  Mr. Bennett.

21             PROSPECTIVE JUROR:  Hello.  My name is Rodney

22   Bennett.  I live on the Northside of Jacksonville.  I

23   have been living there for about 24 years.

24             I'm employed by UPS.  I do warehouse work.  I'm

25   not retired.

```
 1              I'm single.

 2              I have two kids.  They are -- one is three and

 3         one is one.

 4              I never been a party or witness in a legal case,

 5         and I've never served on a jury before.

 6              THE COURT:  Okay.  Thank you, Mr. Bennett.

 7              We will hand it over to Ms. Kelly.

 8              PROSPECTIVE JUROR:  My name is Kayla Kelly.  I

 9         live on the Westside.  I have for 23 years.

10              I'm unemployed, not retired.

11              Single.  No spouse.

12              No kids.

13              I have never been a party or a witness to a legal

14         case, and I've never served on a jury.

15              THE COURT:  Okay.  Thank you, Ms. Kelly.

16              And last, but not least, Mr. Resto.

17              PROSPECTIVE JUROR:  My name is Gilberto Daniel

18         Resto.  I live in the East Arlington area.  I've lived

19         there for about 15 years.  I've also lived in

20         Allentown, Pennsylvania.

21              I'm employed.  The kind of work I do is

22         ophthalmology.  I'm not retried.

23              I'm single.

24              I have one child, age 2, and never been a party

25         or a witness in a legal case and never served on a
```

```
1     jury.

2            THE COURT:  Thank you, Mr. Resto.

3            All right.  Ladies and gentlemen, the attorneys

4     are now going to ask you -- the attorneys and

5     Mr. Brooks are now going to ask you some questions.

6     Please keep in mind that what they say now or any other

7     time during the trial is not to be accepted by you as

8     evidence or law.  They will simply be asking you

9     questions looking for answers from you.  Please do not

10    infer anything or read anything into the questions that

11    they ask you.

12           Additionally, they are not allowed to tell you

13    what the law of a case is.  That is exclusively the job

14    of the Court, but at this time I will call upon the

15    State to inquire first.

16           State?

17           MS. HIXON:  Thank you, Your Honor.

18           Good afternoon, everyone.

19           VENIREMEN:  Good afternoon.

20           MS. HIXON:  My name is Anna Hixon, and together

21    with Sandra Rosendale, we represent the State of

22    Florida in prosecuting Mr. Brooks.  As the judge did

23    say, and I'll reiterate, it is the State's burden to

24    prove Mr. Brooks guilty beyond a reasonable doubt.  I

25    do want to go over, too -- also just so you know, this
```

```
1    is the one time we actually get to talk and interact
2    with you, so if you ever -- if I'm talking to someone
3    -- like if I'm talking to Mr. Huff, and Ms. Riner, if
4    you want to say something, feel free to raise your
5    hand.  If anybody -- it's an open discussion, okay.
6    All right.
7        I wanted to ask some follow-up questions about
8    the questionnaire you just answered.  Let's see.
9    Ms. Lee, you said your spouse was retired?
10        PROSPECTIVE JUROR:  Yes.
11        MS. HIXON:  What did he do before he retired?
12        PROSPECTIVE JUROR:  He was a computer programer
13    analyst for the State of Arkansas.
14        MS. HIXON:  Was it in any specific department?
15        PROSPECTIVE JUROR:  The highway department.
16        MS. HIXON:  The highway department?
17        PROSPECTIVE JUROR:  Yes.
18        MS. HIXON:  Thank you.  And let's see.
19        PROSPECTIVE JUROR:  He also retired from the
20    military.
21        MS. HIXON:  From the military.  What branch?
22        PROSPECTIVE JUROR:  Army.
23        MS. HIXON:  Army.  And Mr. Horton, you said
24    before you went to work for the power plant you retired
25    from another job?
```

```
 1              PROSPECTIVE JUROR:  Yes.

 2              MS. HIXON:  What was that?

 3              PROSPECTIVE JUROR:  TVA, Tennessee Valley

 4       Authority.  Another power company.

 5              MS. HIXON:  Another power plant?

 6              PROSPECTIVE JUROR:  Yes.

 7              MS. HIXON:  And Mr. Evans, you said your wife

 8       works for the IRS.  Was that in customer service?

 9              PROSPECTIVE JUROR:  Computer specialist.

10              MS. HIXON:  Computer specialist.  Thank you.

11              Now, does anyone here know anyone on the panel?

12              VENIREMEN:  No.

13              MS. HIXON:  All right.  And as I briefly told you

14       it is mine and Ms. Rosendale's burden to prove the

15       defendant guilty beyond a reasonable doubt.  And we --

16       you heard from the judge, the charges that the State

17       has charged that Mr. Brooks has committed.  And you

18       understand right now that it stands that Ms. Rosendale

19       and I have to prove those to you through testimony

20       beyond a reasonable doubt?  Does everyone understand

21       that?

22              VENIREMEN:  (Inaudible response.)

23              MS. HIXON:  Now, does everyone here -- you've

24       heard that it involves a child under 12.  Would anyone

25       here have difficulty sitting and listening to testimony
```

```
 1         concerning matters of a sexual nature and discussing it
 2         with members of the jury?  Would anyone be unable to do
 3         that?  We have Mr. Amos?
 4              PROSPECTIVE JUROR:  Yes.
 5              MS. HIXON:  Well, based on that would you be able
 6         to -- just not be able to put it out of your mind and
 7         you would not be able to discuss it to come to a
 8         verdict?
 9              PROSPECTIVE JUROR:  I think my verdict would be
10         biassed because of my past.
11              MS. HIXON:  So you would be biassed towards the
12         defendant?
13              PROSPECTIVE JUROR:  Correct.
14              MS. HIXON:  And you would not be able -- well,
15         let me ask it this way, if the judge tells you that the
16         State has to prove A, B and C to you, and you're pretty
17         sure we proved A and you're pretty sure we proved B,
18         but you're not sure about C, based on your past, are
19         you going to give Ms. Rosendale and I C or are you
20         going to be able to follow the law?
21              PROSPECTIVE JUROR:  I wouldn't -- honestly, I
22         wouldn't be able to --
23              MS. HIXON:  To follow the law?
24              PROSPECTIVE JUROR:  Correct.
25              MS. HIXON:  All right.  Thank you.
```

```
 1          Did anyone else raise their hand?
 2          VENIREMEN:  (No response.)
 3          MS. HIXON:  All right.  Has anyone, either
 4    yourself, a close family member or a friend -- or close
 5    friend been the victim of a sexual crime?
 6          All right.  We'll go row by row.  All right.  And
 7    Mr. Huff?  And who was that?
 8          PROSPECTIVE JUROR:  My 22-year-old son.
 9          MS. HIXON:  Your son.  About how long ago was
10    that?
11          PROSPECTIVE JUROR:  It's still in -- it hadn't
12    even went to trial yet.
13          MS. HIXON:  It's still pending.  Would anything
14    about that given the case that you're -- you're sitting
15    here potentially a juror for, would anything about that
16    experience with your son cause you to be -- unable to
17    be fair and impartial in this case and give both sides
18    a fair trial?
19          PROSPECTIVE JUROR:  I can give both sides a fair
20    trial.
21          MS. HIXON:  You could follow the law.  And if
22    Ms. Rosendale and I do not prove the case to you beyond
23    a reasonable doubt, you would be able to make the
24    appropriate decision?
25          PROSPECTIVE JUROR:  (Nods head.)
```

1          MS. HIXON: Anyone else in the first row?

2          How about the second row? Okay. We have Mr. --

3      is Vincennie?

4          PROSPECTIVE JUROR: Vincennie.

5          MS. HIXON: And who was that?

6          PROSPECTIVE JUROR: My daughter, and myself as a

7      kid, but --

8          MS. HIXON: Would those two experiences cause you

9      to unable to be fair and impartial in this case or

10     would you be able to give both sides a fair trial and

11     hold Ms. Rosendale and I to our burden?

12         PROSPECTIVE JUROR: I probably could, but I do

13     have some anger associated with the premise.

14         MS. HIXON: Okay. Well, that anger, it's kind of

15     like what I asked Mr. Amos --

16         PROSPECTIVE JUROR: I probably can.

17         MS. HIXON: You probably can or you can?

18         PROSPECTIVE JUROR: I can, yeah.

19         MS. HIXON: All right. Thank you.

20         Anyone else on the second row?

21         Ms. Riner.

22         PROSPECTIVE JUROR: A friend of mine and her

23     little brother.

24         MS. HIXON: Okay. About how long ago was that?

25         PROSPECTIVE JUROR: It's probably been about a

1    decade.  When they were little.

2         MS. HIXON:  Is it something that you were aware

3    of back then or you just learned about --

4         PROSPECTIVE JUROR:  Something I've heard about

5    it.

6         MS. HIXON:  So it wasn't something like where you

7    went to court --

8         PROSPECTIVE JUROR:  I wasn't closely involved at

9    all.

10        MS. HIXON:  But same question to you, would that

11   -- knowing that about your friend and given the charges

12   in this case, would that affect your ability to be fair

13   and impartial?

14        PROSPECTIVE JUROR:  Probably not too much.  I

15   mean, I can't say --

16        MS. HIXON:  I don't mean to pressure you, but

17   back there, you know, you're kind of on the fence and

18   you're not sure if Ms. Rosendale and I proved it, would

19   that experience with your friend saying, you know what,

20   I'm going to give it to him or are you going to hold us

21   our burden and if we don't prove the case beyond a

22   reasonable doubt, you will hold us to our burden?

23        PROSPECTIVE JUROR:  I would hold you to your

24   burden.

25        MS. HIXON:  All right.  Thank you.

```
1              Anyone else on the second row?  Mr. McLain.
2              PROSPECTIVE JUROR:  I didn't say anything to
3         start with, but I had a situation happen to my sister
4         about 60 years ago, so -- I mean, I could -- I could
5         judge fairly and evenly.  It was a long time ago, but I
6         did want to bring that up.
7              MS. HIXON:  But you would still be able to do --
8              PROSPECTIVE JUROR:  Yes.
9              MS. HIXON:  -- your duty and hold us to our
10        burden?
11             PROSPECTIVE JUROR:  Yes, ma'am.
12             MS. HIXON:  All right.  Excuse me.  Anyone else
13        on the second row?
14             How about on the third row?  Anyone on the third
15        row?  We have Mr. Somers?
16             PROSPECTIVE JUROR:  Yeah.
17             MS. HIXON:  Who was that?
18             PROSPECTIVE JUROR:  My wife and her daughter,
19        both.  My wife when she was young and my daughter about
20        five years ago.
21             MS. HIXON:  All right.  And the same question to
22        you, would anything about those experiences affect your
23        ability to be fair and impartial in this case?
24             PROSPECTIVE JUROR:  I got two daughters, and
25        truthfully it would be a little tough.
```

```
 1              MS. HIXON:  Well, the same question like I asked
 2       Mr. Amos and everyone else, you know, if you're told we
 3       have to prove A, B and C to you and you're sure we got
 4       A and B --
 5              PROSPECTIVE JUROR:  I would give you C.
 6              MS. HIXON:  You would give me C even if we
 7       haven't proven it?
 8              PROSPECTIVE JUROR:  Yes.
 9              MS. HIXON:  All right.  Thank you.
10              And was that Mr. Fusani?  Did you raise your
11       hand?
12              PROSPECTIVE JUROR:  It was a good friend that I
13       went to high school with.  It was about four or five
14       years ago.  I wasn't really too involved, I was just
15       there for her and it brings up emotion, but I'm not --
16              MS. HIXON:  You would hold us to our burden?
17              PROSPECTIVE JUROR:  Yes, ma'am.
18              MS. HIXON:  You would make us prove A, B and C?
19              PROSPECTIVE JUROR:  Yes.
20              MS. HIXON:  Anyone else on the third row?
21              How about on the fourth row?  All right.  Let's
22       see.
23              We have Ms. Porter?
24              PROSPECTIVE JUROR:  Yes.
25              MS. HIXON:  And who is that?
```

```
 1              PROSPECTIVE JUROR:  My nephew.

 2              MS. HIXON:  And about how long ago was that?

 3              PROSPECTIVE JUROR:  About three and a half years

 4         ago.

 5              MS. HIXON:  Okay.  Would anything about that

 6         experience affect your ability to be fair and impartial

 7         in this case?

 8              PROSPECTIVE JUROR:  I'm not sure.

 9              MS. HIXON:  Okay.  Well, let me ask you this, the

10         same question to you, A, B and C.  You're pretty sure

11         we proved A and B, and you're not sure about C.  Are

12         you going to give us C or are you going to hold us to

13         our burden?  Are you going to make us prove all those

14         elements?

15              PROSPECTIVE JUROR:  I would make you prove it.

16              MS. HIXON:  You would make us prove them all?

17              PROSPECTIVE JUROR:  Yes.

18              MS. HIXON:  And then who else was on the fourth

19         row?  We have Mr. Houser?

20              PROSPECTIVE JUROR:  Yes.

21              MS. HIXON:  And who was that?

22              PROSPECTIVE JUROR:  My best friend and roommate

23         in Boston.

24              MS. HIXON:  About how long ago was that?

25              PROSPECTIVE JUROR:  About 12 years ago.
```

```
1            MS. HIXON:  And same question to you, would
2    anything about that affect your ability to be fair and
3    impartial or -- same thing, would you make me prove A,
4    B and C or are you going to give me C if you're not
5    sure I proved it?
6            PROSPECTIVE JUROR:  I would probably still make
7    you prove C.
8            MS. HIXON:  Probably would or you would?
9            PROSPECTIVE JUROR:  I mean, I would.  I'd
10   probably make you prove it.
11           MS. HIXON:  All right.  Thank you.
12           And then Mr. Machaby?
13           PROSPECTIVE JUROR:  Yes.
14           MS. HIXON:  All right.  Who was that?
15           PROSPECTIVE JUROR:  I had a girlfriend when I was
16   younger, and she was raped basically, and she was
17   pretty much underage, too, but it wouldn't have
18   anything to do with my decision at all.
19           MS. HIXON:  You would still hold us to our
20   burden?
21           PROSPECTIVE JUROR:  Yes, ma'am.
22           MS. HIXON:  And let's see -- was it -- is it
23   Ms. Tarrant?
24           PROSPECTIVE JUROR:  Tarrant.
25           MS. HIXON:  And who is that?
```

```
 1            PROSPECTIVE JUROR:  My daughter -- my older
 2       daughter.
 3            MS. HIXON:  Okay.  Same question to you, would
 4       anything about that affect your ability to be fair and
 5       impartial?
 6            PROSPECTIVE JUROR:  Nope.
 7            MS. HIXON:  You would be able to hold us to our
 8       burden?
 9            PROSPECTIVE JUROR:  Definitely.
10            MS. HIXON:  And then we had -- Mr. Amos, I know
11       you said you would have bias against the defendant
12       because of that, right?  I know you raised your hand.
13            PROSPECTIVE JUROR:  Right.
14            MS. HIXON:  And how about the fifth row?  Okay.
15       We have Ms. Kelly.  Who was that?
16            PROSPECTIVE JUROR:  A close friend when we were
17       younger.
18            MS. HIXON:  And same question to you, would you
19       hold us to our burden or would you be unable to be fair
20       and impartial?
21            PROSPECTIVE JUROR:  I couldn't be fair.  It was
22       by a homeless person, and I still can't be around them
23       because it bothers me.
24            MS. HIXON:  So you would give us element C even
25       if we hadn't proved it?
```

```
1              PROSPECTIVE JUROR:  Yes.

2              MS. HIXON:  All right.  And there was one more

3    person on the fifth row.  That was Ms. Blackwell?

4              PROSPECTIVE JUROR:  Yes.  It was me, and it was

5    in my youth.

6              MS. HIXON:  Would anything about that affect your

7    ability to be fair and impartial?

8              PROSPECTIVE JUROR:  I say no, but I don't know

9    once I start hearing.

10             MS. HIXON:  Okay.  So you wouldn't know if you

11   would give us element C even if we hadn't proved it?

12             PROSPECTIVE JUROR:  Yes.  I'd like to say I'm a

13   fair person so I like to hear all sides, but since it's

14   something that's so close to home --

15             MS. HIXON:  Okay.  And ladies and gentlemen,

16   there are no right or wrong answers here.  I mean, you

17   just -- as long as you answer truthfully there are no

18   right or wrong answers here.

19             Let's see.  Now, would everyone here agree that

20   crimes -- especially crimes of this nature are not

21   offenses committed in front of a lot people?

22             VENIREMEN:  Yes.

23             MS. HIXON:  Does everyone think that a defendant

24   should be found not guilty because he was sophisticated

25   enough to commit his crime away from a crowd of
```

```
1    witnesses?

2          VENIREMEN:  No.

3          MS. HIXON:  So would everyone agree that it is

4    the quality of the testimony, not the quantity of the

5    testimony that the State presents you?  Because as

6    you'll hear from -- if you're selected to be on this

7    jury and you heard from Judge Salvador, testimony is

8    evidence, whatever you hear from the witness stand is

9    the same as if you have a tangible piece of -- of paper

10   or anything you have in your hand.  Does everyone

11   understand that?

12         VENIREMEN:  Yes.

13         MS. HIXON:  And does everyone understand that the

14   State's burden is constant regardless of the facts?

15   Because we keep talking about this burden that the

16   State has, but it remains constant regardless of what

17   the facts are?  Everyone understand that?

18         VENIREMEN:  Yes.

19         MS. HIXON:  And a defendant has a right to his

20   day in court whether the State's evidence consists of

21   50 nuns with a video or one single witness?  Does

22   everyone once that?

23         VENIREMEN:  Yes.

24         MS. HIXON:  Does anyone here have a problem with

25   the fact that the defendant is presumed innocent unless
```

```
 1       and until the State presents facts to prove the

 2       defendant is guilty beyond a reasonable doubt?

 3               VENIREMEN:  No.

 4               MS. HIXON:  Does anyone have a problem with that?

 5               VENIREMEN:  No.

 6               MS. HIXON:  And does everyone here understand

 7       that after the State has presented its case, and if you

 8       find that all of the elements of the crime have been

 9       presented along with facts that -- beyond a reasonable

10       doubt prove that the defendant committed the crime, you

11       would find the defendant guilty?  Does everyone

12       understand that?

13               VENIREMEN:  Yes.

14               MS. HIXON:  Conversely, does everyone understand

15       if you find that we didn't prove it beyond a reasonable

16       doubt, you find him not guilty?  Does everyone

17       understand that?

18               VENIREMEN:  Yes.

19               MS. HIXON:  May I have just one moment, Your

20       Honor?

21               THE COURT:  Yes.

22               MS. HIXON:  I don't have anything further, Your

23       Honor.

24               THE COURT:  All right.  Thank you.

25               Mr. Brooks, you may inquire.
```

```
1              THE DEFENDANT:  Thank you, Your Honor.  Do I go
2       to the podium?
3              THE COURT:  You can go to the podium if you
4       choose.
5              THE DEFENDANT:  Excuse me, Your Honor.  I have a
6       question before a start.  Am I allowed to tell the
7       actual age of the individual now?
8              THE COURT:  No, sir.
9              THE DEFENDANT:  Just wanted to make sure.
10             THE COURT:  The evidence will come out during the
11      trial.  This is simply questioning the jurors.
12             THE DEFENDANT:  Good morning, everyone.
13             VENIREMEN:  Good morning.
14             THE DEFENDANT:  As you've heard, they got me on
15      some pretty heavy charges, and I cannot deny it and
16      hopefully with your help I can prove myself free of the
17      charges.
18             MS. HIXON:  Objection.  Improper voir dire.
19             THE DEFENDANT:  Are you serious?
20             THE COURT:  This is a question-and-answer
21      session, Mr. Brooks, so you just need to ask the jurors
22      questions that will help you decide who you think
23      should sit on the jury.
24             THE DEFENDANT:  Sorry about that.
25             The first question I have is directed towards
```

```
 1    everyone.  Should a person be held accountable for a
 2    lie regardless of their age?  Do you feel they should
 3    be?
 4         MS. HIXON:  Objection.  Improper voir dire.
 5         THE COURT:  If you can speak into the mic,
 6    because I apologize, I didn't hear that full question.
 7         THE DEFENDANT:  I'm sorry.
 8         Should a person be held --
 9         THE COURT:  When there's an objection you have to
10    let the Court rule on the objection to see whether or
11    not you can go forward or not, but I will need to hear
12    the question.  Can you repeat it.
13         THE DEFENDANT:  Okay.  Should a person be held
14    accountable for a lie regardless of their age?
15         THE COURT:  Should a person be held accountable
16    for a lie regardless of their age?
17         THE DEFENDANT:  Yes, ma'am.
18         THE COURT:  I'm going to sustain that objection.
19    That means you can't ask that question.  You need to
20    move on.  Thank you.
21         THE DEFENDANT:  All right.  I guess my next
22    question would be, do you like African-Americans?
23         MS. HIXON:  Objection.  Improper voir dire.
24         THE COURT:  Mr. Brooks, that's not an appropriate
25    question.
```

1          THE DEFENDANT:  I am sorry.  This is my first

2     time doing this, so --

3          MS. HIXON:  Objection.  Violation.

4          THE COURT:  We're going to give you a microphone

5     so we can all hear you, but please keep in mind the

6     Court's pretrial ruling, sir, which you're bound to

7     today, okay?

8          THE DEFENDANT:  Okay.  Well --

9          THE COURT:  The officer's going to fix the mic so

10    we can hear, all right.  I hear mumbling, but I did

11    hear that last question, and I will sustain that

12    objection.  You can't ask that.

13         THE DEFENDANT:  Okay.  All right.

14         Is that better?

15         THE COURT:  Yes, sir.  I can hear you well now.

16    Thank you.

17         THE DEFENDANT:  Thank you.  But at this time that

18    ends my questions, and I do appreciate y'all for

19    listening.  Thank you.

20         THE COURT:  Okay.  You have no further questions?

21         THE DEFENDANT:  No, ma'am.

22         THE COURT:  Ladies and gentlemen of the jury, at

23    this time I'm going to give you a short break, because

24    the attorneys and Mr. Brooks and I are going to confer

25    and select the jury that will try this case this coming

```
 1        Wednesday and Thursday.  So I would ask -- if there's
 2        no further questions by either side, the jurors you can
 3        step outside of the courtroom and reconvene here at
 4        three o'clock.  That's about 17 minutes.
 5            (Prospective jurors leave the courtroom.)
 6            MS. HIXON:  Can we have a moment in one of the
 7        outer rooms to go over everything?
 8            THE COURT:  Yes.  You can review your list and
 9        think about who you might like, and we can convene
10        shortly to go through and begin the jury selection
11        process.
12            (Brief recess.)
13            THE COURT:  The State's ready at this time?
14            MS. HIXON:  May we stay seated for this?
15            THE COURT:  Yes, of course.
16            MS. HIXON:  Thank you.
17            THE COURT:  Let the record reflect that the
18        defendant is present, as are the attorneys for the
19        State.  We have now conducted the jury inquiry, and we
20        will begin with striking those jurors for cause first
21        before we move into peremptories.
22            State, what jurors do you suggest should be
23        stricken for cause?
24            MS. HIXON:  Your Honor, Number 16, Mr. Somers.
25        He said that based on his experience with his wife and
```

1    daughter he would not be able to be fair and impartial

2    in this case.

3         THE COURT:  That's correct.  I found that he said

4    it would be tough, and he couldn't be fair and

5    impartial based on his wife and daughter being victims

6    of sex crimes, so we will strike Mr. Somers for cause.

7         MS. HIXON:  Your Honor, also Number 22, Mr. Amos.

8    From the beginning when Your Honor questioned him, he

9    said he would have bias against the defendant.  He said

10   that based on history and his past, when I asked if

11   anyone -- them or a close friend or family member been

12   the victim of a sex crime, he raised his hand as well.

13        THE COURT:  Yes, he did.  So we will strike Juror

14   Number 22, Mr. Amos, for cause.

15        MS. HIXON:  And, Your Honor, Number 25,

16   Mr. Houser.  He said that his best friend had been the

17   victim of a sex crime.  He would go back and forth on

18   whether or not he would hold the State to their burden

19   based on that experience, and he would never outright

20   say that he would be able to hold us to our burden

21   because of that.

22        THE COURT:  That's correct.  I noticed a very

23   long hesitation to even answer the question, and the

24   most he could say was probably, so I will strike

25   Mr. Houser, Juror Number 25, for cause.

1          MS. HIXON:  And, Your Honor, Number 31,

2     Ms. Blackwell, she indicated that she was a prior

3     victim of a sex crime, and because of that she could

4     not be fair and impartial as well.

5          THE COURT:  That's correct.  She said it was too

6     close to home, so I will strike Juror Number 31,

7     Ms. Blackwell, for cause.

8          MS. HIXON:  And, Your Honor, Number 34,

9     Ms. Kelly, had a close friend, and she also said that

10    that would affect her ability to be fair and impartial

11    as well.

12         THE COURT:  That's true.  She said she could not

13    be fair.  I will strike Ms. Kelly for cause, Number 34.

14    Any more from the State?

15         MS. HIXON:  No, Your Honor.

16         THE COURT:  Mr. Brooks, any others for cause?

17    These are the individuals who cannot be fair and

18    impartial and cannot follow the law to render a verdict

19    in your case.

20         THE DEFENDANT:  Well, actually, Your Honor, I had

21    no problem with any one of these individuals, to be

22    honest.

23         THE COURT:  Okay.

24        So you have no other -- nobody else you wish to

25    strike for cause?

```
1            THE DEFENDANT:  No, ma'am.  I ain't got no
2       problem with them.
3            THE COURT:  Let me just review and see if there's
4       -- all right.  So let's begin with peremptory
5       challenges.  Each side has the same amount.  We start
6       with the State, we would move to defense.  We go back
7       and forth.  We'd begin looking at the first seven
8       jurors.  So this is Juror Number 1 through 7 at the
9       bottom -- at the top of your list or the bottom of the
10      chart, so currently the jury would look like Number 1,
11      Eric Rivera; 2, Samuel Huff; 3, Era Lee; 4, Eric
12      Shaffer; 5, John McLain; 6, Joshua Hewitt; and Crystal
13      Caswell would be the alternate.
14           State, do you have any peremptory strikes to any
15      of the first seven?
16           MS. HIXON:  No, Your Honor.
17           THE COURT:  Mr. Brooks, do you have any strikes
18      to any of the first seven?
19           THE DEFENDANT:  No, Your Honor.
20           THE COURT:  So the first seven looks like an
21      appropriate jury for each side?
22           MS. HIXON:  It's satisfactory with the State,
23      yes, Judge.
24           THE DEFENDANT:  Yes, ma'am.
25           THE COURT:  Okay.  Then that will be your jury.
```

```
 1        We have Number 1, Eric Rivera; Number 2, Samuel Huff;

 2    3, Era Lee; 4, Eric Shaffer; 5, John McLain; 6, Joshua

 3    Hewitt; and 7, Crystal Caswell will be the alternate

 4    juror.

 5            State, are you ready to bring the jury in?

 6            MS. HIXON:  Yes, Judge.

 7            THE COURT:  Mr. Brooks, are you ready for the

 8    jurors to come in?

 9            THE DEFENDANT:  Yes, Your Honor.

10            THE COURT:  Let's bring them in, please.

11            (Prospective jurors enter the courtroom.)

12            THE COURT:  Thank you, ladies and gentlemen.  All

13    right.  Court is back in session.  Let the record

14    reflect that the jury panel is all present, as is the

15    State and the defendant, Mr. Brooks.

16            Ladies and gentlemen of the jury, a jury has been

17    selected to hear this case.  As your name is called, if

18    you will please come forward and you will be seated in

19    the jury box.

20            If your name is not called, I want to thank you

21    very much for your service here today.  Again, as I

22    said at the beginning of the process, thank you for

23    just showing up.  Part of the jury selection process is

24    part of our criminal justice system, and it would not

25    work without citizens such as yourselves who take time
```

1       out from their busy days and their work lives and their

2       home lives to come down to the courthouse and make sure

3       our system progresses.  So I want to thank you truly

4       with much appreciation for your participation here

5       today.  And you are excused for from further service.

6       You do not need to come back downstairs to the second

7       floor.  You are free to leave if you are not called.

8       And if any of you need any kind of note for work or

9       school or otherwise, I believe the bailiffs can assist

10      you with that or tell you where to go to get such a

11      note.

12          But for now those of you who I do call, you have

13      been selected as the jury.  So ladies and gentlemen,

14      those following individuals will be:  Juror Number 1,

15      Eric Rivera; Juror Number 2, Samuel Huff; Juror Number

16      3, Era Lee; Juror Number 4, Eric Shaffer; Juror Number

17      5, John McLain; Juror Number 6, Josh Hewitt; and Juror

18      Number 7, Crystal Caswell.

19          So the rest of you ladies and gentlemen are

20      excused, and you are free to go with my sincere

21      appreciation.  Thank you.

22          (Excused prospective jury panel leaves the

23      courtroom.)

24          THE COURT:  The order is Mr. Rivera, Mr. Huff,

25      Ms. Lee, Mr. Shaffer, Mr. McLain, Mr. Hewitt and

```
 1        Ms. Caswell.  All right.  Ladies and gentlemen, those

 2     of you in the jury box are indeed and have been

 3     selected to try this case.  Let me give you some final

 4     instructions before I excuse you for the day.

 5        You are not to discuss this case among yourselves

 6     or with anyone else.  Should anyone attempt to discuss

 7     this case with you, you must stop them.  If they

 8     persist, leave him or her at once and report it to any

 9     one of the bailiffs who will advise me.

10        Also you are not to read, watch or listen to any

11     radio, television or newspaper stories about this case

12     should any air or be printed.

13        Please tell your families that court should

14     adjourn no later than 8 p.m., and to be honest, I will

15     try to get you out of here on Wednesday and Thursday --

16     of course, jury deliberations and how long you all take

17     to deliberate is completely up to you, but we will try

18     to end at a reasonable hour on Wednesday.

19        As I mentioned earlier, we will commence this

20     trial this coming Wednesday, February the 13th, at

21     10:30 a.m. because we have some preliminary matters

22     unrelated to this case to address, so if you will

23     report back to the courthouse at that hour.  Likewise,

24     on Thursday we will start at 10:30 a.m. as well.

25        If you should run into any of the attorneys
```

1    assigned to this case, please do not engage them in

2    conversation nor will they engage you in any.  Please

3    don't think they are being rude if they don't say hello

4    or good morning.  They are following the canons of

5    ethics, and are our instructions that they are not to

6    talk to the jurors at any time.

7         When you come back to court, you will report --

8    Officer Boyd, where do they report when they come back,

9    just directly out there?

10        THE BAILIFF:  If they park at the jury lot, the

11   jury shuttle will drop them at the employee entrance

12   and there will be a police bailiff who will get them up

13   here.  I'll give them all of those instructions

14   outside.

15        THE COURT:  Okay.  Very good.  They will instruct

16   you on parking and where you will arrive and the use of

17   your juror badges.  You've got hem on now, and when you

18   come back on Wednesday and on Thursday, you want to be

19   sure that you are wearing them at all times.

20        You will be -- when you come back also you will

21   be seated in this order, so please be mindful of what

22   order you are and what number you are, because we will

23   ask that you will please come back and sit in that

24   order.

25        I believe that is it.  If anyone has any

```
1    questions, then you-all are excused for today, and I
2    see you back here Wednesday at 10:30.  Thank you,
3    ladies and gentlemen.
4         (Jury panel leaves the courtroom.)
5         Any exceptions or objections to the instructions
6    that I gave to the jury.
7         MS. HIXON:  No, Your Honor.
8         THE DEFENDANT:  No, Your Honor.
9         THE COURT:  And everybody is satisfied with the
10   jurors that have been selected for this case?
11        MS. HIXON:  Yes, Your Honor.
12        THE DEFENDANT:  Yes, Your Honor.
13        THE COURT:  So we are in recess in this matter
14   until Wednesday morning at 10:30 unless there's any
15   reason we need to come a little earlier to address any
16   preliminary matters.
17        MS. HIXON:  Not on the State's part, no.
18        THE DEFENDANT:  I'm fine, Your Honor.
19        THE COURT:  Okay.  Wednesday at 10:30.
20        Let me ask you, Mr. Brooks, will you dressed in
21   the same fashion or will you opt to wear clothes for
22   the jury trial?
23        THE DEFENDANT:  Same fashion.
24        THE COURT:  All right.  Thank you, sir.
25        (Proceedings concluded at 3:15 p.m.)
```



1                    - - -
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

87

```
 1                    C E R T I F I C A T E

 2   STATE OF FLORIDA )

 3   COUNTY OF DUVAL  )

 4        I, Kelly C. Foster, Court Reporter, certify that I

 5   was authorized to and did stenographically report the

 6   foregoing proceedings and that the transcript is a true and

 7   complete record of my stenographic notes.

 8        DATED this ____ day of _____, 2014.

 9

10

11

12                    _____

13                    KELLY C. FOSTER
                       Court Reporter
14

15

16

17

18

19

20

21

22

23

24

25
```

## CERTIFICATE OF CLERK

**STATE OF Florida,**　　　　　　　　　　**16-2012-CF-006884-AXXX-MA**
**COUNTY OF DUVAL**　　　　　　　　　　**1D13-1073**


**I, RONNIE FUSSELL, Clerk of the Circuit and County Courts for the County of Duval, State of Florida, do hereby certify that the foregoing pages 01 to 094 inclusive contain a correct transcript of the record of the judgment in the case of STATE OF FLORIDA vs. CLIFTON MCNEIL BROOKS and a true and correct recital and copy of all such papers and proceedings in said cause as appears from records and files of my office and that have been directed to be included in said record by the directions furnished to me.**


**SUPPLEMENTAL VOLUME 1 PAGES 001-094**


**In Witness Whereof, I have set my hand and affixed the Seal of said Court this 6th day of June, A.D. 2014.**


　　　　　　　　　　　　**RONNIE FUSSELL,**
　　　　　　　　　　　　**CLERK OF THE CIRCUIT AND**
　　　　　　　　　　　　**COUNTY COURTS OF DUVAL**
　　　　　　　　　　　　**COUNTY**

　　　　　　　　　　　　**BY  ADANNA M RUSSELL**
　　　　　　　　　　　　**Deputy Clerk**

　　　　　　　　　　　　**501 West Adams St. Room 1262**
　　　　　　　　　　　　**Jacksonville, FL 32202**
　　　　　　　　　　　　**(904) 255-2206**
　　　　　　　　　　　　**Email:Adanna.Russell@duvalclerk.com**

