UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CLIFTON MCNEIL BROOKS,

      Petitioner,

v.                           Case No. 3:19-cv-787-MMH-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## ORDER

### I. Status

Petitioner Clifton Brooks, an inmate of the Florida penal system,

initiated this action on June 18, 2019, by filing a Petition for Writ of Habeas

Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[1] In the Petition, Brooks

challenges a 2013 state court (Duval County, Florida) judgment of conviction

for sexual battery and lewd or lascivious molestation. He raises six grounds for

relief. See Petition at 7-25. Respondents submitted a memorandum in

opposition to the Petition. See Response (Doc. 7). They also submitted exhibits.

See Docs. 7-1 through 7-33. Brooks filed a brief in reply, see Reply (Doc. 8), and

_____

[1] For purposes of reference to pleadings and exhibits, the Court will cite
the document page numbers assigned by the Court's electronic docketing
system.

a supplemental brief in reply, see Supplemental Reply (Doc. 12). This action is
ripe for review.

## II. Relevant Procedural History

On July 30, 2012, the State of Florida charged Brooks with sexual
battery (count one), lewd or lascivious molestation (count two), and lewd or
lascivious exhibition (count three). Doc. 7-15 at 28. On February 8, 2013, the
State filed an amended information changing the date of the offenses alleged
in counts one and three. Id. at 128. On February 13, 2013, at the conclusion of
a trial, the jury found Brooks guilty of counts one and two. Id. at 139-40. The
trial court granted a judgment of acquittal as to count three. Id. at 141. On
February 27, 2013, the trial court adjudicated Brooks to be a sexual predator
and sentenced him to concurrent terms of life imprisonment for counts one and
two. Doc. 7-16 at 19-24.

On direct appeal, Brooks, with the benefit of counsel, filed an initial brief
and an amended brief, arguing the trial court erred by failing to conduct a
sufficient Faretta[2] inquiry (ground one), failing to order a competency
evaluation (ground two), admitting collateral acts of a sexual nature (ground
three), and failing to conduct a Faretta inquiry before imposing the sentences

---

[2] Faretta v. California, 422 U.S. 806 (1975).

2

(ground four). Docs. 7-24 at 2-57; 7-25 at 2-55. The State filed an answer brief, Doc. 7-26 at 2-25, and Brooks filed a reply brief, Doc. 7-27 at 2-13.

The First DCA reversed and remanded Brooks's convictions and sentences on December 4, 2015. Doc. 7-28 at 2-6. The First DCA remanded for the trial court to determine Brooks's competency at the time of his trial. Id. at 4. If the trial court could not make a nunc pro tunc competency determination, the First DCA ordered the court to hold a new trial. Id. at 4-5. The First DCA also remanded for the trial court to conduct a new sentencing hearing because the court had not renewed the offer of counsel before sentencing. Id. The First DCA issued the mandate on December 30, 2015. Doc. 7-29 at 3. On remand, the trial court, nunc pro tunc, determined Brooks to be competent. Docs. 7-4 at 3; 7-13 at 19. Brooks was adjudicated to be a sexual predator and sentenced to concurrent terms of life imprisonment on counts one and two. Doc. 7-5 at 3-9.

On April 15, 2016, Brooks filed a pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Doc. 7-10 at 2-73. In his Rule 3.850 Motion, Brooks alleged the State filed a deficient information (ground one), the trial court erred when it denied Brooks's right to a speedy trial upon demand (ground two), counsel was ineffective for failing to adopt Brooks's demand for a speedy trial (ground three), the trial court erred when it failed to

3

grant Brooks's motion to dismiss the information (ground four), counsel was ineffective for providing the State with evidence of Brooks's alibi (ground five), and the State knowingly used false evidence as a basis for the charges in the information (ground six). Id. at 7-8, 14-28. On December 19, 2017, the postconviction court summarily denied relief on all grounds. Doc. 7-11 at 2-10. The First DCA per curiam affirmed the denial of relief without a written opinion on April 17, 2019, Doc. 7-32 at 2, and issued the mandate on May 15, 2019, Doc. 7-33 at 2.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834

F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Brooks's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); <u>Richter</u>, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." <u>Id.</u> at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Id.</u>
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1),

7

which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." <u>See</u> <u>Burt v. Titlow</u>, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); <u>accord</u> <u>Brumfield v. Cain</u>, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'"[3] <u>Titlow</u>, 571 U.S. at ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S. 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016); <u>see</u> <u>Teasley v. Warden, Macon State Prison</u>, 978 F.3d 1349, 1356 n.1 (11th Cir. 2020). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in

---

[3] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016).

8

existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. A district court's obligation is "to train its attention" on the legal and factual basis for the state court's ruling, not to "flyspeck the state court order or grade it." Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing Wilson, 138 S. Ct. at 1191-92). Thus, to the extent that a petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any

constitutional issues by invoking one complete round of the State's established

appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies

results in a procedural default which raises a potential bar to federal habeas

review. The United States Supreme Court has explained the doctrine of

procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our

> system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[4] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[5] <u>supra</u>, at 84–85, 97 S. Ct. 2497.  A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

<u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

---

[4] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).
[5] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[6] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." Id. at 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal

---

[6] Murray v. Carrier, 477 U.S. 478 (1986).

> innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171
> (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of

reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687, 104 S. Ct. 2052.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we

14

expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at ---, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference — this one to a state court's decision — when we are considering whether to grant federal habeas relief from a state court's

decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Brooks alleges the trial court did not have "subject matter jurisdiction" to convict and sentence him because the State filed a defective information. Petition at 7. Pursuant to Florida Rule of Criminal Procedure 3.140(g), "[a]n information charging the commission of a felony shall be signed by the state attorney, or a designated assistant state attorney. . . ." Brooks claims Assistant State Attorney Alan Mizrahi did not have the authority to sign the information on behalf of State Attorney Angela Corey. <u>Id.</u> at 7-8. According to Brooks, a State Attorney may not contract with an Assistant State Attorney for a period of employment exceeding three years as set forth in Florida Attorney General Opinion 079-69. <u>Id.</u> at 8; Reply at 5. Mizrahi renewed his contract with Corey on January 8, 2009; however, Mizrahi allegedly did not renew his contract after the expiration of three years. Petition at 8. Brooks contends Mizrahi then did not have the authority to sign the initial information on July 27, 2012, as a

16

designated assistant state attorney, and the information did not invoke the trial court's jurisdiction. Id. at 8-9.

Respondents argue that Brooks's claim is not cognizable in a federal petition for writ of habeas corpus because it concerns solely state law. Response at 20. In his Supplemental Reply, Brooks asserts the defective information violated his due process rights, and he may raise the claim that the trial court lacked subject matter jurisdiction at any time. Supplemental Reply at 2-5.

Brooks raised a similar claim in state court as ground one of his Rule 3.850 Motion. Doc. 7-10 at 7, 14-16. In denying relief, the circuit court explained:

> In Ground one of his Motion, Defendant claims that the information filed in his case is invalid because the Assistant State Attorney Alan Mizrahi did not renew his contract with the State Attorney Angela Corey in a timely manner. Defendant argues that an Assistant State Attorney must renew their contract every three years and, if they don't, any information they file prior to renewal is invalid and fails to invoke the Court's jurisdiction. In support of his claim, Defendant cites State of Florida Attorney General Opinion 079-69. Defendant's claim is meritless because he has completely misinterpreted the Attorney General Opinion he cites. Attorney General Opinion 079-69 addresses an inquiry about whether a State Attorney can legally contract with an Assistant State Attorney for a definite period longer than three years. 1979 Op. Att'y Gen. Fla. 169 (1979). The opinion answers this inquiry in the negative and it appears

17

> Defendant has interpreted this to mean that Assistant State Attorney must renew a contract every three years in order to continue performing their duties. Id. Defendant's interpretation, however, is incorrect. The opinion clarifies that Assistant State Attorneys serve at the will of the State Attorney and cannot enter into employment contracts that bind the State Attorney to retain Assistant State Attorney's for a defined period of time. Id. Thus, Defendant's claim is without merit. Accordingly, Defendant's claim in Ground One is denied.

Doc. 7-11 at 4-5. The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 7-32 at 2.

To the extent that the First DCA denied this claim on the merits,[7] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence

---

[7] Throughout this Order, in looking through the appellate court's per curiam affirmance to the circuit court's "relevant rationale," the Court presumes that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

18

presented in the state court proceedings. Therefore, Brooks is not entitled to relief on the basis of this claim.

Even assuming the appellate court's adjudication of the claim is not entitled to deference, Brooks's claim is without merit. Insofar as Brooks argues the information did not conform with Florida Rule of Criminal Procedure 3.140(g) based on the Assistant State Attorney's expired contract, his claim presents a state law issue that is not cognizable on federal habeas review. See Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). Rather, the Court mut determine on federal habeas review whether Brooks's custody violates the United States Constitution or the laws or treaties of the United States. See 28 U.S.C. § 2254(a); Coleman v. Thompson, 501 U.S. 722, 730 (1991). Brooks does not present such a claim in his Petition.

A defective information claim is cognizable on federal habeas review only when the charging document is so deficient that it deprives the convicting court of jurisdiction. DeBenedictis v. Wainwright, 674 F.2d 841, 842 (11th Cir. 1982). A charging document is legally sufficient "if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under

19

the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir. 2009) (citation and quotations omitted).

Here, the information met the minimum requirements for invoking the jurisdiction of the trial court. The information included Brooks's name and described the times and locations of the offenses. Doc. 7-15 at 28. It stated the statutory basis for each count and set forth the elements of sexual battery, lewd or lascivious molestation, and lewd or lascivious exhibition. Id. The trial court also had subject matter jurisdiction because the information charged Brooks with sexual battery, lewd or lascivious molestation, and lewd or lascivious exhibition in violation of Florida Statutes sections 794.011(2)(a), 800.04(5)(b), and 800.04(7)(c). Id. The information was not so defective that it deprived the trial court of jurisdiction. See DeBenedictis 674 F.2d at 842. Accordingly, Brooks is not entitled to federal habeas relief on ground one.

### B. Grounds Two and Three

In ground two, Brooks claims the trial court denied his right to a speedy trial upon demand. Petition at 11. Brooks alleges he attempted to file a demand for speedy trial on September 21, 2012; however, the trial court would not accept the filing. Id. According to Brooks, defense counsel, Todd Niemczyk, had

withdrawn from the case at the time Brooks filed his demand for speedy trial. Id. at 12. Therefore, the trial court should have accepted his pro se filing because he did not have counsel. Id. Brooks contends that by not accepting his demand, the trial court violated his right to due process pursuant to Article One, Section Nine of the Florida Constitution and right to a speedy trial pursuant to the Sixth and Fourteenth Amendments of the United States Constitution. Id. In ground three, Brooks alleges successor counsel, Darcy Galnor, was ineffective because she did not adopt his demand for speedy trial. Id. at 13. According to Brooks, if Galnor had adopted his demand, she could have filed a notice of expiration of time for a speedy trial and the charges would have been dismissed. Id. at 14.

Brooks raised similar claims in state court as grounds two and three of his Rule 3.850 Motion. Doc. 7-10 at 7, 16-19. In denying relief, the circuit court explained:

> In Grounds Two and Three, Defendant alleges that his right to demand a speedy trial was violated. In Ground Two, Defendant argues that the Court erred in not accepting his "Motion for Speedy Trial Upon Demand," which Defendant states was filed pro se on September 21, 2012. Defendant claims that his motion was not accepted by the Court because Defendant was represented by counsel at the time. Defendant alleges that on September 21, 2012 he was unrepresented and the Court should have accepted his

motion as a pro se filing. Alternatively, in Ground Three, Defendant argues that if he was in fact represented by counsel on September 21, 2012, then counsel was ineffective for failing to adopt Defendant's pro se "Motion for Speedy Trial Upon Demand." In both grounds, Defendant claims he was prejudiced because it prevented him from filing a notice of expiration and moving for the charges to be dismissed as a violation of Rule 3.191.

A claim of trial court error cannot be raised in a rule 3.850 motion. Seibert v. State, 64 So. 3d 67, 77 (Fla. 2010). Therefore, Defendant's claim that the Court erred in denying Defendant's pro se demand for speedy trial is procedurally barred from being raised in a rule 3.850 motion. A defendant, however, may use the underlying facts from a claim of trial court error in order to make a claim of ineffective assistance of counsel, which can be raised in a rule 3.850 motion. Id. A claim of ineffective assistance of counsel based on counsel failing to assert a defendant's speedy trial rights requires the defendant to show that counsel made an unreasonable decision not to pursue those rights and defendant was prejudiced by that decision. Remak v. State, 142 So. 3d 3, 6 (Fla. 2d DCA 2014). To sufficiently plead prejudice, a defendant must allege specific facts that demonstrate that the State could not have brought the movant to trial within the recapture window or the quality of the State's evidence would have been diminished if it were forced to trial. Id.

Defendant's claim that counsel was ineffective for failing to adopt Defendant's demand for speedy trial is meritless. Defendant is operating under the belief that had his demand for speedy trial been adopted by counsel, the time period would have expired and Defendant would have been able to file a motion for discharge. Defendant glosses over the fact

that when a defendant asserts his speedy trial rights he is also informing the court that he is ready to proceed to trial, which the record strongly suggests was not the case. On September 21, 2012, the day Defendant alleges was his first attempt to file a demand for speedy trial, counsel had not yet deposed Shontrell Harris, a key witness for the charged offenses, and [R.H.], a William's[8] Rule witness. Counsel's motions to continue demonstrate on the record that counsel was not ready to proceed to trial and it is not unreasonable for counsel to not demand a speedy trial when she has not deposed important witnesses. Therefore, Defendant's claims in Grounds Two and Three are denied.

Doc. 7-11 at 5-6 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 7-32 at 2.

### 1. Ground Two

To the extent that the First DCA denied ground two on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence

---

[8] <u>Williams v. State</u>, 110 So. 2d 654 (Fla. 1959).

presented in the state court proceedings. Therefore, Brooks is not entitled to relief on the basis of this claim.

Assuming the appellate court's adjudication of the claim is not entitled to deference, Brooks's claim is without merit. The Court initially notes that at the time Brooks filed his demand for a speedy trial, the Public Defender's Office represented him. The trial court appointed the Public Defender's Office to represent Brooks on July 13, 2012. Doc. 7-15 at 27. The Public Defender's Office did not withdraw from representing Brooks until January 7, 2013. Doc. 7-13 at 28, 39. Both Niemczyk and Galnor were assistant public defenders. Docs. 7-15 at 9-10; 7-17 at 189, 198. The trial court was not obliged to accept Brooks's pro se demand for a speedy trial on September 21, 2012, when the Public Defender's Office still represented him. See McKaskle v. Wiggins, 465 U.S. 168, 183 (1984) ("Faretta does not require a trial judge to permit 'hybrid' representation . . .").

Nevertheless, the trial court did not violate Brooks's constitutional right to a speedy trial. "In all criminal prosecutions, the accused shall enjoy the right to a speedy . . . trial. . . ." U.S. Const. amend. VI. The Supreme Court has set forth factors for evaluating whether a speedy trial violation occurred in contravention of the Sixth Amendment. See Barker v. Wingo, 407 U.S. 514,

24

530-31 (1972). These factors include the length of the delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant. Id.

Here, the Jacksonville Sheriff's Office arrested Brooks on July 12, 2012. Doc. 7-15 at 20. The State filed the initial information on July 30, 2012. Id. at 28. Brooks proceeded to trial on February 13, 2013, and a jury found Brooks guilty of counts one and two on that same day. Id. at 139-40. The State charged Brooks with serious offenses, one of which constituted a capital felony, that occurred over a span of years. Id. at 28; see § 794.011(2)(a), Fla. Stat. ("A person 18 years of age or older who commits sexual battery upon, or in an attempt to commit sexual battery injures the sexual organs of, a person less than 12 years of age commits a capital felony. . .."). Moreover, the case involved the use of WilliamsRule evidence as well as testimony from multiple underaged witnesses. Doc. 7-15 at 30, 73-74. A delay of approximately seven months would not be unreasonable under these circumstances. See Barker, 407 U.S. at 530-31.

Moreover, there were significant reasons for the delay. The trial court granted defense counsel's motion for a continuance on December 6, 2012, so an expert could evaluate Brooks's competency and counsel could depose an eyewitness and a Williams Rule witness. Docs. 7-15 at 92-93; 7-17 at 183. The

witnesses had not appeared for their scheduled depositions. Doc. 7-15 at 93. At that time, the trial court even set a tentative date of February 11, 2013, for jury selection in order to preserve Brooks's right to proceed with a trial as soon as possible. Doc. 7-17 at 184.

The delay did not greatly prejudice Brooks. If Brooks had proceeded to trial before December 6, 2012, he would have done so without the depositions of key witnesses. Doc. 7-15 at 92-93. Further, Brooks has "failed to identify any potential witnesses or items of evidence that were lost as a result of the delay." Castillo v. Florida, 630 F. App'x 1001, 1007 (11th Cir. 2015). As such, his constitutional right to a speedy trial was not violated. Accordingly, Brooks is not entitled to federal habeas relief on ground two.

## 2. Ground Three

To the extent that the First DCA denied ground three on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings. Therefore, Brooks is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Brooks's claim is without merit. Counsel was not deficient for failing to adopt Brooks's demand for a speedy trial. The record shows as early as November 27, 2012, counsel had not deposed certain witnesses because they failed to appear at scheduled depositions. Doc. 7-17 at 166. Counsel maintained that she wanted to complete all depositions in the case because if a jury found Brooks guilty, he would receive a mandatory term of life imprisonment. Id. at 168-69. On December 6, 2012, counsel filed a motion for a continuance citing additional concerns about Brooks's competency and the failure of an eyewitness and a Williams Rule witness to appear at depositions scheduled for October 31, 2012. Docs. 7-15 at 92-93; 7-17 at 177-85.

Based on the record, counsel made a considered, reasonable decision to not assert Brooks's right to a speedy trial. Given the nature of the charges, which largely relied on witness testimony, and the severity of the potential penalties, it was reasonable for counsel to prioritize completing depositions and not to adopt Brooks's demand for a speedy trial. Counsel was not deficient for

27

failing to demand a speedy trial when the defense would not have been prepared for a trial. Therefore, relief on ground three is due to be denied.

### C. Ground Four

Brooks claims the trial court erred when it denied his motion to dismiss the information. Petition at 16. He alleges the State did not obtain testimony under oath from a material witness as required by Florida Rule of Criminal Procedure 3.140(g) because the prosecutor did not provide him with the testimony during arraignment. Id. at 15-16. Respondents argue that Brooks's claim is not cognizable in a federal petition for writ of habeas corpus because it concerns solely state law. Response at 24. In his Reply, Brooks asserts the trial court violated his Fourteenth Amendment right to due process. Reply at 8.

Brooks raised a similar claim in state court as ground four of his Rule 3.850 Motion. Doc. 7-10 at 8, 19-21. In denying relief, the circuit court explained:

> In Ground Four, Defendant alleges that the Court erred when it denied Defendant's Motion to Dismiss based on the State's alleged failure to obtain sworn statements from material witnesses prior to the filing of the Information and amended Information in Defendant's case. Defendant's contention that the State failed to obtain sworn statements from the material witnesses is based on the fact that he was not

given transcripts of the sworn statements at the time of his arraignment. The record, however, demonstrate that the Informations filed in Defendant's case includes a sworn statement by the Assistant State Attorney that the facts set forth in the information are based on sworn testimony from the material witnesses for the offenses. Just because Defendant was not handed transcripts of the sworn statements does not mean that they did not occur. See Solorio v. State, 194 So. 3d 465, 468-69 (Fla. 3d DCA 2016). Additionally, claims of trial court error are not cognizable in a collateral postconviction motion. Johnson v. State, 985 So. 2d 1215, 1216 (Fla 1st DCA 2008). Therefore, Defendant's claim in Ground Four is denied.

Doc. 7-11 at 6-7 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 7-32 at 2.

To the extent that the First DCA denied ground four on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Brooks is not entitled to relief on the basis of this claim.

Assuming the appellate court's adjudication of the claim is not entitled to deference, Brooks's claim does not have merit. His allegation that the trial court should have dismissed the information for failing to comply with Florida Rule of Criminal Procedure 3.190(g) involves a question of state law. Therefore, it is not cognizable on federal habeas review. See Estelle, 502 U.S. at 67 (1991).

A defective information claim is cognizable on federal habeas review only when "the indictment or information is so deficient that the convicting court is deprived of jurisdiction." DeBenedictis, 674 F.2d at 842. As determined in ground one of this Order, the information was not so defective that it deprived the trial court of jurisdiction. Accordingly, Brooks is not entitled to habeas relief on ground four.

## D. Ground Five

Brooks claims counsel, Darcy Galnor, was ineffective when she provided the State with evidence of Brooks's alibi. Petition at 19. Brooks notified counsel that he had been on active-duty deployment between January 3, 2003, to January 2, 2004, the period during which count one occurred as alleged in the initial information. Id. On October 17, 2012, he provided counsel with documentation that he had been on active-duty deployment during that time period. Id. at 19-20. On October 31, 2012, during the deposition of the victim,

J.M., counsel prompted J.M. to change her age at the time of the incident from seven to eight. Id. at 20. The State subsequently filed an amended information alleging count one occurred between January 3, 2003, to January 2, 2005. Id. According to Brooks, if counsel had not disclosed evidence of his active-duty deployment to the State, the jury would not have convicted him. Id.

Brooks raised a substantially similar claim in state court as ground five of his Rule 3.850 Motion. Doc. 7-10 at 8, 21-22. In denying relief, the circuit court explained:

> In Ground Five, Defendant alleges that counsel was ineffective for undermining Defendant's alibi defense. Defendant specifically alleges he told counsel that he was in the military and stationed outside the United States of America during the time the offense was alleged to have occurred. Defendant claims that counsel revealed this information to the State and coerced the victim to change her age when the offense was alleged to occur from seven to eight. Defendant claims this information was revealed during an October 31, 2012, deposition of J.M. Defendant alleges that these actions prompted the State to amend the Information to enlarge the window of time that Count One was alleged to have occurred, going from a period of one year (January 2003 to January 2004) to a period of two years (January 2003 to January 2005). Defendant argues he was prejudiced by the State amending the Information because it subverted his efforts to file a Motion to Dismiss the charges.

> Defendant's claim that counsel revealed information or coerced J.M. to change her age is

31

without merit. Defendant alleges he told counsel on October 2, 2012, that he was out of the country during the alleged incident and that this prompted her to tell the State to change J.M.'s age at the time of the offense from seven years old to eight years old. A plain reading of the October 31, 2012 deposition transcript demonstrates that counsel did not tell J.M. any specific age and that J.M. volunteered that she was eight years old when Defendant first touched her inappropriately. Later J.M. confirms that the first touching happened when she was eight years old. Further, the record is clear, that the State was aware that the offense had occurred when J.M. was eight years old based on a Jacksonville Sherriff's Office Supplemental Report prepared on July 20, 2012. Thus, the State was already aware that the allegations were based on actions taken when J.M. was eight years old and any discussion by counsel of J.M.'s age at the deposition had zero impact on any discrepancy in J.M.'s testimony about her age. Therefore, Defendant's claim in Ground Five is denied.

Doc. 7-11 at 7-8 (record citations omitted). The First DCA per curiam affirmed the denial of relief without a written opinion. Doc. 7-32 at 2.

To the extent that the First DCA denied ground five on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not

32

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Brooks is not entitled to relief on the basis of this claim.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Brooks's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. During the deposition, J.M. stated she was 8 years old when Brooks committed the offense detailed in count one. Doc. 7-23 at 43. Counsel did not compel J.M. to change her age during the deposition. As such, Brooks cannot demonstrate counsel was ineffective, and relief on ground five is due to be denied.

## E. Ground Six

Brooks alleges his conviction violates the Fifth Amendment prohibition against double jeopardy. Petition at 22. He claims Shantell Harris,[9] the victim of a battery resulting in Brooks's 2006 conviction, made false statements about the incidents with the victim, J.M. as alleged in counts one and two of the information. Id. at 22-25. The prosecutor then engaged in misconduct by using Harris's false statements as the basis for filing the information and failing to

---

[9] Although the postconviction court referred to Harris as Shontrell Harris, Doc. 7-11 at 6, 8-9, the Court will refer to her as Shantell Harris in conformance with the trial transcript, Doc. 7-19 at 5, 86-87.

disclose that J.M.'s statements did not provide the basis for counts one and two. Id. at 22, 25. According to Brooks, prosecutors coerced J.M. into changing certain details of her statements, such as her age and clothing at the time of the offenses, to corroborate Harris's statements about counts one and two. Id. at 23-24. Brooks contends the prosecutor's use of false statements from the victim of the 2006 offense to provide the basis for his 2013 conviction violates double jeopardy. Id. at 22.

Respondents contend that Brooks failed to properly exhaust his double jeopardy claim. Response at 26. According to Respondents, Brooks raised the claim here as violating the Fifth Amendment prohibition against double jeopardy, but he did not assert it as such in ground six of his Rule 3.850 Motion. Id. Brooks counters that he exhausted the claim as evidenced by the postconviction court's order denying ground six of his Rule 3.850 Motion. Supplemental Reply at 11.

The record reflects that in his Rule 3.850 Motion, Brooks asserted the prosecutor engaged in misconduct "to . . . circumvent the double jeopardy clause." Doc. 7-10 at 8. He did not allege his convictions violated double jeopardy. Id. Moreover, Brooks did not cite to the Fifth Amendment or any federal law concerning double jeopardy. Id. at 8, 22-28, 39-41. The "exhaustion

34

doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record." <u>McNair v. Campbell</u>, 416 F.3d 1291, 303 (11th Cir. 2005) (citation and quotations omitted). Therefore, to the extent Brooks raises a double jeopardy challenge, the Court finds he failed to fairly present the claim to the state court, which deprived the state court of a meaningful opportunity to review the claim. <u>See</u> <u>Baldwin</u>, 541 U.S. at 29.

Nevertheless, even if his double jeopardy claim was properly exhausted, it does not have merit. The Double Jeopardy Clause prohibits successive prosecutions and multiple punishments for the same offense. <u>United States v. Dixon</u>, 509 U.S. 688, 696 (1993). Here, the offenses do not even arise from the same transaction or involve the same act. The 2006 battery occurred when Brooks "pistol-whipped" Harris in Brooks's car during a dispute over a "passion mark" on his neck. Petition at 24-25; Doc. 7-23 at 94-97. The sexual battery and molestation occurred between 2003 and 2005 when Brooks committed sex acts on his niece, J.M. Docs. 7-15 at 28, 128; 7-19 at 77-84, 88-91. Brooks's convictions did not violate double jeopardy. Therefore, he is not entitled to federal habeas relief.

To the extent Brooks raises a <u>Giglio</u>[10] violation in the instant Petition, the Court finds he raised a substantially similar claim in state court as ground six of his Rule 3.850 Motion. Doc. 7-10 at 9, 22-28. In denying relief, the circuit court explained:

> In Ground Six, Defendant alleges that the State knowingly used false testimony as a basis for the charges filed in the Information in violation of <u>Giglio</u>. Defendant claims the State falsified the Information in his case by stating that the factual basis was provided by the victim. Defendant argues that Shontrell, not the victim, provided the factual basis for the offenses. Defendant also argues the State knew Shontrell Harris lied when she stated that she witnessed the incident because the victim testified that the only other person, besides Defendant, at the home when the offense was alleged to have occurred was her brother.

> "To establish a <u>Giglio</u> violation, it must be shown that (1) the testimony given was false; (2) the prosecutor knew the testimony was false; (3) the statement was material.["] <u>Ferrell v. State</u>, 29 So. 3d 959, 976 (Fla. 2010). A defendant cannot establish a <u>Giglio</u> violation by merely demonstrating that the State put on witnesses whose testimony conflicted with another person's version of events, especially if no evidence is alleged to prove one version of events is false and the other true. <u>Id.</u> at 978.

> Defendant's claim that the State knowingly used false testimony in the Information is meritless. Defendant's first allegation that the State falsified the

---

[10] <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

Information is clearly refuted by the record. Nowhere in any of the informations filed in Defendant's case is there a specific mention of who supplied the factual basis for the offenses. Thus, the State could not have falsified the source of the factual basis as Shontrell Harris because it did not specify that any particular person was the source. Additionally, the record shows that the victim spoke to the police about the alleged offenses prior to the filing of the initial Information, further discrediting Defendant's claims that the State did not use the victim's testimony as a basis for the offenses.

Defendant's claim that the State presented false testimony via Shontrell Harris is also meritless. Defendant relies on the fact that Shontrell Harris' testimony about who was in the home during one of the alleged incidences differed from the victim's as proof that the testimony is false. Differing testimony cannot be relied on as proof of false testimony and even if it could be, the detail Defendant relies on is not material to whether the offense occurred. Additionally considering the traumatic nature of the alleged offense, the age of the victim at the time of the offense, and the amount of time that passed before the victim testified at Defendant's trial, it is not surprising that the victim misremembered some minor details. To the extent that Defendant suggests he was prejudiced by the differing accounts of the events by the victim and Shontrell Harris, Defendant had an opportunity to highlight these differences to the jury and any prejudice resulting from not doing that was caused by Defendant's self-representation. Therefore, Defendants claims in Ground Six are denied.

Doc. 7-11 at 8-9 (record citations omitted). The First DCA per curiam affirmed

the denial of relief without a written opinion. Doc. 7-32 at 2.

To the extent that the First DCA denied ground six on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, Brooks is not entitled to relief on the basis of this claim.

To demonstrate a Giglio violation, Brooks "must prove: (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material, i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment." Guzman v. Sec'y, Dep't of Corr., 663 F.3d 1336, 1348 (11th Cir. 2011) (quotation marks and ellipsis omitted). Mere inconsistency in testimony is insufficient to establish a Giglio claim. United States v. Stein, 846 F.3d 1135, 1149 (11th Cir. 2017).

Here, the prosecutor never represented that J.M.'s statements provided the basis for counts one and two of the information. The arrest and booking

report indicates law enforcement received statements from both J.M. and Harris. Doc. 7-9 at 4-5. The prosecutor disclosed the arrest and booking report to the defense. Doc. 7-15 at 30. Further, Harris never stated to law enforcement or testified during trial that she witnessed the sexual battery as alleged in count one. Docs. 7-9 at 5; 7-19 at 88-91. The prosecutor instead relied on her testimony to prove the lewd and lascivious molestation as alleged in count two. Docs. 7-19 at 88-91; 7-20 at 8-11.

Additionally, Brooks has failed to demonstrate either that J.M.'s and Harris's statements were false or that the prosecutor knew they were false. At trial, Harris testified consistently with her deposition testimony about the molestation alleged in count two. Docs. 7-19 at 88-115; 7-23 at 93-136. J.M.'s trial testimony also was consistent with her deposition testimony about the sexual battery alleged in count one. Docs. 7-19 at 75-85; 7-23 at 39-70. Any mere inconsistencies in the statements of Harris and J.M. does not render their statements false or provide proof of prosecutorial misconduct. See Stein, 846 F.3d at 1149. Brooks has not provided any additional facts to support his claim; therefore, he has failed to establish a Giglio violation. For all of the foregoing reasons, relief on the claim in ground six is due to be denied.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Brooks seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Brooks "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial

of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     If Brooks appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.      The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 28th day of April, 2022.

MARCIA MORALES HOWARD
United States District Judge

Jax-9

C:      Clifton McNeil Brooks #135510
        Counsel of record

42